UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION



FILED
JAN 30 2009
CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

IN RE:

MIRABILIS VENTURES, INC.,

    Debtor.

_____/

Case No. 6:08-bk-04327-KSJ
Chapter 11

MIRABILIS VENTURES, INC.,

    Plaintiff,

v.

BUCHANAN, INGERSOLL &
ROONEY, P.L.;
SAXON, GILMORE, CARRAWAY,
GIBBONS, LASH & WILCOX, P.A.; and
HANS C. BEYER, an individual and as
Attorney/Agent with BUCHANAN,
INGERSOLL & ROONEY and
SAXON, GILMORE, CARRAWAY,
GIBBONS, LASH AND WILCOX,

    Defendants.

_____/

Adv. Pro. No. 6:08-ap-00227-KSJ

### DEFENDANTS, SAXON, GILMORE, CARRAWAY, GIBBONS, LASH & WILCOX, P.A. AND HANS C. BEYER'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Defendants Saxon, Gilmore, Carraway, Gibbons, Lash & Wilcox, P.A. ("Saxon Gilmore") and Hans C. Beyer ("Beyer"), move on the following grounds to dismiss the complaint filed by Debtor-In-Possession Mirabilis Ventures, Inc. ("MVI").

The complaint should be dismissed because it fails to state a cause of action against Saxon Gilmore or Beyer. MVI's complaint is a confused and confusing document that is largely incomprehensible, internally inconsistent, and, apparently, the

1

product of a careless word processing "copy and paste" project based on some other pleading(s). The complaint includes allegations against non-parties, as well as requests for relief on behalf of non-parties. Although not pertinent to the motion to dismiss, the complaint is rife with false and shameful allegations; Defendants have, contemporaneously with this motion, made a demand pursuant to Rule 9011 for dismissal of the complaint.

What MVI appears to attempt to claim in its five count, ninety-five paragraph complaint is legal malpractice against Beyer, along with claims of vicarious liability against Saxon Gilmore for times when Beyer was employed by Saxon Gilmore, and vicarious liability claims against the Buchanan Ingersoll & Rooney (BIR") firm for times when Beyer was employed by that firm. The claims appear to arise from multiple transactions involving non-parties that resulted in millions of dollars of unpaid payroll taxes. However, the complaint fails to satisfy the most basic pleading requirements of the Federal Rules of Civil Procedure, as made applicable to this adversary proceeding by the Federal Rules of Bankruptcy Procedure, and states no claim against Beyer or Saxon Gilmore (or BIR).

### THE STANDARD GOVERNING A MOTION TO DISMISS

The rules provide that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *Federal Rules of Civil Procedure* 12(b)(6); *Federal Rules of Bankruptcy Procedure* 7012(b). That means that a court may dismiss a complaint that fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (abrogating the "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In

making this determination, the court must accept the allegations in the complaint as true and must accept the allegations in a light most favorable to the plaintiff. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992). However, the Court should ignore allegations that contain no more than opinions or legal conclusions. *See Oxford Asset Mgmt. Ltd. v. Jaharis*, 297 F.3d 1182 (11th Cir. 2002); *South Florida Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 409 n.10 (11th Cir. 1996). Indeed, under the new *Twombly* standard, a "plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do. Factual allegations must be enough to raise a right to relief above a speculative level . . . ." *Twombly*, 127 S. Ct. at 1964-65. If a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, the complaint must be dismissed." *Id.* at 1974.

Among its many other flaws, the complaint fails to provide the Defendants with "fair notice" of the claims asserted against them as required by the rules.[1] The complaint improperly asserts blanket claims against the Defendants and numerous non-parties, purportedly on behalf of MVI and numerous non-parties, without identifying the alleged misconduct attributable to any particular party and failing to identify the specific acts purportedly giving rise to the Defendants' liability. In *Veltmann v. Walpole Pharmacy, Inc.*, 928 F.Supp. 1161 (M.D. Fla. 1996), the Middle District of Florida considered this same issue and held that where a complaint fails to separate each alleged act by each defendant into individually numbered paragraphs, such pleading defect is sufficient to justify a motion to dismiss. *Veltmann*, 928 F.Supp. at 1164.

