## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**In Re: MIRABILIS VENTURES, INC.**
**Bankruptcy Case No. 6:08-bk-04327-KSJ**
**Adversary Case No. 6:08-ap-00227-KSJ**

**MIRABILIS VENTURES, INC.,**

          **Plaintiff,**

**-vs-**                              **Case No. 6:09-cv-1974-Orl-31DAB**

**BUCHANAN, INGERSOLL, & ROONEY,**
**P.L., SAXON, GILMORE, CARRAWAY,**
**GIBBONS, LASH & WILCOX, P. A.; and**
**HANS C. BEYER,**

          **Defendants.**

### SECOND AMENDED COMPLAINT

Plaintiff, Mirabilis Ventures, Inc., ("MVI" or "Mirabilis"), by and through its undersigned counsel, hereby files its Second Amended Complaint, and sues Defendants, SAXON, GILMORE, CARRAWAY, GIBBONS, LASH & WILCOX, P. A. ("Saxon Gilmore") and HANS C. BEYER ("Beyer"), (collectively, "Defendants"), and in support states as follows:

### I.  NATURE OF THE ACTION

This is an action for compensatory damages against the Defendants stemming from

EXHIBIT 1
1

their involvement and representation of MVI and its subsidiaries including but not limited to AEM. Beyer, as an attorney/agent of Saxon Gilmore, provided legal advice and otherwise consulted Mirabilis regarding the legality and treatment of the acquisition of certain assets that were to be paid to the IRS as payroll taxes, through bankruptcy filings and other restructuring. Saxon Gilmore failed to properly supervise the activity of Beyer, including but not limited to, a conflict of interest that occurred when Beyer and Saxon Gilmore began drafting bankruptcy documents on behalf of other business entities, of which Mirabilis was a creditor. Due to Beyer and Saxon Gilmore's actions and inactions, Mirabilis is seeking damages.

## II. <u>JURISDICTION AND VENUE</u>

1.      The United States Bankruptcy Court, Middle District, Orlando Division, had original subject matter jurisdiction over the original adversary proceedings pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157 because it arose in and was related to a case under Title 11 of the United States Code.

2.      By Order entered in the United States District Court for the Middle District of Florida granting Plaintiff and Defendant's Stipulated Motion to Withdraw Reference And Transfer Action the adversary proceeding filed in the United States Bankruptcy Court, Middle District, Orlando Division, Case No. 6:08-ap-00227-KSJ was transferred to the District Court for the Middle District of Florida for all future proceedings.

3.      Defendants are subject to the personal jurisdiction of this Court because many of the tortious acts alleged herein occurred in the State of Florida.   Furthermore,

Defendants are also subject to personal jurisdiction pursuant to 18 U.S.C. § 1965(d). Defendant, Saxon Gilmore, is a Florida professional association with its principal place of business in Hillsborough County, Florida.

4.       Venue is proper in this district pursuant to 28 U.S.C. §1409, 28 U.S.C. 1391(b), and 18 U.S.C. §1965(c).

5.       This is a non-core proceeding as Plaintiff's cause of action is found in personal injury tort law, pursuant to 28 U.S.C. §157(b)(5).

## III.  THE PARTIES AND OTHER RELEVANT ENTITIES

6.       Plaintiff, MVI, is a Nevada corporation with its principal place of business located at 341 N. Maitland Ave., Suite 210 in Maitland, Florida.

7.       Defendant, Saxon Gilmore, is a full service law firm located in Hillsborough County, Florida and doing business throughout Florida.

8.       Defendant, Beyer, is a resident of the State of Florida and an attorney licensed to practice law in the State of Florida and at all times material hereto was an agent of Saxon Gilmore.  Beyer's acts, representations, and omissions alleged herein were made within the course and scope of his agency with Saxon Gilmore.  Saxon Gilmore is liable for all acts, representations, and omissions made by Beyer in connection with its representation of MVI, its related companies and its subsidiaries, including AEM, when Beyer was employed by that law firm.

9.       All conditions precedent to the bringing of this action have occurred, or their

3

performance has been waived by Defendants.

## IV.  THE SUNSHINE COMPANIES

10.     In 2004, Presidion Corporation ("Presidion") entered into a consulting

agreement with AQMI Strategy Corporation ("AQMI") to provide consulting work regarding

the divestiture and liquidation of certain wholly owned subsidiaries of Presidion.

11.     The Presidion subsidiaries are more commonly known as The Sunshine

Companies ("Sunshine Companies").[1]

12.     The deal was an arms-length transaction and both parties were represented by

counsel.

13.     During this time, Presidion and the Sunshine Companies had a large amount

of outstanding payroll tax liabilities.

14.     AQMI's engagement and proposed resolution centered on the

deconsolidation, divestiture and liquidation of the Sunshine Companies.

15.     AQMI's strategy regarding liquidations involved using the funds resulting

from the divestiture to pay creditors, including the Internal Revenue Service ("IRS").

16.     The proposed strategy allowed Presidion to deconsolidate its financials and

separate itself from the excessive liabilities associated with its subsidiaries, allowing it to

continue to conduct business as a going concern ("Sunshine Companies Plan").

## V.  THE PRESIDION REORGANIZATION PLAN AND<br>MIRABILIS VENTURES, INC.

17.     On October 28, 2004, the entity known as Stellar Industries, Inc. changed its

---

[1] Consisting of (1) Sunshine Staff Leasing, Inc.; (2) Sunshine Companies II, Inc.; (3) Sunshine Companies III, Inc.; and (4) Sunshine Companies IV, Inc.

name to Mirabilis Ventures, Inc.  At its inception, Mirabilis had only one shareholder (Yaniv Amar) and only one director (Gailie Hartman).

18.     Mirabilis was a private equity company, which acquired companies that had a strategic fit into its unique business model.  Acquired companies either fit into the four primary specialization categories – real estate, construction, chain store development, and human resources – or they provided necessary goods and services to the core companies.

19.     In May, 2005 AQMI was approached again by Presidion regarding further problems with Presidion's remaining professional employer organization ("PEO") operations, particularly Presidion Solutions, Inc. ("PSI") and its wholly-owned PEO operating subsidiaries, Professional Benefit Solutions, Inc. a/k/a Presidion Solutions, VII, Inc. ("PBS") and Paradyme, Inc. ("Paradyme") a/k/a Presidion Solutions, VI, Inc.

20.     The problems stemmed from the threatened cancellation of worker's compensation insurance coverage, shortfall of working capital for PEO operations, and a tax liability which had increased to over Three Million Dollars ($3,000,000.00) since January, 2005.

21.     Drawing from what appeared to be the success of the previous Sunshine Companies Plan, AQMI proposed a plan of reorganization designed to restore, preserve and maximize the inherent value of Presidion's assets ("PBS Plan").

22.     The PBS plan would utilize Mirabilis, and specifically, AEM, to acquire and rehabilitate the Presidion PEO Book of Business.

23.     A key element of the reorganization plan called for the interim nonpayment of federal employment taxes by PBS.

24.     The collected taxes would then be truthfully reported but not remitted.

25.     The collected, yet unpaid, taxes would then be used to fund the PEO operations, particularly paying workers' compensation insurance premiums, reorganize, compensate advisors and secured creditors.

26.     This would allow the business to continue until it was restored to a position wherein it could pay all of its outstanding liabilities, including the outstanding tax liabilities.

27.     In order for the PBS Plan to be accomplished, the Sunshine Plan would also have to be finalized, drawing the two plans together.

## VI.  RETENTION AND INVOLVEMENT OF HANS C. BEYER BY MIRABILIS VENTURES, INC. AND ITS SUBSIDIARIES AND THE APPROVAL OF THE PBS PLAN

28.     In 2004, Beyer was originally retained by AQMI to give legal advice regarding the legality of the Sunshine Companies Plan and to assist with the tax treatment and classification of the same in all bankruptcy related matters.

29.     Upon information and belief, and at all times mentioned herein, Beyer was employed by Saxon Gilmore during the period of February, 2005 through March, 2009.

30.     In early 2005, drawing upon his knowledge of the common issues of fact and law from the Sunshine Companies Plan among other represented qualifications, Beyer began consulting or otherwise advising Mirabilis and its subsidiaries.

31.     During this time, Beyer began providing legal advice to Mirabilis and its subsidiaries while Beyer was employed by Saxon Gilmore.  A true and correct copy of a January 4, 2005 memorandum prospectively detailing some of Beyer's preliminary tasks and

duties under the PBS Plan and Sunshine Plan is attached hereto as Exhibit A.

32.     During this time, Beyer became so involved with the PBS Plan, that in December 2005, Beyer became an employee of Common Paymaster Corp., a MVI subsidiary, as well as a director of several other subsidiaries of MVI.  Furthermore, while simultaneously working as an attorney for Saxon Gilmore, Beyer began consulting or otherwise advising Mirabilis and its subsidiaries regarding the PBS Plan and the implementation of the Sunshine Companies Plan.

33.     In fact, Beyer completed drafts of bankruptcy petition schedules which acknowledged the increasing tax liability of PBS and Paradyme in advance of a potential decision to file bankruptcy on behalf of PSI as part of the PBS Plan.  A true and correct copy of a draft Chapter 11 Petition prepared by Beyer for PSI is annexed hereto as Exhibit B.

34.     Beyer, while employed by Mirabilis and Saxon Gilmore, in the Chapter 11 Petition that he drafted on behalf of PSI (Exhibit B), listed Mirabilis as a prospective creditor, a clear a conflict of interest.

35.     Beyer knew or should have known that Mirabilis relied on these bankruptcy petitions when determining whether the PBS plan should be approved.

36.     In March, 2006, Beyer compiled all transactional documents in connection with the PBS Plan and spoke with other Mirabilis officers, employees and directors regarding the PBS Plan and its legality.  A true and correct copy of the correspondence regarding the same is attached hereto as Exhibit C.

37.     Beyer was especially interested in the success of the PBS Plan and Sunshine Companies Plan because Beyer had a vested interest in its approval.

38.     In fact, for every deal that Beyer was able to bring to the table for Mirabilis, Beyer would receive a finder's fee.

39.     Furthermore, in furtherance of the PBS Plan, Beyer referred Saxon Gilmore, and thus to himself directly, matters for Saxon Gilmore to work on regarding among - other things, insolvency and plans of reorganization to assist with the Plan.

40.     In addition, Beyer, in representing Mirabilis, attended meetings with the IRS during the term of his employment at Saxon Gilmore, while serving on the Global Development Committee of the Mirabilis Board of Directors and with the various Mirabilis subsidiaries regarding the PBS Plan.

41.   After an April, 2006 meeting with IRS representatives, Beyer sent a draft version of an offer of compromise for taxpayers regarding the PBS Plan and Sunshine Companies Plan which was sent from Beyer to Shane Williams and others, is attached hereto as Exhibit D.

42.     In the Spring of 2006 AEM, Inc., a MVI subsidiary, purchased the PEO businesses of PSI, but rescinded the sale within the month of acquisition.  AEM began managing the PSI PEO businesses for PSI.

43.     AEM and Mirabilis took over the PEO book of business with the belief that their actions were legal and proper based on the representations of Beyer and other professionals.

44.     Through 2005 and 2006, Saxon Gilmore invoiced and Mirabilis paid over Two Hundred and Seventy Thousand Dollars ($270,000.00) for legal fees.  A true and correct copy of an accounting statement evidencing payments made by Mirabilis to Saxon

Gilmore is attached hereto as Exhibit E.

