UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: MIRABILIS VENTURES, INC.
Bankruptcy Case No.: 6:08-Bk-4327-KSJ

_____

MIRABILIS VENTURES, INC.

      Plaintiff,

v.                                 Case No.6:09-CV-1974-Orl-31DAB

BUCHANAN, INGERSOLL, & ROONEY, P.L.,   **DISPOSITIVE MOTION**
SAXON, GILMORE, CARRAWAY, GIBBONS,
LASH &WILCOX, P.A. and HANS
CHRISTIAN BEYER,

      Defendants.

_____/

## DEFENDANTS SAXON, GILMORE, CARRAWAY & GIBBONS, P.A.'S AND HANS C. BEYER'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 56, Federal Rules of Civil Procedure, Defendants Saxon, Gilmore, Carraway & Gibbons, P.A. ("**Saxon Gilmore**")[1] and Hans Christian Beyer ("**Beyer**") move for summary judgment on all claims filed by Plaintiff Mirabilis Ventures, Inc. ("**MVI**"). The grounds for this motion are set forth in the following memorandum of law.

### INTRODUCTION

This litigation arises out of MVI's unfounded and unsubstantiated claim that Beyer, while employed by Saxon Gilmore, improperly advised MVI not to withhold payroll taxes and that MVI (and/or named and unnamed related and affiliated companies and subsidiaries) suffered

_____

[1]    Saxon Gilmore was formerly known as Saxon, Gilmore, Carraway, Gibbons, Lash & Wilcox, P.A.

alleged damages "in excess of $200,000,000.00." These allegations are false. In reality, an individual named Frank Amodeo ("**Amodeo**") was the creator and administrator of a complex scheme of corporate relationships designed to exploit and hide the misuse of payroll taxes. Amodeo was indicted and pled guilty to multiple felony charges involving the failure to pay payroll taxes – the acts which underlie this action. Nonetheless, MVI filed this lawsuit (and others) in an improper attempt to paint MVI as a victim of bad professional advice.[2] *Despite the fact that this action has been pending for over sixteen (16) months*, MVI has failed to produce any evidence to support the purported merits of its underlying claims. MVI's actions provide a textbook example of a "legal stick up" calculated to extract funds from Saxon Gilmore's insurer based upon unsubstantiated allegations. While Saxon Gilmore and Beyer will apprise the Court of other factual information that is not subject to reasonable dispute, this motion is based solely on Beyer's deposition testimony, which directly and unequivocally refutes MVI's allegations.

### *Procedural Background*

On May 27, 2008, MVI filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. *See* Dkt. 1. On December 8, 2008, MVI commenced an adversary proceeding against Beyer and Saxon Gilmore (and Buchanan Ingersoll & Rooney). *Id.* On November 9, 2009, the Bankruptcy Court transferred the adversary action to this District Court for all further proceedings. *Id.* at 3. Thereafter, MVI obtained leave to file a second amended complaint (the "**Second Amended Complaint**" or "**SAC**"). *Id.* at 18, 21. This matter

---

[2]    The U.S. Attorney's Office and others have filed affidavits suggesting that MVI filed the MVI bankruptcy proceeding and the adversary proceedings, and thus the action at issue, for the purpose of acquiring funds that Amodeo can use for restitution in an attempt to improve his standing in the criminal proceeding.

is currently scheduled for a jury trial during the Court's trial term beginning on February 1, 2011. *Id.* at 17.

### Amodeo's Knowing and Admitted Commission
### of Criminal Acts Which Underlie This Action

Contrary to the allegations in the Second Amended Complaint, ***Amodeo swore*** in his written plea agreement that ***he was aware of his wrongdoing and that he received professional advice that he could not legally undertake the actions*** which led to his indictment and ***which underlie this action***. Specifically, on September 22, 2008, Amodeo entered into an amended plea agreement (the **"Plea Agreement"**) wherein Amodeo pled guilty to the failure to collect and remit payroll taxes in violation of 26 U.S.C. § 7202, conspiracy in violation of 18 U.S.C. § 371, and obstruction of an agency proceeding in violation of 18 U.S.C. § 1505.[3] *See* Ex. 1, Plea Agreement, pp. 26, 37. Amodeo admitted in the Plea Agreement that the following facts were true and that the United States would be able to prove these specific facts beyond a reasonable doubt:

