IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: MIRABILIS VENTURES, INC.
Bankruptcy Case No.: 6:08-Bk-4327-KSJ

Case No. 6:09-CV-1974-ORL-31DAB

MIRABILIS VENTURES, INC.

       Plaintiff,

v.

SAXON, GILMORE, CARRAWAY,
GIBBONS, LASH & WILCOX, P.A. and HANS
CHRISTIAN BEYER,

       Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS SAXON, GILMORE, CARRAWAY & GIBBONS, P.A.'S AND HANS C.
BEYER'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE
PLAINTIFFS' MOTION FOR A POSTPONEMENT OF RULING ON DEFENDANTS
SAXON, GILMORE, CARRAWAY & GIBBONS, P.A.'S  AND HANS C. BEYER'S
MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56(F), FEDERAL
<u>RULES OF CIVIL PROCEDURE</u>**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\***

COMES NOW the Plaintiff, MIRABILIS VENTURES, INC. ("MVI" or "Plaintiff"), by

and through its undersigned attorneys, and hereby files Plaintiff's Memorandum of Law in

Opposition to Defendants Saxon, Gilmore, Carraway & Gillbons P.A.'s and Hans C. Beyer's

(collectively referred to herein as "Defendants," and separately referred to herein as "Defendant

Saxon" and "Defendant Beyer", respectively) Motion for Summary, or, in the Alternative,

Motion for a Postponement of Ruling on Defendants Motion for Summary Judgment Pursuant to

Rule 56(f), Federal Rules of Civil Procedure.  Plaintiff requests that this Court enter an order

denying Defendants' Motion for Summary Judgment ("Motion") (Dkt. 22) for the reasons that there are genuine issues of material fact that exist, or that this Court postpone, continue, or stay a decision on Defendants' Motion pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. In support thereof, the undersigned would submit:

## I.    INTRODUCTION

Plaintiff filed a Second Amended Complaint (Dkt. 18, 21) asserting, *inter alia*, the following claims against Defendants:  Negligence (Count I); Breach of Fiduciary Duty (Count II); Negligent Misrepresentation (Count III), and asserting the following claim against Defendant Saxon only: Negligent Supervision (Count IV).    The Defendants basis for their Motion for Summary Judgment is that Plaintiff cannot meet its affirmative proof obligations on it substantive claims against Defendants.

As will be shown herein, and in the supporting affidavit of R.W. Cuthill, Jr., which is attached hereto as Exhibit "1", and which is incorporated herein by reference, genuine issues of material fact exist which preclude summary judgment in favor of the Defendants.  Furthermore, as will be shown herein, and in the supporting affidavit of Todd K. Norman, Esquire, which is attached hereto as Exhibit "2", and which is incorporated herein by reference, discovery is ongoing and the depositions of additional witness is likely to lead to additional discovery necessary to oppose the Motion and to rebut the Defendants' claim of the absence of a genuine issue of fact.

## II.   FACTS

Beyer has been attorney since 1991 and at all times relevant has been an attorney licensed to practice in the state of Florida.  See Beyer Deposition p. 49, l. 19-25 and Exhibit 10.

Beyer had been aware of the Sunshine Companies since the end of 2004 or early 2005

and that they were related to Presidion.  See Beyer Deposition p. 13, l. 7-24; p. 14, l. 4-10.  Beyer was also aware of Wellington Capital Group, Inc. since early 2005.  See Beyer Deposition p. 14, l. 19-21.  Beyer was also aware of outstanding payroll taxes by Presidion and at least two of the Sunshine Companies.  See Beyer Deposition p. 15, l. 7-12.

Beyer was a member of Saxon which provided legal services to MVI.  See Beyer Deposition p. 37, l. 16-25.  Beyer was contacted in late 2004 or early 2005 regarding representing one or more Presidion companies in bankruptcy and became aware of payroll tax issues.  See Beyer Deposition p. 20, l. 1-7.  Beyer knew that this was a fallback position in case a settlement with the Internal Revenue Service regarding the outstanding payroll taxes was unsuccessful.  See Beyer Deposition p. 20, l. 11-16.  Beyer also was involved in representing at least two of the Sunshine Companies in potential bankruptcies.  See Beyer Deposition p. 84, l. 1-4.  Prior to September, 2005, Beyer was involved with a bankruptcy involving Kingdom Vision Networks, Inc. ("KVN").  See Beyer Deposition p. 100, l. 19-22.

Beyer entered into an employment agreement regarding MVI in September, 2005.  See Beyer Deposition p. 36, l. 17-22; p. 98-99. l. 12-09.  Beyer was a senior vice president of MVI.  See Beyer Deposition p. 29, l. 5-21.  Beyer was also hired as a senior vice president and a director for Nexia Strategy Corporation, a wholly owned subsidiary of MVI.  See Beyer Deposition p. 37 l. 2-9; p. 57, l. 3-5.  Despite also being employed as an attorney with Saxon, Beyer was paid $200,000.00 per year pursuant to the employment agreement with MVI.  See Beyer Deposition p. 34, l. 5-6.  Beyer received $8,000.00 per month for being a director for Nexia.  See Beyer Deposition p. 61, l. 17-22.  Beyer reviewed MVI's financial records when he entered the employment agreement in September, 2005.  See Beyer Deposition p. 63-64, l. 13-11.

4834-7527-3222.1
43582/0005 KRR krr

A January 4, 2005 Memorandum regarding Sunshine Matter Timetable was sent to Beyer. See affidavit of R. W. Cuthill.[1] The Memorandum discusses legal actions regarding the Sunshine Companies Plan including dealing with the payroll tax issues which necessarily include the provision of legal analysis and services.

