UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: MIRABILIS VENTURES, INC.
Bankruptcy Case No.: 6:08-Bk-4327-KSJ

MIRABILIS VENTURES, INC.
    Plaintiff,

v.    Case No.6:09-CV-1974-Orl-31DAB

SAXON, GILMORE, CARRAWAY, GIBBONS,
LASH &WILCOX, P.A. and HANS
CHRISTIAN BEYER,
    Defendants.
_____/

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to this Court's April 22, 2010, Order, Defendants Saxon, Gilmore, Carraway & Gibbons, P.A. ("**Saxon Gilmore**")[1] and Hans Christian Beyer ("**Beyer**") (collectively "**Defendants**") file this reply brief in support of their motion for summary judgment on all claims filed by Plaintiff Mirabilis Ventures, Inc. ("**MVI**").

### INTRODUCTION

MVI's opposition to Defendants' motion is insufficient to avoid summary judgment. Like MVI's second amended complaint and discovery responses, MVI's opposition fails to establish the most basic premises of a legal malpractice action, to wit, (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence resulted in and was the proximate cause of a loss suffered by the plaintiff. *USA Interactive v. Dow Lohnes & Albertson, P.L.L.C.*, 328 F. Supp. 2d 1294, 1308 (M.D. Fla. 2004). Indeed, MVI offers no competent affidavit or other evidence to refute Beyer's unequivocal deposition testimony. Instead, MVI seems to argue

---

[1] Saxon Gilmore was formerly known as Saxon, Gilmore, Carraway, Gibbons, Lash & Wilcox, P.A.

that during the time Beyer was an *employee* of an MVI affiliate, he should have learned of Amodeo's illegal scheme and alerted MVI's board of directors. Finally, in apparent recognition of the deficiency of its response, MVI asks the Court for additional time to discover evidence to support its almost 18-month old case.[2] The Court should reject this request, reject MVI's arguments, grant the motion, and enter a judgment dismissing this action and reserving jurisdiction to consider motions for fees and costs.

### MVI OFFERS NO EVIDENCE TO SUPPORT ITS CLAIMS

As discussed in detail in Defendants' motion, Beyer testified unequivocally that he never rendered any legal services to MVI as a Saxon Gilmore attorney or regarding the use or diversion of payroll tax trust funds. Beyer testified further that in September 2005, he became an employee of an MVI affiliate and, in that capacity, rendered no legal advice to MVI:

> Q    What did you - - service did you provide as a Saxon, Gilmore attorney?
>
> A    From the period of May - - I'm sorry, February 2005, through August 2005, I worked on no files for Mirabilis actually. I told you that would be simpler.
>
> Q    So, is it your testimony that as a Saxon, Gilmore attorney you provided no services to Mirabilis?
>
> A    That's correct. Because after that point I went in-house with Mirabilis, and my agreement with Mirabilis was I wouldn't work as an attorney.

(Depo. Beyer 35: 14 -25). Beyer further confirmed that he provided no legal services to MVI after he became an employee of a related company on September 1, 2005:

> Q    And to the extent that you were providing services to Nexia and Mirabilis after September 1, 2005, were those legal services?
>
> A    No.
>
> Q    Did you provide any legal services to Nexia and Mirabilis after September 1, 2005?

---

[2]    MVI filed its first adversary complaint against Defendants on December 8, 2008.

A    No. I was working as a - - as an employee of Common Paymaster providing services to Nexia and Mirabilis.

Q    But were those legal services?

A    No.

(Depo. Beyer 101:11 – 101:21). Beyer also testified that he never knew of Amodeo's illegal diversion and use of payroll tax funds, was never asked to and never gave advice regarding the diversion or use of those funds, and never heard of the Sunshine Companies Plan or PBS Plan until he saw those phrases in this lawsuit. (Depo. Beyer 18:3 – 23:19). Because MVI has produced no evidence to the contrary, this testimony alone is dispositive of MVI's claims.

Rather than produce any competent evidence—such as an affidavit from an MVI employee, officer, director, consultant, outside professional, or the like—MVI offers the affidavit of R.W. Cuthill, Jr., the professional trustee who was appointed MVI's President in connection with MVI's bankruptcy filing. However, Mr. Cuthill has no personal knowledge of any fact at issue in this case. Indeed, in MVI's criminal proceeding, *United States of America v. AEM, Inc, et al.,* Case No.: 6:08-cr-231-Orl-28KRS, MVI is currently seeking to renege on an agreement to plead guilty because MVI knows that plea will spell doom for this and MVI's other malpractice actions. In a recent document filed in that action, MVI correctly represented to the Court:

> Mr. Cuthill was never involved with the Defendants in any way during the time period of the alleged criminal conduct. As such, he has no personal knowledge of any of the facts alleged by the Government in the indictment and is, therefore unable to certify from personal knowledge any of the facts necessary to support a guilty plea, as the Government now insists.

