**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**IN RE: MIRABILIS VENTURES, INC.**
**Bankruptcy Case No. 6:08-Bk-4327-KSJ**

---

**MIRABILIS VENTURES, INC.,**

          **Plaintiff,**

-vs-                                     **Case No. 6:09-cv-1974-Orl-31DAB**

**SAXON, GILMORE, CARRAWAY,**
**GIBBONS, LASH & WILCOX, P.A. and**
**HANS CHRISTIAN BEYER,**

          **Defendants.**

---

# ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 22) filed by the Defendants, Hans Christian Beyer ("Beyer") and Saxon, Gilmore, Carraway, Gibbons, Lash & Wilcox, P.A. ("Saxon Gilmore"), the response (Doc. 31) filed by the Plaintiff, Mirabilis Ventures, Inc. ("Mirabilis"), and the reply (Doc. 32) filed by the Defendants.

**I.    Background**

Mirabilis was controlled by Frank Amodeo ("Amodeo"), who used the company and a web of subsidiaries and related companies as vehicles for an enormous tax fraud and money laundering scheme. As set forth in his written plea agreement (Doc. 23 in Case No. 6:08-cr-176, henceforth, the "Plea Agreement"), Amodeo's scheme made use of professional employer organizations ("PEOs"), which provided human resources services to client companies. The PEOs would, among other services, calculate the payroll taxes owed by client companies and collect it from

them. Rather than turn those funds over to the IRS, as the law required, Amodeo and other conspirators would divert the funds to their own uses, including funding operations of other businesses or purchasing real estate and vehicles for Amodeo and others.

On April 25, 2008, the Government filed a complaint for forfeiture (Doc. 1 in Case No. 6:08-cv-670) against a number of parcels of real estate that, it contended, either constituted or were derived from proceeds of this scheme. About a month later, Mirabilis filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. On September 23, 2008, Amodeo pled guilty to a number of felonies, including a failure to collect and remit payroll taxes. (Doc. 41 in Case No. 6:08-cr-176). In May 2009, he was sentenced to 22 and a half years in prison and ordered to pay restitution of $181,810,518.66 to the IRS. (Doc. 125 in Case No. 6:08-cr-176). Mirabilis itself is under criminal indictment and recently agreed to plead nolo contendere (Doc. 143 in Case No. 6:08-cr-231).

The instant case was initiated in December 2008, when Mirabilis filed a complaint against Beyer and Saxon Gilmore in Bankruptcy Court. The Defendants filed a motion to dismiss the adversary proceeding, which was granted on March 4, 2009. Mirabilis filed an amended complaint, also in Bankruptcy Court, on March 18, 2009. The Defendants' subsequent motion to dismiss the amended complaint was denied. On October 22, 2009, the parties stipulated to a withdrawal of the reference, and the case was transferred to this court in November 2009. This Court's Case Management and Scheduling Order (Doc. 17) was entered on December 10, 2009. It set a discovery deadline of August 16, 2010. (Doc. 17 at 1).

In Count I of the Second Amended Complaint (Doc. 18-1), Mirabilis asserts a negligence claim against both Defendants, asserting that at all material times, an attorney-client relationship

existed between them and Mirabilis, that the Defendants owed a duty[1] to exercise due care in their legal representation of Mirabilis, that they breached this duty when they failed to advise that certain acquisition plans and Mirabilis's operations "could result in criminal and civil liability for [Mirabilis],"resulting in damage to Mirabilis. (Doc. 18-1 at 10-11).  Count II recasts the same allegations as a claim for breach of the fiduciary duty owed by attorneys to their clients.  Count III asserts a claim for negligent misrepresentation, stating that the Defendants knew or should have known that Mirabilis was relying on information supplied by the Defendants in connection with their legal representation, that the Defendants made unspecified "material negligent misrepresentations," and that as a result Mirabilis suffered damages.  In Count IV, Mirabilis asserts a negligent supervision claim against Saxon Gilmore, saying the company breached its duty to Mirabilis by "failing to supervise Beyer to ensure that his conduct and activities were not fraudulent or deceptive and that all of his work product and representations on behalf of [Mirabilis] were true and accurate and to prevent any conflict of interest in drafting bankruptcy documents for companies in which Mirabilis was a creditor, the trust account of [Mirabilis] and its related entities." (Doc. 18-1 at 14).[2]

