UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: MIRABILIS VENTURES, INC.
Bankruptcy Case No.: 6:08-Bk-4327-KSJ

MIRABILIS VENTURES, INC.

Plaintiff,

v.                                        Case No. 6:09-CV-1974-Orl-31DAB

SAXON, GILMORE, CARRAWAY, GIBBONS,
LASH &WILCOX, P.A. and HANS
CHRISTIAN BEYER,

Defendants.

_____/

## DEFENDANTS SAXON, GILMORE, CARRAWAY & GIBBONS, P.A. AND HANS C. BEYER'S SECOND AND SUPPLEMENTAL MOTION FOR SANCTIONS AND INCORPORATED MEMORANDUM OF LAW[1]

Defendants Saxon, Gilmore, Carraway & Gibbons, P.A. ("Saxon Gilmore")[2]

and Hans Christian Beyer ("Beyer") move on the following grounds for an order

of monetary sanctions against Elizabeth Green, Esq. ("Attorney Green"), Jennifer

S. Eden, Esq. ("Attorney Eden"), and the law firm of Latham, Shuker, Eden &

---

[1] This motion was originally served on May 20, 2009, when this action was pending in the Bankruptcy Court. This motion is a duplicate of that motion, except that the style of the case and the certificate of service have been modified. The actual motion that was served was previously filed with this Court on June 22, 2010.
[2] Saxon Gilmore was formerly known as Saxon, Gilmore, Carraway, Gibbons, Lash & Wilcox, P.A.

Beaudine, LLP (the "Latham Firm") for the frivolous and baseless amended complaint they filed on behalf of the Debtor-In-Possession Mirabilis Ventures, Inc. ("MVI").   Attorney Green, Attorney Eden, and the Latham Firm are collectively referred to as the "MVI Attorneys."   Beyer and Saxon Gilmore seek sanctions pursuant to Fed. R. Bankr. Pro 9011, Bankruptcy Code §105(a), and the Court's inherent authority.   This motion is a supplement to the motion for sanctions served by Beyer and Saxon Gilmore on February 18, 2009.

## INTRODUCTION

On December 8, 2008, the MVI Attorneys filed the complaint to commence this adversary proceeding against Beyer and Saxon Gilmore (and the law firm of Buchanan Ingersoll & Rooney ("BIR")).   As discussed at length in the motions to dismiss filed by Beyer and Saxon Gilmore and BIR, the complaint was obviously the product of a careless copy and paste endeavor.   The complaint included allegations against non-parties, as well as requests for relief on behalf of non-parties.   Beyer and Saxon Gilmore described the complaint in their motion as "a confused and confusing document that is largely incomprehensible, internally inconsistent, and, apparently, the product of a careless word processing 'copy and past' project based on some other pleading(s)."   BIR stated that the complaint contains "a dizzying morass of allegations" that uses "confusion to perpetuate deficient claims."

Careful and painstaking scrutiny of the complaint revealed that MVI was attempting to claim that Beyer, while employed first by BIR and then by Saxon

Gilmore, improperly advised MVI not to withhold payroll taxes and that MVI (and/or named and unnamed related and affiliated companies and subsidiaries) suffered alleged damages "in excess of $200,000,000.00." The complaint revealed an individual named Frank Amodeo ("Amodeo") who, apparently, was the mastermind of a complex scheme of corporate relationships designed, in fact, to misuse and hide the misuse of payroll taxes.  Amodeo was indicted and pled guilty to multiple felony charges involving the failure to pay payroll taxes. Contrary to the allegations in the complaint, Amodeo swore in his written plea agreement that he was aware of his wrongdoing and that he received professional advice that he could not legally undertake the actions which led to his indictment and which underlie this action.   Nonetheless, the MVI Attorneys filed this adversary proceeding and others attempting to paint MVI as a victim of bad legal and accounting advice.[3]

Worse yet, the MVI Attorneys used the original complaint to personally and viciously attack Beyer.  Beyer is an established and respected bankruptcy lawyer.  Beyer has been a member of the bar for 17 years, is A-V rated by Martindale-Hubbell, is the former Chair of the Bankruptcy/UCC Committee of the Florida Bar's Business Law Section, and has never been the subject of any civil, criminal, or ethical proceeding.  The idea that he would advise a client not to pay payroll taxes is absurd on its face.  The complaint included other wholly

---

[3] During Amodeo's recent sentencing hearings before United States District Judge John Antoon, II, Amodeo and his counsel confirmed in no uncertain terms that Amodeo intentionally and knowingly committed criminal acts by misappropriating more than $170,000,000.00 in payroll trust funds.

inaccurate allegations about Beyer— such as the claim that he was fired from BIR for breaching his fiduciary duty to clients "by participating in self-dealing and entering into transactions with clients in which Beyer received a direct economic benefit" —which were shameful, slanderous, and pure fiction.[4]   The personal allegations about Beyer, like most of the allegations in the complaint, were false and without any foundation in fact.

