UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: MIRABILIS VENTURES, INC.
Bankruptcy Case No.: 6:08-Bk-4327-KSJ

MIRABILIS VENTURES, INC.

     Plaintiff,

v.                            Case No.6:09-CV-1974-Orl-31DAB

SAXON, GILMORE, CARRAWAY, GIBBONS,
LASH &WILCOX, P.A. and HANS
CHRISTIAN BEYER,

     Defendants.

_____/

## DEFENDANTS SAXON, GILMORE, CARRAWAY & GIBBONS, P.A. AND HANS C. BEYER'S MOTION FOR SANCTIONS AND INCORPORATED MEMORANDUM OF LAW

     Defendants Saxon, Gilmore, Carraway & Gibbons, P.A. ("Saxon Gilmore")[1] and Hans

Christian Beyer ("Beyer") move on the following grounds for an order of monetary sanctions

against Robert C. Widman, Esq. ("Attorney Widman"), Roy Kobert, Esq. ("Attorney

Kobert"), the law firm of Morris & Widman, P.A. (the "Widman Firm"), and the law firm of

Broad and Cassel (the "Broad and Cassel Firm") for the frivolous and baseless second

amended complaint (the "Second Amended Complaint") they filed on behalf of Plaintiff

Mirabilis Ventures, Inc. ("MVI"). Attorney Widman, Attorney Kobert, the Widman Firm,

and the Broad and Cassel Firm are collectively referred to as the "MVI Attorneys." Beyer

---

[1]     Saxon Gilmore was formerly known as Saxon, Gilmore, Carraway, Gibbons, Lash & Wilcox,
P.A.

and Saxon Gilmore seek sanctions pursuant to Rule 11, Federal Rules of Civil Procedure, the
Court's inherent authority, and 28 U.S.C. § 1927.

## INTRODUCTION

On December 8, 2008, MVI commenced an adversary proceeding against Beyer and
Saxon Gilmore (and the law firm of Buchanan Ingersoll & Rooney ("BIR")).  As discussed at
length in the motions to dismiss filed by Beyer and Saxon Gilmore and BIR, the complaint
was obviously the product of a careless copy and paste endeavor.  The complaint included
allegations against non-parties, as well as requests for relief on behalf of non-parties.  Beyer
and Saxon Gilmore described the complaint in their motion as a "confusing document that is
largely incomprehensible, internally inconsistent, and, apparently, the product of a careless
word processing 'copy and past' project based on some other pleading(s)."   BIR stated that
the complaint contained "a dizzying morass of allegations" that used "confusion to perpetuate
deficient claims."

Careful and painstaking scrutiny of the complaint revealed that MVI was attempting to
claim that Beyer, while employed first by BIR and then by Saxon Gilmore, improperly
advised MVI not to withhold payroll taxes and that MVI (and/or named and unnamed related
and affiliated companies and subsidiaries) suffered alleged damages "in excess of
$200,000,000.00."  The complaint revealed an individual named Frank Amodeo ("Amodeo"),
who, apparently, was the mastermind of a complex scheme of corporate relationships
designed, in fact, to misuse and hide the misuse of payroll taxes.  Amodeo was indicted and
pled guilty to multiple felony charges involving the failure to pay payroll taxes.  Contrary to
the allegations in the complaint, Amodeo swore in his written plea agreement that he was
aware of his wrongdoing and that he received professional advice that he could not legally

undertake the actions which led to his indictment and which underlie this action. Nonetheless, MVI filed the adversary proceeding and others attempting to paint MVI as a victim of bad legal and accounting advice.[2]

Worse yet, MVI used the original complaint to personally and viciously attack Beyer. Beyer is an established and respected bankruptcy lawyer. Beyer has been a member of the bar for 17 years, is A-V rated by Martindale-Hubbell, is the former Chair of the Bankruptcy/UCC Committee of the Florida Bar's Business Law Section, and has never been the subject of any civil, criminal, or ethical proceeding. The idea that he would advise a client not to pay payroll taxes is absurd on its face. The complaint included other wholly inaccurate allegations about Beyer — such as the claim that he was fired from BIR for breaching his fiduciary duty to clients "by participating in self-dealing and entering into transactions with clients in which Beyer received a direct economic benefit" — which were shameful, slanderous, and pure fiction.[3] The personal allegations about Beyer, like most of the allegations in the complaint, were false and without any foundation in fact.

On January 30, 2009, Beyer and Saxon Gilmore filed a motion to dismiss the complaint. MVI apparently recognized that the complaint was flawed and agreed to its dismissal. That agreement was memorialized in the United States Bankruptcy Court's (the "Bankruptcy Court") March 4, 2009, order. Beyer and Saxon Gilmore also served MVI's former attorneys with a motion for sanctions on February 18, 2009, and a demand that MVI not pursue the baseless claims against Beyer and Saxon Gilmore.

---

[2]     During Amodeo's sentencing hearings before United States District Judge John Antoon, II, Amodeo and his counsel confirmed in no uncertain terms that Amodeo intentionally and knowingly committed criminal acts by misappropriating more than $170,000,000.00 in payroll trust funds.

[3]     The falsity of this baseless allegation was amply demonstrated by the affidavit of John Leathers, General Counsel for BIR, which BIR filed in response to the complaint.

