IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: MIRABILIS VENTURES, INC.          Case No. 6:09-CV-1974-ORL-31DAB
Bankruptcy Case No.: 6:08-Bk-4327-KSJ
_____

MIRABILIS VENTURES, INC.

      Plaintiff,

v.

SAXON, GILMORE, CARRAWAY,
GIBBONS, LASH & WILCOX, P.A. and HANS
CHRISTIAN BEYER,

      Defendants.
_____

## MOTION FOR RECONSIDERATION

Plaintiff, MIRABILIS VENTURES, INC., ("Mirabilis") pursuant to Rule 59 and alternatively Rule 60 of the Federal Rules of Civil Procedure, by and through the undersigned attorneys, files this Motion for Reconsideration and states as follows:

### I. FACTUAL AND PROCEDURAL BACKGROUND

1.     This Court entered a Case Management and Scheduling Order [D.E. #17] on December 10, 2009.  Pursuant to the Order, the discovery deadline was August 16, 2010.  The Plaintiff's disclosure date for Expert Reports was June 1, 2010. The deadline to file dispositive motions was September 1, 2010.

2.     On April 21, 2010, the Defendants filed a Motion for Summary Judgment [D.E. #22].

3.     On May 24, 2010, the Plaintiff filed a Memorandum in Opposition to the Defendants' Motion for Summary Judgment, or, in the alternative, Motion to Postpone Ruling [D.E.#31].

4.      On June 4, 2010, the Defendants filed a Reply Brief in Support of their Motion for

Summary Judgment [D.E. #32].

5.      On June 18, 2010, this Court granted the Defendants' Motion for Summary Judgment

[D.E. #33].

6.      On June 21, 2010, the Clerk entered a Judgment in favor of the Defendants [D.E. #34].

## II. STANDARD FOR RECONSIDERATION

While the Federal Rules of Civil Procedure do not specifically reference a motion for

reconsideration, courts routinely recognize such motions as falling under Rules 59(e) or 60(b).

The function of a motion for reconsideration is "to correct manifest errors of law or fact or to

present newly discovered evidence." *Z.K. Marine, Inc. v. M/V Archigetis*, 808 F. Supp. 1561,

1563 (S.D. Fla.1992). Thus, it is appropriate for a party to bring a motion for reconsideration if

the court has misapprehended or overlooked the applicable law or facts at issue or the Court was

not presented with all of the relevant information. *Lamar Adver. Of Mobile, Inc. v. TLC

Properties, Inc.*, 189 F.R.D. 480, 489 (M.D. Fla. 1999). "In particular, there are three major

grounds which justify reconsideration: (1) an intervening change in controlling law; (2) the

availability of new evidence; and (3) the need to correct clear error or prevent manifest

injustice." *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 477 (S.D. Fla.

2002) (citing *Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc.*, 62 F. Supp. 2d

1316, 1331 (M.D. Fla. 1999).

It is well-established that arguments that were or should have been raised in the first

instance are not appropriate grounds for a motion for reconsideration. *Gougler v. Sirius Prods.,

Inc.*, 370 F. Supp. 2d 1185, 1189 (S.D. Ala. 2005). "Instead, a motion for reconsideration is

appropriate where the 'Court has patently misunderstood a party, or has made a decision outside

of the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension....'" *Ass'n for Disabled Americans*, 211 F.R.D. at 477 (quoting *Z.K. Marine, Inc.*, 808 F. Supp. at 1563).  The reconsideration decision is "committed to the sound discretion of the district judge" and a motion for reconsideration will be granted only in extraordinary circumstances.  *Tristar Lodging, Inc. v. Arch Specialty Ins. Co.*, 434 F. Supp. 2d 1286, 1301 (M.D. Fla. 2006) (quoting *Am. Home Assurance Co. v. Glenn Estess & Assocs.*, 763 F. 2d 1237, 1238-39 (11th Cir. 1985); *See Gaisser v. Portfolio Recovery Assocs.*, LLC, 2009 U.S. Dist LEXIS 43807 (S.D. Fla. 2009).  Although the standard is strict, the motion will be granted if the moving party can point to controlling decisions or data that the court overlooked. *United States v. Zarabozo,* 2008 U.S. Dist. LEXIS 96363 (S.D. Fla. Nov. 26, 2008).

### III.  ARGUMENT

In this case, while the Plaintiff recognizes that a court's reconsideration of its prior order is an extraordinary remedy, the Plaintiff respectfully suggest that this Court's reconsideration of its Order granting the Defendants' Motion for Summary Judgment is necessary to correct clear error and prevent manifest injustice.  As set forth more fully below, this Court never had the opportunity to hear all of the applicable facts or legal arguments.  Therefore, to prevent manifest injustice to Plaintiff, this Court should reconsider or, in the alternative, vacate its Order.

This Court has not yet considered the Plaintiff's sworn Expert Witness Report of David M. Richardson, attached hereto as Exhibit "A."  Mr. Richardson, an experienced tax attorney and former Professor of Law at the University of Florida School of Law, provided a sworn affidavit in this matter on May 31, 2010. *The Expert Witness Report was not attached to the Plaintiff's Memorandum in Opposition to the Defendants' Motion for Summary Judgment, or, in the alternative, Motion to Postpone Ruling [D.E.#31] because Mr. Richardson had not yet*

*completed his review of the extensive and complex documents in this matter.*  The execution of the Expert Witness Report on May 31, 2010 is in harmony with the Case Management and Scheduling Order [D.E. #17], which allowed the Plaintiff until June 1, 2010 to disclosure its Expert Report.  Furthermore, many of the documents referenced in the Expert Witness Report have only recently been made available to the Plaintiff.  While the Plaintiff has had access to its own documents during the pendency of this lawsuit, many witnesses, including Frank Amodeo ("Amodeo") and various Mirabilis Ventures, Inc. board members, are still under threat of criminal action.  The Plaintiff and its agents have authenticated and reviewed massive amounts of documents that are relevant to this case.  The Plaintiff has worked diligently to obtain all relevant documents and witnesses by the required deadlines set forth in this Court's Case Management and Scheduling Order [D.E. #17].

Mr. Richardson found in his Expert Witness Report that the Defendant, Hans Christian Beyer ("Beyer"), and the law firm of Saxon, Gilmore, Carraway, Gibbons, Las & Wilcox, P.A. ("Saxon, Gilmore"), deviated from the applicable standard of conduct expected of attorneys in Florida in connection with their representation of Mirabilis Ventures, Inc.  The basis for Mr. Richardson's opinion is detailed in the attached Exhibit "A."  Mr. Richardson found that Beyer knew or should have known of the illegal diversion of trust fund taxes to Mirabilis.  Mr. Richardson found that Beyer may have known that PBS's unpaid trust fund taxes were the source of the capital Mirabilis used to fund its operations and expansion by, amount other things:

(i)     The weekly meetings Beyer acknowledged having with Amodeo, the person who knew the most about the complicated facts of this case;

(ii)    Beyer's certain knowledge that a large amount of trust fund taxes was being diverted by PBS and that a corresponding large amount of money was being consumed by

4815-9521-0502.1
43582/0005 DG dg

Mirabilis in a business in which Beyer was actively involved;

(iii)     The fact that Amodeo told Beyer that AQMI, (A corporation wholly owned by

Amodeo, and which perhaps as early as January, 2005, took over and controlled PBS'

business and bank accounts), was to "continue to be" the source of funding" for

Mirabilis' business development expenditures; and,

(iv)     The fact that Beyer was a Senior Vice President and employee of Mirabilis and must

have been aware of the cost of Mirabilis' rapid expansion.

