UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: MIRABILIS VENTURES, INC.
Bankruptcy Case No.: 6:08-Bk-4327-KSJ

---

MIRABILIS VENTURES, INC.

      Plaintiff,

v.                                                                    Case No. 6:09-cv-1974-Orl-31DAB

BUCHANAN, INGERSOLL, & ROONEY, P.L.,
SAXON, GILMORE, CARRAWAY, GIBBONS,
LASH & WILCOX, P.A., and HANS
CHRISTIAN BEYER,

      Defendants.

_____/

## RESPONSE OF ELIZABETH GREEN, ESQ. TO DEFENDANTS SAXON, GILMORE, CARRAWAY, GIBBONS, LASH & WILCOX, P.A. AND HANS CHRISTIAN BEYER'S MOTION FOR SANCTIONS AND INCORPORATED MEMORANDUM OF LAW (DOC. 42)

Elizabeth Green, Esq., by and through the undersigned counsel, files this Response to

Defendants Saxon, Gilmore, Carraway, Gibbons, Lash & Wilcox, P.A.'s and Hans Christian

Beyer's (collectively "Defendants") Motion for Sanctions and Incorporated Memorandum of

Law (Doc. 42) ("Motion for Sanctions").

## INTRODUCTION

In their Motion for Sanctions, the Defendants seek to parlay their victory on summary

judgment into an award of sanctions. There is, however, a clear and crucial difference between a

complaint that is unable to survive summary judgment and a complaint that is sanctionable.

Contrary to the Defendants' hyperbolic assertions, Ms. Green's actions complied with Rule 9011

of the Federal Rules of Bankruptcy Procedure.  The facts alleged in the Amended Complaint were supported by a pre-filing inquiry that was reasonable under the circumstances. Furthermore, Ms. Green's conduct in filing and pursuing the Amended Complaint can in no way be characterized as "unethical, dishonorable, and downright shameful," as the Defendants allege. (Doc. 42 at 26.)  Accordingly, the Court should not impose sanctions under Rule 9011, 11 U.S.C. § 105(a), or its inherent authority.

## FACTUAL BACKGROUND AND DISCUSSION OF AUTHORITY

Ms. Green adopts by reference the portion of her Response to Defendants Saxon, Gilmore, Carraway, Gibbons, Lash, & Wilcox, P.A. and Hans Christian Beyer's Motion for Sanctions and Incorporated Memorandum of Law which contains the factual background and controlling authority applicable to this memorandum.  (Doc. 57 at 2–6.)

## ARGUMENT

I. **DEFENDANTS' ATTEMPT TO IMPUTE ALLEGED DEFICIENCIES FROM THE ORIGINAL COMPLAINT TO THE AMENDED COMPLAINT ARE IMPROPER.**

As a preliminary matter, the Court must be clear which conduct it is examining when it considers the Motion for Sanctions.  The Defendants condemn Ms. Green and her colleagues for using a "cut and paste" approach in filing their complaints.  (Doc. 42 at 2, 23–24). In their Motion for Sanctions, however, the Defendants "cut and paste" their bases for sanctions by imputing the alleged deficiencies of the Original Complaint to the Amended Complaint.  Id. at 2, 3, 5, 24. Because the Original Complaint was withdrawn within the twenty-one day "safe harbor" period, however, the Defendants are foreclosed from seeking sanctions with regard to the Original Complaint under Rule 9011.

Rule 9011(c)(1) provides, in relevant part, that a "motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion . . . , the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected . . . ." Fed. R. Bankr. P. 9011(c)(1).  Rule 11 of the Federal Rules of Civil Procedure contains a substantially similar provision, and the Advisory Committee Notes to those rules make clear that the twenty-one day period is "intended to provide a type of 'safe harbor' against motions" for sanctions and that "the timely withdrawal of a contention will protect a party against a motion for sanctions." Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments).  This Court has recognized the importance of the twenty-one day safe harbor, stating that the "'safe harbor' provision is not a mere technicality, but allows a party to avoid the imposition of sanctions, by timely withdrawing the offending pleading." Ellis v. All of My Sons Moving & Storage of Orlando, Inc., 2009 WL 2496626, at *7 (M.D. Fla. 2009).  Ms. Green and her colleagues availed themselves of the twenty-one day "safe harbor" provision, agreeing to dismiss the Original Complaint and filing an Amended Complaint.  Accordingly, because Ms. Green withdrew the Original Complaint within the safe harbor window, Defendants cannot seek sanctions with respect to the Original Complaint under Rule 9011.