---

[1] The capitalized term "Defendants" as used in this motion means the defendants in this adversary proceeding, Saxon Gilmore, Beyer, and BIR.

3

The requirement that a complaint provide "fair notice" of claims prohibits the use of "shotgun pleadings." A complaint that fails to articulate claims with sufficient clarity to enable each defendant to properly frame a response constitutes a "shotgun pleading." *Danow v. Borack*, 197 Fed. Appx. 853, 855 (11th Cir. 2006); *Home Design Services, Inc. v. David Weekley Homes, LLC*, No. 2:06-cv-350-FtM-29DNF, 2007 W.L. 108001, *3 (M.D. Fla. Apr. 9, 2007). The Eleventh Circuit has identified that "shotgun pleadings" can be harmful and costly to litigants as well as the courts. *See Byrne v. Nezhat*, 261 F.3d 1075, 1129-30 (11th Cir. 2001).

### THE REQUIREMENTS TO ALLEGE A CLAIM FOR LEGAL MALPRACTICE

The requirement of fair notice and specific allegations is particularly apt in this case, which purports to be an action for legal malpractice. To state a claim for legal malpractice under Florida law, a plaintiff must allege the following: (1) the plaintiff's employment of the attorney to provide legal services; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence as the proximate cause of the loss to the plaintiff. *David J. Stern, P.A. v. Security Natl. Servicing Corp.*, 969 So.2d 962, 966 (Fla. 2007). The plaintiff must do more than merely assert that a lawyer-client relationship or other basis for the duty existed; the relationship must have existed with regard to the specific acts or omissions on which the claim of negligence is based. *See Maillard v. Dowdell*, 528 So.2d 512 (Fla. 3d DCA 1988). Moreover, a complaint claiming legal malpractice must allege "the source of the alleged duty, such as an oral or written contract, the duration of the relationship, [and] whether the alleged breaches emanate from one or multiple representation arrangements." *Rohlwing v. Myakka River Real Properties, Inc.*, 884 So.2d 402, 406 (Fla. 2d DCA 2004).

4

Fundamentally, this means that a plaintiff must allege that the plaintiff hired an attorney with respect to a particular topic, the attorney committed malpractice with respect to that topic, and the plaintiff suffered damage as a result. Consistent with these requirements, the Florida Supreme Court has strictly limited legal malpractice actions to clients who are in privity of contract with the attorney. *See Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner*, 612 So.2d 1378 (Fla. 1993); *Angel, Cohen & Rogovin v. Oberon Investment N.V.*, 512 So.2d 192 (Fla. 1987) (providing that Florida courts limit an attorney's liability for negligence to the client with whom they share privity of contract).

### THE COMPLAINT FAILS TO SATISFY BASIC PLEADING REQUIREMENTS

Review of MVI's complaint in this action establishes that it is a shotgun pleading that fails to give fair notice to Saxon Gilmore and Beyer of the claims against them and, fundamentally, fails to adequately allege any attorney client relationship with respect to the claims. Some—but not all—of the flaws in this complaint are set forth below.[2]

The complaint contains an unnumbered paragraph entitled "Nature of the Action," which states that this is an action against the Defendants stemming from their "involvement and representation of MVI and its subsidiaries including but not limited to AEM." The complaint was filed by MVI. No subsidiary is a plaintiff in this action. As a matter of basic, corporate law, MVI and its subsidiaries are separate and distinct legal entities. *See infra at pp. 13-14*. AEM, whatever that undefined reference might mean, is also not a plaintiff in this action.

---

[2] It is not possible to discuss every flaw in this complaint in a 20-page memorandum; the complaint is 21 pages and is flawed in its entirety. Indeed, the best argument for dismissal of the complaint is the complaint itself.

The complaint contains numerous other allegations regarding non-parties. Paragraph 8, which appears in a section of the complaint entitled "The Parties and Other Relevant Entities," is an example. Paragraph 8 includes an allegation about someone named "Berman" who acted as a director, employee, and agent of "BKR." Neither Berman nor BKR are defined or adequately identified in the complaint. Neither Berman nor BKR are defendants.