## V. THE UNITED STATES OF AMERICA'S CIVIL FORFEITURE ACTION AGAINST MIRABILIS

45.　　In late November 2006, Mirabilis executives were notified that a federal grand jury investigation had commenced with regard to the operations of Presidion and Mirabilis.

46.　　A week later, Mirabilis' auditor of nearly eighteen months raised a concern about the potential illegality of failing to pay the outstanding payroll taxes.

47.　　Subsequent to this time, the United States of America filed an *in rem* civil forfeiture action against the assets of Mirabilis.

48.　　By January, 2007 Mirabilis and AEM had laid off all non-key employees, including a number of officers and managers, and had closed a majority of its businesses.

49.　　This allowed Mirabilis to sustain operations and remain current with its taxes.

50.　　Unfortunately, news of the federal grand jury investigation and nonpayment of payroll taxes leaked to the press, resulting in several negative articles, which decimated the PEO book of business and destroyed the operations of Mirabilis.

51.　　On or about May 1, 2007, Mirabilis was forced to liquidate its operations and sold the PEO book of business to O2HR, LLC for approximately Two and One Half Million Dollars ($2,500,000.00).

52.　　On May 27, 2008, the Debtor filed its voluntary petition for relief with the Middle District of Florida Bankruptcy Court (the "Petition Date")

53.　　The Chapter 11 filing came primarily as a result of an in rem civil forfeiture action filed by the United States of America against certain assets of Mirabilis, which

effectively caused Mirabilis to be unable to pursue claims and litigation against various third parties.

54.     In an effort to preserve equity for all of its creditors and other potential creditors, Mirabilis deemed a Chapter 11 liquidation plan as in the best interest of all its creditors.

## VI.  COUNT I — NEGLIGENCE (ALL DEFENDANTS)

55.     Mirabilis re-alleges and re-states paragraphs 1 through 54 as if fully set forth herein.

56.     This is a cause of action against Defendants for professional negligence.

57.     At all times material hereto, an attorney-client relationship existed between Mirabilis and the Defendants.

58.     By accepting employment to render legal advice to MVI, Defendants had a duty to use such skill, prudence, and diligence as other attorneys of ordinary skill and capacity commonly possesses and exercises in the performance of the tasks they undertake.

59.     Defendants owed a duty to MVI, its subsidiaries and related companies to exercise reasonable care, skill, and diligence in order to ensure that all of the information obtained and supplied to MVI, in connection with their legal representation, was true and accurate.

60.     As a result of their legal representation of MVI, its subsidiaries and related companies, Defendants knew or should have known that MVI and its entities were relying on their work product, representations, and statements in deciding how to operate and conduct their businesses.

61.     Defendants breached their aforementioned duties and deviated from the applicable standards of professional care and violated Florida's Rules of Professional Conduct by virtue of their conduct described hereinabove, including but not limited to, Defendants failure to advise MVI, its subsidiaries and related companies that the Sunshine Companies Plan, PBS Plan and MVI's operations could result in criminal and civil liability for MVI, its subsidiaries and related companies.

62.     As a direct and proximate result of the professional negligence of the Defendants' MVI, its subsidiaries and related companies have suffered damage to their business, property, including an allowed claim in bankruptcy against it in the sum of Two Hundred Million Dollars ($200,000,000), adverse tax consequences, including interest and penalties, incurred legal and expert fees and costs, and accordingly seek compensatory damages.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against Defendants: (1) awarding the amount of principal damages incurred by MVI due to Defendants' actions; (2) the forfeiture and disgorgement of all payments and benefits received by the Defendants from MVI; (3) an accounting; (4) awarding prejudgment and post-judgment interest at the maximum rate allowed by law; (5) awarding court costs; and (6) awarding any other relief this Court deems appropriate.

## VII. COUNT II— BREACH OF FIDUCIARY DUTY
### (ALL DEFENDANTS)

63.     MVI re-alleges and re-states paragraphs 1 through 62 as if fully set forth herein.

64.     At all times material hereto, a fiduciary relationship existed between MVI, its subsidiaries and related companies and Defendants, particularly, an attorney-client relationship existed between MVI, its subsidiaries and related companies and Defendants.

65.     Defendants each breached their aforementioned fiduciary duties to MVI, its subsidiaries and related companies and deviated from the applicable standards of professional care, by virtue of their conduct described hereinabove, including but not limited to, Defendants failure to advise MVI, its subsidiaries and related companies that the Sunshine Companies Plan, PBS Plan and MVI's operations could result in criminal and civil liability for MVI, its subsidiaries and related companies.

66.     As a direct and proximate result of the Defendants' breach of their fiduciary duties, MVI, its subsidiaries and related companies have suffered damage to their business, property, including an allowed claim in bankruptcy against it in the sum of Two Hundred Million Dollars ($200,000,000), adverse tax consequences, including interest and penalties, incurred legal and expert fees and costs, and accordingly seek compensatory damages.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against Defendants: (1) awarding the amount of principal damages incurred by MVI due to Defendants' actions; (2) the forfeiture and disgorgement of all payments and benefits received by the Defendants from MVI; (3) an accounting; (4)  awarding prejudgment and post-judgment interest at the maximum rate allowed by law; (5) awarding court costs; and (6) awarding any other relief this Court deems appropriate.

## VIII. <u>COUNT III— NEGLIGENT MISREPRESENTATION</u>
### <u>(ALL DEFENDANTS)</u>

67.     MVI re-alleges and re-states paragraphs 1 through 66 as if fully set forth herein.

68.     This is a cause of action against Defendants for negligent misrepresentation.

69.     Defendants knew, or should have known, that MVI, its subsidiaries and related companies were relying on the information supplied and representations and statements made by Defendants in connection with their legal representation of MVI's entities in deciding how to run and operate their businesses.

70.     Defendants owed MVI, its subsidiaries and related companies a duty of reasonable care, skill and diligence to ensure that all of the information supplied and representations and statements made to or on behalf of MVI and its related entities were true and representation and provide MVI and its related entities with true and accurate information in connection with their legal representation.

71.     Defendants breached their duty by making material negligent misrepresentations and omissions described above when in the exercise of reasonable care should have known facts or circumstances indicating that these negligent misrepresentations and omissions were materially misleading at the time they were made.

72.     As a direct and proximate result of the Defendants' negligence, MVI, its subsidiaries and related companies have suffered damage to their business, property, including an allowed claim in bankruptcy against it in the sum of Two Hundred Million

Dollars ($200,000,000), adverse tax consequences, including interest and penalties, incurred

legal and expert fees and costs, and accordingly seek compensatory damages.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against

Defendants: (1) awarding the amount of principal damages incurred by MVI due to

Defendants' actions; (2) awarding prejudgment and post-judgment interest at the maximum

rate allowed by law; (3) awarding court costs; and (4) awarding any other relief this Court

deems appropriate.

## X. COUNT IV— NEGLIGENT SUPERVISION (AGAINST SAXON GILMORE)

73.     MVI re-alleges and re-states paragraphs I through 72 as if fully set forth

herein.

74.     This is a cause of action against Saxon Gilmore for the negligent supervision

of Beyer.

75.     Saxon Gilmore owed MVI, its subsidiaries and related companies a duty to

use reasonable care in supervising the conduct and activities of Beyer in connection with

their representation of MVI, its subsidiaries and related companies.

76.     Saxon Gilmore breached its duty of reasonable care by failing to supervise

Beyer to ensure that his conduct and activities were not fraudulent or deceptive and that all of

his work product and representations on behalf of MVI were true and accurate and to prevent

any conflict of interest in drafting bankruptcy documents for companies in which Mirabilis

was a creditor,  the trust account of MVI and its related entities.

77.     As a direct and proximate result of Defendants' breach of their duty of

14

reasonable care, MVI, its subsidiaries and related companies have suffered damage to their business, property, including an allowed claim in bankruptcy against it in the sum of Two Hundred Million Dollars ($200,000,000), adverse tax consequences, including interest and penalties, incurred legal and expert fees and costs, and accordingly seek compensatory damages.

WHEREFORE, Plaintiff, Mirabilis Ventures, Inc., demands judgment against Defendants: (1) awarding the amount of principal damages incurred by MVI due to Defendants' actions; (2) the forfeiture and disgorgement of all payments and benefits received by the Defendants from MVI; (3) an accounting; (4)  awarding prejudgment and post-judgment interest at the maximum rate allowed by law; (5) awarding court costs; and (6) awarding any other relief this Court deems appropriate.

Respectfully submitted this 26th day of January, 2010.

/s/ Robert C. Widman_____
 Robert C. Widman, Esq.
Widmor48@mwk-law.com
Morris & Widman, P.A.
245 N. Tamiami Trail, Suite E
Venice, FL  34285
941-484-0646 (Tel)
941-496-8870 (Fax)
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished via U.S. Mail to Joseph H. Varner, III, Holland & Knight LLP, P.P. Box 1288, Tampa, Florida 33601-1288 on this _____day of January, 2010.


/s/Robert C. Widman_____
    Robert C. Widman, Esq.

## MEMORANDUM

**TO:** RICHARD BERMAN, ESQ.

**FROM:** FRANK AMODEO

**SUBJECT:** SUNSHINE COMPANIES

**DATE:** 1/4/2005

**PRIVILEGED TO:** LAURIE HOLTZ, MATTHEW DRUCKMAN, A. KENNETH LEVINE, SHARMILA KHANORKAR, MORRIS HOLLANDER, DAVID APPEL, HANS BEYER, ESQ., EDIE BROADHEAD, ESQ., CHARLES RAHN

### Sunshine Matter Timetable

I. Acquisition of Sunshine Companies - twelve midnight, Friday, December 31, 2004.

II. 
1. Meeting of shareholders and directors of Sunshine Companies Monday, January 3, 2005 in Orlando, Florida.

   - Elect new officers and directors
   - Authorize employment of professionals
   - Ratify Presidion/Wellington transactions

2. Meet with Rahn to plan logistics of obtaining and preserving Sunshine books and records.

III. 
1. Meeting with Hans Beyer, Chris O'Connor and Shane Williams on January 6, 2005 at Miami Gardens office to prepare bankruptcy schedules – emergency petition prepared and primed for filing.  Plus, first day motions and brief in support of "stay-expansion".

2. Richard Berman to contact U.S. Attorney's office to schedule a meeting with appropriate persons in Miami and Detroit for myself and Edie.

3. Jose Marrero to contact IRS: Criminal Investigation Division and inform them of change of ownership at Sunshine Cos. and change of control at Presidion and schedule meeting with myself and Edie.

4. Ken Levine to contact Florida Department of Insurance and notify them of Sunshine change of ownership and Presidion change of control; schedule meeting if needed.



EXHIBIT

A

010405

5. Matt Druckman, Sharmila Khanorkar, and RCH forensic team to plan schedule of reviewing all Sunshine transactions and corporate governance documents to comply with bankruptcy disclosure issues and identify avoidable conveyances.

6. David Appel to review Sunshine Tax Returns for accuracy and compliance - make recommendations.

7. Morris Hollander to review SEC filings by Presidion to insure accuracy, especially of Sunshine transactions.

8. Morris Hollander and Matt Druckman to review financial statements of Sunshine for issues and amendments.

IV.   Laurie/Richard, please select someone to contact IRS civil enforcement level who can get us to a high enough ranked individual to have a serious discussion about receiving an expeditious final assessment and can talk intelligently about the advantages of a confidential offer-in-compromise; mutually agreed upon as opposed to an imposed resolution in bankruptcy court. This meeting should be after CID and US Attorney, but otherwise in late January or early February.