> In or about January, 2006, Amodeo requested that a legal memorandum be prepared by the outside law firm of general counsel for [MVI] on the law applicable to the reporting and payment of payroll taxes to the [IRS]. On February 2, 2006, a final version of the memorandum was submitted to Amodeo regarding the relationship between current trust fund obligations, after acquired funds and willfulness under I.R.C. Section 6672. ***The Memorandum described in detail the legal obligation to hold payroll tax funds for the [IRS] and specified civil and criminal penalties (including criminal penalties under Section 7202) for failure to follow the applicable law. Amodeo know that the memorandum had in fact been completed and admits that he received it***, but it is his position that he never read it and never requested that anyone summarize its contents to him. Amodeo

---

[3]    The Court need not make any finding of fact based on the Amodeo Plea Agreement to resolve this motion, but that plea agreement and the Amodeo criminal proceeding provide informative context for this action and motion. The Court may take judicial notice of the Amodeo criminal action pursuant to Rule 201, Federal Rules of Evidence.

> submitted the memorandum, still allegedly unread by him, to the
> general counsel for [MVI] immediately upon receiving it and
> directed that a copy be provided to the [MVI] Board of Directors.
> Amodeo also personally delivered a copy of the memorandum to
> the [IRS] in July 2006.

*Id.* at 33-34 (emphasis added).

Amodeo also admitted and took full responsibility for the very acts that form the basis of

each of MVI's claims in the present matter:

> Although Amodeo is a former attorney and experienced with
> debtor-creditor law, in failing to read the memorandum or inquire
> further into its contents, Amodeo deliberately and consciously tried
> to avoid learning what specific statutes prohibited his conduct and
> deliberately closed his eyes to what he had every reason to believe
> was the fact, i.e., that he was legally prohibited from permitting
> collected trust fund taxes to be used for any purpose other than the
> transmission in due course to the [IRS].  Consequently, ***Amodeo
> accepts full responsibility for intentionally and willfully violating
> 26 U.S.C. Section 7202 by failing to remit payroll taxes*** collected
> by PBS to the [IRS] during quarterly periods in 2006 in which
> Amodeo was in control of PBS, including the first, second, and
> fourth quarters of 2006 referred to in Counts Seven, Eight, and Ten
> of the Indictment.

*Id.* at 34 (emphasis added).

Moreover, during Amodeo's sentencing hearings before United States District Judge John

Antoon, II, Amodeo and his counsel confirmed in no uncertain terms that Amodeo intentionally

and knowingly committed criminal acts by misappropriating more than $170,000,000 in payroll

trust funds.[4]

---

[4]    On May 26, 2009, Amodeo was sentenced to, *inter alia*, 270 months of imprisonment and ordered to pay $181,810,518.66 in mandatory restitution to the IRS.  *See United States of America v. Frank L. Amodeo*, Case No. 6:08-cr-176-Orl-28GJK, U.S. District Court, Middle District of Florida, Orlando Division.

## STATEMENT OF UNDISPUTED FACTS

### *The Schemes to Hide the Misuse of Payroll Taxes:*
### *The PBS and Sunshine Companies Plans*

For the sake of this motion, the following facts are assumed true and taken directly from MVI's Second Amended Complaint.  In 2004 and 2005, various MVI and Amodeo related entities had significant obligations for the non-payment of federal employment payroll taxes.  *See* SAC, ¶¶ 10, 13, 19, 20.  A strategy was developed to deal with the federal employment tax problems wherein certain subsidiaries would be divested allowing the parent companies to separate themselves from the excessive liabilities associated with its subsidiaries and to continue to conduct business as a going concern.  *Id.* at ¶¶ 14-16, 19-21.  Specifically, a plan was devised that would allow Presidion Corporation ("Presidion") to deconsolidate its financials and separate itself from its subsidiaries', known as the Sunshine Companies, federal payroll tax liabilities (the "**Sunshine Companies Plan**").[5]  *Id.* at ¶¶ 10-16.  In order to further maximize the value of Presidion's assets, a reorganization plan was designed wherein MVI, and specifically AEM, Inc., a wholly owned MVI subsidiary, would acquire Professional Benefit Solutions, Inc. ("**PBS**"), another Presidion subsidiary, and cease payment of federal employment payroll taxes (the "**PBS Plan**").  *Id.* at ¶¶ 17-27.  In order for the PBS Plan to be accomplished, the Sunshine Companies Plan had to be finalized, drawing the PBS Plan and the Sunshine Companies Plan together.  *Id.* at ¶ 27.