On February 14, 2005, Beyer received an e-mail regarding an internal legal strategy for Internal Revenue Service meeting related to payroll tax liabilities. See Affidavit of R. W. Cuthill and Exhibit "C" attached thereto. The e-mail states that in the meeting they will discuss certain tax obligations involving KVN which was in Chapter 11. In the e-mail, KVN was identified as "a good example of the type of project which Wellington Capital Group, Inc. will pursue in the future." Furthermore, the e-mail states that "our Model is to identify assets which have little or no ascertainable value within the existing enterprise. However, if these assets can be extracted and nurtured then these assets may have substantial value. The difficulty lies in extracting the assets without either being tainted by the prior entity or having the problems trial through." The e-mail goes on to state that "it is important to remember our willingness to utilize the bankruptcy laws give us leverage in implementing creative solutions. The Court can override tax law precedent and IRS regulations in the interest of both the creditors and debtor." The e-mail also cites case law involving a bankruptcy court's authority and case law involving the "responsible person." On February 15, 2005, Beyer sent an e-mail requesting additional retainers for legal services and the "new plans." See Beyer Deposition p. 77-78, l. 20-04 and Exhibit 16. On February 16, 2005 Beyer attended the meeting referenced in the e-mail. At this meeting the

---

[1] Although the Memorandum states that it was sent to Beyer, Beyer self-servingly claims that he has no recollection seeing it. See Beyer Deposition p. 89, l. 10-14. However e-mails also show that earlier versions of Memorandum were e-mailed to him. These e-mails are dated after a December 21, 2004 meeting outlining the plan. See Beyer Deposition Exhibit 19 and documents attached to the Affidavit of Cuthill as Exhibit "B". Further more, since the document doesn't mention MVI, he may not have searched for it. See Beyer Deposition, p. 90, l. 18-25.

parties discussed the effects of the KVN bankruptcy plan on tax claims in that matter. See Beyer Deposition p. 183, l. 8-16. At that same meeting there were also discussions of bigger issues regarding attempting to settle the bigger issues of tax liabilities of Presidion and the Sunshine Companies. See Beyer Deposition p. 183, l. 13-15.

In 2005, Beyer also provided legal research and legal services regarding bankruptcy reorganization. See Beyer Deposition Exhibit 15.

In December, 2005, Beyer again prepared documents and was providing legal services regarding a potential bankruptcy filing involving one of the Presidion entities. See Beyer Deposition p. 92, l. 1-20 and Exhibits 21 and 22. The schedules that were prepared by Saxon and sent by him reflected that the Sunshine Companies had been sold to Wellington for $500,000.00. See Beyer Deposition Exhibit 22.

On January 16, 2006, Beyer participated in a meeting wherein he took handwritten notes. See Beyer Deposition p. 117, l. 10-14 and Exhibit 27. As can be seen in the two pages of notes, the meeting involved a variety of legal issues including security liens, tax obligations and liens, payroll taxes due, tax liability of Presidion Solutions, preserving books of business, RICO claims, offers to the IRS, ability of IRS to collapse the Presidion structure, avoidable transfers, and whether the United States trustee has standing to investigate fraudulent transfers. See Beyer Deposition Exhibit 27. Beyer also participated in a meeting with Dan Myers wherein different transactions are discussed, including the purchase of the Sunshine Companies to Wellington Capital, the sale of Presidion Solutions stock to Wellington, and the purchase of Presidion's book of business to AEM. See Beyer Deposition p. 124-28, l. 21-04 and Exhibit 27. Beyer's notes at this meeting show that Beyer had actual knowledge of the approximately $126 million liability in missing pay roll taxes at least by January 16, 2006.

4834-7527-3222.1
43582/0005 KRR krr

Beyer authored the MN/Presidion Solutions, Inc. Analysis of Certain Transactions which contains a detailed listing of relevant corporate entities, bankruptcy documents, IRS documents, and other relevant documents.  See Beyer Deposition p. 104, l. 15-21 and Exhibit 24.  The document was last updated by Beyer on January 23, 2006.  See Beyer Deposition pg. 106, l. 11-15.

On January 16, 2006 Beyer authored a Confidential Memorandum listing all entities and people relevant to transactions including tax liabilities.[2]  See Beyer Deposition p. 159, l. 1-8 and Exhibit 54A.  On April 20, 2006, Beyer updated the Confidential Memorandum in order to assist Mr. Amodeo in his negotiations with the Internal Revenue Service regarding the legacy tax problems.  The Confidential Memorandum includes the listing of numerous entities, the status of the entities, and the potential tax liabilities of the entities.  See Beyer Deposition p. 154-55, l. 24-13 and Exhibit 54.

On January 16, 2006 Beyer authored a Confidential Memorandum regarding tasks and open issues for MVI and Presidion.  See Beyer Deposition p. 160, l. 3-7 and Exhibit 54B.  The Confidential Memorandum states documents and information needed and mentions legal and accounting issues such as priority of tax liabilities, RICO claims, ability of the United States trustee to investigate fraudulent transfer claims, and the ability to collapse the corporate structure.  See Beyer Deposition Exhibit 54B.

On March 9, 2006, Beyer participated a meeting regarding the "restructuring of Mirabilis."  See Beyer Deposition p. 149, l. 6-9 and Exhibit 42.

---

[2]  In his deposition, Beyer stated that he was not aware that Professional Benefits Solutions, Inc. is also called Presidion Solutions VII.  See Beyer Deposition p. 19, l. 9-12. However the Confidential Memorandum authored by Beyer clearly states that Professional Solutions, Inc. is also known as Presidion Solutions VII.  Further, while the confidentiality Beyer refers to in titling the document a "Confidential Memorandum" is vague, form the description in the memorandum it can reasonably be read to include the attorney client privilege.