May 21, 2010, Motion For Court's Consent to Withdraw Plea, etc., Document No. 139, Case No.: 6:08-cr-231-Orl-28KRS.

It is well known that affidavits in opposition to a motion for summary judgment must be made on personal knowledge. *See, e.g., Ocwen Loan Servicing, LLC v. Accredited Home Lenders,*

3

*Inc.*, No. 6:08-cv-214-Orl-31GJK, 2009 WL 916935 (M.D. Fla. Mar. 31, 2009). Mr. Cuthill's affidavit is not based on personal knowledge and does not and cannot help MVI oppose Defendants' motion.

The Cuthill affidavit seems to be part of an argument MVI attempts to advance based on inferences it draws from documents. However, inferences and argument alone are insufficient to create a question of fact in the face of competent evidence, such as Beyer's deposition testimony. Indeed, as this Court has recognized, "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion" and "statements in affidavits that are based, in part, upon information and belief, cannot raise genuine issues of fact, and thus also cannot defeat a motion for summary judgment." *Id.* at *6 (quoting *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005)). Mere interpretations of evidence, even if in the form of an affidavit, are not sufficient to defeat a summary judgment motion. *See, Dannebrog Rederi AS v. M/V True Dream*, 428 F. Supp. 2d 1265, 1268 (S.D. Fla. 2005) (summary judgment affidavit was not made on personal knowledge and thus improper and inadmissible where affidavit included statements that constituted argument, provided citations to the record, and summaries of the record evidence).

MVI's arguments and inferences are as unpersuasive as they are insufficient. MVI tries to argue that its reading of certain documents should trump Beyer's deposition testimony. However, in most cases, MVI's document interpretation is consistent with Beyer's deposition testimony. For example, MVI cites documents and argues that Beyer was aware of outstanding tax liabilities owed by other companies. Beyer and Saxon Gilmore agree. Beyer testified quite clearly that he was aware of the legacy taxes owed by certain corporations when they were acquired by Amodeo (or some Amodeo controlled company) and that he was aware of and assisted to some extent in IRS negotiations to settle those liabilities. (Depo. Beyer 155:3 – 156:12) However, MVI is not alleging

4

malpractice in this case—and Amodeo was not sentenced to 22 years in prison—for tax liabilities incurred by companies prior to their acquisition by Amodeo.

MVI also argues that Beyer's presence at a mock deposition of Amodeo somehow creates liability. MVI suggests that Beyer should have concluded from Amodeo's mock testimony that criminal conduct was occurring and should have then reported that to the MVI board. MVI's argument is flawed on multiple levels.

The mock deposition took place on August 29, 2006. Beyer attended this deposition as an employee, not as a Saxon Gilmore lawyer. Beyer was told the deposition was to prepare Amodeo for a meeting with the IRS to settle the legacy tax issues. (Depo. Beyer 135: 18 – 136:2) Beyer, along with numerous other employees, was asked to attend at the last minute. Beyer testified:

Q     And explain to me how - - physically how did this take place? I mean, was everybody in one room or how did this take place?

A     It was one of the strangest things I've ever seen.

Q     Okay.

A     In the Sun Trust building, which was then the Mirabilis headquarters there was a very large room, bigger than this room, full of benches or, you know, long tables, and was used for audio/video teaching daily equivalent type stuff. They put Frank [Amodeo] and Richard [Berman] up at the front, and then you basically had a stadium full of people that were just asked to come in at the last minute to watch this thing.

* * *

Q     Were the people participating, asking questions or were they just observing?

A     No. Most of them actually were, I suspect doing paperwork, what have you.

* * *

Q     Did you listen to the testimony that was given by Mr. Amodeo?

A     Yeah, I was - - I was in the room, I think I had my laptop with me. So, I probably tuned in and out a little bit, but I was there.

Q     Did you take – did you take notes?

5

A    No. No. I think Frank was just trying to have a room full of people to create some pressure on him.

(Depo. Beyer 136:3 - 137:23) Beyer never received or read a transcript of the mock deposition. *Id.*

MVI suggests that Beyer should have concluded from Amodeo's testimony that he was engaged in a criminal scheme to divert payroll taxes. However, Defendants suggest that even multiple, careful readings of the written transcript reveal nothing of the kind. (Beyer Depo. Ex. 32) It is neither rational nor persuasive to suggest that Beyer's presence in the room (even if paying careful attention the entire time) would have caused him to learn of Amodeo's criminal scheme and imposed some duty on him.