---

[1] For some reason, the Plaintiff asserted that the Defendants owed a duty, not just to Mirabilis, but to unnamed subsidiaries and "related companies.". (Doc. 18 at 10). The count subsequently asserts that the Defendants were providing legal representation to Mirabilis and these other unnamed entities, and that the Defendants breached their duty when they failed to advise these other entities about the possible liability resulting from the acquisition plans and Mirabilis's operations, causing harm to all of these entities. (Doc. 18 at 10-11). Such references to these other entities continue throughout the Second Amended Complaint. However, Mirabilis lacks standing to pursue claims on behalf of these other entities, so for ease of reference, the remainder of this opinion will not refer to them.

[2] The Court notes that each count realleges and reasserts each numbered paragraph that preceded it, thereby incorporating irrelevant assertions into each claim. For example, the first

By way of the instant motion, the Defendants seek summary judgment as to each of these four counts.

## II.     Legal Standards

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25.

---

paragraph of the negligent misrepresentation claim, paragraph number 67, "re-alleges and re-states paragraphs 1 through 66 as if fully set forth herein." (Doc. 18-1 at 13). This includes the allegations that the Defendants had a fiduciary relationship with Mirabilis, that they breached their fiduciary duty, and so forth, as set forth in paragraphs 64 through 66. None of those assertions has any possible relevance to a negligent misrepresentation claim. Such sloppy drafting is a hallmark of a shotgun pleading. *See*, *e.g.*, *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293 (11th Cir. 2002) ("The typical shotgun complaint contains several counts, each one incorporating by refence the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions."). The factual predicate of the pleading is also replete with irrelevancies, every one of which is incorporated into each succeeding count.

The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

### III.   Analysis

At its heart, what Mirabilis has asserted is a legal malpractice case against Beyer, with a related failure-to-supervise claim against Saxon Gilmore. The supervision claim becomes moot if the Plaintiff cannot prevail on the legal malpractice claim. Thus, the entire motion boils down to the malpractice claim, which itself boils down to an allegation that Beyer either advised the people running Mirabilis that diverting payroll tax funds to other uses was acceptable, or at least learned of the plans to do so and failed to warn anyone.

Under Florida law, to prevail in a legal malpractice action, a plaintiff must prove (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) damages proximately caused by the attorney's negligence. *See Atkin v. Tittle & Tittle*, 730 So. 2d 376, 377 (Fla. 3d DCA 1999) and cases cited therein. As to the first element, the plaintiff must prove that the attorney "was employed with respect to the asserted negligent acts." *Id.* (citing *Maillard v. Dowdell*, 528 So. 2d 512, 514-15 (Fla. 3d DCA 1988)).

Beyer argues that, although this proceeding has been pending for eighteen months, Mirabilis has failed to produce any evidence that would meet its evidentiary burden as to any of the three required elements.  In addition, he points to his own testimony as evidence that the Plaintiff's allegations of legal malpractice are not merely unproven, but incorrect.  Beyer testified that he was employed by a Mirabilis affiliate, Common Paymaster Corporation, from September 2005 to December 2006, but that he never even heard about any plans to divert payroll taxes until he was sued in this case.  (Doc. 22 at 6).  He testified that neither he nor Saxon Gilmore was retained to provide legal advice regarding tax matters.  (Doc. 22 at 5-6).  He also testified that he never provided any advice to Mirabilis or any related person or entity regarding payroll taxes or any other tax-related matter, and that in particular he never advised anyone that Mirabilis could make use of funds that had been set aside to pay payroll taxes. (Doc. 22 at 6).

Beyer also points out that Amodeo admitted that he knew what he was doing was illegal, and that he did it despite receiving a legal memorandum from the general counsel for Mirabilis that explained that it was illegal to do anything with payroll tax funds other than hand them over to the IRS.  (Plea Agreement at 33-34).  In sum, Beyer argues, there is no evidence from which a reasonable jury could find that he was hired to provide legal advice to Mirabilis, that anyone at Mirabilis relied on his advice in deciding to divert the payroll funds, or that Mirabilis suffered any damages as a result of anything he did.