On January 30, 2009, Beyer and Saxon Gilmore filed a motion to dismiss the complaint.  The MVI Attorneys apparently recognized that the complaint was flawed and agreed to its dismissal.  That agreement was memorialized in this Court's March 4, 2009, order.  Beyer and Saxon Gilmore also served the MVI Attorneys with a motion for sanctions on February 18, 2009, and a demand that MVI not pursue the claims against Beyer and Saxon Gilmore.

The MVI Attorneys ignored that demand and filed an amended complaint on March 18, 2009.   On April 15, 2009, Beyer and Saxon Gilmore filed a motion to dismiss the amended complaint.  MVI's amended complaint is better than its first complaint in some respects and even worse in others, but it suffers the same fatal flaws that compelled dismissal of the original complaint.  MVI corrected the most obvious errors that resulted from piecing together its original complaint from other pleadings.   MVI also dropped the intemperate, slanderous, and *ad hominem* attacks against Beyer.  However, MVI included exhibits with its new complaint that clearly contradict the very allegations to which they were

---

[4] The falsity of this baseless allegation was amply demonstrated by the affidavit of John Leathers, General Counsel for BIR, which BIR filed in response to the complaint.

attached to bolster.  Most troubling, MVI appears to continue to pursue its claim that Beyer and Saxon Gilmore are responsible for the damages cause by Amodeo's criminal misconduct.   In doing so, MVI makes numerous false allegations that have no factual support whatsoever.

The MVI Attorneys are subject to sanctions because they filed a complaint and an amended complaint that have no factual basis.   On information and belief, they also filed the complaint and amended complaint for an improper purpose.  The U.S. Attorney's Office and others have filed affidavits suggesting that the MVI Attorneys filed the MVI bankruptcy proceeding and the adversary proceedings for the purpose of acquiring funds that Amodeo can use for restitution to attempt to improve his standing in the criminal proceeding and obtain a more lenient sentence.  If that is true, clearly, the MVI Attorneys filed this complaint for an improper purpose.

## DISCUSSION OF AUTHORITY

Attorneys have certain duties that supersede their duties to clients.  The most fundamental ethical duties an attorney has are the duty of candor to the court and the duty not to misuse the judicial system.  In the absence of these core duties, the judicial system could not and would not work.  These duties are set forth in the Rules of Professional Conduct, as well as in case law, statute, and certain rules of procedure.  One of those rules is Rule 9011(b) of the Federal Rules of Bankruptcy Procedure.  That rule states that whenever an attorney

presents or advocates a written matter to the court, that attorney certifies the following:

> (1)    [the matter] is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2)    the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3)    the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4)    the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

This obligation is enforced by Rule 9011(c), which provides that the court may impose appropriate sanctions for violations. Sanctions are warranted when (1) a pleading or paper is frivolous, legally unreasonable, or without factual foundation; or (2) a pleading or paper is filed in bad faith or for an improper purpose. Rule 9011 is substantially identical to Rule 11 of the *Federal Rules of Civil Procedure* and cases interpreting Rule 11 are applicable to Rule 9011. *See Busby v. Doe*, No. 98-08-MISC-ORL-19C, 1998 WL 34232925 (M.D. Fla. Oct. 2, 1998) (citing *In re Mroz*, 65 F.3d 1567 (11th Cir. 1995) and *In re Suncoast Airlines, Inc.*, 188 B.R. 56 (S.D. Fla. 1994)).

The obligations and sanctions set forth in Rule 9011 recognize that frivolous lawsuits have no place in our judicial system. As discussed in *Busby*:

> Frivolous suits are a burden on the judicial system. As the United States Court of Appeals for the Fifth Circuit noted in *Holloway v. Hornsby*, 23 F.3d 944, 946 (5th Cir. 1994):

> Frivolous cases harm the justice system. The brunt of the harm is borne by those who seek and are entitled to relief from our courts.

> When frivolous complaints consume inordinate amounts of scarce judicial resources, valid complaints suffer from delay and all the negative aspects of delay.

*Busby,* 1998 WL 34232925 at *5. The *Busby* court explains the test under Rule 9011 as follows:

> A court confronted with a motion for sanctions under Rule 11 or Bankruptcy Rule 9011 must first determine whether the party's claim is objectively frivolous in view of the law or facts. If the claim is frivolous, the court then determines whether the person signing the document should have been aware that it was frivolous. *In re Mroz*, 65 F.3d at 1573. A complaint is factually groundless and merits sanctions where the plaintiff has absolutely no evidence to support its allegations. *Id.*, citing *In re General Plastics Corp.*, 170 B.R. 725, 731 (Bankr. S.D. Fla. 1994). If a lawsuit is frivolous, the court must then consider whether the person signing the document should have been aware that it was frivolous. (additional citations omitted).