MVI's former attorneys ignored that demand and filed an amended complaint on March 18, 2009.   While MVI dropped the intemperate, slanderous, and *ad hominem* attacks against Beyer, on April 15, 2009, Beyer and Saxon Gilmore filed a motion to dismiss the amended complaint because, *inter alia*, MVI included exhibits with its new complaint that clearly contradicted the very allegations to which they were attached to bolster.   Beyer and Saxon Gilmore also served MVI's former attorneys with a second and supplemental motion for sanctions on May 20, 2009, and a demand that MVI not pursue the claims against Beyer and Saxon Gilmore.   On August 12, 2009, the Bankruptcy Court denied Beyer and Saxon Gilmore's motion to dismiss MVI's amended complaint.[4]

On November 9, 2009, the Bankruptcy Court transferred the adversary proceeding to this District Court for all further proceedings.   *See* Dkt. 3.   At the time of the transfer from Bankruptcy Court to this District Court, MVI changed counsel and retained the MVI Attorneys.   *See* Dkt. 5, 7.   The MVI Attorneys presumably knew the amended complaint was defective because on January 29, 2010, the MVI Attorneys sought leave to amend and permission to file the Second Amended Complaint.   *See* Dkt. 18.   The MVI Attorneys sought leave to amend, in part, to "remov[e] extraneous allegations not germane to this litigation" and "narrow and more concisely state the issues to be determined."   *Id.*

MVI's Second Amended Complaint is better than its first two complaints in some respects and even worse in others, but its fatal flaws warrant sanctions against the MVI Attorneys.   The Second Amended Complaint is clearly a result of a copy and paste effort from the amended complaint.   Most troubling, MVI continues to pursue claims that Beyer and

---

[4] The court applied the outdated standard set forth in *Conley v. Gibson* and concluded that "it does not appear 'beyond doubt' that [MVI] can prove any set of facts to support its claim." Beyer and Saxon Gilmore respectfully disagree with both the court's analysis and conclusion.

Saxon Gilmore are responsible for the damages caused by Amodeo's intentional, criminal misconduct. In doing so, MVI makes numerous false allegations that have no factual support whatsoever.

The MVI Attorneys are subject to sanctions because they filed a Second Amended Complaint that has no factual basis. On information and belief, they also filed the Second Amended Complaint for an improper purpose. The U.S. Attorney's Office and others have filed affidavits suggesting that MVI filed the MVI bankruptcy proceeding and the adversary proceedings, and thus the action at issue, for the purpose of acquiring funds that Amodeo can use for restitution in an attempt to improve his standing in the criminal proceeding. If that is true, clearly, the MVI Attorneys filed the Second Amended Complaint for an improper purpose.

## DISCUSSION OF AUTHORITY

Attorneys have certain duties that supersede their duties to clients. The most fundamental ethical duties an attorney has are the duty of candor to the court and the duty not to misuse the judicial system. In the absence of these core duties, the judicial system could not and would not work. These duties are set forth in the Rules of Professional Conduct, as well as in case law, statute, and certain rules of procedure. One of those rules is Rule 11 of the Federal Rules of Civil Procedure. That rule states that whenever an attorney presents or advocates a written matter to the court, that attorney certifies the following:

    (1)    [the matter] is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase in the cost of litigation;

    (2)    the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous

argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3)   the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4)   the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11(b).  This obligation is enforced by Rule 11(c), which provides that the court may impose appropriate sanctions for violations.  The goal of Rule 11 sanctions is to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001) (*citing Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987)).

The obligations and sanctions set forth in Rule 11 recognize that factually baseless and/or frivolous lawsuits contribute to congested federal court dockets and have no place in our judicial system.  As discussed in *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990), "[i]t is now clear that the central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." *See also Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993); *Johnson v. A.W. Chesterton Co.*, 18 F.3d 1362, 1366 (7th Cir. 1994).

In *In re Cummings*, 381 B.R. 810 (S.D. Fla. 2007), the court explained the relation between Rule 11 and the lawyer's duty of candor as follows:

Lawyers, as officers of the court, have a duty of candor to the tribunal. (*citing Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808-09 (11th Cir. 2003)) (citing *Burns v.*

6

*Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)).   The Florida Rules of Regulating the Florida Bar (sic) also impose upon counsel a duty of candor to the court. (citation omitted). In addition, Rule 11 "reinforces counsel's duty of candor to the Court by subjecting litigants to potential sanctions for making representations to the court for an improper purpose." (*citing Footman v. Wang Tat Cheung,* 341 F. Supp. 2d 1218, 1225 (M.D. Fla. 2004); (citation omitted).

The duty owed by attorneys is that of "complete candor and primary loyalty to the court before which they practice.   An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly." *Footman,* 341 F. Supp. 2d at 1225.   Therefore, a lawyer should not "knowingly misstate, distort, or improperly exaggerate any fact or opinion and should not improperly permit the lawyer's silence or inaction to mislead anyone." *Id.*

*Cummings,* 381 B.R. at 837.

Rule 11 requires a District Court to impose sanctions where an attorney submits a pleading that "(1) is not well-grounded in fact, i.e. has no reasonable factual basis; (2) is not legally tenable; or (3) is submitted in bad faith for an improper purpose." *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002).   Sanctions are warranted when, as here, an attorney exhibits a "deliberate indifference to obvious facts." *Id.* (*quoting Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)).   Importantly, under Rule 11, "an attorney must make a reasonable inquiry into both the legal and factual basis of a claim prior to filing suit . . . [and] cannot simply rely on the conclusory representations of a client." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1255 (11th Cir. 1996).