The Plaintiff's expert found that Beyer, an experienced bankruptcy lawyer, made absolutely no effort to determine the extent of Mirabilis' exposure or even to inform Mirabilis about his concerns.  Beyer's complete failure to bring his concerns regarding the diverted trust fund taxes, RICO violations and possible fraudulent conveyances to Mirabilis' attention was not in the applicable standard of conduct expected of attorneys in Florida.  While Beyer presented his concerns to Amadeo in multiple memorandums addressed in Exhibit "A," he failed to present this information to any officer or director of Mirabilis to allow its past or continued tax fraud involvement to be mitigated.  Instead, Beyer turned a blind eye to the tax fraud issues and continued his lucrative financial relationship as a partner at Saxon Gilmore, counsel to Mirabilis related entities and a Senior Vice President of Mirabilis.  Based upon the Plaintiff's Expert Witness Report, reconsideration is appropriate as the Court granted the Defendants' Motion for Summary Judgment without considering all of the evidence presented by the Plaintiff.  Said evidence was produced in a timely manner and would have been considered if the Plaintiff had been afforded the time allotted in the Case Management and Scheduling Order [D.E. #17].  The Plaintiff seeks reconsideration in order to correct clear error or to prevent manifest injustice.

## IV. CONCLUSION

WHEREFORE, the Plaintiff, Mirabilis Ventures, Inc., respectfully request that the Court reconsider and vacate its June 18, 2010 Order [D.E. 33] granting Defendants Motion for Summary Judgment and, instead, deny the Defendants Motion for Summary Judgment, along with such other and further relief as the Court deems just and proper.

### CERTIFICATE OF GOOD FAITH CONFERENCE

The undersigned counsel for Plaintiff, Mirabilis Ventures, Inc., has conferred with counsel for the Defendants who oppose the relief requested in this motion.

/s/TODD K. NORMAN
Todd K. Norman
Florida Bar No.:  62154
tnorman@broadandcassel.com
**BROAD AND CASSEL**
390 N. Orange Ave., Suite 1400
Orlando, FL  32801
Phone: 407-839-4200
Fax: 407-425-8377

### CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2010 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to the following:

Joseph H. Varner, III
Trial Counsel
Florida Bar No. 394904
Joe.varner@hklaw.com
Holland & Knight LLP
P.O. Box 1288
Tampa, Florida 33601-1288

Justin L. Dees
Florida Bar No. 048033
Justin.dees@hklaw.com
Holland & Knight LLP
P.O. Box 1288
Tampa, Florida 33601-1288

/s/ Todd K. Norman

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MIRABALIS VENTURES, INC.

    Debtor

_____

MIRABILIS VENTURES, INC.,

    Plaintiff,

v.

                            Case No. 6:09-cv-1974-Orl-31DAB

SAXON, GILMORE, CARRAWAY, GIBBONS,
LASH & WILCOX, P.A., and HANS C.
BEYER, an individual and as Attorney/Agent with
SAXON, GILMORE, CARRAWAY, GIBBONS,
LASH & WILCOX

    Defendants

_____

**EXPERT WITNESS REPORT**
**OF**
**DAVID M. RICHARDSON PURSUANT TO RULE 26**

1.    It is my opinion that defendants, Hans Christian Beyer ("Beyer") and the law firm in

which he is a partner, Saxon, Gilmore, Carraway, Gibbons, Lash & Wilcox, P.A.

("Saxon, Gilmore), deviated from the applicable standard of conduct expected of

attorneys in Florida in connection with their representation of Mirabilis Ventures, Inc.



EXHIBIT
"A"

1

(Mirabilis).  During their representation

a.   Beyer and Saxon Gilmore represented multiple clients with adverse
interests, including, Presidion Corporation, Presidion Solutions, Inc.,
Professional Benefits Solutions, Inc. ("PBS"), the "Sunshine Companies,"
Mirabilis, AQMI Strategy Corp., Wellington Capital Corp., other related
companies, and Frank Amodeo (Amodeo),

b.   Beyer accepted employment by Common Paymaster Corporation (a
"PEO") to work for Mirabilis and Nexia Strategy Corporation but
remained a partner in Saxon, Gilmore and during that employment both
Beyer and Saxon, Gilmore continued to provide legal services to Mirabilis
and Nexia Strategy Corporation.

c.   Beyer and Saxon Gilmore knew or should have known, and should have,
but did not inform the Mirabilis Board of Directors, that

(i)  the willful failure to pay over collected Trust Fund Taxes is a
felony under IRC § 7202,

(ii)  a business plan that includes the diversion of Trust Fund
Taxes from their intended use to paying operating expenses,
making investments or making distributions to shareholders, if
carried out, would be a willful failure to pay Trust Fund Taxes and
might result in prosecution,

(iii)  the diversion of PBS's collected Trust Fund Taxes over a
period of time to pay operating expenses, make investments, make

2

distributions to shareholders, or provide a source of cash flow for

Mirabilis, would be considered willful and might result in a felony

prosecution.

(iv) as the recipient of illegally diverted Trust Fund Taxes,

Mirabilis might be linked to that illegal conduct.

c.   Beyer and Saxon Gilmore suspected that PBS and several affiliates may

have engaged in other criminal activity to which Mirabilis might also be

linked, including possible RICO violations and fraudulent asset transfers,

but

(i) they did not so inform Mirabilis' Board of Directors, and

instead

(ii) inappropriately reported the possible criminal activity to

Amodeo who was neither an officer nor a director of Mirabilis,

and

d.   Beyer and Saxon, Gilmore acquired significant, financial interests in

Mirabilis which, under the circumstances, may have made it difficult for

them to give detached advice.

The basis for this opinion is the following.

In late 2004, and prior to joining Saxon, Gilmore, Beyer, represented the publicly held

Presidion Corporation and certain of its subsidiaries, including PBS and the Sunshine

Companies, in the development and implementation of a plan to separate the Sunshine

3

Corporations' operating assets from their liabilities for accrued, unpaid employment taxes ("Trust Fund Taxes"). The plan was recommended by Frank Amodeo who was working as a consultant through his wholly owned corporation AQMI Strategy Corporation ("AQMI"). Pursuant to the plan, the operating assets of the Sunshine Companies, including their "books of business," were sold to PBS, on or before December 31, 2004. The stock of the Sunshine Companies' was then sold to Wellington Capital Corporation, which was wholly owned by Frank Amodeo, in a transaction that was made effective as of midnight, December 31, 2004. On or before January 1, 2005, Amodeo became the sole director and the President, Vice President, Treasurer and Secretary of the Sunshine Companies.

In connection with the sales of the Sunshine Companies assets and stock, and at or about the same time, Mirabilis purchased the Presidion Corporation stock owned by John Bertram, a former Chairman of the Board of Directors of Presidion.

Beyer became a partner in Saxon & Gilmore in February 2005.

The threatened cancellation of PBS's Workers' Compensation insurance was the impetus for a series of transactions, referred to in various documents as the "PBS plan", that resulted in Wellington Capital Corporation paying $100,000 for the stock of Presidion Solutions (which company then owned Paradyme and PBS). This occurred on or about July 28, 2005 at which time PBS had amassed approximately $30 million in unpaid Trust Fund Taxes.

One document that suggests that Beyer was involved in planning and implementing the PBS plan. The document is entitled:

"Memorandum - Personal and Confidential Attorney Work Product - The below summary consists of mental impressions created in anticipation for litigation relevant to

interactions with Hans Beyer and his representation of Frank Amodeo."