Pursuant to Rule 9011(c)(1), "withdraw[ing]" or "appropriately correct[ing]" a pleading within the twenty-one day window forecloses the possibility of a motion for sanctions with respect to that pleading.  In the Rule 11 context, this Court has previously held that a pleading may be "withdrawn" by a plaintiff's voluntary dismissal of its case, barring the court from entertaining a motion for sanctions based on that pleading.  See Morroni v. Gunderson, 169 F.R.D. 168, 171 (M.D. Fla. 1996) ("[T]he party who voluntarily dismisses a case has withdrawn the offending pleading by dismissing the case.  Therefore, it was improper for Defendants to file

their Rule 11 motion with the Court."). Other district courts have similarly concluded that the voluntarily dismissal of a complaint immunizes counsel from sanctions under Rule 11. See, e.g., Hockley v. Shan Enter. Ltd. P'ship, 19 F. Supp. 2d 235, 241 (D.N.J. 1998) ("Since [the Rule 11 defendant] withdrew its position when it voluntarily dismissed its claims, it is not subject to Rule 11 sanctions."); Photocircuits Corp. v. Marathon Agents, Inc., 162 F.R.D. 449, 452 (E.D.N.Y. 1995) ("In this case, the complaint was voluntarily withdrawn prior to the filing of the motion [for sanctions], which . . . immunized plaintiff's counsel."). See also Dee-K Enter., Inc. v. Heveafil Sdn. Bhd., 177 F.R.D. 351, 354 (E.D. Va. 1998) (holding that the plaintiff's voluntarily dismissal of its original complaint and filing of an amended complaint constituted "withdrawal" of originally complaint and, accordingly, there was "no basis on which to award [fees] under Rule 11"). Accordingly, the Court should limit its consideration of the Motion for Sanctions under Rule 9011 to Ms. Green's conduct with respect to the filing of the Amended Complaint.

## II.   THE FILING OF THE AMENDED COMPLAINT COMPLIED WITH RULE 9011.

In evaluating an attorney's conduct under a motion for sanctions pursuant to Rule 9011, a court must first ascertain the appropriate section of 9011(b) for which the moving party is seeking sanctions. If the motion seeks sanctions for filing a frivolous legal claim or presents a frivolous argument for the extension of existing law applicable to a claim, the applicable section is Rule 9011(b)(2). If the sanctions motion is based upon allegations of filing a paper for an improper purpose, the appropriate section of Rule 9011 is Section (b)(1). If the sanctions motion is based upon lack of evidentiary support for "allegations and other factual contentions," the appropriate section of Rule 9011 involved is (b)(3). In Riccard v. Prudential Insurance Co., 307 F.3d 1277, 1294 (11th Cir. 2002), the Eleventh Circuit stated that district courts facing a sanctions motion under Rule 11 must examine whether the alleged offending document "(1) is

4

not well grounded in fact, i.e., has no reasonable factual basis; (2) is not legally tenable; or (3) is submitted in bad faith for an improper purpose." The district court's obligation to examine those elements of Rule 9011, however, is limited by Rule 9011(c)(1)(A), which requires that a motion for sanctions "describe the specific conduct alleged to violate subdivision (b)." This provision circumscribes the inquiry that the Court must make with respect to the Motion for Sanctions.

Defendants' Motion for Sanctions makes mention of "frivolous suits," "claim[s]," and "facts" (Doc. 42 at 7), but their Motion does not contend that the claims—the causes of action—for negligence, breach of fiduciary duty, negligent misrepresentation, professional negligence, and negligent supervision are claims that have no support in the law. Thus, the provisions of Rule 9011(b)(2) with respect to frivolous claims have no part in the Court's consideration of this matter. What the Defendants do seek sanctions for in their Motion is for filing the Amended Complaint for an "improper purpose," id. at 5, and making unsupported and false allegations in the Amended Complaint. Id. at 12–23.