Paragraph 12 is the first allegation under the "General Allegations" portion of the complaint. Paragraph 12 alleges that "Berman" was licensed to practice law in the State of Florida and was actively engaged in the same. Again, Berman is not a defendant in this action and is not identified or defined anywhere in the complaint.[3]

Paragraphs 19 and 20 allege that another non-party to the action, Frank Amodeo ("Amodeo"), retained Beyer and BIR in connection with something called the Sunshine Companies Plan. Paragraph 20 alleges that Beyer "worked extensively in providing advice and counsel relevant to the Sunshine Companies Plan." However, this paragraph fails to allege the nature or subject matter of the alleged "advice and counsel." The paragraph is also deficient in that it refers to the "Sunshine Companies Plan," which is only broadly and generically described in paragraph 17; the lack of any explanation of the "Sunshine Companies Plan" underscores the lack of any explanation of the alleged :advice and counsel" given about the so-called plan.

Paragraph 22 alleges "Beyer and BIR advised that the Sunshine Companies Plan, and the actions taken thereunder, complied with all local, state, and federal laws." This

---

[3] The complaint contains multiple references to Berman. This, like many other defects in the complaint, is obviously the result of careless copying and pasting from a complaint in some other action or actions.

6

allegation is flawed in a number of respects. First, the allegation does not state to whom this advice was given or how it was rendered (oral, written, etc.). Second, the allegation of advice that "the Sunshine Companies Plan, and the actions taken thereunder complied with all local, state, and federal laws" is hopelessly vague and ambiguous. What are the "actions taken thereunder" that were presumably the subject of the advice? What are the local, state, and federal laws on which the advice was given?

Paragraph 23 provides an allegation that Amodeo received legal and tax advice from "various professionals." The paragraph fails to identify these various professionals and fails to allege whether Beyer was one of them. Paragraph 24 provides no further details and simply states that "extensive legal and written legal opinions were provided by professionals retained by Amodeo, including Beyer and BIR, to validate this legal opinion." Allegations such as this, lumping the Defendants and non-parties together, appear throughout the complaint.

The first allegation regarding the actual plaintiff in this action, MVI, appears in paragraph 29. Paragraph 29 states that "contemporaneous with this plan, a company called Stellar Industries, Inc., was purchased, and subsequently renamed Mirabilis Ventures, Inc. ("MVI")." The allegation does not state who or what purchased MVI.

To confuse matters further, paragraph 30 then alleges that "MVI and AEM were *created* to help reorganize and preserve the Professional Employer Organization ("PEO") assets of Presidion Solutions, Inc. ("PSI"), a subsidiary of Presidion Corporation . . . ." Paragraph 30 then introduces yet another non-party by alleging that "Mirabilis and AEM were tasked with this job by Frank Amodeo and AQMI, a consulting organization hired by Presidion to resolve Presidion's outstanding problems, including mounting payroll tax

7

liabilities." Paragraphs 29 and 30 are inconsistent in that one allegation states that an unnamed party purchased MVI and the next allegations suggest that MVI and AEM (whatever AEM might be) were created for a particular purpose by Amodeo and AQMI.

Paragraph 32 introduces *yet another* unidentified individual by alleging that "Mirabilis purchased all shares of common stock issued to *Burcham*, the then chairman of Presidion . . . ." The paragraph does not allege what common stock was purchased or what that purchase has to do with any claim against Saxon Gilmore or Beyer.

Paragraph 33 makes further allegations about non-parties to this action by alleging that "Amodeo and AQMI successfully completed the Sunshine Companies Plan in or about April 2005."

Paragraph 34 is a classic example of the inappropriate group allegations made in this complaint. That paragraph refers to "advice provided by various professionals retained by MVI, including Defendants, Berman, BKR, Riguera and Wildermuth . . . ." Again, there is no definition or identification of any kind for "Riguera and Wildermuth," who appear first in this paragraph and then no more.

Paragraph 35 introduces still another non-party by alleging that "MVI was initially capitalized by *Titanium* and AQMI, companies owned solely by Amodeo." Again, there is no definition or explanation regarding Titanium or how this matter conceivably relates to any claim against Saxon Gilmore and Beyer. Paragraph 37 alleges that Amodeo took certain actions based "on tax and legal advice provided by professionals including Defendants BIR, Saxon Gilmore and Beyer . . . ." Paragraph 38 vaguely alleges that "Beyer and Saxon Gilmore advised that the PBS Plan, and the actions taken thereunder, complied with all local, state, and federal laws." This

8

allegation is fundamentally flawed. The allegation does not state to whom the alleged advice was provided, although, like much of the complaint, it suggests that advice was provided to Amodeo. The allegation does not state whether the advice was provided orally or in writing. The allegation that "the actions taken thereunder, complied with all local, state, and federal laws" is again hopelessly vague, ambiguous, and overly broad and provides no notice of what the actual claim might be.