Frank Amodeo
[Dictated but not reviewed]


Craig:

– the final payroll period for Sunshine, I assume, is going to be through 12/31/04. Confirm these will be included on the current year's W2, but only so long as the checks are issued by Friday; otherwise they will be included on either Paradigm or PBS for next year.

| From: | Hans Christian Beyer [hbeyer@wans.net] |
|---|---|
| Sent: | Tuesday, December 20, 2005 11:30 AM |
| To: | Tessah Ivey |
| Cc: | Karen Popplewell; Dana Schult |
| Subject: | Presidion Solutions Schedules and Statement of Financial Affairs |
| Importance: | High |

Greetings Frank.

Attached please find the revised schedules and statement of financial affairs prepared by Saxon Gilmore. As you can see, they are looking more like the real thing this time around. At least one issue remains, however. You have identified the following as subsidiaries of Presidion Solutions: ABS IV, Inc.; Presidion Solutions VII, Inc.; and Presidion Administrative Solutions, Inc. To properly account for these subsidiaries, their stock should be listed as equities owned by Presidion Solutions and separate bankruptcy filings should be made for each of the subsidiaries. After filing, they can be either administrative or substantively consolidated, depending upon the facts. I was not sure how you wanted to treat these entities vis-à-vis the Presidion filing, so at present they are not reflected in either the schedules or the statement of financial affairs. Please advise how you wish to proceed on this item and provide Karen with any other revisions which are required.

Best,

H.

P.S. I will be in Orlando this afternoon for the Troy meeting and Wednesday and Thursday, so we can discuss then if that is convenient.

++++++++++++++++++++++++++++++++++++++++++++++
Hans Christian Beyer
Nexia Strategies / Mirabilis Ventures
111 N. Orange Avenue, 20th Floor
Orlando, Florida 32801
Telephone: (813) 245-9300

The information contained in this e-mail message and any attachments is confidential and may be privileged. If you are not the intended recipient of this e-mail message, please erase all copies of this message and any attachments, destroy any hard copies of this message and any attachments, and advise the sender of your receipt of this message by return e-mail. Thank you.

-----Original Message-----
From: Rachel Brown [mailto:rbrown@SAXONGILMORE.COM]
Sent: Tuesday, December 20, 2005 11:20
To: Hans Beyer
Subject: Presidion Schedules-DRAFT
Importance: High

Per your request, please see attachment. It has also been saved as follows:

E: PRESIDION / FORMS / ....

Rachel Brown



EXHIBIT
B

4/15/2008

Legal Assistant to Hans C. Beyer, Esq.
  and Anthony A. Hayden, Esq.
Saxon, Gilmore, Carraway, Gibbons, Lash & Wilcox, P.A.
Attorneys and Counselors at Law
201 E. Kennedy Blvd., Suite 600
Tampa, FL  33602
phone 813.314.4539
fax 813.314.4555
rbrown@saxongilmore.com
www.saxongilmore.com

*********************************************************************

The information contained in this E-mail message is protected by the attorney-client and/or the attorney-work product privilege. It is
intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by E-mail. If the
person actually receiving this E-mail or any other reader of the E-mail is not the named recipient or the employee or agent responsible to
deliver it to the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you are not
an existing client of Saxon, Gilmore, Carraway, Gibbons, Lash & Wilcox, P.A. ("Saxon Gilmore"), do not construe anything in this E-mail to
make you a client unless it contains a specific statement to that effect and do not disclose anything to Saxon Gilmore in reply that you
expect it to hold in confidence. If you properly received this E-mail as a client, co-counsel or retained expert of Saxon Gilmore, you should
maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect
confidentiality. If you have received this communication in error, please immediately notify us via E-mail.

4/15/2008

122005.1

(Official Form 1) (10/05)

| United States Bankruptcy Court<br>Southern District of Florida | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Presidion Solutions, Inc., a Florida Corporation** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all)<br>**38-3547703** | Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all) |
| Street Address of Debtor (No. & Street, City, and State):<br>**1861 N. Federal Highway**<br>**Suite 158**<br>**Hollywood, FL**          ZIP Code **33020-2827** | Street Address of Joint Debtor (No. & Street, City, and State):          ZIP Code |
| County of Residence or of the Principal Place of Business:<br>**Broward** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): | Mailing Address of Joint Debtor (if different from street address): |
|                                              ZIP Code |                                              ZIP Code |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

| Type of Debtor (Form of Organization)<br>(Check one box) | Nature of Business<br>(Check all applicable boxes) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>■ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and provide the information requested below.)<br>State type of entity: | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Nonprofit Organization qualified under 15 U.S.C. § 501(c)(3) | ☐ Chapter 7     ■ Chapter 11     ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 9     ☐ Chapter 12     ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding<br>☐ Chapter 13 |

| | | Nature of Debts (Check one box)<br>☐ Consumer/Non-Business     ■ Business |
|---|---|---|

| Filing Fee (Check one box)<br>■ Full Filing Fee attached<br>☐ Filing Fee to be paid in installments (Applicable to individuals only) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br>☐ Filing Fee waiver requested (Applicable to chapter 7 individuals only) Must attach signed application for the court's consideration. See Official Form 3B. | Chapter 11 Debtors<br>Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>■ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts owed to non-insiders or affiliates are less than $2 million. |
|---|---|

**Statistical/Administrative Information**

■ Debtor estimates that funds will be available for distribution to unsecured creditors.

☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| 1-<br>49 | 50-<br>99 | 100-<br>199 | 200-<br>999 | 1000-<br>5,000 | 5001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 50,001-<br>100,000 | OVER<br>100,000 |
|---|---|---|---|---|---|---|---|---|---|
| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Assets

| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ |

Estimated Debts

| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ |

122005.1

(Official Form 1) (10/05)                                                                                    FORM B1, Page 2

| Voluntary Petition<br><br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**Presidion Solutions, Inc., a Florida Corporation** |
|---|---|

| Prior Bankruptcy Case Filed Within Last 8 Years (If more than one, attach additional sheet) | | |
|---|---|---|
| Location<br>Where Filed:  - None - | Case Number: | Date Filed: |

| Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br> - None - | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| Exhibit A<br><br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition. | Exhibit B<br>(To be completed if debtor is an individual whose debts are primarily consumer debts)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.<br>I further certify that I delivered to the debtor the notice required by §342(b) of the Bankruptcy Code.<br><br>X<br>   Signature of Attorney for Debtor(s)          Date |
|---|---|

| Exhibit C<br><br>Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?<br><br>☐ Yes, and Exhibit C is attached and made a part of this petition.<br><br>■ No | Certification Concerning Debt Counseling<br>by Individual/Joint Debtor(s)<br><br>☐ I/we have received approved budget and credit counseling during the 180-day period preceding the filing of this petition.<br><br>☐ I/we request a waiver of the requirement to obtain budget and credit counseling prior to filing based on exigent circumstances. (Must attach certification describing.) |
|---|---|

**Information Regarding the Debtor (Check the Applicable Boxes)**

Venue (Check any applicable box)

■   Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐   There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐   Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Statement by a Debtor Who Resides as a Tenant of Residential Property**
*Check all applicable boxes.*

☐   Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐   Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐   Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

122005.1

(Official Form 1) (10/05)

**Voluntary Petition**

*(This page must be completed and filed in every case)*

Name of Debtor(s):
Presidion Solutions, Inc., a Florida Corporation

FORM B1, Page 3

## Signatures

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by §342(b) of the Bankruptcy Code.

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

_____
Date

### Signature of Attorney

_____
Signature of Attorney for Debtor(s)
Hans C. Beyer 894087
Printed Name of Attorney for Debtor(s)
Saxon, Gilmore, Carraway,
Firm Name
Gibbons, Lash & Wilcox, P.A.
201 E. Kennedy Blvd., Suite 600
Tampa, FL 33602
_____
Address

813.314.4500  Fax: 813.314.4555
_____
Telephone Number

_____
Date

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

### Signature of a Foreign Representative

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by §1515 of title 11 are attached.

☐ Pursuant to §1511 of title 11, United States Code, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

### Signature of Non-Attorney Bankruptcy Petition Preparer

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19B is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social Security number (If the bankrutpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person,or partner whose social security number is provided above.

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.*

122005.1

j Form 4
(10/05)

# United States Bankruptcy Court
## Southern District of Florida

In re    Presidion Solutions, Inc., a Florida Corporation

                                 Debtor(s)

Case No. _____

Chapter    11

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1)<br><br>Name of creditor and complete mailing address including zip code | (2)<br><br>Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3)<br><br>Nature of claim (trade debt, bank loan, government contract, etc.) | (4)<br><br>Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5)<br><br>Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Amfinity Capital, LLC<br>655 Third Street<br>Suite 303<br>Beloit, WI 53511 | Amfinity Capital, LLC<br>655 Third Street<br>Suite 303<br>Beloit, WI 53511 | Blanket UCC | | 2,672,662.88<br><br>(10,000,000.00 secured) |
| Brookmeade Group, LLC<br>11916 Brookmeade Court<br>Glen Allen, VA 23059 | Brookmeade Group, LLC<br>11916 Brookmeade Court<br>Glen Allen, VA 23059 | Blanket UCC | | 500,000.00<br><br>(10,000,000.00 secured) |
| Lumberman Underwriters Association | Lumberman Underwriters Association | Workers' Compensation Indemnity | | 1,500,000.00 |
| Mirabilis Ventures, Inc.<br>111 N. Orange Avenue<br>Suite 2000<br>Orlando, FL 32801 | Mirabilis Ventures, Inc.<br>111 N. Orange Avenue<br>Suite 2000<br>Orlando, FL 32801 | Blanket UCC-1 | | 5,000,000.00<br><br>(10,000,000.00 secured) |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

122005.1

In re   Presidion Solutions, Inc., a Florida Corporation                           Case No.
                                                          Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| (1)<br><br>Name of creditor and complete mailing address including zip code | (2)<br><br>Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3)<br><br>Nature of claim (trade debt, bank loan, government contract, etc.) | (4)<br><br>Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5)<br><br>Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

### DECLARATION UNDER PENALTY OF PERJURY
### ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the   of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date _____          Signature _____

Penalty for making a false statement or concealing property:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

122005.1

Form 6-Summary
(10/05)

# United States Bankruptcy Court
## Southern District of Florida

In re    Presidion Solutions, Inc., a Florida Corporation

                                               Debtor

Case No. _____

Chapter _____ 11

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A,
B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets.
Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must
also complete the "Statistical Summary of Certain Liabilities."

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | AMOUNTS SCHEDULED | | |
| --- | --- | --- | --- | --- | --- |
| | | | ASSETS | LIABILITIES | OTHER |
| A - Real Property | Yes | 1 | 0.00 | | |
| B - Personal Property | Yes | 4 | 1,015,459.85 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 8,172,662.88 | |
| E - Creditors Holding Unsecured Priority Claims | Yes | 2 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 1 | | 1,500,000.00 | |
| G - Executory Contracts and Unexpired Leases | Yes | 2 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J - Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 12 | | | |
| Total Assets | | | 1,015,459.85 | | |
| Total Liabilities | | | | 9,672,662.88 | |

122005.1

m B6A
05)

In re   Presidion Solutions, Inc., a Florida Corporation                    Case No. _____
_____
                                            Debtor

## SCHEDULE A. REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| None | | | | |

| | | |
|---|---|---|
| Sub-Total > | 0.00 | (Total of this page) |
| Total > | 0.00 | |

_____0_____ continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

122005.1

Form B6D
(10/05)

In re    **Presidion Solutions, Inc., a Florida Corporation**                              Case No. _____

_____,
Debtor

## SCHEDULE B. PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." In providing the information requested in this schedule, do not include the name or address of a minor child. Simply state "a minor child."