---

[5]     The Sunshine Companies are: (1) Sunshine Staff Leasing, Inc.; (2) Sunshine Companies II, Inc.; (3) Sunshine Companies III, Inc.; and (4) Sunshine Companies IV, Inc.  *See* SAC, ¶ 11, n. 1.

### *Beyer and Saxon Gilmore Had Absolutely No Connection to the PBS Plan or the Sunshine Companies Plan and Did Not Even Know of Their Existence*

Despite Amodeo's admissions and sentencing, MVI claims that Beyer and Saxon Gilmore are responsible for the damages caused by Amodeo's (and MVI's) criminal misconduct.  Beyer has been an attorney since 1991, has never been disciplined by the Florida Bar, and has never been the subject of any other legal malpractice claims.  (Depo. Beyer 11:17-19; 50:4-9).  In February 2005, Beyer joined Saxon Gilmore, a full service business and litigation law firm; Beyer's specialty at the firm was corporate bankruptcy, insolvency, and workouts.  (Depo. Beyer 28:20-22).  In September 2005, while continuing to work for Saxon Gilmore, Beyer accepted employment with Common Paymaster Corporation, a MVI affiliate.  (Depo. Beyer 36:1-24).  Beyer resigned from Common Paymaster Corporation in December 2006 because he was no longer comfortable being an employee of a MVI-related entity after he learned of federal inquiries into MVI.  (Depo. Beyer 36:20-24; 154:17-21).

While it is true that Beyer became employed by a MVI affiliate, Beyer had no connection to the PBS Plan or the Sunshine Companies Plan and *did not even know of their existence* until after Beyer was served with the initial complaint in this matter.  (Depo. Beyer 11:20-12:10; 17:22-19:1).  In fact, Beyer never – in any capacity – provided advice to MVI, or any related person or entity, regarding payroll taxes or any other tax-related matter whatsoever, much less the advice that MVI did not need to pay payroll taxes or could borrow or manipulate funds set aside for payroll taxes in any way.  (Depo. Beyer 17:22-19:1; 22:13-23:19; 35:20-25; 84:22-85:4; 86:9-12; 101:11-21; 171:22-23; 172:15).

Similarly, while Beyer did refer matters relating to MVI or its affiliates to Saxon Gilmore from time to time, neither Beyer nor anyone else at Saxon Gilmore performed any legal work in

connection with the PBS Plan or the Sunshine Companies Plan or any other tax-related matter.[6] (Depo. Beyer 17:22-19:1; 22:13-23:19; 35:20-25; 37:20-40:3; 84:22-85:4; 86:9-12; 101:11-21; 171:22-23; 172:15). Rather, Saxon Gilmore represented MVI for specific engagements wholly unrelated to any of the matters alleged in the Second Amended Complaint.[7] Moreover, although Beyer remained employed by Saxon Gilmore, Beyer never provided *any legal advice* to MVI as a Saxon Gilmore attorney during Beyer's engagement with Common Paymaster Corporation. (Depo. Beyer 35:14-25).

### SUMMARY JUDGMENT STANDARD

"[T]he plain language of rule 56(c) **mandates** the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added). **"When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must 'go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.' "** *Id.* at 324-25; *Shurick v. Boeing Co.*, No. 6:07-cv-1974-Orl-31GJK, 2010 WL 258788 at *1 (M.D. Fla. Jan. 20, 2010).

---

[6]    Saxon Gilmore specifically identified the inherent potential for conflict with respect to such referrals to Frank Hailstones, the president of a MVI subsidiary, who acknowledged and waived in writing such potential conflicts. (Depo. Beyer 168:8-13).

[7]    Saxon Gilmore handled five matters for MVI, none of which were tax-related in any manner. Matter one related to the bankruptcy filing of Community Health Solutions of America, LLC; matter two involved acquiring bankruptcy claims in connection with the Senior Health Outreach bankruptcy; and matters three through five were small real estate related engagements. (Depo. Beyer 37:20-40:3).