4834-7527-3222.1
43582/0005 KRR krr

On April 20, 2006, Beyer participated in a second meeting with the Internal Revenue Service regarding payroll tax issues. See Beyer Deposition p. 185, l. 3-16.

On May 8, 2006 Beyer authored a Confidential Memorandum regarding bankruptcy issue involving Community Heath Solutions of America, LLC including testimony, issues to be raised at hearing, and effect of defaults with MVI. See Beyer Deposition p. 152, l. 10-12 and Exhibit 46.

In June 2006, Beyer made extensive changes to a letter from Mr. Amodeo to Ms Berkowitz with the Internal Revenue Services. See Beyer Deposition p. 128, l. 10-22 and Exhibit 28. Beyer also helped revise the draft narrative of Presidion that was to be used in preparation for discussions with the Internal Revenue Service regarding the payroll tax issues. See Beyer Deposition p. 173, l. 10-23 and Exhibit 76.

Beyer attended a mock deposition of Mr. Amodeo wherein Mr. Amodeo was preparing for a meeting with the Internal Revenue Services and a variety of tax issues were discussed including the payroll tax issues with the Sunshine Companies. See Beyer Deposition p. 135, l. 7-12 and Exhibit 32. During the mock deposition attended by Beyer, Mr. Amodeo detailed the plan to rehabilitate certain companies, including the decision not to pay payroll taxes to operate the businesses. See Beyer Deposition Exhibit 32 at p. 78-79, l. 7-8; p. 80, l. 8-13; p. 86-7 l. 20-25.[3] Despite becoming aware of this plan and the decision to fail to pay payroll taxes in order to operate the business, Beyer did not notify MVI's board of direction or take any action whatsoever.

## III.   STANDARD FOR SUMMARY JUDGMENT AND APPLICABILITY OF RULE 56(F), FEDERAL RULES OF CIVIL PROCEDURE

---

[3] Beyer claims that he was unaware of any decision to stop paying payroll taxes. See Beyer Deposition p. 23, l. 7-19. This is not accurate.

4834-7527-3222.1
43582/0005 KRR krr

As Defendants admit, Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper only where "there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law." Summary judgment is a lethal weapon to be applied with caution "to ensure only those cases devoid of any need for factual determinations are disposed of by summary judgment." Tippens v. Celotex Corp., 805 F.2d 949, 952-953 (11th Cir. 1986); See also, Useden v. Acker, 947 F.2d 1563, 1573 (11th Cir. 1991) *cert. denied sub. nom.* Useden v. Greenberg et al., 508 US 959 (1992); Brunswick Corp. v. Vineberg, 370 F.2d 605, 612 (5th Cir. 1967). As the movant, Defendants bear the initial burden of demonstrating that the pleadings and discovery responses show that there is a complete absence of evidence to support Plaintiffs' causes of action. Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986); Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 918 (11th Cir. 1993). The Court is not to weigh the credibility of competing evidence if such evidence is competent, but instead must determine that there is no genuine issue of material fact remaining to be decided. Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); See also, Mize v. Jefferson City Bd. of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Summary judgment is an extreme remedy which should not be granted, unless the moving party has established his right beyond controversy." United States of America v. Feinstein et al., 717 F.Supp. 1552, 1555 (S.D. Fla. 1989). In assessing whether the movant has met its burden, the district court must review the evidence and all factual interferences drawn therefrom in the light most favorable to the non-moving party. Harrison, 9 F.3d at 918 (citing Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833

-8-

F.2d 1525, 1528 (11th Cir. 1987)).    If the moving party fails to meet its initial burden of identifying the basis of its motion and identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact, then the non-moving party has no obligation to present an evidentiary basis which demonstrates the existence of a genuine issue of material fact.  If, however, the moving party does meet its initial burden, the non-moving party must present an evidentiary basis such that a reasonable jury could return a verdict for the non-moving party.

Plaintiff argues that Defendants have failed to carry their initial burden in connection with their Motion for Summary Judgment.  Furthermore, Plaintiff notes that where a case involves complex issues of fact and difficult questions of law, summary judgment should be sparingly, cautiously and slowly employed.  S.J. Groves & Sons Co. v. Ohio Turnpike Commission, 315 F.2d 235, 237 (6th Cir. 1963); Tee-Pak, Inc. v. St. Regis Paper Co., 491 F.2d 1193, 1195-1196 (6th Cir. 1974); Giordano v. McKeone, 434 F.2d 1227, 1230 (8th Cir. 1970); Miller v. General Outdoor Advertising, 337 F.2d 944, 948 (2nd Cir. 1964).

However, to the extent that this Court finds that Defendants' have met their initial burden and that Plaintiff has not presented an evidentiary basis such a reasonable jury could return a verdict for Plaintiff, Plaintiff seeks to employ Federal Rule of Civil Procedure 56(f).  A party opposing summary judgment is responsible for informing the court of any outstanding discovery. Cowan v. J.C. Penney Co., 790 F.2d 1529, 1530 (11th Cir. 1986) (per curiam).  Federal Rule of Civil Procedure 56(f) was designed and crafted with the purpose of allowing a party opposing summary judgment to inform the court of any outstanding discovery.  Bevan v. Durling, 243 Fed. Appx. 458, 463 (11th Cir. 2007).  Rule 56(f) states:

> Should it appear from the affidavits of a party opposing the
> motion that the party cannot for reasons stated present by

> affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f).  The party seeking to use rule 56(f) "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts," but rather he must specifically demonstrate "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact."  See Wallace v. Brownell Pontiac-GMC Co., 703 F.2d 525, 527 (11th Cir. 1983) (quoting SEC v. Spence & Green Chem. Co., 612 F.2d 896 (5th Cir. 1980)).