Moreover, the duty MVI suggests is that Beyer should have reported to the MVI board of directors. However, at least two directors, including MVI's general counsel, Richard Berman, and the chairman of the board of directors, Laurie Holtz, were present. (Depo. Beyer 135: 13 – 17; 53: 2-9; 54:5 – 9; 65:16 - 23) Suffice to say, there was nothing Beyer could have reported to Mr. Berman (who conducted the deposition) or Mr. Holtz that they could not have learned for themselves.[3]

In sum, no argument MVI can fashion from its interpretation of documents is sufficient to overcome Beyer's unequivocal and clear testimony that (1) he never provided legal services to MVI as a Saxon Gilmore attorney, (2) from September 2005 until his resignation in December 2006, he provided no legal services to MVI, (3) he never knew payroll tax funds were being diverted and was never asked to opine on this, and (4) he never heard of the Sunshine Companies Plan or the PBS Plan until he saw those phrases in this lawsuit.

---

[3] Defendants are not suggesting that either Mr. Berman or Mr. Holtz could have gleaned any knowledge of wrongdoing from the mock deposition. To the contrary, Defendants find the mock deposition to be extremely confusing and illuminating of virtually nothing.

6

### MVI HAS NO CLAIM FOR LEGAL ADVICE PROVIDED TO RELATED COMPANIES

MVI's complaint is poorly pled and confusing; among other flaws, it contains multiple references to "related companies and subsidiaries." In the motion for summary judgment, Defendants cited authority for the black letter proposition that one corporation has no standing to sue for damages to another corporation, even a wholly owned subsidiary. Different corporations are separate and distinct legal entities. MVI appears to acknowledge this and represents that MVI is not seeking to recover damages incurred by any other corporation. Notwithstanding that apparent concession and representation, MVI's opposition—like its complaint—is replete with references to Beyer's alleged involvement with other corporations. For example, on page 13, MVI argues that "Beyer provided legal services regarding the bankruptcy filings and potential filings of multiple entities, including at least two of the Sunshine Companies... ."

As such, to the extent MVI claims that Beyer provided negligent legal services to any other entity, that claim cannot support MVI's claims in this action.[4] Again, different corporations are different entities. Moreover, legal malpractice claims are personal and, except in very limited exceptions that do not apply here, are limited to persons in privity with the attorney. *See, e.g., Horowitz v. Laske*, 855 So. 2d 169, 173 (Fla. 5th DCA 2003)("The liability of attorneys for negligence in the performance of their professional duties is limited to clients with whom they share privity of contract.") (citing *Angel, Cohen and Rogovin v. Oberon Inv., N.V.*, 512 So. 2d 192, 194 (Fla.1987)). Indeed, legal malpractice claims are so personal, they are not even assignable in virtually all cases. *See, e.g., Law Office of David J. Stern, P.A. v. Sec. Nat'l Servicing Corp.*, 969 So. 2d 962, 968-69 (Fla. 2007); *see also, Cowan Liebowitz & Latman, P.C. v. Kaplan*, 902 So. 2d 755, 757 (Fla. 2005) (stating that the vast majority of legal malpractice claims are not assignable

---

[4] Defendants dispute that Beyer provided any legal service to any entity that relates in any way to the allegations in the complaint, that was negligent in any way, or that had anything whatsoever to do with MVI and Amodeo's criminal misconduct and subsequent indictments.

7

because in most cases the lawyer's duty is to the client); *Washington v. Fireman's Fund Ins. Co.,* 459 So. 2d 1148, 1149 (Fla. 4th DCA 1984) (Florida law views legal malpractice as a personal tort which cannot be assigned because of the personal nature of legal services which involve highly confidential relationships).

The distinction between MVI and related entities to which Beyer or Saxon Gilmore may have provided legal services was aptly illustrated during Beyer's deposition. Concerned about the attorney client privilege, Beyer's counsel asked MVI's counsel if either he or Mr. Cuthill (present at Beyer's deposition) could waive the privilege with respect to the other entities. Both MVI's counsel and its president declined to do so. (Depo. Beyer 78:7 – 79:3; 96:14 – 97:15).

## MVI IS NOT ENTITLED TO ADDITIONAL TIME FOR DISCOVERY

MVI recognizes that its opposition is weak. As a fallback, MVI seeks shelter under Rule 56(f) and requests additional time to conduct discovery. This request should be denied.