In response, Mirabilis points to various items that, in its estimation, demonstrate that a genuine issue of material fact exists as to whether Beyer committed legal malpractice here.  Those items include the following:

- Beyer's deposition testimony that he was "aware of" several of the Amodeo-controlled companies used to perpetuate the payroll tax diversion, and that he was aware of the fact that some Amodeo-controlled companies had outstanding payroll tax liabilities, during the pertinent time period.

- The fact that Beyer's firm, Saxon Gilmore, provided legal services to Mirabilis, and that Beyer was contacted regarding possibly representing "one or more" Amodeo-controlled companies in bankruptcy proceedings, which might result if they were unable to settle their payroll tax issues with the IRS.

- That Beyer went to work for Mirabilis as a senior vice president in September 2005, and was also employed as a director for another Amodeo-controlled company, Nexia.

- That Beyer was sent a January 4, 2005 memorandum regarding a timetable for dealing with something called the "Sunshine Matter," which discussed legal actions including dealing with payroll tax issues involving a group of the Amodeo-controlled companies that were known as the "Sunshine Companies".

- That Beyer received an email on February 14, 2005 regarding "an internal legal strategy" for an IRS meeting related to payroll tax liabilities. According to the email, the meeting would also involve discussions regarding KVN, a bankrupt company said to be "a good example" of the type of acquisition project one of Amodeo's companies, Wellington Capital Group, Inc. ("Wellington") would like to pursue in the future. The email also discussed Wellington's willingness to pursue or threaten bankruptcy proceedings to increase the value of its projects, and cited case law involving "a bankruptcy court's authority" and "responsible person." (Doc. 31 at 4). Beyer also attended the meeting discussed in the email, at which some unidentified parties discussed the effects of the KVN bankruptcy plan on tax claims in that matter. (Doc. 31 at 4-5). The meeting also included discussions regarding attempts to settle tax liabilities of some of the Amodeo-controlled companies.

- That Beyer provided legal research and legal services regarding bankruptcy reorganization, including a potential bankruptcy filing involving one of the Amodeo-controlled companies.

- That Beyer attended a meeting on January 16, 2006 at which he took handwritten notes that showed the meeting involved a variety of legal issues "including security liens, tax obligations and liens, payroll taxes due, tax liability of [one of Amodeo's companies], preserving books of business, RICO claims, offers to the IRS, ability of IRS to collapse [the company's] structure, avoidable transfers, and whether the United States trustee has standing to investigate fraudulent transfers." (Doc. 31 at

      5). Beyer also participated in a meeting where "different transactions were discussed," including various transactions involving Amodeo-controlled companies on one or both sides of the transaction, and Beyer's notes from the meeting showed he had knowledge of approximately $126 million in missing payroll taxes.

- That Beyer prepared a listing of "relevant corporate entities, bankruptcy documents, IRS documents, and other relevant documents," and that he last updated the listing on January 23, 2006. (Doc. 31 at 6).

- That in January 2006, Beyer authored a "Confidential Memorandum" listing "numerous entities, the status of the entities, and the potential tax liability of the entities". (Doc. 31 at 6).

- That in January 2006, Beyer authored a "Confidential Memorandum" regarding "tasks and open issues" for Mirabilis and another Amodeo-controlled company, which mentioned legal and accounting issues such as "priority of tax liabilities, ability of the United States trustee to investigate fraudulent transfer claims, and the ability to collapse the corporate structure." (Doc. 31 at 6).

- That on March 9, 2006, Beyer participated in a meeting regarding the "restructuring of Mirabilis." (Doc. 31 at 6).

- That on April 20, 2006, Beyer participated in a meeting with the IRS regarding payroll tax issues. (Doc. 31 at 7).

- That on May 8, 2006, Beyer authored a "Confidential Memorandum" about a bankruptcy issue involving a company named Community Health Solutions of America, LLC, and the "effect of defaults with MVI". (Doc. 31 at 7).

- That Beyer "made extensive changes" in June 2006 to a letter from Amodeo to the IRS and helped revise "the draft narrative" of one Amodeo-controlled company that was to be used in preparation for discussions with the IRS regarding the payroll tax issues. (Doc. 31 at 7).

- That Beyer attended a mock deposition of Amodeo, in preparation for a meeting between Amodeo and the IRS, and in which Amodeo "detailed the plan to rehabilitate certain companies, including the decision not to pay payroll taxes to operate the business." (Doc. 31 at 7).