*Id.* at *4.

In *In re Cummings*, 381 B.R. 810 (S.D. Fla. 2007), the court explained the relation between Rule 9011 and the lawyer's duty of candor as follows:

> Lawyers, as officers of the court, have a duty of candor to the tribunal. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 808-09 (11th Cir. 2003) (citing *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994)). The Florida Rules of Regulating the Florida Bar (sic) also impose upon counsel a duty of candor to the court. (citation omitted).  In addition, Rule 11 "reinforces counsel's duty of candor to the Court by subjecting litigants to potential sanctions for making representations to the court for an improper purpose." *Footman v. Wang Tat Cheung,* 341 F.Supp.2d 1218, 1225 (M.D. Fla. 2004); *see also Glatter,* 65 F.3d at 1572 (holding that case law interpreting Rule 11 may be used to interpret Rule 9011).

> The duty owed by attorneys is that of "complete candor and primary loyalty to the court before which they practice.  An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly." *Footman,* 341 F.Supp.2d at 1225.  Therefore, a lawyer should not "knowingly misstate, distort, or improperly exaggerate any fact or opinion and should not improperly permit the lawyer's silence or inaction to mislead anyone." *Id.*

*Cummings,* 381 B.R. at 837.  The court noted that a court may impose Rule 9011

to sanctions on its own initiative.

Rule 9011 is only one means of imposing sanctions on an attorney for filing

or advocating a frivolous pleading.  Section 105(a) of the Bankruptcy Code is

another and provides as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carryout the provisions of this title.   No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or

implement court orders or rules, or to prevent an abuse
of process.

In *Matus v. Matus*, 303 B.R. 660 (Bankr. N.D. Ga. 2004), the court recognized the

authority provided by this statute as follows:

> Courts have the power to protect the integrity of the
> judicial system from such abuse. This Court has the
> inherent power of a federal court to regulate its own
> docket and to ensure that its process is not being
> abused. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44,
> 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *Mroz*, 65 F.3d
> at 1575.   Additionally, this court has statutory
> authority,   pursuant   to   Section   105(a)   of   the
> Bankruptcy Code, to impose sanctions to prevent an
> abuse of bankruptcy process. (citations omitted).

*Matus*, 303 B.R. at 683.

The court's inherent authority as noted in *Matus* is a long recognized,

fundamental principal of law.   In *Thomas v. Tenneco Packaging Co., Inc.,* 293

F.3d 1306 (11th Cir. 2002), the court explained:

> As we have noted, the district court relied on its inherent powers to
> levy sanctions against Munson. "It has long been understood that
> certain implied powers must necessarily result to our Courts of
> justice from the nature of their institution, powers which cannot be
> dispensed with in a Court, because they are necessary to the
> exercise of all others."   *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43,
> 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (internal quotations and
> brackets omitted).

> This means, among other things, "that a federal court has the power
> to control admission to its bar and to discipline attorneys."
> *Chambers*, 501 U.S. at 43, 111 S.Ct. at 2132; *see also Roadway
> Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65
> L.Ed.2d 488 (1980) (noting that "[t]he power of a court over
> members of its bar is at least as great as its authority over
> litigants"). That is, "[e]ven absent explicit legislative enactment,
> deeply rooted in the common law tradition is the power of any court .

. . to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Carlucci v. Piper Aircraft Corp.,* 775 F.2d 1440, 1447 (11th Cir. 1985) (internal quotations omitted). This "inherent power" to sanction errant lawyers, in fact, "can be invoked even if procedural rules exist which sanction the same conduct." *Chambers,* 501 U.S. at 49, 111 S.Ct. at 2135; *see also In re Mroz,* 65 F.3d at 1575 (pointing out that "although certain conduct may or may not be violative of Rule 11 or Bankruptcy Rule 9011, it does not necessarily mean that a party will escape sanctions under the court's inherent power").

*Thomas,* 293 F.3d at 1320.

In *In re Casa Valencia,* 389 B.R. 292 (S.D. Fla. 2008), the court imposed sanctions based on Rule 9011, Section 105(a), and its inherent authority against a lawyer who should have known that statements set forth in the pleading he filed were false.  The court explained:

> The falsehoods contained in the petition schedules filed here were untrue and misleading and at least some of them . . . would have been known to Mr. Santos "upon the exercise of reasonable care." I find that Rule 9011 and 11 U.S.C. §§ 105(a) and 562(a)(2) provide the basis for the award of such sanctions. (citations omitted).

> I also base my determination to impose sanctions on the Debtor and Mr. Santos on the inherent power of the federal court to impose sanctions upon a finding of bad faith. *Chambers v. NASCO,* 501 U.S. 32, 111 S. Ct. 2123, 115 L.Ed.2d 27 (1991); *In re Mroz,* 65 F.3d 1567 (11th Cir. 1995).