The Eleventh Circuit has repeatedly recognized that subjective good faith, standing alone, is insufficient to defeat a motion for sanctions pursuant to Rule 11. *See, e.g., Threaf Properties, Ltd. v. Title Ins. Co. of Minn.*, 875 F.2d 831, 835 (11th Cir. 1989).   Rather, an objective standard of reasonableness is applied to determine whether sanctions are appropriate

under Rule 11. *See, e.g., Baker*, 158 F.3d at 524; *Donaldson,* 819 F.2d at 1556; *see also Bus. Guides, Inc. v. Chromatic Communications Enter.*, 498 U.S. 533, 554 (1991). Because the Rule is based on an objective standard of reasonableness, "courts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003). Thus, Rule 11 sanctions are appropriate where, as here, counsel either knows that his factual allegations are baseless or, upon a reasonable factual inquiry, would have discovered that the allegations are unfounded. *See Worldwide Primates*, 87 F.3d at 1254-55 (affirming Rule 11 sanctions where plaintiff's attorney failed to conduct a reasonable inquiry into the basis of his client's damages claim, an inquiry which would have revealed that no damages had been sustained); *King v. Idaho Funeral Serv. Ass'n*, 862 F.2d 744, 747-48 (9th Cir. 1988) (affirming sanctions award because plaintiffs' counsel failed to conduct a reasonable factual inquiry which would have revealed that there was no support to plaintiff's claim).

When imposing sanctions pursuant to Rule 11, the type of sanction to be imposed lies within the court's discretion. *See, e.g., Donaldson,* 819 F.2d at 1557; *Wendy's Int'l, Inc. v. Nu-Cape Constr., Inc.*, 164 F.R.D. 694, 700 (M.D. Fla. 1996). While this Court enjoys broad discretion in setting a sanction award that it believes will serve the deterrent purposes of Rule 11, the most common sanction involves the payment of the opposing party's reasonable attorneys' fees and costs. *See, e.g., Donaldson*, 819 F.2d at 1557; *Divane v. Krull Electric Co.*, 319 F.3d 307, 314 (7th Cir. 2003); *see also Bolte v. Koscove*, No. 04-C-0935, 2005 WL 1895209 (W.D. Wis. Aug., 4, 2005) (finding effective deterrence requires sanction equal to costs plaintiff imposed on the defendants in defending frivolous lawsuit).

Rule 11 is only one means of imposing sanctions on an attorney for filing or advocating a frivolous pleading. The court's inherent authority as noted in *Thomas v. Tenneco Packaging Co., Inc.,* 293 F.3d 1306 (11th Cir. 2002), is a long recognized, fundamental principal of law:

> As we have noted, the district court relied on its inherent powers to levy sanctions against Munson. "It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (internal quotations and brackets omitted).

> This means, among other things, "that a federal court has the power to control admission to its bar and to discipline attorneys." *Chambers,* 501 U.S. at 43, 111 S.Ct. at 2132; *see also Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980) (noting that "[t]he power of a court over members of its bar is at least as great as its authority over litigants"). That is, "[e]ven absent explicit legislative enactment, deeply rooted in the common law tradition is the power of any court . . . to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Carlucci v. Piper Aircraft Corp.,* 775 F.2d 1440, 1447 (11th Cir. 1985) (internal quotations omitted). This "inherent power" to sanction errant lawyers, in fact, "can be invoked even if procedural rules exist which sanction the same conduct." *Chambers,* 501 U.S. at 49, 111 S.Ct. at 2135; *see also In re Mroz,* 65 F.3d at 1575 (pointing out that "although certain conduct may or may not be violative of Rule 11 or Bankruptcy Rule 9011, it does not necessarily mean that a party will escape sanctions under the court's inherent power").

In *In re Johnson,* 336 B.R. 568 (S.D. Fla. 2006), the court explained that the particulars of Rule 11 (and Rule 9011) do not limit the court's inherent authority to impose sanctions. The court explained:

> However, the language of the referenced rules is no substitute for the Court's inherent power to fashion an appropriate

> sanction. Chambers, 501 U.S. at 46, 111 S.Ct. 2123.   Thus,
> Rule 11 and Bankruptcy Rule 9011 do not limit the nature of
> conduct as to which the Court my (sic) impose sanctions, as the
> inherent power of the Court extends to the full range of
> litigation abuses.   *Id.* A Court may assess attorney's fees as a
> proper sanction for conduct that is in bad faith, vexatious,
> wanton, or for oppressive reasons.   *Roadway Express v. Piper*,
> 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)

*In re Johnson*, 336 B.R. at 572-73.

Likewise, in *In re Mroz v. Glatter*, 65 F.3d 1567, 1575 (11th Cir. 1995), the court

explained that while certain conduct may or may not be violative of Rule 11, it does not

necessarily mean that a party will escape sanctions under the court's inherent power. (*citing*

*Chambers*, 501 U.S. at 49); *see also Fellheimer, Eichen & Braverman, P.C. v. Charter*

*Technologies, Inc.*, 57 F.3d at 1215, 1224 (3d Cir. 1995) ("[m]oreover, we have previously

rejected the proposition 'that once a claim is held not to violate Rule 11, the court is prevented

from imposing sanctions under its inherent power.' ") (*quoting Gillette Foods Inc. v.*

*Bayernwald-Fruchteverwertung*, 977 F.2d 809, 813 (3rd Cir.1992)).

Similar to the court's inherent power, 28 U.S.C. § 1927 is another means of awarding

fees and costs as sanctions when counsel engages in vexatious, unsubstantiated litigation. 28

U.S.C. § 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any
> court of the United States or any Territory thereof who so
> multiplies the proceedings in any case unreasonably and
> vexatiously may be required by the court to satisfy personally
> the excess costs, expenses, and attorneys' fees reasonably
> incurred because of such conduct.