The Memorandum suggests that Beyer knew about and approved of the plan to use Trust Fund Taxes to pay operating expenses of Presidion Solutions Inc. and PBS. It also lists a number of meetings, letters and opinions relating to the PBS plan that Beyer was said to have attended or otherwise been involved in writing or reviewing and which are said to support the allegation that Beyer failed to advise Amodeo of the potential civil and criminal liability relating to the failure to withhold and pay over Trust Fund Taxes.

Although Beyer denies that he knew of the illegal diversion of PBS's Trust Fund Taxes, if, in fact, Beyer did knew or should have known of the illegal diversion of Trust Fund Taxes and if he did not advise Amodeo, or the involved companies of the possible criminal sanctions regarding such conduct, then Beyer and Saxon, Gilmore would be guilty of mal practice.

I do not know who wrote this Memorandum and at this time am unable to verify all of the allegations in it. For that reason I am not in a position to render an opinion regarding Beyers and Saxon, Gilmore's conduct based on the representations in the Memorandum.

Beyer became an employee of Common Paymaster Corporation effective September 1, 2005. During his employment, Beyer remained a partner in Saxon Gilmore and both Beyer and Saxon, Gilmore performed legal services for Mirabilis. During that period, Beyer received a salary from Mirabilis and participated in the legal fees Mirabilis paid to Saxon Gilmore.

At the end of 2005 or in early January, 2006, Amodeo asked Beyer to compile all documents relating to the Sunshine Companies transactions. This ultimately resulted in a compilation of 145 documents and an index of them dated January 23, 2006, reflecting activities among various companies including, but not limited to, PBS, Wellington Capital Corporation,

and Mirabilis during the year's 2003 - 2006. The actual compilation of the documents has not, as of the date of this report, been located.

Information Beyer gleaned from these documents and interviews of various people, including Dan Myers, apparently provided the basis for Beyer's three page, Mirabilis Ventures, Inc., Confidential Memorandum, to the file, dated January16, 2006 ("Memorandum"). The subject of the Memorandum was "Tasks and open issues". The last section of the Memorandum, titled "Tasks to be performed" refers to five issues. Two of the issues expressly raise issues regarding the diverted Trust Fund Taxes (one referring to "§ 941 liabilities" and the other to "unpaid § 941 taxes"). One issue refers to "claims which could be brought in connection with Presidion transactions under RICO." Another issue questions whether, under the circumstances, the U.S. Trustee could "investigate/prosecute fraudulent transfer claims in a corporate bankruptcy case." The final issue suggests that they needed to determine the solvency of Presidion Corporation on a quarterly basis from January, 2003 through December 2005. This appears to be of interest in connection with "transfer in defraud of creditors" issues.

On that same day, January 16, 2006, Byers completed another "Mirabilis Ventures, Inc., Confidential Memorandum, the subject of which was "Entities and people relevant to certain transactions." In that Memorandum, on page 6, Beyer notes that PBS had a "[t]otal unassessed tax liability: $71,000,000."

Beyer sent copies of these memoranda to Amodeo, who was neither an officer nor a director of Mirabilis. This appears to be a breach of Beyer's duty to maintain Mirabilis' confidences. In addition, there is no indication that Beyer sent either Memorandum to any officer or director of Mirabilis or made any effort to follow through on the five open issues.

6

The extent of Amodeo's ownership or control of Mirabilis's stock throughout 2005 and 2006 is unclear. He testified in his mock deposition that his interest was less than one percent and there is some correspondence asserting that he had no interest. Others have suggested that he had a controlling interest and exercised strong control over Mirabilis' operations.

It is clear that no later than January 16, 2006, Beyer and Saxon, Gilmore knew that PBS had illegally diverted $71 million of Trust Fund Taxes. As I understand it, the forensic accounting prepared on behalf of Mirabilis in this case confirms that a substantial part of the Trust Fund Taxes illegally diverted in 2005 and 2006 was made available to Mirabilis, either directly, or indirectly. And, approximately $25 million (some part or all of which could have been used by PBS to satisfy its Trust Fund Tax liability) went through Richard Berman's law firm's trust account and most of that amount was used to purchase assets, or investments for Amodeo or Mirabilis.

Beyer and Saxon, Gilmore either *knew* or *should have known* that some of PBS' illegally diverted Trust Fund Taxes was being made available to Mirabilis. If they knew that Mirabilis received illegally diverted Trust Fund Taxes from PBS they should have, but did not, inform Mirabilis' Board of Directors as would be expected of attorneys in Florida.

Beyer testified in his Deposition (p. 23) that he was not aware that PBS funneled payroll tax into Mirabilis. It is difficult to determine whether someone knew something in the past. That Beyer may have known that PBS's unpaid Trust Fund Taxes were the source of the capital Mirabilis used to fund its operations and expansion is suggested by, among other things:

(i) the weekly meetings Beyer acknowledges having with Amodeo, the person who knew the most about the complicated facts of this case;

7

(ii)  Beyer's certain knowledge that a large amount of Trust Fund Taxes was being

diverted by PBS and that a corresponding large amount of money was being

consumed by Mirabilis in a business in which Beyer was actively involved,

(iii)  the fact that Amodeo told Beyer that AQMI, (a corporation wholly owned by

Amodeo, and which perhaps as early as January, 2005, took over and controlled

PBS's business and bank accounts), was to "continue to be" the source of

funding" for Mirabilis' business development expenditures; and

(iv)  the fact that Beyer was a Senior Vice President and employee of Mirabilis

and must have been aware of the cost of Mirabilis' rapid expansion.

But, even if Beyer did not actually know that a part of PBS's illegally diverted Trust Fund

Taxes was being funneled to Mirabilis, when he learned (no later than January 16, 2006) that in

one year PBS had collected and not paid over $71 million of Trust Fund Taxes, Beyer failed to

apply what is described in the Comment to Rule 4-1.1Rules of Professional Conduct as "the most

fundamental legal skill." He made no attempt on behalf of Mirabilis to inquire about or analyze

the factual and legal elements involved in the Trust Fund Tax problem. Such an inquiry would

have been simple.

The obvious starting point would have been a question posed to Amodeo at their weekly

meeting: "What happened to the $71 million of Trust Fund Taxes that PBS collected but did not

turn over to the United States." The corollary might have been a question posed to officers or

Board members of Mirabilis: "Where did Mirabilis get the capital it used to acquire one hundred

companies in eighteen months?" With the answer to either of these questions and proper follow

through by Beyer, some of what happened to Mirabilis after January 16, 2006 might have been

avoided.

Perhaps more troubling is the fact that in the January 16, 2006 Memorandum, Beyer raised other serious issues regarding criminal conduct that might have directly involved Mirabilis, including RICO violations and fraudulent transfers. But Beyer apparently made no effort to determine the extent of Mirabilis' exposure or even to inform Mirabilis about his concerns. Apparently all he did was send a copy of the Memorandum to Amodeo and put the original in his files. This does not come close to the standard of conduct Mirabilis had a right to expect from its lawyers, Beyer and Saxon, Gilmore.

What is particularly striking about Beyer's and Saxon, Gilmore's inaction in this manner is that Beyer is an experienced bankruptcy lawyer and has successfully recovered fraudulently transferred assets in major cases. He knows the issues, he knows the law involved and he knows the possible ramifications to the parties when fraudulent transfers are made and collected Trust Fund Taxes are not paid over to the United States.

Furthermore, what Beyer was concerned about was more than just money. He was concerned about major crimes having been or being committed by or linked to Mirabilis. Beyer clearly had a duty to Mirabilis bring his concerns about diverted Trust Fund Taxes, possible RICO violations, and possible fraudulent conveyances to Mirabilis' attention. Beyer's and Saxon Gilmore's failure to do so was mal practice by any standard.