A.    **The allegations in the Amended Complaint have factual support.**

Defendants allege falsity with respect to the allegations of paragraphs 16, 30, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 58, 59, 60, 61 and 62. (Doc. 42 at 14-20.) All of those paragraphs—with the exception of paragraphs 36 and 44—relate in some way to the "Sunshine Companies Plan" or the "PBS Plan." The rejoinder of the Defendants to the allegations with respect to the Sunshine Companies Plan and the PBS Plan is that neither of the Defendants had any connection to either of those Plans and neither of the Defendants even knew of the existence of those Plans. Id.

In the Affidavit of Elizabeth A. Green (Doc. 56-1)—attached as Exhibit 1 to Ms. Green's Request for Oral Argument (Doc. 56)—she states that prior to the filing of either the Original Complaint or the Amended Complaint, she met with an Assistant United States Attorney

("AUSA") and the Assistant United States Trustee to discuss filing of a Chapter 11 proceeding for MVI (Doc. 56-1 ¶ 3). She asserts that the AUSA, Mr. Gold, told her that MVI had conspired to steal $200 million in payroll tax payments (Doc. 56-1 at 2–4), that Mr. Gold stated that Mr. Beyer was on a list of potential targets involved in the MVI tax conspiracy (Doc. 56-1 ¶ 5), that Mr. Cuthill—who had had no previous involvement with MVI—was made President of MVI on May 27, 2008 and on the same day filed a Chapter 11 petition for MVI (Doc. 56-1 ¶¶ 6–9), that from the time of the filing of the bankruptcy petition in May 2008 until early November 2008 [sic], MVI had no access to its millions of pages of documents, computer records and other information because they were in the possession of the United States of America pursuant to a grand jury subpoena (Doc. 56-1 ¶ 10), that prior to filing the Original Complaint and the Amended Complaint, Ms. Green met with the former in-house and outside counsel for MVI, Aaron Bates, who advised her that he had been working for the previous year on analyzing information related to claims by MVI and that MVI held a claim against the defendants in this action for malpractice related to the income tax scheme (Doc. 56-1 ¶¶ 12-16), that because of a requirement by the United States of America that no work be done on MVI lawsuits until the motion to dismiss the bankruptcy petition by USA was resolved and because of lack of access to documents, work did not begin on the Original Complaint until mid-November, 2008 (Doc. 56-1 ¶ 27), that there was concern that the statute of limitations would run on the claims against the defendants in this action in early December, 2008 (Doc. 56-1 ¶ 27), and that between the time of the filing of the Original Complaint and the filing of the Amended Complaint, Ms. Green met with Mr. Bates, at which time he presented to her a memorandum relating to the defendants' involvement with MVI, a copy of which is attached to Ms. Green's Affidavit (Doc. 56-1 at 26–27).

From the foregoing and other statements made by Ms. Green in her Affidavit, at the time of the filing of the Amended Complaint in this action, Ms. Green had knowledge of the tax scheme allegedly engaged in by MVI, that the dollar amount of that scheme was in the amount of $200 million, that there was an investigation by the U.S. Attorney's Office with regard to Mr. Beyer's involvement in that scheme, and that Mr. Bates had advised her that there were facts to demonstrate that the Defendants had engaged in malpractice with regard to their representation with respect to advice on and involvement in the tax scheme. Additionally, by the time of the filing of the Amended Complaint, Ms. Green—through Mr. Cuthill, President of MVI—had access to the millions of pages of documents, multiple terabytes[1] of electronic data, and tens of thousands of hours of videotape for only approximately four months. (Doc. 56-1 ¶ 10.) Under these circumstances, combined with the concern that the statute of limitations for filing the actions against the Defendants would run in early December of 2008, the actions of Ms. Green in filing the Original Complaint were reasonable.

Even after filing the Amended Complaint, Ms. Green continued to investigate the factual bases supporting the Amended Complaint, and she continually offered to share with the Defendants the evidentiary support for the allegations contained therein. On June 9, 2009, Ms. Green and her associate met with Mr. Varner and showed him documents supporting the allegations against Mr. Beyer and the Saxon law firm. Ms. Green and her associate also requested that Mr. Varner produce billing records and letters that could have established that the Defendants provided tax advice to MVI or demonstrated that they did not. Mr. Varner, however, did not fulfill that request. (Doc. 56-1 ¶¶ 42–46.) Moreover, it was not until August 26, 2009, that the bankruptcy court ruled that discovery in the adversary proceeding could commence on October 1, 2009 (Doc. 56-1 ¶ 48) by which time, Ms. Green had resigned as a partner of the

---

[1] A terabyte is equivalent to one trillion ($1 \times 10^{12}$) bytes of data.