Similarly, paragraph 39 alleges that "Beyer was actively involved in providing counsel relevant to, and directly participating in, the development and implementation of the Sunshine Companies Plan and PBS Plan . . . ." Again, this paragraph fails to allege to whom the advice was allegedly provided and, because of the allegations regarding multiple parties, it is impossible to know.

Paragraph 41 introduces another new non-party identified only as "WEM."

Paragraph 52 both introduces another new non-party, "Rachlin," and refers to a meeting not previously described or otherwise identified (no doubt another product of copying from another pleading). That paragraph alleges "During this two (2) day development of the PBS Plan, it was expressly discussed between Amodeo, Defendants, Rachlin, and various other professionals . . . ." There are no previous allegations regarding either Rachlin or the "two (2) day development" of any plan.

The complaint goes on and on like this, alleging a confusing series of transactions involving primarily non-parties to this action. Indeed, the complaint names the following non-parties who might or might not have received legal or tax advice. These non-parties are listed in the order in which they appear and are identified—in full—as they are in the complaint:

9

> MVI's subsidiaries
> AEM
> Frank Amodeo
> Presidion Corporation
> Sunshine Staff Leasing, Inc. a/k/a Presidion Solutions, I, Inc.
> Sunshine Companies, II, Inc.
> Sunshine Companies, III, Inc. a/k/a Presidion Solutions, IV, Inc.
> Sunshine Companies, IV, Inc. a/k/a Presidion Solutions, V, Inc.
> Wellington Capital Group, Inc.
> Presidion Solutions, Inc.
> Professional Benefits Solutions, Inc.
> Paradyme, Inc.
> Burcham
> Titanium
> AQMI
> WEM
> "others"
> Cuthill
> MVI's subsidiaries and related companies
> MVI's related entities

The complaint also names the following non-parties, who might or might not have provided legal or tax advice, again listed in the order and manner in which they appear in the complaint:

> Berman
> BKR
> "various professionals"
> "professionals retained by Amodeo"
> "various professionals retained by MVI"
> Riguera
> Wildermuth
> "professionals"
> Rachlin
> "various other professionals"
> Holtz

Most of the allegations regarding alleged advice involve non-parties. Indeed, almost all the allegations regarding alleged advice suggest that Amodeo, not the plaintiff, MVI, received the advice. Paragraph 55 is typical and alleges that "Defendants advised

10

Amodeo that the PBS Plan, and all actions in connection therewith, complied with all local, state, and federal laws."[4]

The complaint also contains specific allegations against Beyer that appear to be little more than attempts at character assassination. The allegations are false, but even taking them as true for this motion, they do not salvage this disastrous complaint. Paragraph 27 alleges that Beyer and BIR failed to inform Amodeo that Beyer left BIR because "Beyer had breached his fiduciary duties to clients by participating in self-dealing and entering into transactions in which Beyer received a direct economic benefit... ." This allegation is patently false, but even taken as true, it alleges nothing relevant to a claim by MVI for legal malpractice. Moreover, the "victim" of this alleged failure to inform is Amodeo, not the plaintiff in this action, MVI.

MVI continues its baseless attack on Beyer in paragraph 65, alleging that Beyer was the "direct beneficiary of significant [funds] flowing from the Sunshine Companies Plan and PBS Plan and the resulting unpaid "trust fund" taxes of PSI, PBS, and Paradyme... ." To the extent this alleges damages incurred by anyone, those damages were incurred by PSI, PBS, or Paradyme, not the plaintiff in this action, MVI.