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 1. | Cash on hand | X | | | |
| 2. | Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | X | | | |
| 3. | Security deposits with public utilities, telephone companies, landlords, and others. | | Mangrove Bay - Clearwater, FL | - | 267,000.00 |
| | | | AmSouth - Orlando, FL | - | 275,000.00 |
| | | | Ionic - Florence, KY | - | 100,000.00 |
| | | | Troy - Troy, MI | - | 120,000.00 |
| | | | DigitEyes - Orlando, FL | - | 2,900.00 |
| | | | Columbia - Columbia, SC | - | 2,299.92 |
| | | | Doral - Doral, FL | - | 18,200.00 |
| | | | Jacksonville - Jacksonville, FL | - | 1,714.65 |
| | | | Jupiter - Jupiter, FL | - | 25,057.68 |
| | | | Melbourne - Melbourne, FL | - | 974.60 |
| | | | Siren Major Blvd. - Orlando, FL | - | 4,048.00 |
| | | | Palm Beach Gardens - Palm Beach Gardens, FL | - | 3,600.00 |
| 4. | Household goods and furnishings, including audio, video, and computer equipment. | X | | | |

Sub-Total >        820,794.85
(Total of this page)

__3__ continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2008 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

122005.1

In re   Presidion Solutions, Inc., a Florida Corporation                    Case No. _____

_____
                              Debtor

## SCHEDULE B. PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | X | | | |
| 7. Furs and jewelry. | X | | | |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c); Rule 1007(b)). | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |

Sub-Total >                     0.00
(Total of this page)

cet __1__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

122005.1

Form B6B
(10/05)

In re   **Presidion Solutions, Inc., a Florida Corporation**                          Case No. _____

_____
                                    Debtor

## SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 18. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | Trailblazer | - | 17,355.00 |
| | | BMW | - | 85,000.00 |
| | | Porsche | - | 56,000.00 |
| | | Ford Explorer | - | 18,155.00 |
| | | Ford Explorer | - | 18,155.00 |
| 26. Boats, motors, and accessories. | X | | | |

|  | Sub-Total > | 194,665.00 |
|---|---|---|
|  | (Total of this page) | |

Sheet __2__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

122005.1

m B6B
/05)

In re    Presidion Solutions, Inc., a Florida Corporation                          Case No. _____
                                                    Debtor

## SCHEDULE B. PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 27.  Aircraft and accessories. | X | | | |
| 28.  Office equipment, furnishings, and supplies. | X | | | |
| 29.  Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30.  Inventory. | X | | | |
| 31.  Animals. | X | | | |
| 32.  Crops - growing or harvested. Give particulars. | X | | | |
| 33.  Farming equipment and implements. | X | | | |
| 34.  Farm supplies, chemicals, and feed. | X | | | |
| 35.  Other personal property of any kind not already listed. Itemize. | X | | | |

DRAFT

|  | Sub-Total > | 0.00 |
|---|---|---|
|  | (Total of this page) | |
|  | Total > | 1,015,459.85 |

Sheet  _3_  of  _3_  continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2005 - Best Case Solutions, Inc - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

122005.1

Form B6D
(1995)

In re  Presidion Solutions, Inc., a Florida Corporation                    Case No. _____
                                                    Debtor

## SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C§112; Fed.R.Bankr.P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HWJC (Husband, Wife, Joint, or Community) | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. | | | 2/15/05 | | | | | |
| Amfinity Capital, LLC 655 Third Street Suite 303 Beloit, WI 53511 | | X | Blanket UCC | | | | | |
| | | | Value $          10,000,000.00 | | | | 2,672,662.88 | Unknown |
| Account No. | | | 8/10/05 | | | | | |
| Brookmeade Group, LLC 11916 Brookmeade Court Glen Allen, VA 23059 | | | Blanket UCC | | | | | |
| | | | Value $          10,000,000.00 | | | | 500,000.00 | Unknown |
| Account No. | | | 6/16/05 | | | | | |
| Comerica Bank 39200 Six Mile Road Livonia, MI 48152 | | | Blanket UCC - Acquired by Mirabilis | | | | | |
| | | | Value $          10,000,000.00 | | | | 0.00 | 0.00 |
| Account No. | | | 07/13/05 | | | | | |
| Mirabilis Ventures, Inc. 111 N. Orange Avenue Suite 2000 Orlando, FL 32801 | | | Blanket UCC-1 | | | | | |
| | | | Value $          10,000,000.00 | | | | 5,000,000.00 | Unknown |

 0   ____ continuation sheets attached

|  | Subtotal (Total of this page) | 8,172,662.88 |
|---|---|---|
|  | Total (Report on Summary of Schedules) | 8,172,662.88 |

Copyright (c) 1996-2005 - Best Case Solutions, Inc - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

122005.1

In re    **Presidion Solutions, Inc., a Florida Corporation**      Case No. _____

                                                   Debtor

## SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community". If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. If applicable, also report this total on the Means Test form.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Domestic support obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,000* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, which ever occurred first, to the extent provided in 11 U.S.C. § 507 (a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $4,925* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,225* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

■ **Taxes and certain other debts owed to governmental units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507(a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

* Amounts are subject to adjustment on April 1, 2007, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

_____1_____ continuation sheets attached

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037            Best Case Bankruptcy

122005.1

Form B6E - Cont
(10/05)

In re   Presidion Solutions, Inc., a Florida Corporation                    Case No. _____
                                                    Debtor

## SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
### (Continuation Sheet)

Taxes and Certain Other Debts
Owed to Governmental Units

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C (Husband, Wife, Joint, or Community) | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|
| **Account No.** Internal Revenue Service | | - | 2004 2004 Tax Liabilities of Sunshine Companies | | | | 0.00 | 0.00 |
| **Account No.** Internal Revenue Service | | | 2005 2005 Tax Liabilities of Professional Benefit Solutions | | | | 0.00 | 0.00 |
| **Account No.** State of Florida | | - | 2004 2004 Tax Liabilities of Sunshine Companies | | | | 0.00 | 0.00 |
| **Account No.** State of Florida | | - | 2055 2005 Tax Liabilities of Professional Benefit Solutions | | | | 0.00 | 0.00 |
| **Account No.** | | | | | | | | |
| sheet __1__ of __1__ continuation sheets attached to Schedule of Creditors Holding Unsecured Priority Claims | | | Subtotal (Total of this page) | | | | 0.00 | 0.00 |
| | | | Total (Report on Summary of Schedules) | | | | 0.00 | 0.00 |

122005.1

Form B6F
(10/05)

In re   **Presidion Solutions, Inc., a Florida Corporation**                    Case No. _____

_____
Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community maybe liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐   Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | |
| Account No. | | | | | Workers' Compensation Indemnity | | | | |
| nberman Underwriters Association | | | | | | | | | 1,500,000.00 |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| Account No. | | | | | | | | | |
| | | | | | | | | | |

continuation sheets attached

| | | |
|---|---|---|
| Subtotal (Total of this page) | 1,500,000.00 |
| Total (Report on Summary of Schedules) | 1,500,000.00 |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

122005.1

Form B6G
(10/05)

In re   **Presidion Solutions, Inc., a Florida Corporation**                          Case No. _____
                                                                          Debtor

## SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed.R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
| --- | --- |
| Adler Office Associates, Ltd.<br>1200 NW 78th Avenue<br>Suite 109<br>Miami, FL 33126-1899 | Doral - 8095 NW 12th Street, Suite 301, Doral, FL 33126 |
| BH Turfway LLC<br>c/o Belle Harbour Management<br>19 Fulton Street<br>Suite 131<br>New York, NY 10038 | Ionic - 7300 and 7310 Turfway Road, Florence, KY 41042 |
| BMW Financial Services NA, LLC<br>P.O. Box 390902<br>Minneapolis, MN | BMW Automobile Lease |
| Chistopher and Kathleen Phelps<br>1767 Lakemont Avenue, #103<br>Orlando, FL 32814 | Palm Beach Gardens - 5012 Whispering Hollow, Palm Beach Gardens, FL 33418 |
| College Park Commerce Center, Ltd.<br>3012 Ardsley Drive<br>Orlando, FL 32804 | DigitEyes - 2040 North Rio Grande Ave., Suite B, Orlando, FL 32804 |
| Colonial Realty Limited Partnership<br>c/o Colonial Properties Services, Inc.<br>2101 6th Ave. North<br>Suite 750<br>Birmingham, AL 35203 | Mangrove Bay - 17757 U.S. Highway 19, North, Clearwater, FL 33764 |
| Emerson Investments International, Inc.<br>5728 Major Boulevard<br>Suite 200<br>Orlando, FL 32819 | Siren Major Boulevard - 5750 Major Boulevard, Suite 278, Orlando, FL 32819 |
| Ford Motor Credit<br>P.O. Box 105697<br>Atlanta, GA 30348 | Ford Explorer Automobile Lease |
| Ford Motor Credit<br>P.O. Box 105697<br>Atlanta, GA 30348 | Ford Explorer Automobile Lease |
| MJT Orlando, LLC<br>AmSouth Bank Center<br>111 North Orange Avenue<br>Orlando, FL 32801 | AmSouth - 111 North Orange Avenue, Suite 2000, Orlando, FL 32801 |
| Platform One | |

  1   continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                          Best Case Bankruptcy

122005.1

In re   Presidion Solutions, Inc., a Florida Corporation                    Case No. _____

_____
                        Debtor

## SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES
(Continuation Sheet)

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| San Jose Professional Center, LLC<br>P.O. Box 47276<br>Jacksonville, FL 32247 | Jacksonville - 8789 San Jose Blvd., Suites 102 & 103, Jacksonville, FL 32217 |
| Spring Valley Associates, LLC<br>c/o Eden & Avant Real Estate Services<br>900 Bank of America Plaza<br>1901 Main Street<br>Columbia, SC 29201 | Columbia - One Harbison Way, Suite 201, Columbia, SC 29212 |
| Talvah Realty<br>5575 S. Semoran Blvd.<br>Suite 21<br>Orlando, FL 32822-1781 | Melbourne - 2204 Sarno Rd., Melbourne, FL 32935 |
| TTERTT Associates, LLC<br>c/o Kojaian Management Corporation<br>39400 Woodward<br>Suite 250<br>Bloomfield Hills, MI 48304 | Troy - 755 West Big Beaver Rd., Suite 1700, Troy, MI 48084 |
| U.S. Bank, N.A.<br>P.O. Box 068<br>Buffalo, NY 14240-0068 | Porsche Automobile Lease |
| Windsor Commerce Center<br>1986 Windsor Drive<br>North Palm Beach, FL 33408 | Jupiter - 1440 W. Indiantown Road, Suite 100, Jupiter, FL 33458 |

Sheet __1__ of __1__ continuation sheets attached to the Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

122005.1

Form B6H
(10/05)

In re   **Presidion Solutions, Inc., a Florida Corporation**                        Case No. _____
                                              _____
                                                      Debtor

## SCHEDULE H. CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed. Bankr. P. 1007(m).

☐ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **Craig Venderburg**<br>**Presidion Solutions, Inc.**<br>**755 W. Big Beaver**<br>**Suite 1700**<br>**Troy, MI 48084** | **Amfinity Capital, LLC**<br>**655 Third Street**<br>**Suite 303**<br>**Beloit, WI 53511** |
| **Jim Baiers**<br>**Presidion Solutions, Inc.**<br>**755 W. Big Beaver**<br>**Suite 1700**<br>**Troy, MI 48084** | **Amfinity Capital, LLC**<br>**655 Third Street**<br>**Suite 303**<br>**Beloit, WI 53511** |
| **John W. Burcham, III**<br>**34 Isla Bahia**<br>**Fort Lauderdale, FL 33316** | **Amfinity Capital, LLC**<br>**655 Third Street**<br>**Suite 303**<br>**Beloit, WI 53511** |

_0_   continuation sheets attached to Schedule of Codebtors

122005.1

Official Form 6-Decl.
(10/05)

# United States Bankruptcy Court
## Southern District of Florida

In re   Presidion Solutions, Inc., a Florida Corporation
                                              Debtor(s)

Case No. _____
Chapter   **11**   _____

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

          I, the  of the corporation named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of __13__ sheets *[total shown on summary page plus 1]*, and that they are true and correct to the best of my knowledge, information, and belief.