Summary judgment is required against the non-moving party who does not make a showing sufficient to establish a genuine issue of fact for trial. *Celotex Corp.*, 477 at 322, 324-25; *Blickley v. Ford*, No. 6:08-cv-1866-Orl-31GJK, 2009 WL 4885024 at *1 (M.D. Fla. Dec. 14, 2009). The party opposing a motion for summary judgment must provide more than a mere "scintilla" of evidence to avoid summary judgment.[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Moreover, the non-moving party "must rely on more than conclusory statements or allegations unsupported by facts." *Williams v. U.S.*, No. 6:08-cv-1771-Orl-31GJK, 2009 WL 3200687 at *2 (M.D. Fla. Sept. 29, 2009); *see also Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"). Thus, if the nonmoving party's response consists of nothing "more than a repetition of [its] conclusional allegations," summary judgment is not only proper, but required. *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir.1981).

## LEGAL ARGUMENT AND ANALYSIS

MVI cannot point to any fact from which a jury could reasonably infer that Beyer or Saxon Gilmore provided advice in any capacity to MVI or its "subsidiaries and related companies" as to whether MVI could legally choose not to pay certain payroll taxes. Similarly, MVI cannot provide a causal link between any advice allegedly given by Beyer or Saxon Gilmore regarding the payment of payroll taxes and MVI's purported damages. Moreover, MVI

---

[8]     That is, by its very terms, Rule 56(e) provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 38 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *See, e.g., Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996) (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993)). It is "material" if it might affect the outcome of the case under the governing law. *See, e.g., Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

lacks standing to assert claims for alleged harm suffered by its unidentified "subsidiaries and related companies." As a result, each of MVI's interrelated claims fail as a matter of law and this Court must grant summary judgment in favor of Beyer and Saxon Gilmore.

### MVI is Unable To Meet Its Affirmative Proof Obligations On Its Substantive Claims Against Beyer and Saxon Gilmore

MVI improperly seeks to hold Beyer and Saxon Gilmore responsible for Amodeo's and MVI's misconduct. Each of MVI's claims are interrelated and premised on inaccurate and false facts that, even as alleged, are not of record. In Counts I and II of the Second Amended Complaint, MVI asserts legal malpractice and breach of fiduciary duty claims against Beyer and Saxon Gilmore, respectively. *See* SAC ¶¶ 55-66. Specifically, MVI alleges that Beyer and Saxon Gilmore, in connection with their attorney-client relationship with MVI, breached their purported legal and fiduciary duties to MVI, its subsidiaries and related companies, by virtue of their "failure to advise MVI, its subsidiaries and related companies that the Sunshine Companies Plan, PBS Plan and MVI's operations could result in criminal and civil liability for MVI, its subsidiaries and related companies." *Id.* at ¶¶ 61, 64, 65. Similarly, in Count III, MVI asserts a negligent misrepresentation claim and alleges that Beyer and Saxon Gilmore made negligent misrepresentations and omissions to MVI, its subsidiaries and related companies, "in connection with their legal representation of MVI's entities in deciding how to run and operate their business" (i.e., whether MVI, its subsidiaries and related companies, could properly opt not to pay payroll taxes). *Id.* at ¶¶ 69, 71. Finally, in Count IV, MVI asserts a negligent supervision claim against Saxon Gilmore because Saxon Gilmore purportedly failed to supervise Beyer's conduct and activities. *Id.* at ¶¶ 74-77.

Hence, MVI must prove each of the following facts in order to maintain any one of its claims: (1) MVI retained Beyer and Saxon Gilmore to provide legal advice as to whether MVI

could legally choose not to pay certain payroll taxes, (2) Beyer and Saxon Gilmore gave MVI

bad legal advice on this issue, (3) MVI opted not to pay payroll taxes based on that bad legal

advice, and (4) MVI was damaged as a result of receiving and following that bad legal advice.[9]

MVI cannot meet its affirmative obligations on each of its substantive claims against Beyer and

Saxon Gilmore because the uncontroverted record evidence reveals that:

> 1.  MVI never retained Beyer and Saxon Gilmore to render
>     advice as to payroll taxes.  (Depo. Beyer 17:22-19:1;
>     22:13-23:19;  35:20-25;  37:20-40:3;  84:22-85:4;  86:9-12;
>     101:11-21; 171:22-23; 172:15).
>
> 2.  Neither Beyer, nor anyone at Saxon Gilmore, ever provided
>     advice to MVI—or any related person or entity—regarding
>     payroll taxes or any other tax-related matter, much less the
>     advice that MVI did not need to pay payroll taxes or could
>     borrow or manipulate funds set aside for payroll taxes in
>     any way. (Depo. Beyer 17:22-19:1; 22:13-23:19; 35:20-25;

---

[9]     Under Florida law, a plaintiff bringing a legal malpractice claim must demonstrate: (1)
the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's
negligence resulted in and was the proximate cause of a loss suffered by the plaintiff. *USA
Interactive v. Dow Lohnes & Albertson, P.L.L.C.*, 328 F. Supp. 2d 1294, 1308 (M.D. Fla. 2004).

Similarly, a plaintiff bringing a fiduciary duty cause of action, under Florida law, must
prove: (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) that the breach of
the fiduciary duty resulted in and was the proximate cause of a loss suffered by the plaintiff. *Id.*

Likewise, to succeed in a claim for negligent misrepresentation, a plaintiff must
demonstrate that: (1) the defendant made a misrepresentation of material fact that he believed to
be true but which was in fact false; (2) the defendant was negligent in making the statement
because he should have known the representation was false; (3) the defendant intended to induce
the plaintiff to rely on the misrepresentation; and (4) injury resulted to the plaintiff acting in
justifiable reliance upon the misrepresentation. *Beale v. Biomet, Inc.*, 491 F. Supp. 2d 1360,
1374 (M.D. Fla. 2007) (*citing Romo v. Amedex Ins. Co.*, 930 So.2d 643, 653 (Fla. 3rd DCA
2006)).

And to prove negligent supervision, a plaintiff must demonstrate (1) the existence of a
relationship giving rise to a legal duty to supervise; (2) the negligent breach of that duty; and (3)
that the negligence was the proximate cause of plaintiff's injury. *Nationwide Mut. Co. v. Ft.
Myers Total Rehab Center, Inc.*, 657 F. Supp. 2d 1279, 1291 (M.D. Fla. 2009) (*citing Collins v.
Sch. Bd. of Broward County,* 471 So. 2d 560, 563 (Fla. 4th DCA 1985)).

37:20-40:3;  84:22-85:4;  86:9-12;  101:11-21;  171:22-23; 172:15).

3.   Consequently, to the extent MVI chose not to pay payroll taxes, or to borrow or manipulate funds set aside for the payment of payroll taxes, that choice could not have been the result of any legal advice, representation, or omission by Beyer or anyone else at Saxon Gilmore.

In short, MVI's claims lack evidentiary support.  There is simply no evidence in the record that Beyer and/or Saxon Gilmore ever were retained to, or ever did, render legal advice to MVI (or any subsidiaries or related companies) regarding payroll taxes or any other tax-related matter – a dispositive issue in each of MVI's claims for which MVI bears the burden of proof at trial.  Despite this burden, and the fact that this action has been pending for over sixteen (16) months, MVI's factual predicate is based exclusively on unsubstantiated conclusory allegations. In reality, Beyer did not even know of the existence of either the PBS Plan or the Sunshine Companies Plan until after he was served with the original complaint in this matter.  (Depo. Beyer 11:20-12:10; 17:22-19:1).[10]  As a result, MVI cannot meet its burden and judgment must be entered against MVI and in favor of Beyer and Saxon Gilmore.

### MVI's Telling Discovery Responses

Discovery has confirmed that MVI's claims lack factual support.  On October 1, 2009, Beyer served contention Interrogatories ("Interrogatories") and a Request for Production of Documents ("Document Requests") on MVI.  The Interrogatories and Document Requests targeted specific information supporting MVI's claims.  On December 18, 2009, MVI responded

---

[10]   As previously noted, Frank Amodeo, the real and admitted culprit, confessed in his Plea Agreement that he received correct advice regarding payment of payroll taxes and chose to disregard that advice.  *See* Ex. 1, pp. 26-37; *see also USA Interactive v. Dow Lohnes & Albertson, P.L.L.C.*, 328 F. Supp. 2d 1294, 1313-14 (M.D. Fla. 2004) (granting summary judgment on causation in favor of defendants on legal malpractice claim because plaintiff chose to proceed with conduct despite knowledge of consequences).