The protective afforded by Federal Rule of Civil Procedure 56(f) is an "alternative to a response in opposition to summary judgment under 56(w) and is designed to safeguard against a premature or improvident grant of summary judgment."  Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 833 (10th Cir. 1986) (quoting 10A Wright, Miller & Kane, Federal Practices and Procedure Section 2740 (1983)).  Discovery is strongly favored and generally denying the right to have full discovery on all pertinent issues before a summary judgment is granted would be error, particularly in the face of a Rule 56(f) affidavit.  Miller v. United States Department of Transportation, 710 F.2d 656, 666 (10th Cir. 1983).

Consistent with its underlying policy, courts treat Rule 56(f) motions and affidavits liberally.  "Unless dilatory or lacking ill merit, the motion should be liberally treated."  Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1521-22 (quoting James W. Moore & Jeremy C. Vicker, Moore's Federal Practice 56.24 (1988)).  The Eleventh Circuit has recognized that summary judgment should no be granted until the nonmoving party has had an

-10-

adequate opportunity for discovery.  <u>Snook v. Trust Company of Georgia Bank of Savannah,</u> <u>N.A., 859 F.2d 865, 870</u> (11th Cir. 1988).

As provided herein, Plaintiff specifically demonstrates how postponement of a ruling on the motion will enable Plaintiff to rebut the movant's showing of the absence of a genuine issue of fact.  It must be noted that in accordance with Federal Rule of Civil Procedure 56(f)(1) – (3), this court may deny the Defendants' Motion, order a continuance to enable depositions or other discovery to be undertaken, or issue any other just order.

Plaintiff has yet to take the deposition of Beyer's supervisor at Saxon.  This discovery is imperative to show that Saxon did not adequately supervise Beyer while Beyer was providing legal services to MVI regarding MVI and its related entities.  Furthermore, Plaintiff has yet to take the deposition of the other attorneys that provided legal services to MVI and its related entities. This discovery is necessary to establish the scope of the work performed for MVI by Saxon and Beyer during their representation of MVI and its related entities.  Finally, it is necessary to obtain documents from both Saxon and Beyer regarding their representation of MVI and its related entities.  This documentation is necessary to show how Saxon and Beyer were helping to implement a strategy regarding MVI and its related entities in avoiding or minimizing the payroll tax liability to MVI through a concerted and coordinated plan.  The above discovery is likely to shed additional light as to the legal services provided by both Beyer and Saxon for MVI and its related entities.

## III.   OPPOSITION TO DEFENDANTS' LEGAL ARGUMENTS IN THEIR MOTION REGARDING LACK OF ISSUES OF MATERIAL FACT

### a.   Defendants assert that MVI is Unable to Meets its Affirmative Proof Obligations on its Substantive Claims against Defendants

As provided above, Plaintiff filed a Second Amended Complaint (Dkt. 18, 21) asserting,

*inter alia*, the following claims against Defendants:  Negligence (Count I); Breach of Fiduciary Duty (Count II); Negligent Misrepresentation (Count III), and asserting the following claim against Defendant Saxon only: Negligent Supervision (Count IV).  The Defendants basis for their Motion for Summary Judgment is that Plaintiff cannot meet its affirmative proof obligations on it substantive claims against Defendants.  In support of Defendants' claim that Plaintiff cannot meet its affirmative proof obligations, Defendants, in their Motion, specifically and simply cite to Defendant Beyer's own deposition and his self-serving statements that MVI never retained Beyer and Saxon to render advice and that neither Defendant Beyer, nor anyone at Saxon, ever provided advice to MVI, or any related person or entity, regarding payroll taxes or any other tax-related matter, much less the advice that MVI did not need to pay payroll taxes or could borrow or manipulate funds set aside for payroll taxes in any way.  See page 10 of Motion, citing Depo. Beyer 17:22-19:1; 22:13-23:19; 35:20-25; 37:20-40.3; 84:22-85:4; 86:9-12; 101:11-21; 171:22-23; 172:15).

Under Florida law, the existence of an attorney-client relationship is a question of fact. See Goldman v. Bracewell & Giuliani, L.L.P., 2005 U.S. Dist LEXIS 23503 (M. D. Fla. 2005). The test as to whether the relationship exists is based on the client's reasonable subjective belief that it is consulting an attorney in his legal capacity with the intention of seeking professional legal advice.  Id.  In the instant matter, Defendants' self-serving claim that they were not providing legal advice is immaterial as to whether an attorney-client relationship existed.  The test is whether the Plaintiff subjective believed it was consulting an attorney for legal advice.  In the instant matter a review of the documents show that the Plaintiff was consulting with the Defendants regarding legal issues involving the payroll tax liability.

Essentially, Defendants, in their Motion, are arguing that they are entitled to Summary

Judgment because Defendant Beyer has made self-serving statements in a deposition that contradict Plaintiff's allegations in the Second Amended Complaint. However, these statements are completely contradicted by the documents attached to Beyer's Deposition. It is undisputed that Beyer was a practicing attorney during all relevant times. Beyer was employed as an attorney at Saxon during his employment with MVI as a senior vice president and director of Nexia. Beyer provided legal services regarding the bankruptcy filings and potential bankruptcy filings of multiple entities, including at least two of the Sunshine Companies, and admits that early on he knew of the payroll tax issues and that the bankruptcies were a "fall back" position. Beyer also participated in at least two meetings with the Internal Revenue Service wherein the payroll tax liabilities were extensively discussed. Prior to the first meeting, Beyer was provided an internal legal strategy e-mail which detailed the strategy of dealing with the payroll tax issue and outlined that this was the "model" that was going to be used to deal with the payroll tax liability and included case citations involving a bankruptcy court's authority and outlining "responsible person" standards. During the first meeting payroll liability of Presidion and the Sunshine Companies were discussed. Furthermore, during the second meeting payroll tax issues were also discussed. It strains credibility that even though an attorney Beyer provided no legal services when he was preparing for and attending meetings with the Internal Revenue Service when tax liability and payroll taxes were the topic.