Defendants' motion is based on an absence of the most basic facts to support a legal malpractice claim. If MVI is unable to muster competent evidence to create a fact issue as to whether Beyer rendered faulty legal advice, how could MVI and its counsel possibly have fulfilled their Rule 11 obligations? **MVI employed numerous individuals as employees, officers, directors, consultants, accountants, and attorneys. Obviously, MVI cannot elicit support for its claims against Beyer and Saxon Gilmore from *even a single one*.** MVI first filed these claims almost 18 months ago. In the Bankruptcy Court, Judge Jenneman—at Defendants' request—agreed to allow discovery to commence in October 2009. MVI has had ample opportunity to gather evidence to contest this motion, if such evidence exists.

Moreover, MVI has not met its burden under Rule 56(f). A party seeking to defer a ruling on summary judgment under Rule 56(f) must file an affidavit that explains why facts precluding summary judgment cannot be presented, describes the party's attempts to secure the facts, and states

why the party has been unable to obtain the facts; this includes identifying the probable facts not available and what steps have been taken to obtain the facts. *See, School Bd. of Okaloosa County v. Richardson*, 332 F. Supp. 1263, 1269 (N.D. Fla. 1971); *Libertarian Party of NM v. Herrera*, 506 F.3d 1303 (10th Cir. 2007); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003). If a party has not been diligent, that party is not entitled to forestall summary judgment. *See, Kakeh v. United Planning Organization, Inc.*, 537 F. Supp. 2d 65 (D.D.C. 2008) (a Rule 56(f) request for delay should be denied when the party opposing the motion has failed to utilize discovery to obtain the information it seeks); *Robertson v. Amtrak/National R.R. Passenger Corp.*, 400 F. Supp. 2d 612 (S.D.N.Y. 2005) (plaintiff not entitled to delay resolution of defendant's motion for summary judgment where plaintiff allowed more than four months to lapse without making any discovery requests); *C.B. Trucking, Inc. v. Waste Management, Inc.*, 137 F.3d 41 (1st Cir. 1998) (solid waste hauler's competitor was not entitled to additional discovery before court ruled on hauler's summary judgment motion where competitor was not diligent in pursuing discovery).

Moreover, MVI's Rule 56(f) request is disingenuous. Beyer's deposition occurred on February 12, 2010. MVI has sought no additional discovery in this case since then and up to the time of the filing of this reply brief. The discovery MVI identifies in its counsel's affidavit will not help MVI oppose the motion. MVI claims it needs to take the depositions of other Saxon Gilmore lawyers who—unlike Beyer—provided legal services to MVI. However, this action is based on Beyer's alleged negligence, not that of any other lawyer. MVI's three pleadings in this case have alleged negligence solely by Beyer.[5] MVI also claims it needs to take discovery regarding legal services provided "to MVI's related entities." As discussed previously, however, and as apparently conceded by MVI, MVI can assert no claim on behalf of any other entity.

---

[5] The only exception is the claim for "lack of supervision." However, that is a claim for an alleged failure to supervise Beyer, not some other Saxon Gilmore lawyer.

## CONCLUSION

MVI's opposition is insufficient and its request for additional time is not persuasive. The Court should grant the motion for summary judgment, dismiss this action with prejudice, and reserve jurisdiction to consider claims for fees and costs.

Respectfully submitted,

s/Joseph H. Varner, III
Joseph H. Varner, III
*Trial Counsel*
Florida Bar No. 394904
joe.varner@hklaw.com
Justin L. Dees
Florida Bar No. 048033
justin.dees@hklaw.com
HOLLAND & KNIGHT LLP
P.O. Box 1288
Tampa, FL  33601-1288
(813) 227-8500 - (813) 229-0134 (facsimile)
Attorneys for Saxon, Gilmore, Carraway,
 & Gibbons, P.A. and Hans C. Beyer

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of June, 2010, I electronically filed the foregoing document with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to the following:

Robert C. Widman, Esq.
Widmor48@mwk-law.com
Morris & Widman, P.A.
245 N. Tamiami Trail, Suite E
Venice, FL 34285
PH: 941-484-0646
FX: 941-496-8870

Attorneys for Plaintiff

Roy S. Kobert, Esq.
rkobert@broadandcassel.com
Todd K. Norman, Esq.
tnorman@broadandcassel.com
Broad and Cassel
390 North Orange Ave., Suite 1400
Orlando, FL 32801
PH: 407-839-4200
Attorneys for Plaintiff

s/Joseph H. Varner, III
Attorney

# 9506030_v1