And that is it. Counsel for Mirabilis contends that this evidence, alone, is sufficient to establish the existence of a genuine issue of material fact regarding its claims and thereby avoid

summary judgment. In the view of the Court, this evidence may not even be enough to avoid Rule 11 sanctions.

There is nothing in this evidence from which a reasonable jury could conclude that Beyer or his firm were hired to provide legal advice to Mirabilis regarding payroll tax issues. There is nothing in this evidence from which a reasonable jury could conclude that Beyer or his firm ever actually provided legal advice to Mirabilis regarding payroll tax issues. There is nothing in this evidence from which a reasonable jury could conclude that Beyer knew about Amodeo's scheme while it was still operating, much less that anyone relied on Beyer's advice or his failure to object in deciding to divert the payroll taxes rather than send them to the IRS. And all of this is true despite the fact that the people currently in control of Mirabilis are in possession of all of the company's records – presumably including invoices for legal services, minutes of company meetings, and so forth – and what is, effectively, Amodeo's confession, in the form of his plea agreement. Obviously, none of this material implicates Beyer or supports the Plaintiff's legal theories in any way.[3] The closest the Plaintiff can come is to show that Beyer received emails or attended meetings that included other people discussing payroll tax issues, which is not nearly close enough to satisfy the Plaintiff's burden in opposing a summary judgment motion.

In the alternative, Mirabilis seeks postponement of consideration of the summary judgment motion pursuant to Rule 56(f). That rule provides, in pertinent part, that

---

[3]If nothing else, if the Plaintiff's theory had any merit whatsoever, it seems *extremely* unlikely that a man in Amodeo's position, facing decades in prison and hundreds of millions of dollars in restitution obligations, would have failed to tell the prosecutor something along the lines of, "You know, I ran this past my attorney, and he was okay with it."

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Specifically, Mirabilis seeks additional time to take the deposition of Beyer's supervisor at Saxon Gilmore, to take depositions of other attorneys who provided legal services to Mirabilis and its related entities, and to obtain documents from Beyer and Saxon Gilmore regarding their representation of Mirabilis and its related entities.  The Court finds that no extension for the taking of these depositions is warranted.

Mirabilis seeks to depose Beyer's supervisor regarding the negligent supervision claim, but that claim is moot if there was no negligence on Beyer's part.  The depositions of the other attorneys are intended, according to Mirabilis, to establish "the scope of work" performed for Mirabilis by Beyer and Saxon Gilmore.  But Mirabilis does not even identify these other attorneys, much less provide the slightest suggestion that they would be expected to say anything that is inconsistent with Beyer's testimony.  And the documents are sought so as to show how Beyer and Saxon Gilmore "were helping to implement a strategy regarding [Mirabilis] and its related entities in avoiding or minimizing the payroll tax liability to [Mirabilis] through a concerted and coordinated plan".  (Doc. 31 at 11).  But despite being in possession of all of the company's documents and records, Mirabilis offers not a single shred of evidence that such a plan existed, much less that the Defendants hit upon a plan to avoid or minimize payroll tax liabilities by *stealing payroll tax funds from the IRS*.  Moreover, as with the other items of discovery sought by

Mirabilis, the company offers no explanation as to why it failed to seek them during the eighteen months this case has already been pending.[4]

Mirabilis has had more than enough time, under the circumstances of this case, to come up with at least some evidence in support of its claims.  It has utterly failed to do so, and it has utterly failed to provide any explanation for this failure or any suggestion that additional time for discovery could conceivably cure it.  Enough is enough.

### IV.    Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that Motion for Summary Judgment (Doc. 22) is **GRANTED**.  The Clerk is directed to enter judgment in favor of the Defendants and close the case.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 18, 2010.

                                                    GREGORY A. PRESNELL
                                      UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[4] Mirabilis argues that it should be allowed additional time for discovery because the Second Amended Complaint was only filed in January of this year, implying that it could not conduct meaningful discovery prior to that date.  But the essentials of the allegations against Beyer and his firm have not changed since this matter was filed a year and a half ago.  In addition, Beyer's deposition was taken in February, and Mirabilis offers no explanation as to why it has not sought any evidence that would support its claims or contradict Beyer's testimony since that date.