*In re Casa Valencia,* 389 B.R. at 296.

Similarly, in *In re Evergreen Security, Ltd.,* 391 B.R. 184 (M.D. Fla. 2008), a case with which the MVI Attorneys are intimately familiar, this Court affirmed an imposition of sanctions based upon Rule 9011, Section 105(a), and the court's

inherent power to impose sanctions.  Likewise, in *In re Johnson,* 336 B.R. 568 (Bankr. S.D. Fla. 2006), the court explained that the particulars of Rule 11 and Rule 9011 do not limit the court's inherent authority to impose sanctions.  The court explained:

> However, the language of the referenced rules is no substitute for the Court's inherent power to fashion an appropriate sanction. *Chambers,* 501 U.S. at 46, 111 S.Ct. 2123.   Thus, Rule 11 and Bankruptcy Rule 9011 do not limit the nature of conduct as to which the Court my (sic) impose sanctions, as the inherent power of the Court extends to the full range of litigation abuses. *Id.* A Court may assess attorney's fees as a proper sanction for conduct that is in bad faith, vexatious, wanton, or for oppressive reasons. *Roadway Express v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

*In re Johnson,* 336 B.R. at 572-73.

## SANCTIONS ARE NECESSARY AND APPROPRIATE IN THIS CASE

The Court should and must impose sanctions in this case because the MVI Attorneys filed a pleading full of false allegations that have no reasonable evidentiary basis and they have now filed such pleadings not once, but twice in the same adversary proceeding They compounded that breach by using the pleading to launch a false and vicious attack on an accomplished and respected member of the Florida Bar and the bar of this Court.  Indeed, the very attorneys who filed this complaint are well familiar with Rule 9011 sanctions.  The Latham Firm sought and obtained an award of sanctions in *In re Evergreen Security, Ltd.,* No. 6:01-BK-00533 ABB, 2008 WL 4716777 (Bankr. M.D. Fla. Feb. 8, 2008).  The Court in *Evergreen* described the offending pleading in that case with language

that applies with equal force to the complaint and amended complaint in this case:

> **The pleading is a conglomeration of gossip, intentional misrepresentations, and untruths.** It had no evidentiary or legal support at the time it was filed, or at any time. Not a single claim had factual basis or legal merit. (emphasis added)

*Id.* at *2.

At about the same time the MVI Attorneys filed the original complaint against Beyer and Saxon Gilmore, they filed three other similar complaints against a total of nine other parties—including this action, the MVI Attorneys have filed four lawsuits against twelve parties claiming that Amodeo's criminal tax scheme was the product of bad professional advice. In that regard, their actions are similar to actions found sanctionable in *Cooper v. Litton Loan Servicing*, 253 B.R. 295 (Bankr. N.D. Fla. 2000). In *Cooper,* the court imposed sanctions because the lawyer pursued "a scorched earth approach, suing anyone remotely connected to the case, and threatening to keep piling on allegations if they even attempted to respond." It is obvious in this case that the MVI Attorneys have chosen to pursue a scorched earth approach and file suit against anyone who might have professional negligence or comparable insurance and who connected in any material way with Amodeo during the time that he pursued his scheme to avoid the payment of payroll taxes.

### THE FALSE ALLEGATIONS IN THE COMPLAINT

Like the complaint, the amended complaint implies, but never specifically alleges, that (1) MVI retained Beyer and Saxon Gilmore to provide advice as to whether MVI could legally choose not to pay certain payroll taxes, (2) Beyer and Saxon Gilmore gave MVI (or related entities) bad advice on this issue, (3) MVI opted not to pay payroll taxes based on that advice, and (4) MVI was damaged as a result. Those implied allegations are false and without evidentiary support for the following reasons:

1.    MVI never retained Beyer and Saxon Gilmore to render advice as to payroll taxes.

2.    Beyer never provided advice to MVI—or any related person or entity—regarding payroll taxes or any other tax-related matter, much less the advice that MVI did not need to pay payroll taxes or could borrow or manipulate funds set aside for payroll taxes in any way.

3.    To the extent MVI chose not to pay payroll taxes, or to borrow or manipulate funds set aside for the payment of payroll taxes, that choice was the result of intentional and admitted criminal misconduct by Amodeo.

4.    Most (if not all) of the payroll taxes that were not paid were and are the obligation of entities other than MVI.

The specific allegations of the complaint that are false and lack any reasonable evidentiary basis are as follows.