28 U.S.C. § 1927; *see, e.g., Dictiomatic, Inc. v. U. S. Fidelity & Guaranty Co.*, 127 F. Supp.

2d 1239, 1248 (S.D. Fla. 1999) (concluding that attorneys actually knew that the facts did not

support a legal claim and awarding fees); *Smith v. Grand Bank & Trust of Fla.*, No. 04-

80343-Civ, 2005 WL 6106148, at *10-11 (S.D. Fla. April 28, 2005) (holding that commencing and maintaining a lawsuit in light of evidence that should have prompted plaintiff's attorney to dismiss the claim was vexatious, multiplied the proceedings, and was in bad faith).

### SANCTIONS ARE NECESSARY AND APPROPRIATE IN THIS CASE

The Court should and must impose sanctions in this case because the MVI Attorneys filed a pleading full of false allegations that have no reasonable evidentiary basis without an adequate pre-suit investigation.   Although this action has been pending for over a year and MVI and its counsel have had ample time and access to all the available evidence underlying the events and transactions at issues, they have failed to produce even a scintilla of evidence supporting their claims;  in contrast, they have located and are aware of substantial evidence refuting the claims. Indeed, the MVI Attorneys have now filed such a pleading even after Amodeo swore in his written plea agreement that he was aware of his wrongdoing and that he received professional advice that he could not legally undertake the actions which underlie this action and after discovery confirmed that Beyer and Saxon Gilmore have no responsibility for the damages caused by Amodeo's criminal misconduct.   In doing so, the MVI Attorneys make numerous false allegations that have no factual support whatsoever. As a consequence, and in accordance with the prevailing case law, the MVI Attorneys are subject to sanctions, including but not limited to an award of attorneys' fees and costs, as prescribed by Rule 11, the court's inherent power, and 28 U.S.C. § 1927.

Sanctions are indeed warranted against the MVI Attorneys.   The Court in *In re Evergreen Security, Ltd.,* No. 6:01-BK-00533 ABB, 2008 WL 4716777 (Bankr. M.D. Fla.

Feb. 8, 2008) described the offending pleading in that case with language that applies with equal force to the Second Amended Complaint in this case:

> The pleading is a conglomeration of gossip, intentional misrepresentations, and untruths. **It had no evidentiary** or legal **support at the time it was filed, or at any time. Not a single claim had factual basis or legal merit**. (emphasis added)

*Id.* at *2.

In addition to filing the Second Amended Complaint against Beyer and Saxon Gilmore, the MVI Attorneys are also pursuing three other lawsuits against a total of eight other parties. Including this action, the MVI Attorneys have four lawsuits against ten parties, each claiming that Amodeo's criminal tax scheme was the product of bad professional advice. In that regard, their actions are similar to actions found sanctionable in *Cooper v. Litton Loan Servicing*, 253 B.R. 295 (N.D. Fla. 2000). In *Cooper*, the court imposed sanctions because the lawyer pursued "a scorched earth approach, suing anyone remotely connected to the case, and threatening to keep piling on allegations if they even attempted to respond." It is obvious in this case that the MVI Attorneys have chosen to pursue a scorched earth approach and file suit against anyone who might have professional negligence or comparable insurance and who was connected in any material way with Amodeo during the time that he pursued his scheme to avoid the payment of payroll taxes.

### THE FALSE ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

Like the complaint and amended complaint, the Second Amended Complaint implies, but never specifically alleges, that (1) MVI retained Beyer and Saxon Gilmore to provide advice as to whether MVI could legally choose not to pay certain payroll taxes, (2) Beyer and Saxon Gilmore gave MVI (or related entities) bad advice on this issue, (3) MVI opted not to

pay payroll taxes based on that advice, and (4) MVI was damaged as a result. Those implied

allegations are false and without evidentiary support for the following reasons:

1.    MVI never retained Beyer and Saxon Gilmore to render advice as to payroll taxes.

2.    Beyer never provided advice to MVI — or any related person or entity — regarding payroll taxes or any other tax-related matter, much less the advice that MVI did not need to pay payroll taxes or could borrow or manipulate funds set aside for payroll taxes in any way.

3.    To the extent MVI chose not to pay payroll taxes, or to borrow or manipulate funds set aside for the payment of payroll taxes, that choice was the result of intentional and admitted criminal misconduct by Amodeo.

4.    Most (if not all) of the payroll taxes that were not paid were and are the obligation of entities other than MVI.

The specific allegations of the Second Amended Complaint that are false and lack any

reasonable evidentiary basis are as follows.

Paragraph 28 alleges "In 2004, Beyer was originally retained by AQMI to give legal

advice regarding the legality of the Sunshine Companies Plan and to assist with the tax

treatment and classification of the same in all bankruptcy related matters." That allegation is

false. AQMI never retained Beyer for any purpose and Beyer had no connection to the

Sunshine Companies Plan and did not even know of its existence.

Paragraph 30 alleges "In early 2005, drawing upon his knowledge of the common

issues of fact and law from the Sunshine Companies Plan among other represented

qualifications, Beyer began consulting or otherwise advising Mirabilis and its subsidiaries."

That allegation is false. Beyer had no connection to the Sunshine Companies Plan and did not

even know of its existence.