If they had made such a disclosure to the Mirabilis Board of Directors in January, 2006, Beyer's and Saxon, Gilmore's conflicts of interest would have been revealed and they would have been forced them to withdraw from representation of Mirabilis and of the involved corporations or individuals. But the Mirabilis Board would have had the opportunity to take

action to mitigate the damages from its past or continued involvement. Instead, Beyer and Saxon, Gilmore took no such action and continued their financial relationship with Mirabilis for another year. Their inaction may have contributed to Mirabilis' ultimate dissolution and criminal prosecution.

Finally, although Beyer was and remained a partner in Saxon, Gilmore, he acquired multiple, significant financial interests in his client Mirabilis. He became a shareholder, an employee, and a Senior Vice President of Mirabilis. He entered into a contract with a business broker under the terms of which he would funnel business leads that he originated for Mirabilis through the broker in exchange for part of the broker's commission. And, as a Saxon, Gilmore partner, he benefitted from the fees Mirabilis, PBS and their affiliates paid to the firm. No later than January 16, 2006, Beyer and Saxon, Gilmore knew or should have known that a portion of the financial benefit they received from Mirabilis came from the illegally diverted Trust Fund Taxes which, in some sense, makes them complicit.

In a related matter, there is a letter by Saxon, Gilmore to Mirabilis, dated May 15, 2006, "Re: Acknowledgment and waiver of potential conflicts involving Hans Beyer" which was signed by the President of Mirabilis. The "waiver" came long after the events occurred that created the conflicts and confirms their insensitivity to the standards of conduct expected of lawyers in Florida. In addition to being too late, the waiver is otherwise ineffective and deceptive.

It is ineffective because no effort was made "to ensure that . . . (Mirabilis possessed) . . . information reasonably adequate to make an informed decision." Although at the time the letter was written, Saxon, Gilmore knew of the specific conflicts they were asking Mirabilis to waive,

including representation of multiple clients with conflicting interests and personal conflicts

attributable to Beyer's and Saxon, Gilmore's significant financial interests in Mirabilis. But

these conflicts were not disclosed and Mirabilis had no way of making an informed decision

about the scope of the waiver.

The letter was deceptive in that the "Re:" description, on which a reader might focus,

characterized the document as a "waiver of potential conflicts" whereas the text of the letter

contains the broader description . . . . "any potential or actual conflicts".

2.     In the course of preparing this report, I have referred to the documents listed in Exhibit A

attached hereto.  The listed documents were either selected by the Robert Widman or given to me

by him at my request.  Mr. Cuthill has also provided two CD's, one containing a large selection

of documents and the other a single document.  Although I skimmed through a few documents on

first CD, I have not used any information derived only from that source in arriving at any

conclusions or in preparing this report.  As of this writing, I have not looked at the document on

the other CD.  It is possible that there are documents on the CD's, in addition to those of which I

have paper copies, that may be of interest in connection with this matter.

There are some things that would be of interest in connection with this matter but which

have not been located or are otherwise not available.  One is the compendium of 145 documents

Mr. Beyer is said to have assembled at Mr. Amodeo's request  during or about January, 2006.  To

date, this compendium has not been located.

Also not available is the recently completed report of the plaintiff's forensic accountant,

although I have seen four pages of preliminary charts the accountant prepared. That report may

provide additional details regarding the flow of the funds among related entities and people involved, and into and out of a law firm's trust fund account.

Also not available, as of the time of writing this report, are the transcripts of the depositions of several persons who are thought to have direct knowledge of what transpired among the several parties whose actions gave rise to this lawsuit. Those persons include Elena Wildermuth and Richard E. Berman, attorneys in the law firm of Berman, Kean & Riguera P.A., and Judy Berkowitz, the Internal Revenue Service Revenue Officer to whom collection of the unpaid employment taxes in question was assigned in early 2005.

Information from any of these, and other, sources might have a bearing on this opinion.

3.    At this time I do not expect to use exhibits.

4.    My Curriculum Vitae is attached as Exhibit B.

5.    I have not testified or been deposed as an Expert Witness within the last five years.

6.    My compensation is at the rate of $400 an hour.

May 31, 2010

_David M. Richardson_

David M. Richardson

12

1.     Single page printed from online Internal Revenue Manual -- 9.13 Criminal Statutory Provisions and Common Law, p. 1 of 11. (IRS.gov).

2.     EMAL FROM JIM BAIERS; SUBJECT:  RE: "FW: Employment tax opinion for your review." Attachment noted on email: "Opinion letter to James E. Baiers." TO: Craig Vandenburg & Chris O'Connor; DATE: 4/14/05; Attachement is copy of 4/14/05 draft opinion letter from Kevin M. Flynn, Esq. of the firm Kostelanetz & Fink, LLP.

3.     MEMORANDUM #27 – EXECUTIVES AND PROFESSIONALS RELYING ON AMODEO IS UNREASONABLE. Draft; five (5) pages including:

    I.  Question
    II.  Answer
    III.  Analysis (20 sections)

4.     MEMORANDUM #28 – PROFESSIONAL COMPETENCY; Draft, five (5) pages including:

    I.  Accountants & Auditors (9 sections)
    II.  Attorneys & Law Firms (16 sections)
    III.  Consultants & Experts (5 sections)
    IV.  Commercial Banks (5 sections)
    V.  Investment Banks (4 sections)

5.     MEMORANDUM #3 – STATEMENT AND TIMELINE OF GOVERNMENT CONTACTS- Draft; four (4) pages.

6.     HANS BEYER – DRAFT PURPOSES ONLY – 02/18/08. Two page statement describing activities of Hans Beyer beginning "In or about January 2006."

7.     B. DEPO. Single page of 4 sections listing - Pages 177, 178, 179 & 180 of questions and answers. Vincente M. Lucente & Associates.

8.     MEMORANDUM (summary consists of mental impressions created in anticipation for litigation relevant to interactions with Hans Beyer and his representation of Frank Amodeo.") Eleven (11) pages.  Begins "1. Hans Beyer ("BEYER") is a citizen and resident of Hillsborough County, Florida."

9.     MEMO FROM Bill Cuthill; RE:  MVI v Buchanan, et al.; TO: Liz Green, Jennifer Eden, Jimmy Parish & Justin Luna; DATE: 4/4/2010; 2 pages.

10.     MEMO FROM Bill Cuthill; RE: MVI v Buchanan et al.; TO: Liz Green, Jennifer Eden, Jimmy Parish & Justin Luna; DATE: 11/24/2009; 2 pages.

11.     MEMO FROM Bill Cuthill; RE:  MVI v Buchanan et al.; TO: Liz Green, Jennifer Eden, Jimmy Parish & Justin Luna; DATE: 10/27/2009; 2 pages.

12.     MIRABILIS VENTURES, INC., CONFIDENTIAL MEMORANDUM; SUBJECT: Entities and People relevant to certain transactions; FROM: Hans Beyer; TO: File; DATE: 1/16/2006; FILE: Presidion Solutions, Inc.; Eleven (11) pages.

Exhibit A

13.   MIRABILIS VENTURES, INC., CONFIDENTIAL MEMORANDUM; SUBJECT: Tasks and open issues; FROM: Hans Beyer; TO: File; DATE: 1/16/2006; FILE: Presidion Solutions, Inc.; Three (3) pages.