Latham, Shuker, Eden and Beaudine law firm and withdrew as counsel for MVI in the bankruptcy proceeding and the adversary proceeding against the Defendants. (Doc. 56-1 ¶¶ 51–53.)

**B.     The filing of the Amended Complaint was not for any improper purpose.**

The entirety of the Defendants' accusation that the Amended Complaint was filed for an improper purpose comes from two sentences in the Motion's introductory section, alluding to uncited affidavits alleging that the Mirabilis bankruptcy and the adversary proceedings were filed to help Mr. Amodeo recover funds to pay restitution and, thereby, "obtain a more lenient sentence." (Doc. 42 at 5.) In addition to the failure of the Defendants to cite to the specifics of any such supporting affidavits, the allegation itself makes no sense in light of Mr. Amodeo's plea agreement, which was entered into on September 22, 2008—more than two-and-a-half months prior to the filing of the Original Complaint against the Defendants. In that plea, Mr. Amodeo forfeited all of his claims to the assets of Mirabilis Ventures, Inc. (Case No. 6:08-CR-176, Middle District of Florida, Doc. 38, ¶16). Mr. Amodeo's surrender and forfeiture to the United States of America of any claim he might have to any of the assets of MVI—including any litigation claims that MVI might have—belies the claim that the Original Complaint was filed to assist him in his plea arrangements; once he forfeited those assets, they held no bargaining power for him whatsoever at his sentencing proceeding. Additionally, the Bankruptcy Court—in denying a motion to dismiss the bankruptcy petition filed by MVI—made a determination that MVI had not acted in bad faith in making the bankruptcy filing and that there were millions of dollars in claims owed to real creditors of MVI. (Doc. 56-1 ¶ 49.)

III.   **DEFENDANTS FAIL TO DEMONSTRATE BAD FAITH ON MS. GREEN'S PART, A REQUIREMENT FOR SANCTIONS UNDER INHERENT AUTHORITY OR BANKRUPTCY CODE SECTION 105(A).**

Apart from Rule 9011, a bankruptcy court may sanction attorneys under either Section 105(a) of the Bankruptcy Code or the court's inherent authority. See Evergreen Security, 570 F.3d at 1263. "However, because of their potent nature, 'inherent powers must be exercised with restraint and discretion.'" Mroz, 65 F.3d at 1575 (quoting Chambers, 501 U.S. at 49). Because of this potency, the bar for imposing sanctions under a court's inherent authority is higher than under Rule 9011. While sanctions under Rule 9011 are judged under an objective standard of reasonableness, "[i]nvocation of a court's inherent power requires a finding of bad faith." Mroz, 65 F.3d at 1567. In the Rule 9011 context, the Eleventh Circuit has recognized that "[a] finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." 532 F.3d at 1309. In the instant case, the Defendants have failed to demonstrate any conduct on the part of Ms. Green that would suggest bad faith. Indeed, her actions, as discussed above, satisfied the reasonableness requirements of Rule 9011. Absent a showing of bad faith, sanctions under either Section 105(a) or the court's inherent authority are unwarranted and improper.

A.   **Ms. Green's reasonable pre-filing inquiry does not support a finding of bad faith.**

"The pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith" but only if the attorney's failure to inquire is "particularly egregious." Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998). In the instant case, Ms. Green undertook a factual inquiry into the factual allegations undergirding the Amended

Complaint that was reasonable under the circumstances, and the allegations found in the Amended Complaint represented good-faith advocacy on behalf of their client. Ms. Green's affidavit (Doc. 56-1) is replete with herculean efforts under the most difficult circumstances to marshall facts necessary to file the Amended Complaint. Any failure to inquire certainly cannot be characterized as "particularly egregious," especially in light of the difficulties Ms. Green faced in gathering and analyzing the reams of complex evidence underlying the Amended Complaint.