However, in paragraphs 65(a) and 65(b), MVI then contradicts the preceding allegation of "direct" benefits by alleging, at most, clearly indirect benefits. According to 65(a), Beyer became an officer and employee of MVI and MVI received $72,726,446 from PSI and Amodeo. Paragraph 65(b) then alleges that "Beyer received approximately

---

[4] The complaint makes clear that the main player in all the alleged transactions is Amodeo. It is a matter of public record that Amodeo has pled guilty to felony crimes involving the failure to withhold payroll taxes, acknowledged that he knew what he was doing was wrong, and acknowledged that he received advice that he should not do what he did. While those undisputed facts are not pertinent to the motion to dismiss, they are certainly pertinent to MVI's counsel's failure to honor their obligations under Rule 9011.

11

$9,643,674.19 from PSI and Amodeo, toward projects in which he had *a potential direct economic benefit."* Whatever those allegations are intended to convey, they do not allege any "direct" benefit to Beyer and, more importantly for purposes of this motion, do not allege any damage to the plaintiff, MVI.

### THE GENERAL ALLEGATIONS FAIL TO ALLEGE LEGAL MALPRACTICE

Construed most charitably, the complaint appears to allege that Defendants and/or other "various professionals" failed to advise MVI and/or others regarding obligations to collect and pay payroll taxes. However, the complaint fails to state a claim because it fails to allege the following, most basic elements:

1. The complaint fails to allege that MVI retained Saxon Gilmore and Beyer (or BIR) to render advice regarding payroll taxes. Indeed, the complaint appears to allege that any advice given was given solely to non-parties to this litigation.

2. The complaint fails to allege that Beyer and Saxon Gilmore (or BIR) provided MVI with erroneous advice regarding payroll taxes.

3. The complaint fails to allege that MVI has incurred any liability of any kind. On this point, the complaint appears intentionally vague. It is simply impossible to tell which person or entity—if any—has actually incurred some liability that it would not otherwise have had but for alleged bad legal advice. Instead, the complaint refers to potential liabilities to non-parties. For example, paragraph 66 alleges:

> In or about September 2006, the Internal Revenue Service and United States Attorney's Office for the Middle District of Florida begin investigating Amodeo, Presidion, PSI, and others for potential

12

civil and criminal liability arising from the alleged evasion of payment of taxes in connection with the Sunshine Companies Plan and PBS Plan.

This paragraph alleges no damage on behalf of the Plaintiff in this action, MVI.

Careful review of the complaint reveals that the general allegations in paragraphs 1 through 67, which form the basis of each of the following five counts, are a muddled mishmash of confusing and contradictory allegations mostly relating to non-parties to this action. These allegations fall far short of providing fair notice to Saxon Gilmore and Beyer (or BIR) of any potential claim against them on behalf of the Plaintiff in this action, MVI. Because the five separate counts of the complaint all rest on the sufficiency of alleging an attorney-client relationship and legal malpractice, all five counts fail to state a claim.

### FLAWS WITH SPECIFIC COUNTS

Counts I through V all depend on the sufficient allegation of an attorney-client relationship. Because the allegations in paragraphs 1 through 67 fail to do so, each of Counts I through V fail to state a claim of any sort. However, the particular counts have other flaws as well.

**Counts I, II, III, IV, and V Seek Damages Incurred By Non-parties.** Counts I, II, III, and IV all specifically allege that "MVI, its subsidiaries and related companies have suffered damages in excess of $200,000,000.00 . . . ." Count V alleges the breach of a duty to "MVI, its subsidiaries and related companies." Each count incorporates all the prior allegations regarding alleged harm suffered by "subsidiaries and related companies." However, these unidentified "subsidiaries and related companies" are not

13

plaintiffs in this action and MVI has no standing to assert claims on their respective behalfs.

In *American International Group, Inc., v. Cornerstone Business, Inc.*, 872 So. 2d 333 (Fla. 2d DCA 2004), the court recognized the basic principle of corporate law that a corporation and its subsidiaries are separate and distinct legal entities. The court explained:

> Furthermore, even though National Union is a wholly-owned subsidiary of AIG, this does not make the two corporations interchangeable for purposes of bringing or defending a lawsuit. **A parent corporation and its wholly-owned subsidiary are separate and distinct legal entities.** *Gladding Corp. v. Register*, 293 So.2d 729, 732 (Fla. 3d DCA 1974). As a separate legal entity, a parent corporation is not liable for torts committed by its subsidiary and cannot exercise the rights of its subsidiary. *Unijax, Inc. v. Factory Ins. Ass'n*, 328 So.2d 448, 453-54 (Fla. 1st DCA 1976).