Date _____          Signature _____

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

122005.1

Official Form 7
(10/05)

# United States Bankruptcy Court
## Southern District of Florida

In re   Presidion Solutions, Inc., a Florida Corporation

Case No. _____

Debtor(s)                           Chapter   11

# STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. Do not include the name or address of a minor child in this statement. Indicate payments, transfers and the like to minor children by stating "a minor child." See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. If the answer to an applicable question is "None," mark the box labeled "None." If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

## DEFINITIONS

"*In business.*" A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

"*Insider.*" The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

----

1. **Income from employment or operation of business**

None ☐  State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the two years immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| $659,761,480.00 | Presidion Solutions, Inc. 01/01/2004 - 12/31/2004 |
| $611,000,000.00 | Presidion Solutions, Inc. 1/1/2005 - 12/31/2005 |

2. **Income other than from employment or operation of business**

None ☐  State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the two years immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| $500,000.00 | Sale of Sunshine Companies Subsidiaries |

122005.1

3. Payments to creditors

None ■    *Complete a. or b., as appropriate, and c.*

a.  *Individual or joint debtor(s) with primarily consumer debts.*  List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within 90 days immediately preceding the commencement of this case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None □    b.  *Debtor whose debts are not primarily consumer debts.*  List each payment or other transfer to any creditor made within 90 days immediately preceding the commencement of the case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $5,000. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|
| Sue Schumacher | | $0.00 | $0.00 |

None □    c.  *All debtors:* List all payments made within one year immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|
| Andrew Alley | | $10,000.00 | $0.00 |
| Brian | | $10,000.00 | $0.00 |

4. Suits and administrative proceedings, executions, garnishments and attachments

None ■    a. List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|

None ■    b. Describe all property that has been attached, garnished or seized under any legal or equitable process within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

122005.1

3

### 5. Repossessions, foreclosures and returns

None ■ List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |

### 6. Assignments and receiverships

None ■ a. Describe any assignment of property for the benefit of creditors made within 120 days immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
| --- | --- | --- |

None ■ b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- | --- |

### 7. Gifts

None ■ List all gifts or charitable contributions made within one year immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
| --- | --- | --- | --- |

### 8. Losses

None ☐ List all losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of this case or since the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
| --- | --- | --- |
| Telephone System and Equipment $110,000.00, after deductable | 2004 Hurricanes | 2004 |

### 9. Payments related to debt counseling or bankruptcy

None ■ List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within one year immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |

122005.1

**10. Other transfers**

None
■  a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

None
■  b. List all property transferred by the debtor within ten years immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

**11. Closed financial accounts**

None
■  List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within one year immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

**12. Safe deposit boxes**

None
■  List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within one year immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

**13. Setoffs**

None
☐  List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within 90 days preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|
| Robert A. Gains c/o Patrick McGee McGee & Powers, P.A. 201 E. Pine St., Suite 700 Orlando, FL 32801 | | |
| Fred J. Sandlin 1635 S. Ridgewood Avenue Suite 206 South Daytona, FL 32119 | | |
| John W. Burcham, III 34 Isla Bahia Fort Lauderdale, FL 33316 | | |

Software Copyright (c) 1996-2005 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

122005.1

5

### 14. Property held for another person

None ■   List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

### 15. Prior address of debtor

None ■   If the debtor has moved within three years immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|

### 16. Spouses and Former Spouses

None ■   If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within eight years immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

### 17. Environmental Information.

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law.

None ■   a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ■   b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ■   c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

122005.1

6

18 . Nature, location and name of business

None
■ a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within six years immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOC. SEC. NO./ COMPLETE EIN OR OTHER TAXPAYER I.D. NO. | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|------|------|------|------|------|

None
■ b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

| NAME | ADDRESS |
|------|---------|

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within six years immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor or self-employed in a trade, profession, or other activity, either full- or part-time.

*(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

19. Books, records and financial statements

None
■ a. List all bookkeepers and accountants who within two years immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
|------------------|-------------------------|

None
☐ b. List all firms or individuals who within the two years immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

| NAME | ADDRESS | DATES SERVICES RENDERED |
|------|---------|-------------------------|
| UHY | 26200 American Drive Suite 500 P.O. Box 5004 Southfield, MI 48086-5004 | 2003, 2004 and 2005 |
| Ernst & Young | 500 Woodward Avenue Suite 1700 Detroit, MI 48226-7100 | 2001 and 2002 |

None
☐ c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

| NAME | ADDRESS |
|------|---------|
| Vellington Capital Group, Inc. | 1996 S. Alafaya Trail Orlando, FL 32828 |

Software Copyright (c) 1996-2005 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                                  Best Case Bankruptcy

122005.1

7

| None ■ | d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within two years immediately preceding the commencement of this case. |

NAME AND ADDRESS                                    DATE ISSUED

20. Inventories

| None ■ | a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory. |

DATE OF INVENTORY          INVENTORY SUPERVISOR          DOLLAR AMOUNT OF INVENTORY
(Specify cost, market or other basis)

| None ■ | b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above. |

DATE OF INVENTORY                NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY
RECORDS

21. Current Partners, Officers, Directors and Shareholders

| None ■ | a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership. |

NAME AND ADDRESS          NATURE OF INTEREST          PERCENTAGE OF INTEREST

| None ☐ | b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation. |

NAME AND ADDRESS          TITLE          NATURE AND PERCENTAGE
**Craig Vanderburg**      **Director**      OF STOCK OWNERSHIP
**755 W. Big Beaver**
**Suite 1700**
**Troy, MI 48084**

Brian                     Director

James                     Director

22. Former partners, officers, directors and shareholders

| None ■ | a. If the debtor is a partnership, list each member who withdrew from the partnership within one year immediately preceding the commencement of this case. |

NAME                      ADDRESS                      DATE OF WITHDRAWAL

| None ■ | b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within one year immediately preceding the commencement of this case. |

NAME AND ADDRESS          TITLE          DATE OF TERMINATION

23. Withdrawals from a partnership or distributions by a corporation

| None ■ | If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during one year immediately preceding the commencement of this case. |

NAME & ADDRESS
OF RECIPIENT,                DATE AND PURPOSE          AMOUNT OF MONEY
RELATIONSHIP TO DEBTOR      OF WITHDRAWAL              OR DESCRIPTION AND
VALUE OF PROPERTY

122005.1

8

**24. Tax Consolidation Group.**

None
■    If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within six years immediately preceding the commencement of the case.

NAME OF PARENT CORPORATION

TAXPAYER IDENTIFICATION NUMBER (EIN)

**25. Pension Funds.**

None
■    If the debtor is not an individual, list the name and federal taxpayer identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within six years immediately preceding the commencement of the case.

NAME OF PENSION FUND

TAXPAYER IDENTIFICATION NUMBER (EIN)

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information and belief.

Date _____    Signature _____

[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

DRAFT

122005.1

# United States Bankruptcy Court
## Southern District of Florida

In re   **Presidion Solutions, Inc., a Florida Corporation**                    Case No. _____

_____
                                              Debtor(s)          Chapter    **11**    _____

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.   Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

   For legal services, I have agreed to accept_____      $ _____    **0.00**

   Prior to the filing of this statement I have received_____      $ _____    **0.00**

   Balance Due_____      $ _____    **0.00**

2.   $  **0.00**   of the filing fee has been paid.

3.   The source of the compensation paid to me was:

   ☐ Debtor        ☐ Other (specify):

4.   The source of compensation to be paid to me is:

   ☐ Debtor        ☐ Other (specify):

5.   ■  I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐  I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

6.   In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
   a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
   b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
   c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
   d. [Other provisions as needed]
        **Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.**

7.   By agreement with the debtor(s), the above-disclosed fee does not include the following service:
        **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.**

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

Respectfully submitted,

_____              _____
Dated                                  Attorney for Debtor(s):
                                       **Hans C. Beyer 894087**
                                       **Saxon, Gilmore, Carraway,**
                                       **Gibbons, Lash & Wilcox, P.A.**
                                       **201 E. Kennedy Blvd., Suite 600**
                                       **Tampa, FL 33602**
                                       **813.314.4500  Fax: 813.314.4555**

122005.1

# United States Bankruptcy Court
## Southern District of Florida

In re    Presidion Solutions, Inc., a Florida Corporation

Case No. _____

_____
Debtor

Chapter_____11_____

## LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with Rule 1007(a)(3) for filing in this chapter 11 case.

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| None | | | |

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the  of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date_____                     Signature_____

*Penalty for making a false statement or concealing property:*  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C §§  152 and 3571.

__0___  continuation sheets attached to List of Equity Security Holders

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                     Best Case Bankruptcy

122005.1

# United States Bankruptcy Court
## Southern District of Florida

In re   Presidion Solutions, Inc., a Florida Corporation

                    Debtor(s)

Case No. _____

Chapter   11

## VERIFICATION OF CREDITOR MATRIX

I, the  of the corporation named as the debtor in this case, hereby verify that the attached list of creditors is true and correct to the best of my knowledge.

Date: _____      _____
/
Signer/Title

DRAFT

Software Copyright (c) 1996-2001 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037        Best Case Bankruptcy

122005.1

Amfinity Capital, LLC
655 Third Street
Suite 303
Beloit, WI 53511


Brookmeade Group, LLC
11916 Brookmeade Court
Glen Allen, VA 23059


Comerica Bank
39200 Six Mile Road
Livonia, MI 48152


Internal Revenue Service


Internal Revenue Service


Lumberman Underwriters Association


Mirabilis Ventures, Inc.
111 N. Orange Avenue
Suite 2000
Orlando, FL 32801


State of Florida


State of Florida

122005.1

# United States Bankruptcy Court
## Southern District of Florida

In re   Presidion Solutions, Inc., a Florida Corporation _____   Case No. _____
                                         Debtor(s)              Chapter    11   _____

## CORPORATE OWNERSHIP STATEMENT (RULE 7007.1)

Pursuant to Federal Rule of Bankruptcy Procedure 7007.1 and to enable the Judges to evaluate possible disqualification or recusal, the undersigned counsel for  Presidion Solutions, Inc., a Florida Corporation  in the above captioned action, certifies that the following is a (are) corporation(s), other than the debtor or a governmental unit, that directly or indirectly own(s) 10% or more of any class of the corporation's(s') equity interests, or states that there are no entities to report under FRBP 7007.1:

■ None [*Check if applicable*]

_____          _____
Date                           [Hans C. Beyer 894087
                               Signature of Attorney or Litigant
                               Counsel for  Presidion Solutions, Inc., a Florida Corporation
                               Saxon, Gilmore, Carraway,
                               Gibbons, Lash & Wilcox, P.A.
                               201 E. Kennedy Blvd., Suite 600
                               Tampa, FL 33602
                               813.314.4500 Fax:813.314.4555

## Frank Hailstones (M)

*FA*
*Nothing to MI — told*
*Whittle — by next*
*Friday.*

| | |
|---|---|
| **From:** | Brian Fischer |
| **Sent:** | Thursday, March 09, 2006 3:18 PM |
| **To:** | Hans Beyer |
| **Cc:** | Frank Hailstones (M); Paul Glover; Allen Archer; Richard Berman; Shane Williams |
| **Subject:** | Cadent - Reorganization |
| **Importance:** | High |

Hans,

We are pending a wire transfer from Claredon in the amount of $327,236.36 for Med Impact. My understanding is we are going to pay Med Impact current charges and plan for back owed. Here is the current Med Impact arrearage;

```
CHS02 50641   1  -147,251.42 02/23/2006
CHS02 50640   1  -154,535.09 02/09/2006
CHS02 50639   1  -133,331.76 01/26/2006
CHS02 50638   1  -122,120.87 01/12/2006
CHS02 50637   1  -106,794.75 12/28/2005
CHS02 50636   1  -130,217.50 12/15/2005
```

Balance due $794,251.39

*BF } wants to pay new monies to Med I past — understands payment plan for arrears can be pay 'new' monies*

My understanding is that we are going to pay current monies but nothing towards the arrearage until it is made part of the plan.