to the simple discovery requests.   MVI's responses, however, are devoid of any substantive information and thus further demonstrate MVI's inability to meet its affirmative proof obligations on each of its claims.   For example, interrogatory number one (1) and MVI's response are as follows:

Interrogatory One:

Identify and describe in detail all legal advice or opinions requested of Beyer that are the subject of this lawsuit.  To provide a meaningful answer to this interrogatory, for each request for legal advice of opinions, (1) identify the subject matter of the request, (2) describe the request, (3) state the date(s) on which the request was made, (4) state the means of communication of the request (i.e., in writing, via electronic communication, face to face (if so, identify the location), via telephone, etc.), and (5) identify the person(s) making the request

MVI's Response:

Plaintiff objects insofar as said request calls for work product. Without waiving said objection Plaintiff states that there are between 5000 and 6000 boxes of documents contained in a secured warehouse that Plaintiff will make available to Defendant. Plaintiff has provided Defendant with an index of the boxes and file servers.  There are also 20,000 hours of video.  There are 70 hard drives that Plaintiff has copied and will make available to Defendant.   Plaintiff is in the process of preparing an index to same which it will provide to Defendant.

MVI's responses to the basic Document Requests are equally deficient.   For example, document request number two (2) and MVI's response are as follows:

Document Request Two:

All documents that evidence legal advice or opinions provided by Beyer.

MVI's Response:

Plaintiff objects insofar as said request calls for work product. Without waiving said objection Plaintiff states that there are between 5000 and 6000 boxes of documents contained in a secured warehouse that Plaintiff will make available to Defendant.

> A copy of the index is attached hereto. There are also 20,000 hours of video. There are 70 hard drives that Plaintiff has copied and will make available to Defendant. Plaintiff is in the process of preparing an index to same which it will provide to Defendant. There has been no prior discovery in this case and Plaintiff has not isolated the "Beyer documents" from the voluminous other documents in this case.

MVI's answers to the discovery requests are tellingly unresponsive. The discovery requests seek the most basic factual information relating supporting MVI's claims that Beyer improperly advised MVI during the course of his alleged legal duties and employment with Saxon Gilmore. As a result, each of the discovery requests go to the very heart of MVI's claims. MVI's inability to identify the legal advice or opinions allegedly requested of, or allegedly provided by, Beyer reveals that MVI lacks *any* factual foundation required to maintain this action. Despite the facts that this litigation has been pending for over 16 months and MVI and its counsel have had ample time and access to all the available evidence underlying the events and transactions at issue, MVI has failed to produce even a scintilla of evidence supporting its claims.

### *MVI Has No Standing to Bring Any Claim on Behalf of Any Other Entity*

MVI improperly seeks damages incurred by non-parties. Counts I, II, III, and IV all specifically allege that "MVI, its subsidiaries and related companies have suffered damage to their business, property, including an allowed claim in bankruptcy against it in the sum of Two Hundred Million Dollars ($200,000,000), adverse tax consequences, including interest and penalties . . . ." *See* SAC, ¶¶ 62, 66, 72, 77. Each count also incorporates all the prior allegations regarding alleged harm suffered by "subsidiaries and related companies." *Id.* at ¶¶ 55, 63, 67, 73. However, these unidentified "subsidiaries and related companies" are not plaintiffs in this action and MVI has no standing to assert claims on their respective behalfs.

In *Am. Int'l Group. Inc. v Cornerstone Bus., Inc.*, 872 So. 2d 333 (Fla. 2d DCA 2004), the court recognized the basic principle of corporate law that a corporation and its subsidiaries are separate and distinct legal entities. The court explained:

> Furthermore, even though National Union is a wholly-owned subsidiary of AIG, this does not make the two corporations interchangeable for purposes of bringing or defending a lawsuit. *A parent corporation and its wholly-owned subsidiary are separate and distinct legal entities. Gladding Corp. v. Register*, 293 So.2d 729, 732 (Fla. 3d DCA 1974). As a separate legal entity, a parent corporation is not liable for torts committed by its subsidiary and cannot exercise the rights of its subsidiary. *Unijax, Inc. v. Factory Ins. Ass'n*, 328 So. 2d 448, 453-54 (Fla. 1st DCA 1976).