Beyer also participated in internal meeting wherein the tax liabilities of the various entities were discussed. Beyer participated in a meeting wherein a variety of legal issues was discussed including security liens, tax obligations and liens, payroll taxes due, attempting to preserve books of business, ability of the Internal Revenue Service to collapse corporate structures, avoidable transfers, and ability of the United States trustee to investigate fraudulent

-13-

transfers.   Beyer also participated in meetings wherein different internal strategies were discussed including the purchase of the Sunshine Companies and Presidion Solutions to Wellington and the "restructuring" of MVI.   All of these issues involve significant legal questions and consequences to MVI.

Not only did Beyer participate in meetings with the Internal Revenue Service where payroll tax liabilities were discussed and in internal meetings where legal issues involving the tax issues and restructuring of various entities were discussed, Beyer authored several "confidential" memorandums regarding the Sunshine Companies and different related entities of MVI.   Beyer authored a Confidential Memorandum wherein he set out all of the relevant entities and transactions including the tax liabilities of the entities.    He authored the Confidential Memorandum to assist Mr. Amodeo in the negotiations with the Internal Revenue Services regarding the payroll tax issues of the entities.   Beyer also authored an MN/Presidion Solutions, Inc. Analysis of Certain Transactions wherein Beyer details the relevant corporate entities and relevant documents, including relevant bankruptcy and Internal Revenue Service documents. Beyer authored another Confidential Memorandum outlining different tasks and issues involving MVI and Presidion tax liabilities.   The Confidential Memorandum specifically lists documents and information needed and addresses legal and accounting issues including priority of tax liabilities, RICO claims, ability of the United States trustee to investigate fraudulent transfer claims and the ability to collapse the corporate structure.

As outlined above, Beyer participated in numerous activities involving the entities payroll tax liabilities and strategies to deal with the tax liabilities.   Beyer participated in meetings with the Internal Revenue Service wherein discussing payroll tax liabilities were the purpose of the meetings.   Beyer participated in internal meetings and authored "confidential" memoranda

-14-

wherein payroll tax liabilities were discussed and strategies dealing with the liabilities were discussed.   These meetings and memoranda all deal in detail issues that have extensive legal consequences to MVI and its related entities.   It strains credibility that Beyer, a practicing attorney throughout this time period, can claim through self serving statements that Beyer did not provide any legal services.   Not only can you draw an inference that Beyer provided legal services regarding the tax liabilities and strategies that could be utilized to avoid the liabilities, it seems highly likely that he did.   This is certainly more than enough to raise a material issue of genuine fact.

Furthermore, it must be noted that MVI and counsel for MVI have identified additional witnesses that may be deposed or which will provide specific testimony at trial establishing that Defendants provided legal advice to MVI, that Defendants gave MVI bad legal advice on the issue, that MVI opted not to pay payroll taxes based, at lease in part, on that bad legal advice, and that MVI was damaged as a result of receiving and following that bad legal advice. Pursuant to the Case Management and Scheduling Order entered by the Court on December 9, 2009 (Dkt. 17), the discovery deadline is August 16, 2010, and the trial term begins February 1, 2011. Ruling on Defendants' motion at this time would be premature.

**b.** **Defendants assert that MVI has No Standing to Bring Any Claim on Behalf of Any Other Entity**

According to the Defendants, MVI is improperly seeking to recover damages incurred by non-parties.  See pages 13 – 15 of Motion.  Specifically, Defendants allege that Counts I, II, III, and IV all allege that "MVI, its subsidiaries and related companies have suffered damage to their business, property, including an allowed claim in bankruptcy against it in the sum of Two Hundred Million Dollars ($200,000,000), adverse tax consequences, including interests and penalties . . . ." See page 13 of Motion, citing Second Amended Complaint pargaraphs 62, 66,

-15-

72, 77. Defendants note that each count also incorporates all the proper allegations regarding the alleged harm suffered by "subsidiaries and related companies." other companies. See id., citing Second Amended Complaint paragraphs 55, 63, 67, 73. However, despite Defendants arguments, a review of the Second Amended Complaint shows that although MVI refers to harms suffered by affiliates and subsidiaries, there are no counts in which it is seeking to recover for such harm. For example, in Count I – the negligence count – MVI provides and the *ad damnum* clause of that count seeks only "the amount of principal damages incurred by MVI due to Defendants' actions". (Dkt. 18, page 11 of 67). There is no demand for recovery of damages incurred by any other party in that count, or any of the other counts in which damages are sought. Accordingly, Defendant's arguments in their Motion regarding lack of standing are without merit and do not in any manner provide support or a basis for granting of Defendants' Motion.

## IV.    LEGAL ARGUMENT SUMMARY AND CONCLUSION

As provided above, the documents attached to Beyer's deposition highlight the legal services provided by Beyer and Saxon during the relevant times. The documents make it highly likely that Beyer and Saxon provided legal services regarding the payroll tax liabilities and the strategy to be utilized by MVI and its related entities to manage these liabilities. It is through these strategies that MVI incurred damages that Beyer and Saxon are to be held accountable. Accordingly, Plaintiff has established that there are disputed issues of material fact remaining to be decided. Specifically, Plaintiff argues that these genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-moving party, the Plaintiff.