13

Paragraph 16 alleges that "On or about January 6, 2005, AQMI and its various professionals, including Beyer, met with IRS revenue officer, Judith Berkowitz to inform the IRS of the estimated tax debt of the Sunshine Companies and the plan for resolution of the debt." That allegation is false. AQMI never retained Beyer for any purpose and Beyer had no connection to the Sunshine Companies Plan and did not even know of its existence. Further, Beyer never attended the January 6, 2005, meeting alleged in the amended complaint.

Paragraph 30 alleges "In 2004, Beyer was originally retained by AQMI to give legal advice regarding the legality of the Sunshine Companies Plan and to assist with the tax treatment and classification of same in all bankruptcy related matters." That allegation is false. AQMI never retained Beyer for any purpose and Beyer had no connection to the Sunshine Companies Plan and did not even know of its existence.

Paragraph 32 alleges "In early 2005, drawing upon his knowledge of the common issues of fact and law from the Sunshine Companies Plan among other represented qualifications, Beyer began consulting or otherwise advising Mirabilis and its subsidiaries." That allegation is false. Beyer had no connection to the Sunshine Companies Plan and did not even know of its existence.

Paragraph 33 alleges "During this time, Beyer began providing legal advice to Mirabilis and its subsidiaries while employed by Saxon Gilmore. A true and correct copy of the January 4, 2005 memorandum detailing some of Beyer's preliminary tasks and duties under the PBS Plan and Sunshine Plan is attached

as Exhibit 'B' ".   That allegation is false.   Beyer never saw the alleged memorandum, which, rather than "detailing some of Beyer's preliminary tasks and duties...", contains a single reference to Beyer regarding a meeting to occur on January 6, 2005; a meeting which, as noted above, Beyer did not even attend. Moreover, Beyer had no connection to the PBS Plan or the Sunshine Plan and did not even know of their existence.

Paragraph 34 alleges "During this time, Beyer became so involved with the PBS Plan, that in December 2005, Beyer as a now employee and officer of Mirabilis, while simultaneously working as an attorney for Saxon Gilmore, Beyer began consulting or otherwise advising Mirabilis and its subsidiaries regarding the PBS Plan and the implementation of the Sunshine Companies Plan." That allegation is false.   While it is true that Beyer became employed by a Mirabilis affiliate called Common Paymaster and was likely listed as an officer of Mirabilis, Beyer had no connection to the PBS Plan or the Sunshine Plan and did not even know of their existence.

Paragraph 35 alleges "In fact, Beyer completed drafts of bankruptcy petition schedules which acknowledged the increasing tax liability of PBS and Paradyme in advance of a potential decision to file bankruptcy on behalf of PSI as part of the PBS Plan.   A true and correct copy of a proposed plan of reorganization regarding one of the Sunshine Companies including the treatment of their tax claim is attached as Exhibit 'C'." That allegation is false.  The attached document is a proposed plan of reorganization for a company called

Kingdom Vision Network, Inc. ("KVN").  KVN has nothing to do with PBS or Paradyme and is not one of the companies alleged as a "Sunshine" company or as part of the "Sunshine Plan".  The document does reflect, however, the type of work that Beyer *actually did* for Mirabilis affiliates, which was to provide bankruptcy advice regarding troubled companies.

Paragraph 36 alleges "However, curiously, Beyer, while employed by Mirabilis and Saxon, drafted a Presidion Plan of reorganization on behalf of Mirabilis, but disclosed them as a prospective creditor, which is clearly a conflict of interest.  A true and correct copy of the draft Petition schedule is attached hereto as Exhibit 'D'."  That allegation is false.  Beyer was never retained to and did not draft a plan of reorganization for Presidion.  Moreover, this allegation fails to reveal how simply listing Mirabilis as a creditor in draft bankruptcy schedules would constitute a conflict (it would not) or how such an alleged conflict caused any damage to MVI.

Paragraph 37 alleges "Beyer knew or should have known that Mirabilis relied on these bankruptcy petitions when determining whether the PBS plan should be approved."  That allegation is false.  Beyer never prepared a bankruptcy petition for Presidion and Beyer had no connection to the PBS Plan and did not even know of its existence.

Paragraph 38 alleges "In March 2006, Beyer compiled all transactional documents in connection with the PBS Plan and spoke with other Mirabilis officers, employees and directors regarding the PBS Plan and its legality.  A true

16

and correct copy of the correspondence regarding the same is attached hereto as Exhibit 'E'." That allegation is false. Beyer had no connection to the PBS Plan and did not even know of its existence. The attached "correspondence" is an e-mail relating to a transaction wholly unrelated to PBS; the e-mail says nothing about the "PBS Plan and its legality".

Paragraph 39 alleges "Beyer was especially interested in the success of the PBS Plan and Sunshine Companies Plan because Beyer had a vested interest in its approval." Paragraph 40 then alleges "In fact, for every deal that Beyer was able to bring to the table for Mirabilis, Beyer would receive a finder's fee." The allegation in paragraph 39 is false and the allegation in paragraph 40 is inaccurate and misleading. While it is true that Beyer's compensation as an employee of Common Paymaster included possible success fees for certain transactions (none were ever paid or sought), Beyer had no connection to the PBS Plan or the Sunshine Plan and did not even know of their existence.