Paragraph 31 alleges "During this time, Beyer began providing legal advice to Mirabilis and its subsidiaries while employed by Saxon Gilmore. A true and correct copy of the January 4, 2005 memorandum prospectively detailing some of Beyer's preliminary tasks and duties under the PBS Plan and Sunshine [Companies] Plan is attached hereto as Exhibit A." That allegation is false. Beyer never saw the alleged memorandum, which, rather than "detailing some of Beyer's preliminary tasks and duties...", contains a single reference to Beyer regarding a meeting to occur on January 6, 2005; a meeting which Beyer did not even attend. Moreover, Beyer had no connection to the PBS Plan or the Sunshine Companies Plan and did not even know of their existence.

Paragraph 32 alleges "During this time, Beyer became so involved with the PBS Plan, that in December 2005, Beyer became an employee of Common Paymaster Corp., a MVI subsidiary, as well as a director of several other subsidiaries of MVI. Furthermore, while simultaneously working as an attorney for Saxon Gilmore, Beyer began consulting or otherwise advising Mirabilis and its subsidiaries regarding the PBS Plan and the implementation of the Sunshine Companies Plan." That allegation is false. While it is true that Beyer became employed by Common Paymaster Corp., a MVI affiliate, and was likely listed as an officer of MVI, Beyer had no connection to the PBS Plan or the Sunshine Companies Plan and did not even know of their existence.

Paragraph 33 alleges "In fact, Beyer completed drafts of bankruptcy petition schedules which acknowledged the increasing tax liability of PBS and Paradyme in advance of a potential decision to file bankruptcy on behalf of PSI as part of the PBS Plan. A true and correct copy of a draft Chapter 11 Petition prepared by Beyer for PSI is annexed hereto as Exhibit B." That allegation is false. Beyer was never retained to and did not draft a plan of

reorganization for PSI.  Beyer had no connection to the PBS Plan and did not even know of its existence.  Moreover, the attached document has nothing to do with the alleged PBS Plan. The document does reflect, however, the type of work that Beyer *actually did* for MVI affiliates, which was to provide bankruptcy advice regarding troubled companies.

Paragraph 34 alleges "Beyer, while employed by Mirabilis and Saxon Gilmore, in the Chapter 11 Petition that he drafted on behalf of PSI (Exhibit B), listed Mirabilis as a prospective creditor, a clear conflict of interest."  That allegation is false.  Beyer was never retained to and did not draft a plan of reorganization for PSI.  Moreover, this allegation fails to reveal how simply listing MVI as a creditor in draft bankruptcy schedules would constitute a conflict (it would not) or how such an alleged conflict caused any damage to MVI.

Paragraph 35 alleges "Beyer knew or should have known that Mirabilis relied on these bankruptcy petitions when determining whether the PBS plan should be approved."  That allegation is false.  Beyer never prepared a bankruptcy petition for PSI and Beyer had no connection to the PBS Plan and did not even know of its existence.

Paragraph 36 alleges "In March 2006, Beyer compiled all transactional documents in connection with the PBS Plan and spoke with other Mirabilis officers, employees and directors regarding the PBS Plan and its legality.  A true and correct copy of the correspondence regarding the same is attached hereto as Exhibit C."  That allegation is patently false.  Beyer had no connection to the PBS Plan and did not even know of its existence.  The attached "correspondence" is an e-mail relating to a transaction wholly unrelated to PBS; the e-mail says nothing about the "PBS Plan and its legality."

Paragraph 37 alleges "Beyer was especially interested in the success of the PBS Plan and Sunshine Companies Plan because Beyer had a vested interest in its approval."  Paragraph

38 then alleges "In fact, for every deal that Beyer was able to bring to the table for Mirabilis, Beyer would receive a finder's fee." The allegation in paragraph 37 is false and the allegation in paragraph 38 is inaccurate and misleading. While it is true that Beyer's compensation as an employee of Common Paymaster Corp. included possible success fees for certain transactions (none were ever paid or sought), Beyer had no connection to the PBS Plan or the Sunshine Companies Plan and did not even know of their existence.

Paragraph 39 alleges "Furthermore, in furtherance of the PBS Plan, Beyer referred Saxon Gilmore, and thus to himself directly, matters for Saxon Gilmore to work on regarding among - other things, insolvency and plans of reorganization to assist with the Plan." That allegation is false. While Beyer referred matters relating to MVI or its affiliates to Saxon Gilmore from time to time, Beyer had no connection to the PBS Plan and did not even know of its existence; neither Beyer nor any anyone else at Saxon Gilmore performed any legal work "to assist with the Plan."[5]

Paragraph 40 alleges "In addition, Beyer, in representing Mirabilis, attended meetings with the IRS during the term of his employment at Saxon Gilmore, while serving on the Global Development Committee of the Mirabilis Board of Directors and with the various Mirabilis subsidiaries regarding the PBS Plan." That allegation is false. Beyer attended two meetings with the IRS. The first pre-dated his employment by Saxon Gilmore and dealt with the pending Chapter 11 bankruptcy case of an entity called Kingdom Vision Network and the potential bankruptcy filing of one or more of the PSI companies. Beyer attended the second meeting at the request of MVI to witness the making of a payment to the IRS by MVI.

---

[5]     Saxon Gilmore specifically identified the inherent potential for conflict with respect to such referrals and MVI, through its president, Frank Hailstones, acknowledged and waived in writing such potential conflicts.

However, Beyer had no connection to the PBS Plan and did not even know of its existence; as such, Beyer never discussed the PBS Plan with the IRS.