14.   EMAIL FROM: Sharmila Khanorkar; SUBJECT: MVI insurance payments; DATE SENT: Thursday, November 30, 2006; TO: Kevin Leonard; cc: Hans Beyer; One (1) page.

15.   FWD EMAIL correspondence – FROM: Chad Walters; SUBJECT: FW disclosure of payments. SENT: Thursday, August 17, 2006; TO: Hans Beyer; one (1) page 1. (Others receiving same email were Chad Walters, Mark Bernet, Jeff Warren, Tom Lash, Frazier Carraway and Frank Hailstones.).

16.   COURT DOCUMENT – AMENDED COMPLAINT:

UNITED STATES BANKRUPTCY COURT, MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION. In Re: Mirabilis Ventures, Inc. Debtor; Mirabilis Ventures, Inc., Plaintiff v. SAXON, GILMORE, CARRAWAY, GIBBONS, LASH & WILCOX, P.A.; and HANS C. BEYER, An individual and as Attorney/Agent with SAXON, GILMORE, CARRAWAY, GIBBONS, LASH AND WILCOX, Defendants. AMENDED COMPLAINT. Case No. 6:08-bk-04327-KSJ, Chapter 11, Adv. Pro. No. 6:08-ap-00227-KSJ

(Other court documents and copies of correspondence follow and are included in this material):

17.   COURT DOCUMENT – SECOND AMENDED COMPLAINT:

UNITED STATES BANKRUPTCY COURT, MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION. In Re: Mirabilis Ventures, Inc. Debtor; Mirabilis Ventures, Inc., Plaintiff v. RICHARD E. BERMAN, an individual and as Attorney with BERMAN, KEAN & RIGUERA, P.A.; BERMAN, KEAN & RIGUERA, P.A., A Florida limited liability company; and ELENA WILDERMUTH, an individual and attorney with BERMAN, KEAN & RIGUERA, P.A., Defendants. SECOND AMENDED COMPLAINT. Case No. 6:08-bk-04327-KSJ, Chapter 11, Adv. Pro. No. 6:08-ap-00222-KSJ

(Other court documents and copies of correspondence follow and are included in this material):

18.   Transcript of Videotaped Deposition of HANS CHRISTIAN BEYER. United States District Court, Middle District of Florida, Orlando Division, Case No. 6:09-cv-1974-Orl-31DAB. Pages 1-221. Vincent M. Lucente & Associates.

19.   Title Page & List of Authors from book "Tax Crimes," by John A. Townsend, Larry A. Campagna, Steve Johnson, Scott A. Schumacher (Lexis/Nexis).

20.   Title Page from book "Civil Tax Procedure," by David A. Richardson, Jerome Borison, Steve Johnson (Lexis/Nexis).

21.   SUPPORTING MEMORANDUM (Draft 10). TO: Frank Amodeo; FROM: Lawrence Haber, Esq., Legal Counsel, Matthew Porter, Paralegal; DATE: March 15, 2005; RE: Third Party Liability for Non-Payment of Payroll Taxes. (Page footer: Memorandum of Law 26 U.S.C. 6672 & 3505). Pages 1-8 and 10-12, page 9 is missing.

22.   MEMORANDUM #1. Seven (7) pages numbered 1 of 8, page 7 is missing.

23.    SUPPORTING MEMORANDUM. ISSUE STATEMENT ... which individuals or entities are responsible for non-payment of a corporation's employees' payroll taxes? Page footer: Memorandum of Law.

24.    U.S.C. 6672 & 3505). Pages 1-12 followed by unnumbered APPLICATION OF FACTS-INDIVIDUAL LIABILITY.

25.    EMAIL FROM TESSAH IVEY; SUBJECT: RE: Trust Fund Taxes; TO: Jim Baiers, Craig Vanderburg, Chris O'Connor; CC: Matt Porter; SENT: Thursday, March 17, 2005; PAGE 1 of 1 of 2: Correspondence includes forwarded emails and copy of SUPPORTING MEMORANDUM (Draft 10). TO: Frank Amodeo; FROM: Lawrence Haber, Esq., Legal Counsel, Matthew Porter, Paralegal; DATE: March 15, 2005; RE: Third Party Liability for Non-Payment of Payroll Taxes. (Page footer: Memorandum of Law 26 U.S.C. 6672 & 3505). Pages 1-8 and 10-12, page 9 is missing.

26.    FIRM MEMORANDUM from Elena Wildermuth of BERMAN, KEAN & RIGUERA, P.A.; RE: Extent of Frank Amodeo's exposure to liability under IRC 6672 per his answer to item #6, p. 1, of Form 4189. TO: Sharmila Khanorkar; DATED: September 29, 2006. Six (6) pages with footnotes.

27.    FIRM FAX from ELENA WILDERMUTH of BERMAN, KEAN & RIGUERA, P.A.; RE: General Matters; TO: Frank Amodeo; Date: April 14, 2005; COMMENTS: Updated Tax Memorandum is attached. Attached document is a 10 page MEMORANDUM (with footnotes); RE: Third Party Liability for non-payment of payroll taxes pursuant to I.R.C. §6672; TO: Frank Amodeo.

28.    MEMORANDUM from FRANK AMODEO: SUBJECT: SUNSHINE COMPANIES; TO: Richard Berman, Esq.,: DATE: 1/4/2005; PRIVILEGED TO: Laurie Holtz, Matthew Druckman, A. Kenneth Levine, Sharmila Khanorkar, Morris Hollander, David Appel, Hans Beyer, Esq., Edit Broadhead, Esq., Charles Rahn. Title: Sunshine Matter Timetable. Two (2) pages including note to "Craig" at the end of memo.

29.    FILE NOTE FROM Aaron Bates. RE: Telephone conference with Craig Vanderburg ("Vanderburg") regarding reliance memorandum; TO: File; CC: Shane Williams; DATE: June 28, 2007. Two (2) pages.

30.    SUPPORTING MEMORANDUM. ISSUE STATEMENT – Under United States Code 26 U.S.C. 6672, which individuals or entities are responsible for non-payment of a corporation's employees' payroll taxes? 12 pages. (Page footer: Memorandum of Law 26 U.S.C. 6672 & 3505).

31.    FAX from JIM BAIERS; RE: Presidion; TO: Karen Floyd; Date: 4/21/05. Mark up of 11 page Opinion from Kevin M. Flynn of Kostelanetz & Fink, LLP.

32.    FIRM MEMORANDUM from ELENA WILDERMUTH of BERMAN, KEAN & RIGUERA, P.A.; RE: Relationship between current trust fund obligations, after acquired funds and "willfulness" under I.R.C. § 6672; TO: Frank Amodeo; DATED: September 29, 2006. Twenty (20) pages with footnotes.

33.    FIRM MEMORANDUM from ELENA WILDERMUTH of BERMAN, KEAN & RIGUERA, P.A.; RE: Relationship between current trust fund obligations, after acquired funds and "willfulness" under I.R.C. § 6672; TO: Frank Amodeo; DATED: February 1, 2006. Twenty (20) pages with footnotes.

34.    MEMORANDUM F – SALE OF SOLUTIONS. Heading: Divestiture of the Remaining Presidion PEO Assets. Draft; two (2) page document with footnotes.

35.    MEMORANDUM B – BUSINESS PURPOSE STATEMENT. Headings: Introduction, Amodeo, Mirabilis, Conclusion. Draft; four (4) page document.

36.   MEMORANDUM E – SUNSHINE COMPANIES DIVESTITURE. Summary of the Sunshine Companies divestiture from Presidion Corporation. Draft; two (2) page document with footnotes.