**B.    Ms. Green did not demonstrate the unprofessional conduct often associated with the imposition of sanctions under a court's inherent authority.**

Findings of bad faith commonly spring from unprofessional conduct that goes beyond the mere insufficiency of the pleading. For example, in Barnes, the Eleventh Circuit affirmed the district court's imposition of sanctions under its inherent authority, recognizing that the attorney being sanctioned "handled this case in an unprofessional manner," which included "frequently fail[ing] to follow the local and federal rules." 158 F.3d at 1214. Similarly, in Evergreen Security, the Eleventh Circuit upheld the district court's finding of bad faith based on the attorney's "overzealous litigation tactics, use of factual inaccuracies, and disrespectful behavior." 570 F.3d at 1276. The court cited the attorney's unprofessional conduct, noting that he had been "disrespectful to the court," had "treated the court as an adversary," and that he had used "accusatory, unsupported language" to publicly question the integrity and impartiality of the district judge. Id. at 1276–77.

In the instant case, Ms. Green engaged in no such unprofessional conduct, contrary to Defendants' hyperbolic assertions. She exhibited no disrespectful conduct toward the court or toward Defendants that could support a finding of bad faith—certainly nothing approaching the

"unethical, dishonorable, and downright shameful conduct" alleged by the Defendants. (Doc. 42 at 24–25.)  At most, the Defendants allegations demonstrate that Ms. Green failed to respond to Mr. Varner's letters demanding dismissal of this case in a timely manner.  Id. at 18.  Ms. Green's actions in filing of the Amended Complaint reflected a good-faith belief in the accuracy of the allegations, based on her reasonable factual inquiry.

## CONCLUSION

Because the allegations contained in the Amended Complaint have sufficient evidentiary support, because  pre-filing inquiry was reasonable under the circumstances, and there was no improper purpose in her filing the Amended Complaint, the Court should decline to impose sanctions under Rule 9011, Section 105(a), or the Court's inherent authority.

Respectfully submitted this 23rd day of July, 2010.

s/Jerry R. Linscott
Jerry R. Linscott, Esquire
Florida Bar No. 148009
E-mail: jlinscott@bakerlaw.com
**BAKER & HOSTETLER, LLP**
2300 SunTrust Center
200 South Orange Avenue
Post Office Box 112
Orlando, Florida 32802
Telephone: (407) 649-4000
Telecopier:  (407) 841-0168
Attorney for Elizabeth A. Green, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of July, 2010, I electronically filed the foregoing Motion with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Joseph H. Varner, III
joe.varner@hklaw.com
Justin L. Dees
justin.dees@hklaw.com
HOLLAND & KNIGHT LLP
P.O. Box 1288
Tampa, FL 33601-1288
(813)227-8500
Attorneys for Defendants

Justin L. Dees
Florida Bar No. 048033
Justin.dees@hklaw.com
Holland & Knight LLP
P.O. Box 1288
Tampa, Florida 33601-1288
Attorney for Defendants

Mariane Leight Dorris
Latham, Shuker, Eden &
Beaudine, LLP
390 N Orange Ave - Ste 600
Orlando, FL 32801
407/481-5800
Fax: 407/481-5801
Email: mdorris@lseblaw.com
Attorney for Jennifer Eden, Esq.

Robert C. Widman, Esq.
Widmor48@mwk-law. com
Morris & Widman, P.A.
245 N. Tamiami Trail, Suite E
Venice, FL 34285
PH: 941-484-0646
FX: 941-496-8870
Attorneys for Plaintiff

Jennifer S. Eden, Esq.
Latham, Shuker, Eden & Beaudine, LLP
P.O. Box 3353
Orlando, FL 33602
jeden@lseblaw.com

Roy S. Kobert, Esq.
rkobert@broadandcassel.com
Todd K. Norman, Esq.
tnorman@broadandcassel.com
Broad and Cassel
390 North Orange Ave., Suite 1400
Orlando, FL 32801
PH: 407-839-4200
Attorneys for Plaintiff

*s/Jerry R. Linscott*
Jerry R. Linscott, Esquire
Florida Bar No. 148009
E-mail: jlinscott@bakerlaw.com
**BAKER & HOSTETLER, LLP**
2300 SunTrust Center
200 South Orange Avenue
Post Office Box 112
Orlando, Florida 32802
Telephone: (407) 649-4000
Telecopier: (407) 841-0168
Attorney for Elizabeth A. Green, Esq.