872 So. 2d at 336.

The notion that a corporation and its subsidiaries are separate and distinct legal entities is not new or novel. Nor is the accompanying principle that a corporation has no standing to assert claims for damages to a subsidiary. In *Bingham v. Zolt*, 66 F. 3d 553 (2d Cir. 1995), the court explained "The general principle [is] that a shareholder cannot sue in his individual capacity to redress wrongs inflicted upon a corporation in which he holds stock" 66 F. 3d at 561. A subsidiary of MVI is simply a corporation in which MVI owns stock, maybe even all of the stock. As a fundamental proposition of black letter corporate law, a shareholder does not have standing to assert claims for damage to a corporation in which the shareholder owns an interest. *See Checkers Drive-In Restaurants, Inc. v. Tampa Checkmate Food Services, Inc.*, 805 So. 2d 941 (Fla. 2d DCA 2001); *Alario v. Miller*, 354 So. 2d 925 (Fla. 2d DCA 1978). It makes no difference if the shareholder is also a corporation and owns all the stock in the injured corporation.

14

The fact that one corporation owns all the stock of a subsidiary company does not erase the subsidiary's legal identity. See *Gladding Corp. v. Register*, 293 So.2d 729 at 732 (Fla. 3rd DCA 1974).

**Counts III, IV, and V Are Brought By A Non-Party.** Counts III, IV, and V, are alleged on behalf of "Cuthill." The name Cuthill first appears in paragraph 78 of Count III. Cuthill is not defined or identified. Nonetheless, Counts III, IV, and V, are brought on behalf of Cuthill. Cuthill makes the allegations and Cuthill demands judgment. Because "Cuthill" is not a party to this action, these counts fail to state a claim upon which relief can be granted.

**Count III Fails To Comply With Rule 9(b).** Count III purports to be a claim for negligent misrepresentation. However, Count III fails to comply with the requirements of Rule 9(b), *Federal Rules of Civil Procedure*, which requires that claims for fraud be pled with particularity. Pursuant to Rule 7009, *Federal Rules of Bankruptcy Procedure*, Rule 9(b) applies to this adversary proceeding. An action for negligent misrepresentation sounds in fraud rather than negligence. See, e.g. *Advisor's Capital Investments, Inc. v. Cumberland Casualty & Surety Co.*, No. 8:05-cv-404-T-23MAP, 2007 W.L. 220189, at *10 (M.D. Fla. Jan. 26, 2007) (citing *Souran v. Travelers Ins. Co.*, 982 F.2d 1497 (11th Cir. 1993)). As such, Rule 9(b)'s heightened pleading requirements apply to actions for negligent misrepresentation. *Id.* (citing *Harrison Enterprises, Inc. v. Moran*, No. 97-4362-CIV, 1999 W.L. 1211753, at *3 (S.D. Fla. Aug. 30, 1999) (recognizing that under Florida law "an action for negligent misrepresentation sounds in fraud rather than negligence," and, therefore, the pleading requirements of Rule 9(b) apply)).

The complaint falls woefully short of meeting these requirements. Rule 9(b) requires that in any case alleging fraud that "the circumstances constituting fraud or mistake shall be stated with particularity." The purpose of this rule is to inform a party charged with fraudulent behavior of the exact words or actions that constitute its alleged misconduct. *Durham v. Bus. Mgmt. Assoc.*, 847 F.2d 1505, 1511 (11th Cir. 1988); *see also United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (under Rule 9(b), the circumstances of fraud must be stated with particularity to protect defendants "against spurious charges of immoral and fraudulent behavior" by requiring a plaintiff to notify the defendant of the "precise misconduct" purportedly forming the basis of the fraud claim).

Rule 9(b) requires that a plaintiff allege "(1) precisely what statements were made and what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, (3) the contents of such statements and the manner in which they misled the plaintiff and (4) what the defendant obtained as a consequent of the fraud." *United States ex rel. Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *see also Durham*, 847 F.2d at 1511.