Understand that Med Impact pays oldest first and they do not pay until payment for the entire batch is received. This means Med Impact will not pay any further bills until they receive 130,217.50. Once they receive that amount of money, then they will release payment for that billing period. If they receive payment but it does not total an outstanding batch they hold the funds until the full payment is received.

We can pay current bills however, Med Impact will apply the money according to their own policy. Obviously, we do not want to be guilty of what was done in the past in not releasing governmental trust monies. Therefore, I suggest we simply pay them the 327,236.36 when received. They will pay the 12/15 and 12/28 batch of bills and will have 90,224.11 leftover that they will hold until we receive the next payment from Claredon and send them more money.

Please advise if this is how this should be handled?

Please advise who should be included in the email loop on questions regarding Cadent reorganization? I am not sure so I am copying everyone I can think of that may have some involvement in this.

Brian

Brian S. Fischer
Sr. Vice President - Insurance
Mirabilis Ventures, Inc.
bfischer@mirabilisventures.com
561 683-5559 ofc
561 683-7415 fax
561 541-2459 cell



**EXHIBIT**
ALL-STATE LEGAL®
C

3/10/2006

## Frank Hailstones (M)

*[handwritten: FA Nothing to MI — told will [...] by next Friday.]*

| | |
|---|---|
| **From:** | Brian Fischer |
| **Sent:** | Thursday, March 09, 2006 3:18 PM |
| **To:** | Hans Beyer |
| **Cc:** | Frank Hailstones (M); Paul Glover; Allen Archer; Richard Berman; Shane Williams |
| **Subject:** | Cadent - Reorganization |
| **Importance:** | High |

Hans,

We are pending a wire transfer from Claredon in the amount of $327,236.36 for Med Impact. My understanding is we are going to pay Med Impact current charges and plan for back owed. Here is the current Med Impact arrearage;

```
CHS02 50641   I  -147,251.42 02/23/2006
CHS02 50640   I  -154,535.09 02/09/2006
CHS02 50639   I  -133,331.76 01/26/2006
CHS02 50638   I  -122,120.87 01/12/2006
CHS02 50637   I  -106,794.75 12/28/2005
CHS02 50636   I  -130,217.50 12/15/2005
```

Balance due $794,251.39

*[handwritten: BF } wants to pay new monies to Med + past. Understands that overdues payment plan can be paid new monies]*

My understanding is that we are going to pay current monies but ~~nothing towards the arrearage until it is made~~ part of the plan.

Understand that Med Impact pays oldest first and they do not pay until payment for the entire batch is received. This means Med Impact will not pay any further bills until they receive 130,217.50. Once they receive that amount of money, then they will release payment for that billing period. If they receive payment but it does not total an outstanding batch they hold the funds until the full payment is received.

We can pay current bills however, Med Impact will apply the money according to their own policy. Obviously, we do not want to be guilty of what was done in the past in not releasing governmental trust monies. Therefore, I suggest we simply pay them the 327,236.36 when received. They will pay the 12/15 and 12/28 batch of bills and will have 90,224.11 leftover that they will hold until we receive the next payment from Claredon and send them more money.

Please advise if this is how this should be handled?

Please advise who should be included in the email loop on questions regarding Cadent reorganization? I am not sure so I am copying everyone I can think of that may have some involvement in this.


Brian


Brian S. Fischer
Sr. Vice President - Insurance
Mirabilis Ventures, Inc.
bfischer@mirabilisventures.com
561 683-5559 ofc
561 683-7415 fax
561 541-2459 cell

## Frank Hailstones (M)

*[handwritten notes in top margin]*

| | |
|---|---|
| From: | Brian Fischer |
| Sent: | Thursday, March 09, 2006 3:18 PM |
| To: | Hans Beyer |
| Cc: | Frank Hailstones (M); Paul Glover; Allen Archer; Richard Berman; Shane Williams |
| Subject: | Cadent - Reorganization |
| Importance: | High |

Hans,

We are pending a wire transfer from Claredon in the amount of $327,236.36 for Med Impact. My understanding is we are going to pay Med Impact current charges and plan for back owed. Here is the current Med Impact arrearage;

CHS02 50641   I   -147,251.42 02/23/2006
CHS02 50640   I   -154,535.09 02/09/2006
CHS02 50639   I   -133,331.76 01/26/2006
CHS02 50638   I   -122,120.87 01/12/2006
CHS02 50637   I   -106,794.75 12/28/2005
CHS02 50636   I   -130,217.50 12/15/2005

Balance due $794,251.39

*[handwritten annotation]*

My understanding is that we are going to pay current monies but nothing towards the arrearage until it is made part of the plan.

Understand that Med Impact pays oldest first and they do not pay until payment for the entire batch is received. This means Med Impact will not pay any further bills until they receive 130,217.50. Once they receive that amount of money, then they will release payment for that billing period. If they receive payment but it does not total an outstanding batch they hold the funds until the full payment is received.

We can pay current bills however, Med Impact will apply the money according to their own policy. Obviously, we do not want to be guilty of what was done in the past in not releasing governmental trust monies. Therefore, I suggest we simply pay them the 327,236.36 when received. They will pay the 12/15 and 12/28 batch of bills and will have 90,224.11 leftover that they will hold until we receive the next payment from Claredon and send them more money.

Please advise if this is how this should be handled?

Please advise who should be included in the email loop on questions regarding Cadent reorganization? I am not sure so I am copying everyone I can think of that may have some involvement in this.

Brian

Brian S. Fischer
Sr. Vice President - Insurance
Mirabilis Ventures, Inc.
bfischer@mirabilisventures.com
561 683-5559 ofc
561 683-7415 fax
561 541-2459 cell

## Frank Hailstones (M)

*[handwritten notes in top margin]*

| | |
|---|---|
| **From:** | Brian Fischer |
| **Sent:** | Thursday, March 09, 2006 3:18 PM |
| **To:** | Hans Beyer |
| **Cc:** | Frank Hailstones (M); Paul Glover; Allen Archer; Richard Berman; Shane Williams |
| **Subject:** | Cadent - Reorganization |
| **Importance:** | High |

Hans,

We are pending a wire transfer from Claredon in the amount of $327,236.36 for Med Impact. My understanding is we are going to pay Med Impact current charges and plan for back owed. Here is the current Med Impact arrearage;

```
CHS02 50641   1   -147,251.42 02/23/2006
CHS02 50640   1   -154,535.09 02/09/2006
CHS02 50639   1   -133,331.76 01/26/2006
CHS02 50638   1   -122,120.87 01/12/2006
CHS02 50637   1   -106,794.75 12/28/2005
CHS02 50636   1   -130,217.50 12/15/2005
```

Balance due $794,251.39

*[handwritten note: BF } wants to pay new monies, understands to read 7 post for overdues, in payment plan can be pd "new" monies]*

My understanding is that we are going to pay current monies but ~~nothing towards the arrearage until it is made~~ part of the plan.

Understand that Med Impact pays oldest first and they do not pay until payment for the entire batch is received. This means Med Impact will not pay any further bills until they receive 130,217.50. Once they receive that amount of money, then they will release payment for that billing period. If they receive payment but it does not total an outstanding batch they hold the funds until the full payment is received.

We can pay current bills however, Med Impact will apply the money according to their own policy. Obviously, we do not want to be guilty of what was done in the past in not releasing governmental trust monies. Therefore, I suggest we simply pay them the 327,236.36 when received. They will pay the 12/15 and 12/28 batch of bills and will have 90,224.11 leftover that they will hold until we receive the next payment from Claredon and send them more money.

Please advise if this is how this should be handled?

Please advise who should be included in the email loop on questions regarding Cadent reorganization? I am not sure so I am copying everyone I can think of that may have some involvement in this.


Brian


Brian S. Fischer
Sr. Vice President - Insurance
Mirabilis Ventures, Inc.
bfischer@mirabilisventures.com
561 683-5559 ofc
561 683-7415 fax
561 541-2459 cell

3/10/2006

062706.1
Page 1 of 1

| | |
|---|---|
| j, n: | Hans Christian Beyer [hbeyer@wans.net] |
| **Sent:** | Tuesday, June 27, 2006 4:36 PM |
| **To:** | Shane Williams; Jay Stollenwerk |
| **Cc:** | Phil Kaprow |
| **Subject:** | Presidion Letter (revised) |

**Attachments:** 06-06-27.MN.Presidion.L FA to J Berkowitz.doc; 06-06-27.MN.Presidion.L FA to J Berkowitz.clean.doc

entlemen:
ttached please find a clean and a black-lined copy of the revised Presidion letter.
est,


-++++++++++++++++++++++++++++++++++++++++++++
ns Christian Beyer
xia Strategy Corporation
irabilis Ventures, Inc.
l N. Orange Avenue, 20th Floor
lando, Florida 32801
lephone: (813) 245-9300
nail: hbeyer@wans.net


e information contained in this e-mail message and any
~hments is confidential and may be privileged. If you
intended recipient of this e-mail message, please
copies of this message and any attachments, destroy
.iard copies of this message and any attachments, and
ise the sender of your receipt of this message by return
ail. Thank you.



/2007

062706.1

[AQMI STRATEGY CORPORATION LETTERHEAD]

June 27, 2006

Ms. Judy Berkowitz
Internal Revenue Service
7850 SW 6th Court
Plantation, FL  33324

     Re:    Offer of compromise for taxpayers Sunshine Staff Leasing, Inc. ("SSL");
              Sunshine Companies III, Inc. ("S III"); and Presidion Solutions VII, Inc.
              (f/k/a Professional Benefit Solutions, Inc. and, collectively with SSL and
              S III, the "Taxpayer")

Dear Ms. Berkowitz:

Thank you for all of your time and assistance over the last several months in the connection with quantifying and, hopefully, resolving the obligations of the Taxpayer to the Internal Revenue Service (the "IRS").  This letter is intended formalize the offer to the IRS in connection with those liabilities which you have previously discussed with Dan Myers of our office.