*Cornerstone*, 872 So. 2d at 336; *see also Whetstone Candy Co., Inc. v. Kraft Foods, Inc.*, 351 F.2d 1067, 1074 (11th Cir. 2003) (corporations are separate legal entities and contracts made by a parent corporation do not bind a subsidiary merely because one corporation owns all the stock of the other corporation).

The notion that a corporation and its subsidiaries are separate and distinct legal entities is not new or novel. Nor is the accompanying principle that a corporation has no standing to assert claims for damages to a subsidiary. In *Bingham v. Zolt*, 66 F.3d 553, 561 (2d Cir. 1995), the court explained that "The general principle [is] that a shareholder cannot sue in his individual capacity to redress wrongs inflicted upon a corporation in which he holds stock." *Accord, Stevens v. Lowder*, 643 F.2d 1078, 1080 (5th Cir. 1981) (stating that "[a]n action to redress injuries cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation.").[11] A subsidiary of MVI is simply a corporation in which MVI owns stock, maybe even all of the stock. As a fundamental

---

[11] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to September 30, 1981.

proposition of black letter corporate law, a shareholder does not have standing to assert claims for damage to a corporation simply because that shareholder owns an interest in that corporation. *See Checkers Drive-In Restaurants. Inc. v. Tampa Checkmate Food Services, Inc.,* 805 So. 2d 941 (Fla. 2d DCA 2001); *Alario v. Miller,* 354 So. 2d 925 (Fla. 2d DCA 1978). It makes no difference if the shareholder is also a corporation or if it owns all the stock in the injured corporation. The fact that one corporation owns all the stock of a subsidiary company does not erase the subsidiary's distinct and unique legal identity. *See Gladding Corp. v. Register*, 293 So. 2d 729, 732 (Fla. 3d DCA 1974).

## CONCLUSION

The uncontroverted record evidence demonstrates that neither Beyer nor anyone else at Saxon Gilmore ever provided legal advice to MVI, or any related person or entity, regarding payroll taxes or any other tax-related matter, much less the advice that MVI did not need to pay payroll taxes. MVI has failed to produce any semblance of evidence in support of its claims, despite Beyer's very specific contention interrogatories and requests for production requesting it to do so. As such, MVI is unable to meet its affirmative proof obligations on its substantive claims against Beyer and Saxon Gilmore. Moreover, MVI has no standing to bring any claim on behalf of any other entity. Accordingly, for the reasons stated herein, summary judgment is warranted in Beyer's and Saxon Gilmore's favor as a matter of law.

WHEREFORE, Beyer and Saxon Gilmore respectfully request the Court to enter summary judgment in their favor and against MVI on all claims in this action and grant such further relief as the Court deems just and proper.

Respectfully submitted,


s/Joseph H. Varner, III
Joseph H. Varner, III
*Trial Counsel*
Florida Bar No. 394904
joe.varner@hklaw.com
Justin L. Dees
Florida Bar No. 048033
justin.dees@hklaw.com
HOLLAND & KNIGHT LLP
P.O. Box 1288
Tampa, FL  33601-1288
(813) 227-8500
(813) 229-0134 (facsimile)
Attorneys for Saxon, Gilmore, Carraway,
& Gibbons,  P.A. and Hans C. Beyer

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _21st_ day of April, 2010, I electronically filed the

foregoing document with the Clerk of the Court by using CM/ECF system which will send a

notice of electronic filing to the following:

Robert C. Widman, Esq.                     Roy S. Kobert, Esq.
Widmor48@mwk-law.com                       rkobert@broadandcassel.com
Morris & Widman, P.A.                      Todd K. Norman, Esq.
245 N. Tamiami Trail, Suite E              tnorman@broadandcassel.com
Venice, FL 34285                           Broad and Cassel
PH:  941-484-0646                          390 North Orange Ave., Suite 1400
FX:  941-496-8870                          Orlando, FL 32801
                                           PH:  407-839-4200
Attorneys for Plaintiff                    Attorneys for Plaintiff


s/Joseph H. Varner, III
Attorney


# 9203846_v3