Furthermore, to the extent that the Court finds that Defendants' have met their initial burden and that Plaintiff has not presented an evidentiary basis such a reasonable jury could

4834-7527-3222.1
43582/0005 KRR krr

return a verdict for Plaintiff, Plaintiff seeks to employ Federal Rule of Civil Procedure 56(f).  As provided herein in incorporated Exhibit 2, Affidavit of Todd K. Norman, Esquire, counsel for MVI have identified additional witnesses that may be deposed or which will provide specific testimony at trial establishing that Defendants provided legal advice to MVI, that Defendants gave MVI bad legal advice on the payroll tax issue, that MVI relied on the advice, and that MVI was damaged as a result of receiving and following that bad legal advice. Plaintiff has accordingly specifically demonstrated how postponement of a ruling on the Motion will enable Plaintiff to rebut the Defendants' alleged showing of the absence of a genuine issue of fact.  It must be noted that in accordance with Federal Rule of Civil Procedure 56(f)(1) – (3), this court may deny the Defendants' Motion, order a continuance to enable depositions or other discovery to be undertaken, or issue any other just order.

Based on the foregoing, Defendants' Motion for Summary Judgment should be denied, or if necessary, a decision on Defendants' Motion should be postponed.

/s/TODD K. NORMAN
Todd K. Norman
Florida Bar No.:  62154
tnorman@broadandcassel.com
**BROAD AND CASSEL**
390 N. Orange Ave., Suite 1400
Orlando, FL  32801
Phone: 407-839-4200
Fax: 407-425-8377

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2010 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to the following:

Joseph H. Varner, III
Trial Counsel
Florida Bar No. 394904

4834-7527-3222.1
43582/0005 KRR krr

Joe.varner@hklaw.com
Holland & Knight LLP
P.O. Box 1288
Tampa, Florida 33601-1288

Justin L. Dees
Florida Bar No. 048033
Justin.dees@hklaw.com
Holland & Knight LLP
P.O. Box 1288
Tampa, Florida 33601-1288

/s/ Todd K. Norman

4834-7527-3222.1
43582/0005 KRR krr

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: MIRABILIS VENTURES, INC.                    Case No. 6:09-CV-1974-ORL-31DAB
Bankruptcy Case No.: 6:08-Bk-4327-KSJ

_____

MIRABILIS VENTURES, INC.

     Plaintiff,

v.

SAXON, GILMORE, CARRAWAY,
GIBBONS, LASH & WILCOX, P.A. and HANS
CHRISTIAN BEYER,

     Defendants.

_____

## AFFIDAVIT OF R.W. CUTHILL JR.

STATE OF FLORIDA

COUNTY OF ORANGE

     R.W. Cuthill Jr., after first being duly sworn, states under oath *as* follows:

     1.    My name is R. W. Cuthill, Jr.  I am a forensic consultant and also have been appointed as a Bankruptcy Trustee, examiner, chief restructuring officer and other appointments in the Middle District of Florida. My offices are at 341 North Maitland Avenue, Suite 210, Maitland, FL 32751.

     2.    I am President of Mirabilis Ventures, Inc. ("Mirabilis"). I was employed as President on May 27, 2008. My job is to identify, recover and distribute the assets of Mirabilis



EXHIBIT

1

during its Chapter 11 reorganization. Mirabilis filed Chapter 11 in the Middle District of Florida on May 27, 2008.

3.      I am the custodian of records for Mirabilis and am familiar with corporate books, records and financial transactions of Mirabilis.

4.      On or about January 4, 2005 Memorandum regarding Sunshine Matter Timetable was drafted and shows a copy being sent to Beyer. A copy of the Memorandum is attached hereto as Exhibit "A." The e-mail attached hereto as Exhibit "B" states that a memorandum regarding the Sunshine matter timetable was sent to Beyer. These documents were made at the times stated in the documents by a person with knowledge. These documents are of the type that are kept in the course of Plaintiff's regularly conducted business. It was the regular practice of Plaintiff to make these types of documents.

5.      On February 14, 2005, Beyer was sent an e-mail regarding an internal legal strategy for Internal Revenue Service meeting related to payroll tax liabilities. A copy of the e-mail is attached hereto as Exhibit "C." This document was made at the time stated by a person with knowledge. This document is of the type that is kept in the course of Plaintiff's regularly conducted business. It was the regular practice of Plaintiff to make this type of document.

**FURTHER AFFIANT SAYS NAUGHT.**

DATED this _24^{TH}_ day of May, 2010.

_____
R.W. Cuthill Jr.

STATE OF FLORIDA

COUNTY OF ORANGE

    Sworn and subscribed before me this 24th day of May                , 2010,  by
R.W. Cuthill Jr           as President of Mirabilis, who is <u>personally known</u> to me or has
produced _____ as identification.



_Brenda Kitch_____
Notary Signature
My Commission Expires: 11/15/2012

BRENDA KITCH
MY COMMISSION # DD824621
EXPIRES: November 15, 2012

010405

**MEMORANDUM**

TO: RICHARD BERMAN, ESQ.

FROM: FRANK AMODEO

SUBJECT: SUNSHINE COMPANIES

DATE:     1/4/2005

PRIVILEGED TO: LAURIE HOLTZ, MATTHEW DRUCKMAN, A. KENNETH LEVINE, SHARMILA
          KHANORKAR, MORRIS HOLLANDER, DAVID APPEL, HANS BEYER, ESQ., EDIE
          BROADHEAD, ESQ., CHARLES RAHN

<u>Sunshine Matter Timetable</u>

I.       Acquisition of Sunshine Companies - twelve midnight, Friday, December 31,
         2004.

II.      1.  Meeting of shareholders and directors of Sunshine Companies Monday,
             January 3, 2005 in Orlando, Florida.