Paragraph 41 alleges "Furthermore, in furtherance of the PBS Plan, Beyer referred Saxon Gilmore, and thus to himself directly, matters for the firm to work on regarding among other things, insolvency and plans of reorganization to assist with the Plan." That allegation is false. While Beyer referred matters relating to MVI or its affiliates to Saxon Gilmore from time to time, Beyer had no connection to the PBS Plan and did not even know of its existence; neither Beyer nor any

anyone else at Saxon Gilmore performed any legal work "to assist with the Plan".[5]

Paragraph 42 alleges "Further, Beyer even attended meetings with the IRS during his employment at Saxon and as an officer of Mirabilis regarding the PBS Plan. A true and correct copy of the expense report and flight log evidencing that in April 2006, Beyer flew to Miami on the Mirabilis jet to discuss the implications and legality of the PBS Plan with the IRS is attached hereto as composite Exhibit 'F'." That allegation is false. Beyer attended two meetings with the IRS. The first pre-dated his employment by Saxon Gilmore and dealt with the pending Chapter 11 bankruptcy case of an entity called Kingdom Vision Network and the potential bankruptcy filing of one or more of the Presidion companies. Beyer attended the second meeting at the request of MVI to witness the making of a payment to the IRS by MVI. However, Beyer had no connection to the PBS Plan and did not even know of its existence; as such, Beyer never discussed "the implications and legality of the PBS Plan with the IRS... ." Moreover, the flight log referenced as an exhibit shows that Beyer flew back and forth from Orlando to Tampa on May 16, 2006, not to Miami. The purpose of this travel was to attend an emergency bankruptcy hearing, which had nothing to do with PBS.

---

[5] Saxon Gilmore specifically identified the inherent potential for conflict with respect to such referrals and MVI, through its president, Frank Hailstones, acknowledged and waived in writing such potential conflicts.

Paragraph 43 alleges "After this meeting, Beyer then sent a draft version of the offer of compromise for tax payers regarding the PBS Plan and Sunshine Companies Plan which was sent from Beyer to Shane Williams as an officer of Mirabilis is attached hereto as Exhibit 'G'." That allegation is false. Beyer had no connection to the PBS Plan and did not even know of its existence; Beyer never had a meeting with the IRS to discuss the implications and legality of the PBS Plan. The attached document is a draft letter dated June 27, 2006—more than two months after the alleged meeting with the IRS—that Frank Amodeo prepared and circulated for commentary. The exhibit comprises Beyer's proposed revisions to the letter. Notably, the letter makes no mention of MVI, the plaintiff in this adversary proceeding.

Paragraph 44 alleges "After receiving advice from Beyer and other professionals, Mirabilis and AEM acquired the PEO book of business, its financial affairs and the PEO operations." Paragraph 45 alleges "AEM and Mirabilis took over the PEO book of business with the belief that their actions were legal and proper based on the representations of Beyer and other professionals." These allegations are false. Beyer never provided any advice or made any representations of any kind regarding "the PEO book of business, its financial affairs [or] the PEO operations".

Paragraph 58 alleges that "at all times material hereto, an attorney-client relationship existed between MVI and Defendants." Paragraphs 59, 60, and 61 allege that Beyer and Saxon Gilmore breached their duties to MVI and caused

damages relating to the PBS Plan and the Sunshine Companies Plan. To the extent these allegations are intended to suggest that MVI retained Beyer or Saxon Gilmore to provide advice regarding payroll taxes, the "legality" of the PBS Plan or the Sunshine Companies Plan, or any other matters regarding the PBS Plan or the Sunshine Companies Plan, the allegations are false. Beyer and Saxon Gilmore had an attorney-client relationship for MVI for a specific engagement relating to the bankruptcy filing of Community Health Solutions of America, LLC. That engagement began in March 2006 and was wholly unrelated to any of the matters alleged in the amended complaint. Moreover, Beyer and Saxon Gilmore did not breach any duty to MVI (or any related entity).

Paragraph 62 alleges "As a direct and proximate result of the Defendants' negligence, MVI, its subsidiaries and related companies have suffered damage to their business, property, as well as its creditors, and accordingly seek compensatory damages." To the extent that allegation is intended to allege that Beyer and Saxon Gilmore were negligent in any way regarding the withholding or payment of payroll taxes, or any matter regarding or relating to the PBS Plan or the Sunshine Companies Plan, and that negligence caused MVI—or any entity or combination of entities—to incur damages, the allegation is false. Moreover, there is no legal basis for MVI to claim damages on behalf of subsidiaries, "related companies", or creditors.