Paragraph 41 alleges "After an April, 2006 meeting with IRS representatives, Beyer sent a draft version of an offer of compromise for taxpayers regarding the PBS Plan and Sunshine Companies Plan which was sent from Beyer to Shane Williams and others, [which] is attached hereto as Exhibit D." That allegation is false. Beyer had no connection to the PBS Plan and did not even know of its existence; Beyer never had a meeting with the IRS to discuss the PBS Plan, much less the implications and legality of the PBS Plan. The attached document is a draft letter dated June 27, 2006 — more than two months after the alleged meeting with the IRS — that Frank Amodeo prepared and circulated for commentary. The exhibit comprises Beyer's proposed revisions to the letter. Notably, the letter makes no mention of MVI, the plaintiff in this proceeding.

Paragraph 42 alleges "In the Spring of 2006 AEM, Inc., a MVI subsidiary, purchased the PEO business of PSI, but rescinded the sale within the month of acquisition. AEM began managing the PSI PEO business for PSI." Paragraph 43 alleges "AEM and Mirabilis took over the PEO book of business with the belief that their actions were legal and proper based on the representations of Beyer and other professionals." These allegations are false. Beyer never provided any advice or made any representations of any kind regarding "the PEO book of business," its financial affairs or the PEO operations.

Paragraph 57 alleges that "at all times material hereto, an attorney-client relationship existed between Mirabilis and the Defendants." Paragraphs 61 and 62 allege that Beyer and Saxon Gilmore breached their duties to MVI and caused damages relating to the PBS Plan and the Sunshine Companies Plan. To the extent these allegations are intended to suggest that

MVI retained Beyer or Saxon Gilmore to provide advice regarding payroll taxes, the "legality" of the PBS Plan or the Sunshine Companies Plan, or any other matters regarding the PBS Plan or the Sunshine Companies Plan, the allegations are false. Beyer and Saxon Gilmore had an attorney-client relationship for MVI for a specific engagement relating to the bankruptcy filing of Community Health Solutions of America, LLC. That engagement began in March 2006 and was wholly unrelated to any of the matters alleged in the Second Amended Complaint. Moreover, Beyer and Saxon Gilmore did not breach any duty to MVI (or any related entity).

Paragraph 62 alleges "As a direct and proximate result of the professional negligence of the Defendants'[,] MVI, its subsidiaries and related companies have suffered damage to their business, property, including an allowed claim in bankruptcy against it in the sum of Two Hundred Million Dollars ($200,000,000), adverse tax consequences, including interest and penalties, incurred legal and expert fees and costs, and accordingly seek compensatory damages." To the extent that allegation is intended to allege that Beyer and Saxon Gilmore were negligent in any way regarding the withholding or payment of payroll taxes, or any matter regarding or relating to the PBS Plan or the Sunshine Companies Plan, and that negligence caused MVI — or any entity or combination of entities — to incur damages, the allegation is false. Moreover, there is no legal basis for MVI to claim damages on behalf of subsidiaries or "related companies."

Paragraphs 64, 65, and 66 are largely duplicative of paragraphs 57, 61, and 62 and are equally false for reasons previously stated. In particular, paragraph 65 alleges "Defendants each breached their aforementioned fiduciary duties to MVI, its subsidiaries and related companies and deviated from the applicable standards of professional care, by virtue of their

conduct described hereinabove, including but not limited to, Defendants failure to advise

MVI, its subsidiaries and related companies that the Sunshine Companies Plan, PBS Plan and

MVI's operations could result in criminal and civil liability for MVI, its subsidiaries and

related companies." That allegation is false for all the reasons previously stated. Moreover,

Frank Amodeo has admitted in his written plea agreement that he received correct advice

regarding payment of payroll taxes and chose to disregard that advice.

Paragraph 69 alleges that "Defendants knew, or should have known, that MVI, its

subsidiaries and related companies were relying on the information supplied . . . by

Defendants in connection with their legal representation of MVI's entities . . . ." To the extent

that allegation is intended to suggest that Beyer and Saxon Gilmore knew that MVI or any

person or entity was relying on information provided by Beyer and Saxon Gilmore regarding

the payment of payroll taxes, the allegation is false for reasons previously stated.

Paragraph 70 alleges that Defendants "owed MVI, its subsidiaries and related

companies a duty of reasonable care, skill and diligence to ensure that all of the information

supplied and representations and statements made to or on behalf of MVI and its related

entities were true . . . ." To the extent that allegation is intended to suggest that Beyer and

Saxon Gilmore owed MVI or any person or entity any duty in connection with statements

made or advice given regarding payroll taxes, the allegation is false for reasons previously

stated.

Paragraph 71 alleges that "Defendants breached their duty by making material

negligent misrepresentations and omissions described above . . . ." To the extent that

allegation is intended to suggest that Beyer and Saxon Gilmore breached any duty to any

person or entity by making any representation of any kind regarding payroll taxes, the allegation is false for reasons previously stated.

Paragraph 72 is largely duplicative of paragraph 62 and is equally false for reasons previously stated.

Paragraph 75 alleges that "Saxon Gilmore owed MVI, its subsidiaries and related companies a duty to use reasonable care in supervising the conduct and activities of Beyer in connection with their representation of MVI, its subsidiaries and related companies." To the extent that allegation is intended to suggest that Beyer represented MVI or any person or entity in any way in connection with payroll taxes and that Saxon Gilmore owed a duty of supervision in connection with that representation, the allegation is false for reasons previously stated.