37.   MEMORANDUM G – AEM dba MIRABILIS HR. Summary of the transactional history between AEM, Inc. ("AEM") and certain Presidion subsidiaries; more specifically, a summary of AEM's involvement in the overall Presidion reorganization strategy. Draft; three (3) page document with footnotes.

38.   MEMORANDUM H – BCA AGREEMENTS. Summary of certain events leading up to, and involving, the BCA Professional Services, Inc., a Pennsylvania corporation, and BCA Employee Management Group, Inc., a Pennsylvania corporation, (collectively "BCA") transaction. Draft; three (3) pages with footnotes.

39.   MEMORANDUM C – PRE-PRESIDION COMPANIES. Summary of the Sunshine Companies prior to becoming involved with Presidion. Draft; two (2) pages with footnotes.

40.   FIRM CONFIDENTIAL MEMORANDUM from ELENA WILDERMUTH of BERMAN, KEAN & RIGUERA, P.A.; RE: Evaluation of the "Original Obligations" included in the Debt Refinancing Agreement; TO: Mirabilis Ventures, Inc. DATED: November 2, 2006. First Heading: DEBT REFINANCING AGREEMENT BACKGROUND; Fifteen (15) pages with footnotes.

41.   MEMORANDUM. Summary of mental impressions created in anticipation for litigation relevant to interactions with Laurie Holtz and his representation of Frank Amoedo. Twelve (12) pages with fifty-one (51) sections including footnotes.

42.   MEMORANDUM. Summary of mental impressions created in anticipation for litigation relevant to interactions with Richard Berman and his representation of Frank Amoedo. Eleven (11) pages with forty-six (46) sections.

43.   COURT DOCUMENT – DEFENDANT'S SENTENCING MEMORANDUM

UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION. UNITED STATES OF AMERICA V. FRANK L. AMODEO

Case No. 6:08-cr-176-Orl-28GJK; One hundred twenty-three (123) pages.

44.   COURT DOCUMENT – COMPLAINT (action for compensatory damages against Defendant; filed by Elizabeth Green, Jennifer Eden & Jimmy D. Parish of Latham, Shuker, Eden & Beaudine, LLP)

UNITED STATES BANKRUPTCY COURT, MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION. In Re: MIRABILIS VENTURES, INC. Debtor, MIRABILIS VENTURES, INC., Plaintiff, v. RACHLIN COHEN & HOLTZ, LLP, a Florida Limited Liability partnership nka RACHLIN, LLP; LAURIE S. HOLTZ, an individual; and JOSE I. MARRERO, an individual, Defendants.

Case No. 6:08-bk-04237-KSJ; Chapter 11; ADV. PRO. NO.; Twenty-two (22) pages.

45.   COURT DOCUMENT – SECOND AMENDED COMPLAINT (action for compensatory damages against Defendant; filed by R. Scott Shuker and Jennifer Eden of Latham, Shuker, Eden & Beaudine, LLP (with Certificate of Service included).

UNITED STATES BANKRUPTCY COURT, MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION. In Re: MIRABILIS VENTURES, INC. Debtor, MIRABILIS VENTURES, INC., Plaintiff, v. JAMES MOORE & CO., P.A., a Florida Limited Liability corporation, and E. JAY HUTTO, an individual, Defendants.

Case No. 6:08-bk-04237-KSJ; Chapter 11; ADV. PRO. NO. 6:08-ap-00228-KSJFourteen (14) pages with Twenty-six (26) pages of Exhibit "A" included.

46.    EMAIL FROM TESSAH IVEY (with ATTACHMENT); SUBJECT: FW: Executed Final version of the "tax memo" in PDF. Attachments: 6919.pdf; TO: Craig Vanderburg; Jim Baiers; SENT: Friday, May 6, 2005. Includes forwarded email from Elena Wildermuth of Berman, Kean & Riguera referencing signed copy of Tax Memo re: 6672. Attached document is SIGNED ten (10) page FIRM MEMORANDUM from Elena Wildermuth; TO: AQMI Strategy Corporation; RE: Third Party Liability for Non-Payment of Payroll Taxes pursuant to I.R.C. §6672.

47.    MEMORANDUM #1 – Reliance on Professionals and Government. Draft; six (6) pages including footnotes.

48.    MEMORANDUM #1 – Paysource Transaction. (Summary of the events surrounding the transition of the Presidion/Mirabilis professional employer organization companies and assets to Paysource, Inc.) Draft; four (4) pages with footnotes.

49.    MEMORANDUM #2 – Transparency to Professionals and Government. Draft; three (3) pages.

50.    MEMORANDUM #4 – Statement of Mitigation including Asset Recovery. Refers to Mirabilis Ventures, Inc. and its affiliates initiating shut down operations beginning on or about January 2007. Three (3) pages with footnotes.

51.    MEMORANDUM #8 – Ownership, Governance, and Control of Mirabilis. Summary of the Corporate Governance practices of Mirabilis Ventures, Inc. Draft; two (2) pages.

52.    MEMORANDUM #9 – AEM Control Memo. Refers to AEM ownership of contracts referred to as the "Presidion Book of Business." Two (2) pages.

53.    MEMORANDUM #11 – Control of Presidion Corp Summary. Summary describes those certain individuals and certain entities that had ownership, governance and control of Presidion Corporation, a Florida public corporation ("Presidion"). Two (2) pages with footnotes.

54.    MEMORANDUM #12 – Voidability of the Sale of Presidion Solutions, Inc. to Wellington. Summary of Wellington Capital Group Inc.'s ("Wellington") stock purchase of Presidion Solutions, Inc. ("Presidion Solutions") and Paradyme, Inc. ("Paradyme"). Draft; 2 pages with footnotes.

55.    MEMORANDUM #13 – Control of Payroll Tax Collections and PEO Bank Account. Summary that details the events surrounding, and the people that had control over, the Payroll Tax Collections and the various PEO Bank Accounts. Draft; two (2) pages.

56.    MEMORANDUM #17 – ESAC Communications. Summary of knowledge, actions and events surrounding the Employer Services Assurance Corporation ("ESAC") licensing issues in connection with the various Professional Employer Organizations ("PEO's") entities owned by Presidion Solutions, Inc., a Florida corporation ("Presidion"), and those PEO's owned by Mirabilis Ventures, Inc., a Nevada corporation ("Mirabilis").

57.     MEMORANDUM #18 – MOCK DEPOSITION. Summary of the events surrounding the "Mock Deposition" of Frank Amodeo. Draft; Two (2) pages with footnotes.

58.     MEMORANDUM #20 – Debt Refinancing Agreement. Summary details the events surrounding, and the purpose for , the Mirabilis Ventures, Inc. Debt Refinancing Agreement. Two (2) pages.

59.     MEMORANDUM #22 – Purpose and Use of the Presidion Irrevocable Proxies.  Summary details the purpose of the Presidion Corporation Irrevocable Proxies. Two (2) pages.

60.     MEMORANDUM #23 – Tax Memo History. Memo begins "On or about October 18, 2004, Frank Amodeo ("Amodeo") was retained by Presidion Corporation ("Presidion") in an effort to reorganize Presidion and address Presidion's mounting payroll tax liabilities." Two (2) pages with footnotes.

61.     MEMORANDUM #24 – Star Wars. Summary discussing Frank Amodeo and certain mental health disorders which Mr. Amodeo has been diagnosed with, and how professionals working for Mr. Amodeo, with the knowledge of such disorders, inadequately represented his interests. Draft; four (4) pages with footnotes.