Case law is clear that conclusory allegations without a description of the fraudulent conduct do not satisfy the requirements of Rule 9(b). *See United States v. Magellan Health Serv., Inc.*, 74 F.Supp. 2d 1201, 1215 (M.D. Fla. 1999). Allegations must include **specific** facts supporting a strong inference of fraud. *Id.* at 1216. To sustain claims for fraud, a plaintiff must provide the **specific** names of the individuals involved in the fraud and should provide details regarding the time and place of the alleged fraud.

16

See *id.* and *Ziemba*, 256 F.3d at 1202 (explaining the requirement that plaintiff show to whom, when and where statements or omissions were made as well as what was obtained as a consequence of the fraud). In this case, for all the reasons previously discussed, the confusing, vague, and non specific allegations of the complaint do not even remotely approach the requirements of Rule 9(b).

**Count V Fails To Allege The Elements Of A Claim For Negligent Supervision.** Count V purports to be a claim for Saxon Gilmore's (and BIR's) negligent supervision of Beyer. However, the count fails to allege any of the elements of such a claim. As explained in *Department of Environmental Protection v. Hardy*, 907 So.2d 655, (Fla. 5th DCA 2005), a claim for negligent supervision requires the following:

> Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment. *Garcia v. Duffy*, 492 So.2d 435, 438-39 (Fla. 2d DCA 1986). The plaintiff must allege facts sufficient to show that once an employer received actual or constructive notice of problems with an employee's fitness, it was unreasonable for the employer not to investigate or take corrective action. *Id.* at 441. The employer's liability for negligent supervision is not, however, unlimited; not only must the employer owe a duty to the plaintiff, but the breach of that duty must be the proximate cause of the plaintiff's harm. *Watson v. City of Hialeah*, 552 So.2d 1146, 1149 (Fla. 3d DCA 1989). There must be a connection and foreseeability between the employee's employment history and the current tort committed by the employee. *Dickinson v. Gonzalez*, 839 So.2d 709, 713-14 (Fla. 3d DCA 2003) (citing *Island City Flying Serv. v. Gen. Elec. Credit Corp.*, 585 So.2d 274, 277 (Fla.1991)).

Count V includes none of these elements, but merely asserts as conclusions that Saxon Gilmore (and BIR) had a duty to supervise Beyer and breached that duty. Count V also alleges that Saxon Gilmore breached its duty to supervise Beyer by "failing to supervise the trust account of MVI and its related entities". Of course, the "related entities" are

unidentified non-parties. Moreover, there is no allegation anywhere in the complaint that Saxon Gilmore ever had a trust account for MVI or that MVI suffered damage as a result of any failure to properly "supervise" the trust account.

### CONCLUSION

The complaint in this action is unusually confusing and unorganized. It is obviously a cut and paste product, and evinces little thought or actual analysis. This type of work product should never be acceptable, but it is all the more troubling in this case because the complaint alleges serious misconduct against an established and respected attorney. Beyer has been a member of the bar for 17 years, is A-V rated by Martindale-Hubbell, and has never been the subject of any civil, criminal, or ethical proceeding. The allegations against Beyer are false; there is no reliable basis for any good faith belief that they are true. However, even taken as true, the allegations of the complaint fail to state any cause of action and the complaint should be dismissed.

_____
JOSEPH H. VARNER, III, ESQUIRE
Florida Bar No. 394904
KNOPIKVARNERMOORE
One Harbour Place, Suite 800
777 S. Harbour Island Blvd.
Tampa, FL 33602
Telephone: (813) 221-3131
Facsimile: (813) 221-3199
E-mail: jvarner@kvmlaw.com
*Counsel for Defendants, Saxon Gilmore, Carraway, Gibbons, Lash & Wilcox, P.A. and Hans C. Beyer*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been provided via facsimile and U.S. Mail to: **Elizabeth A. Green, Esquire and Jimmy D.**

18

Parrish, Esquire, Latham Shuker Eden & Beaudine, LLP, Post Office Box 3353, Orlando, Florida 32802, *attorneys for Mirabilis Ventures, Inc.*; **David B. King, Esquire and Thomas A. Zehnder, Esquire**, King Blackwell Downs & Zehnder, P.A., 25 East Pine Street, Orlando, Florida 32801, *attorneys for Buchanan, Ingersoll & Rooney, P.L.*, on January 30, 2009.

JOSEPH H. VARNER, III, ESQUIRE

19