Our offer to finally resolve the Taxpayer's obligations to the IRS is as follows:  AQMI Strategy Corporation (AQMI), as the primary business consultant to the Taxpayer, will establish an irrevocable trust, the primary purpose of which will be to hold all of the assets of the Taxpayer while its book of business is being prepared for sale to third party purchasers (the "Trust").  The secondary purpose of the Trust will be to protect the assets by ensuring that they are insured and protected against any loss.

As Mr. Myers has previously informed you, the primary purchaser of the Taxpayer's book of business will be Gevity HR, Inc. ("Gevity").  Secondary purchasers will be identified to the IRS as they are identified and will be entities seeking to acquire those parts of the Taxpayer's book of business which Gevity is unable or unwilling to acquire.

Pursuant to our offer, the operating profits from that portion of the Taxpayer's existing book of business which is not sold will be paid to the IRS in monthly installments of Six Hundred Thousand Dollars ($600,000) per month indefinitely until either (a) the tax arrearage is paid or (b) such assets have been sold and the proceeds used to reduce or eliminate the Taxpayer's liabilities to the IRS.  We anticipate that one to five years will be required to complete (1) the sale of the Taxpayer's book of business and (2) the subsequent liquidation of the non-monetary consideration (presumably stock) received as consideration for the book of business.  As proceeds are generated from this liquidation process, they will be paid to the IRS to reduce the Taxpayer's outstanding tax liability.

To prepare for the sale transactions underlying this offer, the Taxpayer has terminated the unprofitable contracts of the Taxpayer and eliminated the unnecessary overhead which

062706.1

has historically drained the assets of the Debtor. In this regard, we have arranged for the Taxpayer's outstanding liabilities to professionals and holders of certain secured promissory notes to be paid in full or paid over time. As part of this offer, the Taxpayer will warrant that proper insurance of its assets is maintained and that an indemnitor (Frank Amodeo, individually, together with an unrelated corporation, as required by the insurance carriers) will guarantee the Taxpayer's workers compensation tail. The net result of this offer is that the IRS will be able to collect the settlement funds from the Trust without having to incur the expense or delay associated with taking property subject to other claims and senior security interests.

Please note that any subsequent liquidation of Gevity stock received as part of the non-monetary consideration from the sale of the Taxpayer's book of business will be subject to ongoing negotiation with Gevity on the restrictions pertaining to the sale of such stock. Gevity will preclude "dumping" of the stock in order to protect its shareholders from a deflated market value. It is anticipated that the sale of such stock may be restricted from one to five years. The result of the negotiation on such restrictions will directly impact the timeframe in which the IRS will be repaid, however, we are confident that a resolution or this issue is imminent which will allow not require such stock to be held for more than a five year period.

To address your previous question regarding Craig Vandenburg, effective Friday, June 30, 2006, Mr. Vandenburg will have no corporate authority, no decision making authority for the Taxpayer, and no operational involvement with the Taxpayer (other than as described below). This is being accomplished through the sale to AEM, Inc. (AEM) on July 1, 2006, of the Taxpayer's book of business (in preparation for its partial sale to Gevity). Recognizing that Mr. Vandenburg has a vested interest in seeing this offer both accepted and fulfilled, Mr. Vandenburg has agreed to be employed as an independent sales representative for AEM to maximize the value of that book of business.

In anticipation of the IRS's possible concerns, AEM has agreed as a material portion of its agreement to purchase that book of business to provide daily reports of payroll taxes to the IRS. AEM's purpose in taking over control of the book of business is to prepare it for sale to a third party. Without properly preparing the books of business, including the synthesis of processing compatibility with the Buyer, the value of the book could substantially decrease.

In summary, we anticipate that the transfer of the Taxpayer's book of business will commence in July, 2006. Our belief is that it could take up to six months to complete the transfer. All proceeds from the sale of this book of business, whether monetary or otherwise, will be transferred into the Trust (and thus subject to the terms set forth herein) to satisfy the Taxpayer's obligations to the IRS.

I remain confident that we are close to a mutually agreeable resolution of the Taxpayer's obligations to the IRS and look forward to resolving these matters with you in the near future. Please do not hesitate to contact me should you have any questions pertaining to this offer or any of the other information set forth in this letter.

**AQMI STRATEGY CORPORATION,**

By:_____
Frank Amodeo, President

P.S.  Please note that we have identified certain third party liabilities owed to the Taxpayer and its affiliates.  Initially we believed there would be value in engaging in the collection of these liabilities; however, subsequent analysis suggests that these attempts to collect would create an appearance of vulnerability which would subject the valuable assets (e.g. the Taxpayer's book of business) to "raids" by competition and would tip the balance of power in negotiations with prospective purchasers in their favor, thus resulting in a reduced value for both the Taxpayer and the Service.  We are prepared to disclose to the IRS all such liabilities we have discovered and will prudently prosecute collection of certain of those claims.  All creditors, investors, and the Service have been or should be paid in full or on terms to which they have agreed; additionally, we anticipate earning a significant return on our investments of time and effort.  Thus pursuit, especially early pursuit, of certain of these claims would be self-defeating and would undermine the timeline, if not the entire viability, of the strategy underlying this offer.

062706.1

Dear Ms. Berkowitz:

Thank you for all of your time and assistance over the last several months in connection with quantifying and, hopefully, resolving the obligations of the Taxpayer to the Internal Revenue Service (the "IRS"). This letter is intended formalize the offer to the IRS in connection with those liabilities which you have previously discussed with Dan Myers of our office.

Our offer to finally resolve the Taxpayer's obligations to the IRS is as follows: AQMI Strategy Corporation (AQMI), as the primary business consultant to the Taxpayer, will establish an irrevocable trust, the primary purpose of which will be to hold all of the assets of the Taxpayer while its book of business is being prepared for sale to third party purchasers (the "Trust"). The secondary purpose of the Trust will be to protect the assets by ensuring that they are insured and protected against any loss.

As Mr. Myers has previously informed you, the primary purchaser of the Taxpayer's book of business will be Gevity HR, Inc. ("Gevity"). Secondary purchasers will be identified to the IRS as they are identified and will be entities seeking to acquire those parts of the Taxpayer's book of business which Gevity is unable or unwilling to acquire.

Pursuant to our offer, the operating profits from that portion of the Taxpayer's existing book of business which is not sold will be paid to the IRS in monthly installments of Six Hundred Thousand Dollars ($600,000) per month indefinitely until either (a) the tax arrearage is paid or (b) such assets have been sold and the proceeds used to reduce or eliminate the Taxpayer's liabilities to the IRS. We anticipate that one to five years will be required to complete (i) the sale of the Taxpayer's book of business and (ii) the subsequent liquidation of the non-monetary consideration (presumably stock) received as consideration for the book of business. As proceeds are generated from this liquidation process, they will be paid to the IRS to reduce the Taxpayer's outstanding tax liability.

To prepare for the sale transaction underlying this offer, the Taxpayer has terminated the unprofitable contracts of the Taxpayer and eliminated the unnecessary overhead which

Formatted
Formatted: Centered
Formatted: Superscript
Formatted: Justified, Indent: Left: 0.5", Hanging: 0.5", Tabs: 0.5", Left + 1", Left + 1.5", Left + 2", Left + 3", Centered
Deleted:
Deleted: to set forth our
Deleted:
Deleted: Internal Revenue Service (Service)
Deleted: and to confirm the contents of several conversations between yourself and
Deleted:
Deleted:  The official
Deleted: the
Deleted: is
Deleted: is
Deleted: maintained
Deleted:
Deleted: you are aware
Deleted: is
Deleted: become known
Deleted:
Deleted: those
Deleted: , including those customers requiring higher workers compens...[1]
Deleted: T
Deleted: not disposed of
Deleted: Service
Deleted: m
Deleted:  The Taxpayer believe...[2]
Deleted: five
Deleted: 5
Deleted: the
Deleted: This 1 to 5 year period...[3]
Deleted: in order
Deleted: Additionally, a
Deleted: the
Deleted: occurs, proceeds
Deleted: Service
Deleted:  In efforts t
Deleted: the viability of

062706.1

the assets of the Debtor ... ... professionals and ... ... notes ... paid in full or ... time. ... ... ... proper insurance ... ... an indemnitor (Frank Amodeo, individually ... ... an unrelated corporation, as required by the insurance carriers) ... guarantee the ... workers compensation tail. The net result of this ... is that the ... will be able to collect ... funds from the Trust without having to ... the ... ... associated with Taking property subject to other ... and senior security interests.

Please note that any subsequent liquidation of ... ... ... as part of the non-monetary consideration from the sale of the Taxpayer's book of business will be subject to ongoing negotiation with Gevity on the restrictions pertaining to the sale of such stock. Gevity will preclude "dumping" of the stock in order to protect its shareholders from a deflated market value. It is anticipated that the sale of such stock may be restricted from one to five years. The result of the negotiation on such restriction will directly impact the timeframe in which the IRS will be repaid, however, we are confident that a resolution on this issue is imminent which will allow ... require such stock to be held for more than a five year period.

To address your previous question regarding Craig Vandenburg, effective Friday, June 30, 2006, Mr. Vandenburg will have no corporate authority, no decision making authority for the Taxpayer, and no operational involvement with the Taxpayer (other than as described below). This is being accomplished through the sale to AEM, Inc. (AEM) on July 1, 2006, of the Taxpayer's book of business (in preparation for its partial sale to Gevity). Recognizing that Mr. Vandenburg has a vested interest in seeing this offer both accepted and fulfilled, Mr. Vandenburg has agreed to be employed as an independent sales representative for AEM to maximize the value of that book of business.

In anticipation of the IRS's possible concerns, AEM has agreed as a material portion of its agreement to purchase that book of business to provide daily reports of payroll taxes to the IRS. AEM's purpose in taking over control of the book of business is to prepare it for sale to a third party. Without properly preparing the books of business, including the synthesis of processing compatibility with the Buyer, the value of the book could substantially decrease.

In summary, we anticipate that the transfer of the Taxpayer's book of business will commence in July, 2006. Our belief is that it could take up to six months to complete the transfer. All proceeds from the sale of this book of business, whether monetary or otherwise, will be transferred into the Trust (and thus subject to the terms set forth herein) to satisfy the Taxpayer's obligations to the IRS.

I remain confident that we are close to a mutually agreeable resolution of the Taxpayer's obligations to the IRS and look forward to resolving these matters with you in the near future. Please do not hesitate to contact me should you have any questions pertaining to this offer or any of the other information set forth in this letter.

**Deleted:** drawing ... on the least of which was the cost of ... seller ... which have been, along with other secured creditors, extended in ... Additionally, as Taxpayer's strategy includes the assurance that ... is in place for six months and ... and ... willing to cover back end downward effect related to the Service ... being unduly burden ... [4]

**Deleted:** Specifically ... ... private ... against the Taxpayer's being able to sell the stock acquired as consideration for the sale of the book of business ... The range in discussion for the restriction is anywhere from 1 to 5 years ... this ... on ... Service ... can get us ... to remain within the ... 5 ... [5]

**Deleted:**

**Deleted:** or ... of full operational and managerial control of the book of business for processing and preparation for sale ... matter successful, ... sign up in order to keep securing new busi ... [6]

**Formatted:** Indent: First line: 0"

**Deleted:** Service's ... ... you ... directly until you are comfortable with AEM's performance ... management and operations is to prepare the ... [7]

**Deleted:** the Taxpayer expects that the transfers will begin to commence ... b in order ... make ... smooth ... Monetary proceeds will be placed in a trust and paid to the Service in accordance with our agreement ... [8]

**Deleted:** ... continuing to work with you towards the same ... [9]

062706.1

AQMI STRATEGY CORPORATION.