             -  Elect new officers and directors
             -  Authorize employment of professionals
             -  Ratify Presidion/Wellington transactions

         2.  Meet with Rahn to plan logistics of obtaining and preserving Sunshine
             books and records.

III.     1.  Meeting with Hans Beyer, Chris O'Connor and Shane Williams on January
             6, 2005 at Miami Gardens office to prepare bankruptcy schedules --
             emergency petition prepared and primed for filing. Plus, first day motions
             and brief in support of "stay-expansion".

         2.  Richard Berman to contact U.S. Attorney's office to schedule a meeting
             with appropriate persons in Miami and Detroit for myself and Edie.

         3.  Jose Marrero to contact IRS: Criminal Investigation Division and inform
             them of change of ownership at Sunshine Cos. and change of control at
             Presidion and schedule meeting with myself and Edie.

         4.  Ken Levine to contact Florida Department of Insurance and notify them of
             Sunshine change of ownership and Presidion change of control; schedule
             meeting if needed.


EXHIBIT

A

010405

5. Matt Druckman, Sharmila Khanorkar, and RCH forensic team to plan schedule of reviewing all Sunshine transactions and corporate governance documents to comply with bankruptcy disclosure issues and identify avoidable conveyances.

6. David Appel to review Sunshine Tax Returns for accuracy and compliance – make recommendations.

7. Morris Hollander to review SEC filings by Presidion to insure accuracy, especially of Sunshine transactions.

8. Morris Hollander and Matt Druckman to review financial statements of Sunshine for issues and amendments.

IV.   Laurie/Richard, please select someone to contact IRS civil enforcement level who can get us to a high enough ranked individual to have a serious discussion about receiving an expeditious final assessment and can talk intelligently about the advantages of a confidential offer-in-compromise; mutually agreed upon as opposed to an imposed resolution in bankruptcy court. This meeting should be after CID and US Attorney, but otherwise in late January or early February.


Frank Amodeo
[Dictated but not reviewed]


Craig:

– the final payroll period for Sunshine, I assume, is going to be through 12/31/04. Confirm these will be included on the current year's W2, but only so long as the checks are issued by Friday; otherwise they will be included on either Paradigm or PBS for next year.

**From:** shane [shane@matrixnetwork.net]
**Sent:** Wednesday, December 29, 2004 11:34 AM
**To:** 'Druckman, Matthew E. (x2110)'
**Cc:** Laurie S. Holtz (lholtz@rachlin.com)
**Subject:** RE: Sunshine Companies

Hi Matt,

Frank said not to worry about it this week. We will let you know as soon as we finish with the meeting on Jan. 3rd.

Also, Frank would like you and Laurie to take a look at the e-mails you should be receiving from Dan Myers and Tessah Ivey.

Thanks,
Shane
(321) 947-9797

-----Original Message-----
**From:** Druckman, Matthew E. (x2110) [mailto:MDruckman@rachlin.com]
**Sent:** Wednesday, December 29, 2004 9:54 AM
**To:** Richard Berman
**Cc:** Ken Levine; Holtz, Laurie S. (x1007); Hollander, Morrie I. (x1019); Khanorkar, Sharmila R. (x1142); Hans Christian Beyer; ediebroadhead; Appel, David S. (x1031); Charles Rahn; shane
**Subject:** RE: Sunshine Companies

Richard:

I will await instructions from you (or Shane, Charles Rahn, or Edie Broadhead) regarding when and where the books and records will be available for the forensic review. Please let me know as soon as possible after the meeting of January 3. If Charles needs any IT support, please advise as soon as possible.

I am out of the office, but will continue to check emails during the remainder of this week.

Matt Druckman

**From:** Charles Rahn [mailto:charles@averyprivateeye.com]
**Sent:** Tuesday, December 28, 2004 5:39 PM
**To:** shane; Richard Berman
**Cc:** Ken Levine; Holtz, Laurie S. (x1007); Druckman, Matthew E. (x2110); Hollander, Morrie I. (x1019); Khanorkar, Sharmila R. (x1142); Hans Christian Beyer; 'ediebroadhead'; Appel, David S. (x1031)
**Subject:** Re: Sunshine Companies

Got it.

What time will the meeting commence on Monday?

Thanks,

Charles

----- Original Message -----


EXHIBIT
tabbies

010405

**From:** shane
**To:** Richard Berman
**Cc:** Ken Levine ; Laurie S. Holtz ; Matthew E. Druckman ; Morris I. Hollander ; Sharmila Khanorkar ; Hans Christian Beyer ; 'ediebroadhead' ; Charles Rahn ; dappel@rachlin.com
**Sent:** Tuesday, December 28, 2004 5:27 PM
**Subject:** Sunshine Companies

Please find Sunshine matter timetable memo from Frank Amodeo attached.

Thanks,
Shane Williams
AQMI Strategy Corporation

No virus found in this incoming message.
Checked by AVG Anti-Virus.
Version: 7.0.298 / Virus Database: 265.6.5 - Release Date: 12/26/2004

8/9/2007

**From:** tessah
**Sent:** Feb 14, 2005
**To:** Hans Christian Beyer; Richard E. Berman; Laurie S. Holtz (lholtz@rachlin.com); (Druckman@rchcpa.com); Marrero, Jose (x6610)
**Cc:**
**Bcc:**
**Subject:** IRS meeting on Wednesday February 16, 2005

Gentlemen:

This memo is meant to clarify the approach and purpose of our meeting with the IRS on Wednesday. Please do not hesitate to forward any concerns, ideas or questions.

The impetus for the meeting is to discuss certain payroll tax obligations arising from Kingdom Vision Networks, Inc. (KVN). KVN is currently in Chapter 11. KVN is a good example of the type of project which Wellington Capital Group, Inc. will pursue in the future although it is not a "perfect" example since it was postured wrong in the beginning.