Paragraphs 64, 65, and 66 are largely duplicative of paragraphs 58 - 62 and are equally false for reasons previously stated. In particular, paragraph 65

alleges "Defendants each breached their fiduciary duties to MVI, its subsidiaries and related companies and by virtue of their conduct described hereinabove, particularly, Defendants each failed to advise MVI that entities with the authority to exercise significant control over the financial affairs of a company have a statutory duty to collect, withhold, truthfully account for, and pay over payroll "trust fund" taxes and that failure to intervene to stop and/or mitigate the nonpayment of collected payroll "trust fund" taxes collected could result in significant liability, particularly criminal liability, despite multiple requests from MVI as to the potential consequences of the Sunshine Companies Plan, PBS Plan and MVI's operations." That allegation is false for all the reasons previously stated. Moreover, Frank Amodeo has admitted in his written plea agreement that he received correct advice regarding payment of payroll taxes and chose to disregard that advice.

Paragraph 69 alleges that "Defendants knew, or should have known, that MVI, its subsidiaries and related companies were relying on the information supplied . . . by Defendants in connection with their legal representation of MVI's entities . . . ." To the extent that allegation is intended to suggest that Beyer and Saxon Gilmore knew that MVI or any person or entity was relying on information provided by Beyer and Saxon Gilmore regarding the payment of payroll taxes, the allegation is false for reasons previously stated.

Paragraph 70 alleges that Defendants "owed MVI, its subsidiaries and related companies a duty of reasonable care, skill and diligence to ensure that all

of the information supplied and representations and statements made to or on behalf of MVI and its related entities," etc. To the extent that allegation is intended to suggest that Beyer and Saxon Gilmore owed MVI or any person or entity any duty in connection with statements made or advice given regarding payroll taxes, the allegation is false for reasons previously stated.

Paragraph 71 alleges that "Defendants breached their duty by making material negligent misrepresentations and omissions described above . . . ." To the extent that allegation is intended to suggest that Beyer and Saxon Gilmore breached any duty to any person or entity by making any representation of any kind regarding payroll taxes, the allegation is false for reasons previously stated.

Paragraph 72 is largely duplicative of paragraph 62 and is equally false for reasons previously stated.

Paragraphs 75 – 78 are largely duplicative of paragraphs 58 - 62 and are equally false for reasons previously stated.

Paragraph 81 alleges that "Saxon Gilmore owed MVI, its subsidiaries and related companies a duty to use reasonable care in supervising the conduct and activities of Beyer in connection with their representation of MVI, its subsidiaries and related companies." To the extent that allegation is intended to suggest that Beyer represented MVI or any person or entity in any way in connection with payroll taxes and that Saxon Gilmore owed a duty of supervision in connection with that representation, the allegation is false for reasons previously stated.

Paragraph 82 alleges that "Saxon Gilmore breached its duty of reasonable care by failing to supervise Beyer to ensure that his conduct and activities were not fraudulent or deceptive and that all of his work product and representations on behalf of MVI were true and accurate and to prevent any conflict of interest in drafting bankruptcy documents for companies in which Mirabilis was a creditor." To the extent that allegation is intended to suggest that Beyer committed fraudulent or deceptive acts regarding MVI, or delivered "work product and representations on behalf of MVI" that were not "true and accurate," or undertook any activity that created a conflict of interest, the allegation is false and has no basis in fact whatsoever.

Paragraph 83 alleges that "Saxon Gilmore also breached its duty of reasonable care by failing to supervise the trust account of MVI and its related entities." To the extent that allegation is intended to suggest that Saxon Gilmore ever maintained a trust account on behalf of MVI or any person or entity that related in any way to payroll taxes, the allegation is false.

Paragraph 84 is largely duplicative of paragraphs 62, 66, 72, and 78 and is equally false for reasons previously stated.

## CONCLUSION

Most of the allegations in the amended complaint, and virtually all of the material allegations relating to Beyer or Saxon Gilmore, are false and have no reasonable evidentiary basis. The MVI Attorneys knew or should have known the allegations were false at the time they filed the amended complaint. The "cut

and paste" nature of the initial complaint suggested that the MVI Attorneys conducted no factual investigation whatsoever regarding Beyer and Saxon Gilmore before filing the complaint.  The various unsubstantiated allegations contained in the amended complaint demonstrate that there has been little improvement.  Indeed, it appears that the MVI Attorneys did not even read, much less verify the accuracy of, the exhibits they attached to their own amended complaint.  Had the MVI Attorneys investigated the allegations set forth in the amended complaint, that investigation would have revealed no basis whatsoever for the claims against Beyer and Saxon Gilmore.  Moreover, the circumstances of Amodeo's criminal indictment and plea agreement were well known to the MVI Attorneys when they filed the complaint and the amended complaint.  The complaint and amended complaint appear to be no more than an abusive attempt to allege serious wrongdoing with enormous damages for the purpose of recovering insurance proceeds, regardless of the merit, or lack of merit, of the underlying claims.  The likely purpose of any proceeds that might be recovered is to benefit Amodeo, the real and admitted culprit in this matter. [6]