Paragraph 76 alleges that "Saxon Gilmore breached its duty of reasonable care by failing to supervise Beyer to ensure that his conduct and activities were not fraudulent or deceptive and that all of his work product and representations on behalf of MVI were true and accurate and to prevent any conflict of interest in drafting bankruptcy documents for companies in which Mirabilis was a creditor, the trust account of MVI and its related entities." To the extent that allegation is intended to suggest that Beyer committed fraudulent or deceptive acts regarding MVI, or delivered "work product and representations on behalf of MVI" that were not "true and accurate," or undertook any activity that created a conflict of interest, the allegation is false and has no basis in fact whatsoever. Moreover, to the extent that allegation is intended to suggest that Saxon Gilmore ever maintained a trust account on behalf of MVI or any person or entity that related in any way to payroll taxes, the allegation is false.

Paragraph 77 is largely duplicative of paragraphs 62, 66, and 72 and is equally false

for reasons previously stated.

## MVI'S DEFICIENT, YET TELLING DISCOVERY RESPONSES

Sanctions are warranted against the MVI Attorneys for bringing the Second Amended

Complaint without adequate investigation and when discovery has confirmed that the Second

Amended Complaint lacks factual support. *See, e.g., Riccard*, 307 F.3d at 1294; *Worldwide*

*Primates,* 87 F.3d at 1254-55; *King*, 862 F.2d at 747-48.   MVI's discovery responses have

exposed the lack of factual support for the Second Amended Complaint.   On October 1, 2009,

Beyer served Interrogatories ("Interrogatories") and a Request for Production of Documents

("Document Requests") on MVI. The Interrogatories and Document Requests targeted

specific information supporting MVI's claims.   On December 18, 2009, MVI responded to the

simple discovery requests. MVI's responses, however, are devoid of any substantive

information, contain unfounded objections, and are otherwise insufficient and evasive.   For

example, interrogatory number one (1) and MVI's response are as follows:

Interrogatory One:

Identify and describe in detail all legal advice or opinions
requested of Beyer that are the subject of this lawsuit.   To
provide a meaningful answer to this interrogatory, for each
request for legal advice of opinions, (1) identify the subject
matter of the request, (2) describe the request, (3) state the
date(s) on which the request was made, (4) state the means of
communication of the request (i.e., in writing, via electronic
communication, face to face (if so, identify the location), via
telephone, etc.), and (5) identify the person(s) making the
request

MVI's Response:

Plaintiff objects insofar as said request calls for work product.
Without waiving said objection Plaintiff states that there are

between 5000 and 6000 boxes of documents contained in a secured warehouse that Plaintiff will make available to Defendant. Plaintiff has provided Defendant with an index of the boxes and file servers. There are also 20,000 hours of video. There are 70 hard drives that Plaintiff has copied and will make available to Defendant. Plaintiff is in the process of preparing an index to same which it will provide to Defendant.

MVI's responses to the basic Document Requests are likewise deficient. For example, document request number two (2) and MVI's response are as follows:

Document Request Two:

All documents that evidence legal advice or opinions provided by Beyer.

MVI's Response:

Plaintiff objects insofar as said request calls for work product. Without waiving said objection Plaintiff states that there are between 5000 and 6000 boxes of documents contained in a secured warehouse that Plaintiff will make available to Defendant. A copy of the index is attached hereto. There are also 20,000 hours of video. There are 70 hard drives that Plaintiff has copied and will make available to Defendant. Plaintiff is in the process of preparing an index to same which it will provide to Defendant. There has been no prior discovery in this case and Plaintiff has not isolated the "Beyer documents" from the voluminous other documents in this case.

MVI's answers to the discovery requests are tellingly unresponsive. The discovery requests all seek information relating to the factual basis for MVI's claims that Beyer improperly advised MVI during the course of his alleged legal duties and employment with Saxon Gilmore. As a result, each of the discovery requests go to the very heart of MVI's claims. Despite the fact that this *litigation has been pending for over 15 months*, MVI's answers fail to offer any evidence to support MVI's claims. MVI's inability (or refusal) to identify the legal advice or opinions requested of, or provided by, Beyer evidences MVI's bad

faith in bringing its present claims against Beyer and Saxon Gilmore because MVI lacked, and continues to lack, the necessary factual foundation required by Rule 11 to bring this action.[6]

## CONCLUSION

Most of the allegations in the Second Amended Complaint, and virtually all of the material allegations relating to Beyer or Saxon Gilmore, are false and have no reasonable evidentiary basis. The MVI Attorneys knew or should have known the allegations were false at the time they filed the Second Amended Complaint. The "cut and paste" nature of the Second Amended Complaint suggests that the MVI Attorneys conducted no factual investigation whatsoever regarding Beyer and Saxon Gilmore before filing the Second Amended Complaint. Had the MVI Attorneys investigated the allegations set forth in the Second Amended Complaint, that investigation would have revealed no basis whatsoever for the claims against Beyer and Saxon Gilmore. Moreover, the circumstances of Amodeo's criminal indictment, plea agreement, and sentencing were well known to the MVI Attorneys when they filed the Second Amended Complaint. The Second Amended Complaint appears to be no more than an abusive attempt to allege serious wrongdoing with enormous damages for the improper purpose of recovering insurance proceeds, regardless of the merit, or lack of merit, of the underlying claims.