62.     MEMORANDUM #25 – Purpose and Use of The Presidion Reserve Accounts. Summary of the transactions involved in connection with Presidion Solutions, Inc.'s reserve bank account at First Southern Bank, Boca Raton, Florida, Account No. 2058256506 (the "Reserve Account"). Three (3) pages with footnotes.

63.     MEMORANDUM #26 - Purpose and Use of the Sunshine Limited Power of Attorney. HEADING: Amodeo's Fees Resulting from Completion of the Sunshine Companies Plan. Draft; four (4) pages with footnotes.

64.     MEMORANDUM #29 – DVR Catalog Index. Summary of the DVR Catalog Index for Mirabilis Ventures, Inc., and its related companies (collectively "Mirabilis"). The summary describes the quantity of cameras, number of digital video recorders ("DVRs"), locations of the cameras and number of hours of videos. Draft; two (2) pages.

65.     MEMORANDUM #30 – Document Inventory. Summary of the Document Inventory and Storage for the Sunshine Companies, Presidion Solutions, Inc., Mirabilis Ventures, Inc., and their respective affiliate, parent and subsidiary companies (the "Companies"), from late 2000 through the end of 2006. The summary describes the quantity of documents currently being maintained, how they are being maintained, and the structure of the dababase system for all electronic documents. Draft; three (3) pages.

66.     AFFADAVIT - DANIEL L. MYERS.  Signed August 17, 2009.  Three (3) pages.

67.     AFFADAVIT - YANIV AMAR. Signed September 3, 2009.  Three (3) pages.

68.     TIMELINE - RICHARD BERMAN. Notes activities including but not limited to communications, actions, meetings, travels and other activities between November 29, 2004 – December 15, 2006.

69.     TIMELINE - HANS BEYER.  Notes activities including but not limited to communications, actions, meetings, travels and other activities between December 21, 2004 - November 30, 2006.

70.     TIMELINE - ELENA WILDERMUTH. Notes communications between March 13, 2005 - November 2, 2006.

71.   TIMELINE on TRANSPARENCY: Chronicles activities including but not limited to communications, actions, meetings, travels, payments, and other activities between November 30, 2004 – December 20, 2006.

72.   DEPOSITION OF FRANK L. AMODEO. August 29, 2006. Pages 1–106 of deposition; List of attendees.

73.   LETTER DATED 5/6/10 FROM DEBORAH J. ENGLAND of MORRIS & WIDMAN, PA; references 6 enclosed documents (1) Memorandum, (2) Common Paymaster Corp. Agreement; (3) Memo dated November 30, 2009 re: MVI v. Buchanan, et al.; (4) Bills that mention Hans Beyer and (5) Index of Analysis of Certain Transactions.

74.   COVER PAGE – MIRABILIS v. SAXON GILMORE, et al. DEPOSITION EXHIBITS 1-78 [Except 1-6, 37, 55-58, 62-64, 74, 75].

75.   EMAIL FROM BERNARD H. GENTRY (at Broad and Cassel); SUBJECT: Plaintiff's Memorandum of Law in Opposition to Defendants Motion for Summary Judgment.doc; TO: R W Cuthill Jr; Bob Widman; DATE: Tuesday, May 18, 2010, 5:10 PM; ATTACHMENTS: Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment.doc. Attached material is a copy of a rough draft of the motion: IN RE: Mirabilis Ventures, INC. Bankruptcy Case No.: 6:08-Bk-4327-KSJ, Mirabilis Ventures, Inc., Plaintiff v. Saxon, Gilmore, Carraway, Gibbons, Lash & Wilcox, P.A. and Hans Christian Beyer, Defendants; Case No. 6:09-CV-1974-ORL-31DAB; Plaintiffs' Motion for a Postponement of Ruling on Defendants Saxon, Gilmore, Carraway & Gibbons, P.A.'s and Hans C. Beyer's Motion for Summary Judgment Pursuant to Rule 56(F), Federal Rules of Civil Procedure. Eighteen (18) pages.

76.   AQMI STRATEGY CORPORATION - CONFIDENTIAL MEMORANDUM; TO: File: MVI and Nexia with Presidion Solutions, Inc.; FROM: Staff; DATE: October 31, 2006; SUBJECT: A summary of certain business transactions relevant to the recent restructuring of obligations owed by PSI to MVI. Four (4) pages.

77.   FRANK L. AMODEO OWNED ENTITES (ORGANIZATIONAL CHART) 2006 (NOT ALL ENTITIES INCLUDED). One page.

78.   Single Page "Hans Beyer," "Frank talked to them" and including sections relating topic of communication with others and also a section "others talked to them" including sections relating to topic of communication with others.

79.   EMAIL FROM HANS CHRISTIAN BEYER; SUBJECT: Presidion Solutions – revised docs; TO: Tessah Ivey; CC: Bob Pollack; Dana Schult; Rachel Brown; Shane Williams; DATE: Thursday, December 22, 2005 6:25 PM; ATTACHMENTS: 05-11-22.MN.Presidion.BK schedules & stmt.pdf. Attached material is "schedules and statement of financial affairs…."

80.   MEMO FROM Bill Cuthill; RE: MVI v Buchanan et al.; TO: Liz Green, Jennifer Eden, Jimmy Parish & Justin Luna; DATE: 11/30/2009; 2 pages.

81.   Record of Financial transactions: PRESIDION SOULUTIONS, INC. TRANSFERS TO RESERVES FOR THE YEAR 2006. From Bank of America to Suntrust Bank. One page.

82.   Record of Financial transactions: PRESIDION SOULUTIONS, INC. TRANSFERS TO RESERVES FOR THE YEAR 2005. From Bank of America to First Southern Bank. Two (2) pages.

83.	Transcript of Videotaped Deposition of LAURIE S. HOLTZ. United States District Court, Middle District of Florida, Orlando Division, IN RE: MIRABILIS VENTURES, INC., Bankruptcy Case No. 6:08-BK-4327, Mirabilis Venture, Inc. Plaintiff, vs. Rachlin Cohen & Holtz, LLP, Laurie S. Holtz, and Jose I. Marrero, Defendants. Case No. 6:09-cv-271-Orl-31-DAB. Pages 1-172. Stenographically Reported by Debra Michalski, RPR.

84.	Transcript of Videotaped Deposition of JOSE I. MARRERO, United States District Court, Middle District of Florida, Orlando Division, IN RE: MIRABILIS VENTURES, INC., Bankruptcy Case No. 6:08-BK-4327, Mirabilis Venture, Inc. Plaintiff, vs. Rachlin Cohen & Holtz, LLP, Laurie S. Holtz, and Jose I. Marrero, Defendants. Case No. 6:09-cv-271-Orl-31-DAB. Pages 1-140. Stenographically Reported by Debra Michalski, RPR.

85.	Letter from COMMON PAYMASTER CORP. to Hans Christian Beyer, Esq., dated September 7, 2005; RE: Employment with Common Paymaster Corp. Begins "This exception letter agreement..." Four (4) pages.

86.	MN/Presidion Solutions, Inc., Analysis of Certain Transactions. Last updated January 23, 2006, 175 Tab listings, Eleven (11) pages, (shown as Ex. 80 at bottom).

87.	Several bills from BERMAN, KEAN & RIGUERA, PA TO Mirabilis Ventures, Inc. (statements included references to Miscellaneous Litigation,Synergy Manufacturing Technology, Community Health Solutions, Mirabilis, Inc., et al, Muzak LLC).