By: _____
Frank Amodeo, President

P.S.  Please note that we have identified certain third party liabilities owed to the Taxpayer and its affiliates.  Initially we believed there would be value in engaging in the collection of these liabilities, however, subsequent analysis suggests that these attempts to collect would create an appearance of vulnerability which would subject the valuable assets (e.g. the taxpayer's book of business) to "raids" by competition and would tip the balance of power in negotiations with prospective purchasers in their favor, thus resulting in a reduced value for both the Taxpayer and the Service.  We are prepared to disclose to the IRS all such liabilities we have discovered and will prudently prosecute collection of certain of those claims.  All creditors, investors, and the Service have been or should be paid in full or on terms to which they have agreed, additionally we anticipate earning a significant return on our investments of time and effort.  Thus pursuit, especially early pursuit, of certain of these claims would be self-defeating and would undermine the timeline, if not the entire viability, of the strategy underlying this offer.

**Deleted:** a Florida corporation¶

**Formatted:** Indent: First line: 0"

**Deleted:** We wish to articulate

**Deleted:** a

**Deleted:** to

**Deleted:** engage

**Deleted:** ,

**Deleted:** indicated

**Deleted:** contracts

**Deleted:** Taxpayer's creditor (the

**Deleted:** )

**Deleted:** ¶
On balance however, w

**Deleted:** identify

**Deleted:** of the

**Deleted:** which we are aware of,

**Deleted:** , and we

**Deleted:** for our efforts

**Deleted:** .

**Deleted:** to pay the creditors and the Service

062706.1

| Page 1: [1] Deleted | Hans Christian Beyer | 6/27/2006 3:45:00 PM |
|---|---|---|

, including those customers requiring higher workers compensation codes, especially construction.

| Page 1: [2] Deleted | Hans Christian Beyer | 6/27/2006 3:46:00 PM |
|---|---|---|

. The Taxpayer believes that the payments could be leveled off at a base payment

| Page 1: [3] Deleted | Hans Christian Beyer | 6/27/2006 3:47:00 PM |
|---|---|---|

This 1 to 5 year period is the time expected to

| Page 2: [4] Deleted | Hans Christian Beyer | 6/27/2006 3:52:00 PM |
|---|---|---|

draining

| Page 2: [4] Deleted | Hans Christian Beyer | 6/27/2006 3:53:00 PM |
|---|---|---|

, not the least of which was the cost of

| Page 2: [4] Deleted | Hans Christian Beyer | 6/27/2006 3:53:00 PM |
|---|---|---|

seller

| Page 2: [4] Deleted | Hans Christian Beyer | 6/27/2006 3:54:00 PM |
|---|---|---|

which have been, along with other secured creditors,

| Page 2: [4] Deleted | Hans Christian Beyer | 6/27/2006 3:54:00 PM |
|---|---|---|

extended in

| Page 2: [4] Deleted | Hans Christian Beyer | 6/27/2006 3:55:00 PM |
|---|---|---|

Additionally, the Taxpayer's strategy includes the assurance that

| Page 2: [4] Deleted | Hans Christian Beyer | 6/27/2006 3:55:00 PM |
|---|---|---|

is in place for six months and

| Page 2: [4] Deleted | Hans Christian Beyer | 6/27/2006 3:55:00 PM |
|---|---|---|

and

| Page 2: [4] Deleted | Hans Christian Beyer | 6/27/2006 3:56:00 PM |
|---|---|---|

willing to cover

| Page 2: [4] Deleted | Hans Christian Beyer | 6/27/2006 3:56:00 PM |
|---|---|---|

back end downward effect related to the

| Page 2: [4] Deleted | Hans Christian Beyer | 6/27/2006 3:56:00 PM |
|---|---|---|

Service

| Page 2: [4] Deleted | Hans Christian Beyer | 6/27/2006 4:05:00 PM |
|---|---|---|

t

| Page 2: [4] Deleted | Hans Christian Beyer | 6/27/2006 4:05:00 PM |
|---|---|---|

being unduly burdened by

| Page 2: [4] Deleted | Hans Christian Beyer | 6/27/2006 4:06:00 PM |
|---|---|---|

debts

| Page 2: [5] Deleted | Hans Christian Beyer | 6/27/2006 3:29:00 PM |
|---|---|---|

Specifically

| Page 2: [5] Deleted | Hans Christian Beyer | 6/27/2006 4:07:00 PM |
|---|---|---|

| Page 2: [5] Deleted | Hans Christian Beyer | 6/27/2006 4:06:00 PM |
|---|---|---|

is

| Page 2: [5] Deleted | Hans Christian Beyer | 6/27/2006 4:07:00 PM |
|---|---|---|

062706.1

private

| Page 2: [5] Deleted | Hans Christian Beyer | 6/27/2006 4:08:00 PM |

against the Taxpayer's being able to sell the stock acquired as consideration for the sale of the book of business.

| Page 2: [5] Deleted | Hans Christian Beyer | 6/27/2006 4:08:00 PM |

The range in discussion for the restriction is anywhere from 1 to 5 years.

| Page 2: [5] Deleted | Hans Christian Beyer | 6/27/2006 4:08:00 PM |

this

| Page 2: [5] Deleted | Hans Christian Beyer | 6/27/2006 4:09:00 PM |

on

| Page 2: [5] Deleted | Hans Christian Beyer | 6/27/2006 4:09:00 PM |

Service

| Page 2: [5] Deleted | Hans Christian Beyer | 6/27/2006 4:09:00 PM |

can get

| Page 2: [5] Deleted | Hans Christian Beyer | 6/27/2006 4:09:00 PM |

us

| Page 2: [5] Deleted | Hans Christian Beyer | 6/27/2006 4:09:00 PM |

to remain within the

| Page 2: [5] Deleted | Hans Christian Beyer | 6/27/2006 4:09:00 PM |

5

| Page 2: [6] Deleted | Hans Christian Beyer | 6/27/2006 4:10:00 PM |

or

| Page 2: [6] Deleted | Hans Christian Beyer | 6/27/2006 4:10:00 PM |

of full operational and managerial control of the book of business for processing and preparation for sale.

| Page 2: [6] Deleted | Hans Christian Beyer | 6/27/2006 4:11:00 PM |

matter successful,

| Page 2: [6] Deleted | Hans Christian Beyer | 6/27/2006 4:11:00 PM |

sign up

| Page 2: [6] Deleted | Hans Christian Beyer | 6/27/2006 4:16:00 PM |

in order to keep securing new business.

| Page 2: [7] Deleted | Hans Christian Beyer | 6/27/2006 4:16:00 PM |

Service's

| Page 2: [7] Deleted | Hans Christian Beyer | 6/27/2006 4:17:00 PM |

,

| Page 2: [7] Deleted | Hans Christian Beyer | 6/27/2006 4:17:00 PM |

you

| Page 2: [7] Deleted | Hans Christian Beyer | 6/27/2006 4:17:00 PM |

directly until you are comfortable with AEM's performance.

| Page 2: [7] Deleted | Hans Christian Beyer | 6/27/2006 4:17:00 PM |

management and operations is to prepare the

| Page 2: [8] Deleted | Hans Christian Beyer | 6/27/2006 4:19:00 PM |

062706.1

the Taxpayer expects that the transfers will begin to commence

| | | |
|---|---|---|
| **Page 2: [8] Deleted** | **Hans Christian Beyer** | **6/27/2006 4:19:00 PM** |

6

| | | |
|---|---|---|
| **Page 2: [8] Deleted** | **Hans Christian Beyer** | **6/27/2006 4:19:00 PM** |

in order

| | | |
|---|---|---|
| **Page 2: [8] Deleted** | **Hans Christian Beyer** | **6/27/2006 4:19:00 PM** |

make

| | | |
|---|---|---|
| **Page 2: [8] Deleted** | **Hans Christian Beyer** | **6/27/2006 4:19:00 PM** |

smooth

| | | |
|---|---|---|
| **Page 2: [8] Deleted** | **Hans Christian Beyer** | **6/27/2006 4:20:00 PM** |

Monetary proceeds will be placed in a trust and paid to the Service in accordance with our agreement.

| | | |
|---|---|---|
| **Page 2: [9] Deleted** | **Hans Christian Beyer** | **6/27/2006 4:21:00 PM** |

,

| | | |
|---|---|---|
| **Page 2: [9] Deleted** | **Hans Christian Beyer** | **6/27/2006 4:22:00 PM** |

continuing to work with you towards the same.

4:28 PM
02/18/09
Accrual Basis

## Mirabilis ...tures, Inc.
### Find Report
#### All Transactions

| Type | Date | Num | Name | Memo | Account | Clr | Split | Debit | Credit | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| Bill Pmt -Check | 9/29/2006 | 10967 | Saxon Gilmore ... | | 1095 · Mirabilis ... | X | 2000 · Pre-Petition Accou... | | | -31,477.35 |
| Bill Pmt -Check | 9/13/2006 | 10914 | Saxon Gilmore ... | | 1095 · Mirabilis ... | X | 2000 · Pre-Petition Accou... | | 31,477.35 | -71,477.35 |
| Check | 7/28/2006 | 10842 | Saxon Gilmore ... | | 1095 · Mirabilis ... | X | 7100 · Legal & Accounting | | 40,000.00 | -110,585.85 |
| Check | 5/25/2006 | 10666 | Saxon Gilmore ... | | 1095 · Mirabilis ... | X | -SPLIT- | | 39,108.50 | -141,208.75 |
| Check | 5/18/2006 | 328 | Saxon Gilmore ... | | 1090 · Suntrust ... | X | 7100 · Legal & Accounting | | 30,622.90 | -171,208.75 |
| Check | 3/27/2006 | 3-27 | Saxon Gilmore ... | | 1095 · Suntrust ... | X | 1154 · Due from Cadent A... | | 30,000.00 | -186,208.75 |
| Check | 3/24/2006 | 10464 | Saxon Gilmore ... | | 1095 · Mirabilis ... | X | 7100 · Legal & Accounting | | 30,000.00 | -201,208.75 |
| Bill Pmt -Check | 3/7/2006 | 277 | Saxon Gilmore ... | Legal Fees | 1090 · Suntrust ... | X | 7100 · Legal & Accounting | | 15,000.00 | -208,691.94 |
| Bill Pmt -Check | 12/28/2005 | 221 | Saxon Gilmore ... | | 1090 · Suntrust ... | X | 2000 · Pre-Petition Accou... | | 7,483.19 | -210,935.44 |
| Check | 12/28/2005 | 220 | Saxon Gilmore ... | | 1090 · Suntrust ... | X | 7100 · Legal & Accounting | | 2,243.50 | -211,374.60 |
| Check | 10/20/2005 | 175 | Saxon Gilmore ... | | 1090 · Suntrust ... | X | 7100 · Legal & Accounting | | 439.16 | -216,374.60 |
| Check | 10/20/2005 | 173 | Saxon Gilmore ... | | 1090 · Suntrust ... | X | 1811 · Hudson Nursery | | 5,000.00 | -261,374.60 |
| Check | 10/20/2005 | 174 | Saxon Gilmore ... | | 1090 · Suntrust ... | X | 7100 · Legal & Accounting | | 45,000.00 | -271,374.60 |
| | | | | | | | | | 10,000.00 | -271,374.60 |
| **Total** | | | | | | | | **0.00** | **271,374.60** | |

Page 1



EXHIBIT
E
ALL-STATE LEGAL®