KVN was originally brought to my attention in October 2003. A group of KVN creditors approached an attorney in Orlando who referred the case to me. At this time the creditors were planning to recapitalize the business and reorganize KVN along parallel liens: a family friendly broadcast network.

A preliminary discussion took place and then the case went dormant for a couple of months. The creditors then renewed discussions along a different approach. None of these approaches worked because the capital investment was too high.

In or about January 2004 the creditors wanted an alternative solution which I designed and the creditors paid for KVN to retain Matrix to implement the strategy.

Before the engagement KVN ceased active business, closed all accounts and terminated employees. KVN was left with no liquid and few tangible assets. The only "asset" was intangible and speculative. The actual value of the asset is still uncertain and depends exclusively on confirmation of the plan. The plan calls for treating all creditors and interest (shareholders) holders the same and has the potential for a 100% payout. This includes the government.



Our discussion on Wednesday is to assure the IRS our relationship with the IRS need not be adversarial. We shall provide the IRS with all needed information concerning the individuals who may be considered "responsible persons" within the statute and any other information the IRS needs.

Also we should point out that to the extent a responsible person pays the service in cash, that person should be entitled to receive as a substitute the IRS's distribution from the Chapter 11. This should make it more palatable for the individuals to promptly pay the § 6672 penalty.

In each of these situations our Model is to identify assets which have little or no ascertainable value within the existing enterprise. However, if these assets can be extracted and nurtured then these assets may have substantial value. The difficulty lies in extracting the assets without either being tainted by the prior entity or having the problems trial through.

Our hope is to create a transparent and permeable model when combined with reputation for "fair-dealing" which will allow for an increasing number of opportunities, while lowering extraction and transactional costs.

The other objective is to educate the service in the Southern District. In the future we shall utilize the District as our primary venue for "resuscitation projects" . This will allow two levels of comfort. First, the Courts and regulators will know we are repeat players so they can have increased confidence in dealing with us (since we will need to deal with them again in the future) and second we will have educated and more sophisticated parties to deal with which should make our job easier.

Finally, it is important to remember our willingness to utilize the bankruptcy laws gives us leverage in implementing creative solutions. The Court can override tax law precedent and IRS regulations in the interest of both the creditors and debtor.

I Bankruptcy Court Authority

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: MIRABILIS VENTURES, INC.
Bankruptcy Case No.: 6:08-Bk-4327-KSJ

Case No. 6:09-CV-1974-ORL-31DAB

MIRABILIS VENTURES, INC.

      Plaintiff,

v.

SAXON, GILMORE, CARRAWAY,
GIBBONS, LASH & WILCOX, P.A. and HANS
CHRISTIAN BEYER,

      Defendants.

---

## AFFIDAVIT OF TODD K. NORMAN

STATE OF FLORIDA

COUNTY OF ORANGE

      Todd K. Norman, after first being duly sworn, states under oath *as* follows:

      1.     My name is Todd K. Norman.  I am an attorney licensed to practice law in the State of Florida.

      2.     I am co-counsel in this matter representing the Plaintiff, Mirabilis Ventures, Inc. ("MVI") in this matter.

      3.     It is essential that MVI be allowed to take additional discovery in this matter to prosecute its claims against the Defendants.



EXHIBIT
2

4.     The Second Amended Complaint was only filed as of February 2, 2010 and the Answer and Affirmative Defenses have only been filed as of February 22, 2010. This matter has not been at issue for any significant time.

5.     MVI took the deposition of Defendant Hans Beyer ("Beyer") on February 12, 2010. After review of the transcript and exhibits, it has been determined that additional discovery needs to be taken in order to prosecute this matter.

6.     Specifically, MVI needs to take the deposition of persons identified in that discovery, including the attorney that was supervising Beyer during his employment with Saxon, Gilmore, Carraway, Gibbons, Lash & Wilcox, P.A. ("Saxon") to determine the extent of Beyer's work on MVI's matters and any related transactions. MVI needs this discovery to show the scope of Beyer's work and the extent that Saxon was aware of the services provided by Beyer.

7.     MVI also needs to take the deposition of all attorneys from Saxon that provided significant legal services to MVI. This discovery is necessary to show the scope of legal services that were provided for MVI regarding MVI and its related entities. The Defendants have denied providing certain legal services and it is imperative that MVI take the deposition of the individuals providing the services in order to show that the scope if broader than alleged by MVI.

8.     MVI also needs to obtain documents from the Defendants regarding transactions and services provided to MVI's related entities. To date the discovery has been limited to MVI only. However, the allegations regarding the Defendants relate to services provided to other entities as well that affected MVI and caused MVI to improperly incur significant tax liability from other entities. Again the deposition and other discovery taken in the past few weeks has identified documents needed.

9.      It is anticipated that the above discovery will assist MVI in proving that the legal services provided by Beyer and Saxon go far beyond the level alleged by the Defendants and were the cause of significant damage to MVI.

10.      It should be noted that pursuant to the Case Management and Scheduling Order entered by the Court on December 9, 2009 (Dkt. 17), the discovery cut-off deadline is August 16, 2010—almost three (3) months away.

**FURTHER AFFIANT SAYS NAUGHT.**

DATED this ___24___ day of May, 2010.

_____
Todd K. Norman

STATE OF FLORIDA

COUNTY OF ORANGE

Sworn and subscribed before me this _24_ day of _____May_____, 2010,   by Todd K. Norman as Attorney for Mirabilis, who is personally known to me or has produced _____ _____ as identification.

_____
Notary Signature
My Commission Expires:



MAGDALENA WHITE
MY COMMISSION # DD 743490
EXPIRES: April 20, 2012
Bonded Thru Notary Public Underwriters