The MVI Attorneys were given multiple opportunities to dismiss this action.  Undersigned counsel sent Attorney Green a letter on January 30, 2009, advising her of the falsity of the allegations, demanding dismissal of the complaint, advising her that he would be seeking sanctions under Rule 9011 on behalf of his clients, and expressing professional disappointment and offense that

---

[6] Amodeo's admissions during his recent sentencing hearing further confirm the lack of merit of MVI's claims.

Attorney Green filed the complaint. That letter is attached as Exhibit A. Attorney Green did not respond. Undersigned counsel repeated his request for dismissal of the complaint in an e-mail sent on February 16, 2009, a copy of which is attached as Exhibit B. In that e-mail, undersigned counsel offered to speak with Attorney Green regarding the unfounded allegations. Again, Attorney Green did not respond. Undersigned counsel spoke with Attorney Green before the February 19, 2009, pre-trial conference in this matter and requested that she call him to discuss the allegations against Beyer and Saxon Gilmore; she did not call. Finally, undersigned counsel sent Attorney Green another letter on March 12, 2009, demanding dismissal of the claims. A copy of that letter is attached as Exhibit D and the letter from Attorney Green to which it responds is attached as Exhibit C. The service of this motion provides the MVI Attorneys yet another opportunity to dismiss this action.

Like the complaint, the amended complaint violates Rule 9011(b). Rule 9011(c) provides that the Court may impose sanctions on the attorneys and law firms responsible for the violation. In this case, that means Attorney Green, Attorney Eden, and the Latham Firm. Those sanctions are also authorized and appropriate under §105(a) of the Bankruptcy Code and the Court's inherent authority. It is difficult to imagine a more offensive violation than the one presented here. The MVI Attorneys filed a baseless complaint, including a vicious attack on Beyer, for the purpose of trying to extract an insurance settlement, most likely to help Amodeo in connection with his criminal

proceeding. Undeterred by Beyer and Saxon Gilmore's first motion for sanctions, the MVI Attorneys filed the amended complaint, as baseless and frivolous as the original. The Court should sanction the MVI Attorneys in a manner that will send a clear message to them and others in no uncertain terms that such unethical, dishonorable, and downright shameful conduct has no place in our bankruptcy courts or anywhere in our system of justice.

## <u>NOTICE REGARDING SERVICE AND FILING</u>

This motion seeks sanctions under Bankruptcy Rule 9011, §105(a) of the Bankruptcy Code, and the Court's inherent authority. Rule 9011(c) provides a 21-day safe harbor that allows the MVI Attorneys to avoid sanctions under that rule if they withdraw the paper, claims, allegations, and contentions that violate the rule. Although §105(a) of the Bankruptcy Code and the Court's inherent authority have no such provision, this motion will not be filed if the MVI Attorneys dismiss the action against Beyer and Saxon Gilmore with prejudice within 21 days.

s/Joseph H. Varner, III
Joseph H. Varner, III, Esq.
Florida Bar No. 394904
joe.varner@hklaw.com
HOLLAND & KNIGHT LLP
P.O. Box 1288
Tampa, FL   33601-1288
(813) 227-8500
(813) 229-0134 (facsimile)
Attorneys for Saxon, Gilmore, Carraway,
   & Gibbons,  P.A. and Hans C. Beyer

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of June, 2010, I electronically filed the foregoing document with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to the following:

Robert C. Widman, Esq.
Widmor48@mwk-law.com
Morris & Widman, P.A.
245 N. Tamiami Trail, Suite E
Venice, FL 34285
PH: 941-484-0646
FX: 941-496-8870
Attorneys for Plaintiff

Roy S. Kobert, Esq.
rkobert@broadandcassel.com
Todd K. Norman, Esq.
tnorman@broadandcassel.com
Broad and Cassel
390 North Orange Ave., Suite 1400
Orlando, FL 32801
PH: 407-839-4200
Attorneys for Plaintiff

Jennifer S. Eden, Esq.
Latham, Shuker, Eden & Beaudine, LLP
P.O. Box 3353
Orlando, FL 33602
jeden@lseblaw.com
*Via Electronic Mail and U.S. Mail*

Jerry R. Linscott, Esq.
Baker & Hostetler, LLP
P.O. Box 112
Orlando, FL 32802
jlinscott@bakerlaw.com
Attorneys for Elizabeth A. Green, Esq.

s/Joseph H. Varner, III
Attorney

# 9576745_v1 111882-2