The MVI Attorneys were given multiple opportunities to abandon MVI's claims and dismiss this action. After the MVI Attorneys were retained, undersigned counsel (Attorney Varner) advised the MVI Attorneys that MVI's allegations and factual contentions against Beyer and Saxon Gilmore lacked evidentiary support. Counsel advised the MVI Attorneys

---

[6]    The MVI Attorneys' work-product privilege objection to each and every discovery request is baseless and absurd.

that he had served previous motions for sanctions and he advised the MVI Attorneys why he had done so.[7]  Further, on February 12, 2010, Attorney Widman took Beyer's deposition wherein Beyer testified, *inter alia,* that he never rendered any legal services to MVI as a Saxon Gilmore attorney, that he had no connection to the PBS Plan or the Sunshine Companies Plan, and that he did not even know of the PBS Plan's or Sunshine Companies Plan's existence before the present suit was commenced. After the Beyer deposition, undersigned counsel (Attorney Varner) repeated his request for dismissal of the Second Amended Complaint and advised Attorney Widman and R.W. Cuthill Jr., MVI's acting President, that he would have no choice but to seek sanctions under Rule 11 if the baseless claims were not abandoned.  In response, Mr. Cuthill haughtily responded that he "get[s] lots of Rule 11 motions and hasn't had to pay one yet."[8]  The service of this motion provides the MVI Attorneys yet another opportunity to dismiss this action.

Like the complaint and amended complaint, the Second Amended Complaint violates Rule 11(b).  Rule 11(c) provides that the Court may impose sanctions on the attorneys and law firms responsible for the violation.  In this case, that means Attorney Widman, Attorney Kobert, the Widman Firm, and the Broad and Cassel Firm.  Those sanctions are also authorized and appropriate under the Court's inherent authority and 28 U.S.C. § 1927.  It is difficult to imagine a more offensive violation than the one presented here.  Contrary to the allegations in the Second Amended Complaint, Amodeo swore in his written plea agreement that he was aware of his wrongdoing and that he received professional advice that he could

---

[7] Undersigned counsel views Rule 11 motions as a last resort; this is the second case in 26 years of practice in which counsel has served a Rule 11 motion.
[8] If the quality of this action is any indication, it is not surprising that Mr. Cuthill has received multiple Rule 11 motions.

not legally undertake the actions which led to his indictment and which underlie this action. Undeterred by Amodeo's and Amodeo's criminal counsel's admissions, the MVI Attorneys filed the baseless and frivolous Second Amended Complaint for the transparent purpose of trying to extract an insurance settlement, most likely to help Amodeo in connection with his criminal proceeding. There is no evidence that Beyer or Saxon Gilmore were aware of or had anything to do with Amodeo's criminal scheme. Indeed, there is no evidence that MVI even suffered the damages alleged in this lawsuit.

The Court should sanction the MVI Attorneys in a manner that will send a clear message to them and others in no uncertain terms that such unethical, dishonorable, and downright shameful conduct has no place in our courts or anywhere in our system of justice. In this case, Beyer and Saxon Gilmore submit that no lesser sanction than an award of Beyer's and Saxon Gilmore's attorneys' fees and costs incurred in defending this action and pursuing the present motion will deter the MVI Attorneys, and others from engaging in similar misconduct in the future. Rule 11(b)(1); *see also Wendy's*, 164 F.R.D. at 700 ("[a]n appropriate sanction may include an order to pay the opposing party or parties the amount of reasonable expenses, including attorneys' fees incurred in responding to the motion, pleading, or paper") (*citing Pretty Punch Shoppettes, Inc. v. Creative Wonders, Inc.*, 750 F. Supp. 487, 494 (M.D. Fla. 1990)).

## NOTICE REGARDING SERVICE AND FILING

This motion seeks sanctions under Rule 11, Federal Rules of Civil Procedure, the Court's inherent authority, and 28 U.S.C. § 1927. Rule 11(c)(2) provides a 21-day safe harbor that allows the MVI Attorneys to avoid sanctions under that rule if they withdraw the paper, claims, allegations, and contentions that violate the rule. Although the Court's inherent

authority and 28 U.S.C. § 1927 have no such provision, this motion will not be filed if the MVI Attorneys dismiss the action against Beyer and Saxon Gilmore with prejudice within 21 days.

> s/Joseph H. Varner, III
> Joseph H. Varner, III
> Florida Bar No. 394904
> joe.varner@hklaw.com
> Justin L. Dees
> Florida Bar No. 048033
> justin.dees@hklaw.com
> HOLLAND & KNIGHT LLP
> P.O. Box 1288
> Tampa, FL  33601-1288
> (813) 227-8500 * (813) 229-0134 (facsimile)
> Attorneys for Saxon, Gilmore, Carraway,
>    & Gibbons, P.A. and Hans C. Beyer

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of June, 2010, I electronically filed the foregoing document with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to the following:

Robert C. Widman, Esq.
Widmor48@mwk-law.com
Morris & Widman, P.A.
245 N. Tamiami Trail, Suite E
Venice, FL 34285
PH: 941-484-0646
FX: 941-496-8870
Attorneys for Plaintiff

Roy S. Kobert, Esq.
rkobert@broadandcassel.com
Todd K. Norman, Esq.
tnorman@broadandcassel.com
Broad and Cassel
390 North Orange Ave., Suite 1400
Orlando, FL 32801
PH: 407-839-4200
Attorneys for Plaintiff

Jennifer S. Eden, Esq.
Latham, Shuker, Eden & Beaudine, LLP
P.O. Box 3353
Orlando, FL 33602
jeden@lseblaw.com
*Via Electronic Mail and U.S. Mail*

Jerry R. Linscott, Esq.
Baker & Hostetler, LLP
P.O. Box 112
Orlando, FL 32802
jlinscott@bakerlaw.com
Attorneys for Elizabeth A. Green, Esq.

> s/Joseph H. Varner, III
> Attorney

# 9576831_v1 111882-2