88.	NEWSVINE article – Guilt by Reliance by Jack Roth. Six (6) pages.

89.	BIOs of HANS CHRISTIAN BEYER (various publications/formats).

90.	Internal Revenue Manual – 9.1.3 Criminal Statutory Provisions and Common Law. Eleven (11) pages.

91.	COURT DOCUMENT – SUPERSEDING INDICTMENT. The Grand Jury Charges:

UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA ORLANDO DIVISION; UNITED STATES OF AMERICA V AEM, INC. dba MIRABILIS HR, AQMI STRATEGY CORPORATION, HOTH HOLDINGS, LLC, MIRABILIS VENTURES, INC., PRESIDION SOLUTIONS, INC., PROFESSIONAL BENEFIT SOLUTIONS,d/b/a/ PRESIDION SOLUTIONS VII, INC.;

Case No. 6:08-cr-231-Orl-28KRS; 18 U.S.C. § 371; 18 U.S.C. § 343; 18. U.S.C. § 981(a)(1)(C) – Forfeiture; 28 U.S.C. § 2461(c) – Forfeiture.

Filed 11/30/2009; Thirty-three (33) pages.

92.	MEMORANDUM D – PRESIDION CORPORATION. Summary of Presidion Solution, Inc.'s reverse merger into the public shell MediaBus Networks, Inc. n/k/a Presidion Corporation. Headings: Presidion Merger and False Financial Statements, Presidion Financial Problems, Draft; three (3) page document.

93.	Mirabilis Organizational Chart and Agenda for 1/25/06 Mirabilis Shareholders Meeting; three (3) pages.

94.    EMAIL from SHANE WILLIAMS; SUBJECT: MVI Shareholders Meeting Agenda; DATE: Wednesday, January 25, 2006 11:14 am; TO: Yaniv Amar; Richard Berman, Hans Beyer; Jim Vandevere; Jason Carlson' Edie Curry, Vance Felker, Marty Flynn, Larry Haber, Dan Myers, Bob Pollack, James Sadrianna, Woody Johnson, Rama Inguva and Shane Williams; ATTACHMENTS: MVI Shareholders Meeting (Agenda 012506) v3 doc. Includes revised agenda; four (4) pages.

*David M. Richardson*
*PO Box 505*
*Eearlton, FL  32631*
*(352) 468-1432*

## LEGAL EXPERIENCE

| | |
|---|---|
| 7/1/84 – 2008 | Professor of Law University of Florida College of Law Director, Graduate Tax Program, 7/1/84 - 6/30/88 |
| 1/1/84 - 6/30/84 | Partner, Richardson & Jackel, Miami, Florida |
| 4/1/82 - 12/31/83 | Member, Valdes-Fauli, Richardson, Cobb & Petry, P.A., Miami, Florida |
| 1975 - 3/31/82 | Partner in the law firm of Roberts & Holland, New York, N.Y., Miami, Florida, and Washington, D.C. |
| 1966 - 1974 | Partner in the law firm of Culverhouse, Tomlinson, Mills, DeCarion & Anderson Miami and Jacksonville, Florida (associate from 1966 to 1970) |

## EDUCATION

New York University, LL.M. in Taxation, 1974

Columbia University Law School, LL.B., Cum Laude, 1966.
Harlan Fiske Stone Scholar.

University of Florida, Graduate School, Department of Physics, 1961-62.

Rensselaer Polytechnic Institute, B.S. in Physics, 1961.

Exhibit B

*David M. Richardson*
*Page 2*

## PROFESSIONAL ACTIVITIES

Adjunct Professor, University of Miami, School of Law, 1973 - 1979; 1983 - 1984.

Lecturer in Taxation, Florida Atlantic University, 1976 - 1977.

Member of the Executive Council of the Tax Section of The Florida Bar, 1971 - 1990; Chairman of the Tax Section of The Florida Bar, 1981 - 1982.

Member and first chairman - Tax Certification Committee of The Florida Bar, 1982 -1984.

Member of the Southeast Regional Liaison Committee of the Internal Revenue Service, 1982 - 1983; Vice Chairman, 1983.

Visiting Professor, Beijing University, Beijing, China, 1991.

Member of The American College of Tax Counsel.

First editor of the Florida Tax Review, 1992 - 1994.

Visiting Professor, Leiden University, Leiden, Holland, 1998 and 2000.

Editor, Electronically enhanced Internal Revenue Code, CD Rom "Onedisc" published by Tax Analysts, January, 1998.

Recognized by the Tax section of The Florida Bar as the "Gerald T. Hart Outstanding Tax Attorney for 1999-2000."

Member of the Board of Editors of the LexisNexis Graduate Tax Series.

## PUBLICATIONS

Tax Credit Under the Work Incentive Program, 58 ABA Journal 1109 (1972).

Pension Reform - Preserving The Private Pension Promise, 48 Florida Bar Journal 708 (1974).

David M. Richardson
Page 3

Capital Construction Funds Under The Merchant Marine Act, 29 Tax Law Review 751 (1974).

Buying and Selling an Incorporated Business - A Survey of Federal Income Tax Consequences, 50 Florida Bar Journal 353 (1976).

The Family Business as a Tax Shelter, 52 Florida Bar Journal 325 (1978). Co-authored with Jacob Fishman.

Taxation By Florida of Transfers of Wealth Upon Death - The Present Law and Available Options.   Prepared for The Governor's Tax Reform Commission, July 1979.

Profits on Conversion - Maximizing the Landlord's After-Tax Return, 55 Florida Bar Journal 121 (1981).

Investment in Florida Real Property: New Requirements for Alien Corporations, with E. Scott Golden, 30 Canadian Tax Journal 112 (1982).

Florida Corporate Income Tax: Back to Piggybacking, 30 Canadian Tax Journal 462 (1982).

One State's Reaction to Reaganomics: The 1982 Amendments to The Florida Income Tax Code, Report of the Tax Section of The Florida Bar, 36 University of Miami Law Review 661 (1982).   Co-authored with five other Committee members.

Tax Incentives for Qualified Conservation Contributions, 57 Florida Bar Journal 631 (1983).

A Study of the State and Local Tax Deduction, Prepared for the Congressional Sunbelt Council, September 15, 1985.

The State and Local Tax Deduction: A Preference Whose Time To Go Has Come, 59 Florida Bar Journal 83 (December, 1985).   This is a shortened version of the study prepared for the Sunbelt Council.

The Orphan Drug Tax Credit: An Inadequate Response to an Ill-Defined Problem, 6 Am. J. of Tax Policy 135 (1987).

Federal Income Taxation of States, 19 Stetson Law Review 411 (1990).

Improving the Law Review Model: A Case In Point, 44 Journal of Legal Education 6 (1994).

*David M. Richardson*
*Page 4*

Book review of "Essays on International Taxation," Edited by Herbert A. Alpert and Kess van Raad.   Deventer/The Netherlands: Kluwer Law and Taxation Publishers, 1993. Tax Notes, April 18, 1994.

Illusory Intangible Tax Trusts, Comment in the April, 1997 issue of The Florida Bar Journal.

"Just Value" or Just A Value - Florida's Imperial Property Appraiser, 48 Fla. L.Rev. 723 (1997).

Statement of Standards of Tax Practice: Letter to a Former Student, Tax Notes, May 22, 2000 at 1143.

Audit Avoidance Via Intent Modification - Is Fred Corneel Onto Something. . . Or Not?, Tax Notes, July 9, 2001 at 277.

Cases and Materials on Federal Tax Procedure (for graduate tax program), 14th revision, 2002.

Federal Tax Procedure, a text book for use in LL.M. tax programs published in 2004 as part of the LexisNexis Graduate Tax Series. Co-authored with Professors Jerry Borrison and Steven Johnson.