# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:                                   Case No.: 6:09-cv-01974-GAP-DAB

**MIRABILIS VENTURES, INC.,**            Bkry. Case No. 6:08-bk-04327-KSJ

**Debtor.**

_____/

**MIRABILIS VENTURES, INC.,**            Case No.: 6:09-cv-01974-GAP-DAB

**Plaintiff,**

v.

**SAXON, GILMORE, CARRAWAY,**
**GIBBONS, LASH & WILCOX, P.A.,**
**and HANS CHRISTIAN BEYER,**

**Defendants,**

_____/

## LATHAM SHUKER EDEN & BEAUDINE, LLP AND JENNIFER S. EDEN, ESQ.'S RESPONSE TO THE DEFENDANTS' MOTIONS FOR SANCTIONS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011, 11 U.S.C. §105(A), AND THE COURT'S INHERENT AUTHORITY

Respondents, Latham, Shuker, Eden & Beaudine, LLP and Jennifer S. Eden, Esq. (hereinafter collectively referred to as "LSEB"), by and through undersigned counsel, hereby files their response to Defendants Saxon, Gilmore, Carraway & Gibbons, P.A. and Hans C. Beyer's Motions for Sanctions and Incorporated Memorandum of Law (Doc. Nos. 41, 42) and in support thereof state as follows:

## PROCEDURAL AND FACTUAL BACKGROUND

1.      On May 27, 2008, ("Petition Date") Mirabilis Ventures Inc. ("MVI") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Bkrty. Doc. No. 1.

2.      On December 8, 2008, MVI initiated an adversary proceeding ("Adversary Proceeding") against Saxon, Gilmore, Carraway & Gibbons, P.A. and Hans C. Beyer (the "Defendants") alleging causes of action for negligence, negligent misrepresentation, professional negligence and negligent supervision (the "First Complaint")[1]. Adv. Pro. Doc. No. 1. The First Complaint was filed on or about the date the statute of limitations pursuant to Florida Statutes §95.11 (4)(a) was about to expire. Due to an agreement with the United States Attorney ("US Attorney"), as discussed *infra*, LSEB had only thirteen (13) days to review voluminous documents of MVI and draft the First Complaint.[2]

3.      On January 30, 2009, the Defendants filed a motion to dismiss the First Complaint asserting numerous boilerplate affirmative defenses and the failure to state a cause of action (the "First Dismissal Motion"). Adv. Pro. Doc. No. 15. Simultaneously with the filing of the First Dismissal Motion, counsel for the Defendants, Mr. Joseph H. Varner, III ("Varner"), served LSEB with a letter, purportedly written pursuant to Federal Rule of Bankruptcy Procedure 9011, demanding that LSEB withdraw or dismiss the First Complaint because: (i) the First Complaint

---

[1] In the First Complaint, Buchanan, Ingersoll & Rooney P.C. ("BIR") were also named as defendants; however, they were subsequently voluntarily dismissed as defendants in the adversary proceeding.

[2] In or around early December 2006, the PEO (Professional Employer Organizations) customers of MVI received subpoenas regarding the alleged criminal conspiracy to misuse payroll tax funds. At this time, MVI knew or should have known that the "tax scheme" opined upon by the professionals was illegal, and, as such, any action for professional malpractice would have begun to accrue.

lacked evidentiary support; and (ii) the use of the Bankruptcy Court to acquire funds for the benefit of Frank Amodeo was improper. At this time, Varner did not serve LSEB with a separate motion pursuant to F.R.B.P. 9011(c)(1)(A) describing the specific conduct alleged to violate F.R.B.P. 9011(b).

4.      On February 15, 2009, counsel for MVI sent counsel for the Defendants an email expressing its intent to amend the First Complaint to appropriately correct several allegations and contentions. On February 16, 2009, counsel for the Defendants agreed and stipulated that the First Complaint would be voluntarily dismissed without prejudice, and the Defendants would permit MVI fourteen (14) days from entry of the order to amend the First Complaint. However, in contravention to the agreement between the parties, on February 18, 2009, Varner served LSEB with the Defendants's first proposed Motion for Sanctions and Incorporated Memorandum of Law with respect to the First Complaint (the "First Sanctions Motion"). On March 4, 2009, the Bankruptcy Court entered the agreed order on the First Dismissal Motion ("First Dismissal Order"). Adv. Pro. Doc. No. 25. Although the Defendants had almost three (3) months prior to the dismissal of the First Complaint, the Defendants did not file the First Sanctions Motion with the Bankruptcy Court prior to the entry of the First Dismissal Order.

5.      On March 18, 2009, MVI filed its amended complaint against the Defendants alleging causes of action for negligence, breach of fiduciary duty, negligent misrepresentation, professional negligence and negligent supervision (the "Second Complaint"). Adv. Pro. Doc. No. 26. In the Second Complaint, MVI provided additional historical background on the parties and

their respective involvement with MVI, and deleted twenty-one of the paragraphs cited by the Defendants in the First Sanctions Motion which allegedly contained allegations and other factual contentions that lacked evidentiary support. Although the Defendants objected to eighteen (18) additional paragraphs, MVI chose to retain the paragraphs because the averments contained within were either supported by reasonable inferences based on the existing evidentiary support, or by the existing legal standards. In addition, counsel for MVI reasonably believed that additional evidentiary support would be discovered supporting the retained allegations, after a reasonable opportunity for further investigation or discovery. (See comparison of the First Complaint to the Second Complaint, attached hereto as **Exhibit A**).

6.        On April 15, 2009, the Defendants filed a motion to dismiss the Second Complaint asserting the same boilerplate affirmative defenses and the failure to state a cause of action as set forth in the First Dismissal Motion(the "Second Dismissal Motion"). <u>Adv. Pro. Doc. No. 27</u>. In addition, on May 20, 2009, Varner served LSEB with the Defendants's another proposed Motion for Sanctions and Incorporated Memorandum of Law with respect to the Second Complaint (the "Second Sanctions Motion").

7.        On or about May 20, 2009, the Bankruptcy Court scheduled a final hearing on the Second Dismissal Motion for June 30, 2009. However, prior to the final hearing counsel for MVI and counsel for the Defendants agreed to meet to discuss a potential resolution of the Second Complaint and engage in informal discovery. It was MVI's understanding that the Defendants were going to voluntarily produce documents, including attorney time sheets and billing statements to demonstrate the exact nature of the legal services provide by the Defendants. During this time

and up to and including October 1, 2009, formal discovery had been stayed by agreement of the parties and the Bankruptcy Court pending a resolution of the Second Dismissal Motion.

8.      The parties met in early June 2009 at the offices of counsel for the Defendants. At the meeting, counsel for MVI showed the Defendants some of the documents it believed supported the claims alleged in the Second Complaint. MVI expressly stated that the documents did not comprise the entire case against the Defendants, as only a portion of MVI's business records had been reviewed at that time, but counsel for MVI reasonably believed that additional evidentiary support would be discovered supporting the Second Complaint. However, despite the aforementioned promises to the contrary, the Defendants produced ***no documents*** (i.e., time sheets, billing statements, engagement letters, emails, etc.) substantiating their claims that they never provided legal services to MVI relating to tax matters. As such, counsel for MVI left the meeting with the belief that the Defendants were not being completely forthcoming as agreed and required under the Federal Rule of Bankruptcy Procedure 7026.

9.      On June 30, 2009, the Bankruptcy Court conducted the final hearing on the Second Dismissal Motion. After hearing the arguments of counsel, the Bankruptcy Court took the matter under advisement and scheduled a continued hearing for August 26, 2009. Pro Memo Adv. Pro. Doc. No. 29. On August 12, 2009, the Bankruptcy Court entered a Memorandum Opinion Denying the Second Dismissal Motion ("Memorandum") and an Order Denying the Second Dismissal Motion. Adv. Pro. Doc. Nos. 30, 31. In the Memorandum, the Bankruptcy Court explained that despite the Defendants' contention regarding Mirabilis' lack of evidence, an attorney-client relationship is based on the client's subjective reasonable belief and the attachments

to the Second Complaint were sufficient to evidence valid causes of action and allege an attorney-client relationship. Memorandum, p. 5. On August 26, 2009, the Bankruptcy Court conducted the continued hearing and continued the stay of discovery until October 1, 2009, and scheduled a pretrial conference for January 21, 2010. Pro Memo. Adv. Pro. Doc. No. 34.

10.     On September 1, 2009, the Defendants filed their answer and affirmative defenses to the Second Complaint. The Defendants did not file the Second Sanctions Motion.

11.     On September 22, 2009, R. Scott Shuker, Esq., an attorney with LSEB, substituted as counsel for Elizabeth A. Green, Esq. in the Adversary Proceeding, as well as the MVI bankruptcy case. Adv. Pro. Doc. No. 37.

12.     On October 22, 2009, counsel for the Defendants filed a Stipulated Motion for Withdrawal of the Reference ("Reference Motion"). Adv. Pro. Doc. No. 38. On October 30, 2009, LSEB filed an Unopposed Motion for Substitution of Counsel ("Substitution Motion"). Adv. Pro. Doc. No. 39. In the motion, LSEB requested, with the consent of the Defendants, to "be relieved of any further responsibility for representation of the Plaintiff" in the adversary proceeding. Substitution Motion, p. 2. As of the Substitution Motion, the Defendants still had not filed either the First Sanctions Motion or the Second Sanctions Motion. At this time, LSEB believed that all issues regarding the First Sanctions Motion and the Second Sanctions Motion had been resolved, and that the Defendants were no longer seeking sanctions against LSEB.

13.     Prior to the Bankruptcy Court granting the Substitution Motion, the adversary proceeding was transmitted to the District Court on November 4, 2009. On November 10, 2009, LSEB re-filed the Substitution Motion. Doc. No. 5. On November 19, 2009, the Court granted

the Reference Motion and the Substitution Motion. Doc. Nos. 6, 7. As of November 19, 2009, the Defendants still had not filed either the First Sanctions Motion or the Second Sanctions Motion.

14.    On January 29, 2010, MVI moved to amend the Second Complaint. Doc. No. 18. The Defendants did not oppose the Motion to Amend the Second Complaint. Doc. No. 19. On February 25, 2010, the Court granted the Motion to Amend *nunc pro tunc* to February 2, 2010. Doc. No. 21.

15.    MVI filed its second amended complaint against the Defendants alleging causes of action for negligence, breach of fiduciary duty, negligent misrepresentation, and negligent supervision (the "Third Complaint")[3]. Exhibit 1. Doc. No. 18. (See comparison of the Second Complaint to the Third Complaint, attached hereto as **Exhibit B**).

16.    LSEB was unable to conduct: (i) any pre-suit discovery due to the consensual stay of the bankruptcy case, which was not lifted until November 25, 2008; and (ii) any post-suit discovery due to the stay of discovery, which was not lifted until October 1, 2009[4]. LSEB had effectively ceased all involvement in the Adversary Proceeding upon confirmation of the Plan, discussed *infra*, and the engagement of replacement counsel.

---

[3] On March 9, 2010, the Defendants served on replacement counsel, Robert C. Widman, Esq. and Roy S. Kobert, Esq., a third motion for sanctions and incorporated memorandum of law with respect to the Third Complaint. ("Third Sanctions Motion"). The Defendants did not serve LSEB with the Third Sanctions Motion, and LSEB was unaware that the Defendants were still seeking sanctions until June 22, 2010.

[4] Counsel for the Defendants admitted that the required discovery in the Adversary Proceeding would be lengthy, and suggested that the parties agree to a one year to discovery timetable, and that they proceed according to the rules, but that the parties waive the ten deposition limit because from the record, it is obviously more than a ten deposition case. August 26, 2009 Transcript, p.33.

17.     In the First Sanctions Motion and the Second Sanctions Motion, the Defendants request, pursuant to Federal Rules of Bankruptcy Procedure 9011(c)(2), 11 U.S.C. §105(A), and the Court's inherent authority, that the Court enter an order of monetary sanctions against Elizabeth Green, Esq., Jennifer S. Eden, Esq. (collectively, the "Attorneys"), and Latham, Shuker, Eden & Beaudine, LLP for presenting to the Court a pleading which contains allegations and other factual contentions that have no evidentiary support and which was presented for an improper purpose, such as to acquire funds that Frank Amodeo can use for restitution to attempt to improve his standing in the criminal proceeding and obtain a more lenient sentence.

18.     LSEB asserts that at the time of the filing of the First Complaint and the Second Complaint, MVI and its Attorneys had a good faith belief after a reasonable inquiry that the First Complaint and Second Complaint were well grounded in fact. There was nothing known to the Plaintiff or counsel at the time counsel signed the First Complaint or the Second Complaint to lead counsel to believe that the factual allegations were frivolous.

## REASONABLENESS OF PRE-FILING INQUIRY

### CIRCUMSTANCES SURROUNDING COMMENCEMENT OF BANKRUPTCY CASE

19.     On May 14, 2008, R. Scott Shuker, Esq. and Elizabeth A. Green, Esq. met with Randy Gold, an attorney with the US Attorney, and a representative of the United States Trustee's Office to discuss the filing of the MVI bankruptcy case. At this initial meeting Mr. Gold expressed his concerns regarding the potential bankruptcy filing, the alleged overall criminal "tax scheme" of Mr. Amodeo and the use of tax and legal professionals to perpetuate the criminal conspiracy to misuse payroll tax funds. Mr. Gold specifically identified Mr. Beyer as a participant in the criminal

conspiracy and implied that he was a "target" of the criminal investigation related to Mr. Amodeo and MVI. Although the US Attorney did not originally approve of the filing of the Chapter 11 bankruptcy petitions and the use of the Bankruptcy Code to liquidate the assets of the Debtors for the benefit of all creditors, the United States did ultimately agree that it was in the best interests of all parties to have some of the assets administered in the bankruptcy proceedings

20.     On May 27, 2008, upon the resignation of Shane Williams and Jay Stollenwerk, Mr. Moecker, as the sole remaining director, elected Mr. Cuthill as President and authorized Mr. Cuthill, on behalf of MVI, to file Chapter 11 bankruptcy petitions. Bkrty. Doc. No. 237, ¶ 11, Exhibit E. Subsequently, MVI and Hoth Holdings, LLC ("Hoth") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On June 5, 2008, AEM, Inc. ("AEM") also filed a Chapter 11 bankruptcy petition (collectively, MVI, Hoth, and AEM shall be referred to as "Debtors").

21.     The Chapter 11 filings came primarily as a result of an *in rem* civil forfeiture action commenced by the United States Attorney ("US Attorney") on behalf of the United States of America ("United States") against certain assets of MVI, which effectively caused MVI to be unable to collect assets and pursue claims and litigation against various third parties[5]. Bkrty. Doc. No. 185, ¶ 2. The *in rem* civil forfeiture action was filed based upon the criminal investigation of

---

[5] On April 25, 2008, the US Attorney instituted *in rem* civil forfeiture proceedings ("Civil Complaint"), in the United States District Court for the Middle District of Florida, case no. 6:08-cv-00670-ACC-KRS, against certain property owned by MVI. On September 4, 2008, the US Attorney amended the Civil Complaint to add additional property, some of which was owned by MVI. On October 30, 2008, the US Attorney indicted AEM and MVI for conspiracy, wire fraud, and forfeiture; case no. 6:08-cr-00231-JA-KRS.

Mr. Amodeo[6]. In an effort to preserve equity for all creditors, the Debtors deemed a Chapter 11 liquidation plan as in the best interest of all creditors. See id.

22.     On August 14, 2008, the US Attorney filed a motion to intervene and stay the bankruptcy case of MVI ("Stay Motion"). Bkrty. Doc. No. 48. In the Stay Motion, the US Attorney sought to stay the MVI bankruptcy case in order to pursue a forfeiture and seizure action against property of the Debtors' estates which would "become property of the United States and [would] not remain in the related bankruptcy estates." Bkrty. Doc. No. 48, ¶ 6. If granted, the United States would have seized substantially all of MVI's assets. On September 3, 2008, MVI and the US Attorney agreed to voluntary stay the MVI bankruptcy case until a hearing could be held on the Stay Motion. During this period, MVI agreed to perform only the necessary administrative work on the main bankruptcy case and respond to the Stay Motion.

23.     On September 24 and 25, 2008, the US Attorney filed motions to dismiss the Debtors' bankruptcy cases based upon allegations of bad faith (the "USA Dismissal Motions"). Bkrty. Doc. No. 41. On November 25, 2008, the Debtors and the US Attorney reached a settlement agreement with respect to the Stay Motion and the USA Dismissal Motion, and filed a motion for approval of compromise of controversy by and between Debtors and the United States (the "Settlement"). Bkrty. Doc. No. 101.

24.     Pursuant to the terms of the Settlement, the Debtors and the US Attorney agreed that it would be in the best interests of all parties to agree to the administration of the Debtors'

---

[6] On August 6, 2008, the US Attorney indicted Frank L. Amodeo for conspiracy, failure to remit payroll taxes, wire fraud, and obstruction of an agency investigation ("Amodeo Indictment"); case no. 6:08-cr-176-Orl-28-GJK.

assets, and have part of the administration occur in the bankruptcy cases. <u>Bkrty. Doc. No. 101</u>, ¶ 24-31. The Settlement provides, in part, for the division of assets between the bankruptcy estates and the United States and the allowance of a $200,000,000 unsecured forfeiture claim. <u>Id</u>. The Settlement was ultimately approved by the Bankruptcy Court's order approving the Settlement entered on March 4, 2009. <u>Bkrty. Doc. No. 145</u>. The division of assets specifically provided that MVI would retain all causes of action against insurance carriers or for malpractice against professionals, including the instant Adversary Proceeding. <u>Bkrty. Doc. No. 101</u>, ¶ 26(b).

25.     Shortly prior to the confirmation hearing on the Plan, MVI and counsel met with the US Attorney and discussed the pending and contemplated litigation which would fund payments to the unsecured creditors under the Plan, of which the United States is the holder of ninety percent (90%) of the general unsecured claims. At this time the instant Adversary Proceeding was specifically identified and discussed amongst the parties. The US Attorney requested that replacement counsel for LSEB be compensated on an hourly basis rather than a contingency fee agreement because the US Attorney viewed the recovery to be significant and wanted to prevent a windfall to replacement counsel. At no time did the US Attorney advise MVI or counsel that the instant Adversary Proceeding lacked merit.

<u>CONDITION AND CONTENT OF MVI BUSINESS RECORDS</u>

26.     Upon his appointment as President of MVI, Mr. Cuthill began the task of securing the corporate records of MVI. Prior to the Petition Date, MVI had two separate warehouses containing over 5,000 boxes of documents. The boxes were not organized, indexed or accurately

labeled, and some of the boxes were broken and falling apart. It was clear from inspection the boxes had been rummaged through and documents were strewn about the warehouses.

27.     As soon as Mr. Cuthill was able to obtain possession of the boxes and the warehouses, in or around November 2008, he began the task of moving, re-boxing, organizing and indexing over 5,000 boxes. Although it was cost prohibitive to review each and every piece of paper in all 5,000 boxes, Mr. Cuthill and his staff were able to index the general categories of documents contained within the boxes and consolidate the warehouses into a single storage facility.

28.     Once Mr. Cuthill was able to properly review the business records of MVI and its related companies and subsidiaries, Mr. Cuthill located several documents which enabled him to piece together the events surrounding the development and implementation of the alleged criminal conspiracy to misuse payroll tax funds and the role played by the Defendants. Specifically, Mr. Cuthill identified and reviewed the following documents (collectively, the "Beyer Documents"):

i.     *December 21, 2004 Notes*: contemporaneous handwritten notes of James E. Baiers dated December 21, 2004 denoting that Hans Beyer and BIR are associated with the "Fall back plan-Fail Safe" to file two separate bankruptcies one in Orlando and one in Miami. The only entities identified as filing Chapter 11 bankruptcy are the Sunshine Companies, and the only specific creditors discussed are the IRS and "Hendricks." The Hendricks were two individuals suing Presidion Corporation and Presidion Solutions, Inc. Presidion Corporation was the owner of the Sunshine Companies;

ii.    _Employee Bio_: The biographies of various professionals were prepared by Aaron C. Bates, Esq., Matthew S. Mokwa, Esq., Shane Williams, Jay Stollenwerk and Jodi Jaiman, employees of MVI and entities owned by Frank Amodeo, in preparation of Frank Amodeo's criminal defense of the alleged criminal conspiracy to misuse payroll tax funds. The biography of Hans Beyer identifies him as an attorney, "involved in Presidion related matters since January 2005, prepared Presidion document files and index." The biography also states that he was the primary editor of the IRS narrative, an officer of Mirabilis and managing director of Tampa area and foreign projects;

iii.    _Sunshine Memorandum_: Memorandum dated January 4, 2005, on the Sunshine Matter Timetable from Richard Berman, Esq. to Frank Amodeo and copied on Hans Beyer Esq. The Sunshine Memorandum specifically references a meeting with Hans Beyer and other individuals on January 6, 2005 in Miami Gardens to prepare bankruptcy schedules and petition, as well as first day motions and brief in support of "stay-expansion." The Sunshine Memorandum also discusses contacting both the criminal and civil departments of the Internal Revenue Service ("IRS") to discuss receiving an expeditious final assessment and the advantages of a confidential compromise offer or "an imposed resolution in bankruptcy court." The only known tax assessment which would involve both the criminal and civil divisions of the IRS was alleged the criminal conspiracy to misuse payroll tax funds;

iv.    _Unsigned Frank Amodeo Affidavit_: The affidavit was prepared by Aaron C. Bates, Esq., Matthew S. Mokwa, Esq., Shane Williams, Jay Stollenwerk and Jodi Jaiman, employees of MVI and entities owned by Frank Amodeo, in preparation of Frank

13

Amodeo's criminal defense of the alleged criminal conspiracy to misuse payroll tax funds. The affidavit specifically states that Hans Beyer attended a meeting with the IRS in Plantation, Florida, in which the details of the Sunshine Companies Plan were specifically discussed, including the non-payment of taxes by the Sunshine Companies;

v. *February Beyer Email*: email dated February 14, 2005 from Hans Beyer, Esq., of Saxon Gilmore, *et al.* P.A., to Tessah Ivey and copied on Frank Amodeo regarding a retainer check for $15,000.00 issued for the Sunshine Companies to Saxon Gilmore, and an additional retainer check to deal with the plan and motion to dismiss/convert in the Kingdom Vision Case. The Beyer Email confirms that Hans Beyer and his new law firm were being employed with respect to the workout and/or potential bankruptcy filing of the Sunshine Companies;

vi. *December Beyer Email*: email dated December 20, 2005 from Hans Beyer, Esq., of Saxon Gilmore, *et al.* P.A. and as employee of Nexia Strategies/Mirabilis Ventures, to Tessah Ivey attaching revised schedules and statement of financial affairs for Presidion Solutions;

vii. *Beyer Bankruptcy Notes*: handwritten notes of Hans C. Beyer dated 06-01-16 (presumably January 16, 2006) regarding: (i) tax liability of Presidion Solutions; (ii) note from Paradyme, Inc. which was offered to IRS, then sold to MVI; (iii) settlement offers to IRS; and (iv) voidable transfers and solvency issues of Presidion Solutions;

viii.    *Beyer Memorandum*: Draft Confidential Memorandum on MVI letterhead, dated January 16, 2006, from Hans Beyer to "File" regarding the assets and liabilities, including the unpaid payroll tax liabilities, of the Presidion and Sunshine Companies;

ix.    *IRS Binder Index*: Draft index to Volume I of the binder of all transactional documents in connection with Presidion Solutions and Sunshine Companies for the meeting with the IRS, dated January 16, 2006, and compiled by Hans Beyer. Index identifies bankruptcy documents of Presidion Solutions Inc. and lists MVI as a category of documents.  The binder has not been located;

x.    *June Beyer Email*: email dated June 27, 2006 from Hans Beyer, Esq., as employee of Nexia Strategies/Mirabilis Ventures, to Shane Williams and Jay Stollenwerk attaching a revised letter on behalf of the Presidion and Sunshine Companies to Revenue Officer Judy Berkowitz regarding unpaid payroll tax liabilities, and the edits made by Beyer to the letter;

xi.    *Transparency Timeline Index*: The Transparency Timeline Index was prepared by Aaron C. Bates, Esq., Matthew S. Mokwa, Esq., Shane Williams, Jay Stollenwerk and Jodi Jaiman, employees of MVI and entities owned by Frank Amodeo, in preparation of Frank Amodeo's criminal defense of the alleged criminal conspiracy to misuse payroll tax funds.  The timeline identifies key events related to the bankruptcy and tax issues of the Presidion/Sunshine Companies: (a) January 23, 2006: In preparation for meeting with IRS, Hans Beyer compiled all transactional documents in connection with Presidion Solutions and Sunshine Companies, and spoke with dozens of people in order to accumulate and

assemble documents for the binder; (b) June 20, 2006: Responses to IRS Revenue Officer, Judy Berkowitz's questions (purportedly drafted by Hans Beyer and others) concerning the tax liabilities and providing more information on the Presidion/Sunshine Companies, associated transactions and the reorganization plan; (c) August 29, 2006: over thirty (30) professionals attended a mock deposition of Amodeo in preparation for potential interview in connection with civil proceedings arising out of the Presidion reorganization plan, specifically with regard to the nonpayment of taxes during the plan; and (d) November 30, 2006: meeting including Hans Beyer and Frank Amodeo where they have a nonchalant discussion of resolving the tax issue;

      xii.     *Tax Timeline*: The Tax Timeline was prepared by Aaron C. Bates, Esq., Matthew S. Mokwa, Esq., Shane Williams, Jay Stollenwerk and Jodi Jaiman, employees of MVI and entities owned by Frank Amodeo, in preparation of Frank Amodeo's criminal defense of the alleged criminal conspiracy to misuse payroll tax funds. The timeline identifies and further substantiates the key events related to the bankruptcy and tax issues of the Presidion/Sunshine Companies set forth in the Transparency Timeline Index;

      xiii.     *Beyer Expense Report*: Expense Report of Hans Beyer dated May 18, 2006, for the period of April 18, 2006 through April 23, 2006, for the reimbursement by MVI for expenses incurred for his attendance of meeting with the IRS to discuss the Presidion tax issues; and

      xiv.     *Payments to Defendants*: Professional fee reports extracted from the books and records of MVI evidencing payments in the amount of $271,374.60 to or for the

benefit of the Defendants for legal and professional service rendered from February 2005 through December 2006.

<div align="center">INVESTIGATION PRIOR TO FILING ADVERSARY PROCEEDING</div>

29.     In addition to the Beyer Documents, Mr. Cuthill also located several draft complaints against Hans Beyer, BIR and Saxon, Gilmore, Carraway, Gibbons, Lash & Wilcox, P.A. (collectively, the "Draft Complaints"). The Draft complaints alleged causes of action for negligence, breach of fiduciary duty and self-dealing.

30.     The Draft Complaints were prepared by or at the direction of Aaron C. Bates, Esq. Mr. Bates was a former employee and in-house counsel to MVI until June 2007. Mr. Bates was then subsequently engaged by MVI to commence legal action against former officers, directors and professionals of MVI. Due to the nature, length and scope of Mr. Bates' employment with MVI, Mr. Bates had first hand knowledge of the events in the Draft Complaint.

31.     LSEB reviewed the Draft Complaints and the Beyer Documents, as well as the Civil Complaint and Amodeo Indictment. During this time LSEB attempted to contact several former officers and directors for information on the Defendants' involvement; however, due to the pending criminal investigation none of those contacted would voluntarily comment.

<div align="center">**MEMORANDUM OF LAW**</div>

32.     Sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011, like Federal Rule of Civil Procedure 11, are properly assessed: (1) when a party files a pleading that has no reasonable factual basis; (2) when a party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change

<div align="center">17</div>

existing law; or (3) when the party files a pleading in bad faith for an improper purpose. <u>See</u> <u>Massengale v. Ray</u>, 267 F. 3d 1298, 1301 (11th Cir. 2001) (quoting <u>Worldwide Primates, Inc.</u> <u>v. McGreal</u>, 87 F. 3d 1252, 1254 (11th Cir. 1996)).

33. The Eleventh Circuit has also held that under section 105(a), the bankruptcy court may take any action "necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." <u>11 U.S.C. §105(a)</u>. Sanctions may also be imposed under the bankruptcy court's inherent power, if the court finds bad faith. <u>In re Walker</u>, 532 F.3d 1304, 1309 (11th Cir. 2008). "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." <u>Id</u>. (internal citations omitted). "If particularly egregious, the pursuit of a claim without reasonable inquiry into the underlying facts can be the basis for a finding of bad faith." <u>Barnes v. Dalton</u>, 158 F. 3d 1212, 1214 (11th Cir. 1998).

34. A court ruling on a motion for Rule 11 sanctions must make a "two-step inquiry as to (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." <u>See</u> <u>Baker v. Alderman</u>, 158 F. 3d 516, 524 (11th Cir. 1998).

35. Rule 11 stresses the need for some pre-filing inquiry. <u>See</u> <u>Mike Ousley Productions,</u> <u>Inc. v. WJBF-TV</u>, F. 2d 380, 382 (11th Cir. 1992). The reasonableness of the inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the underlying facts; or whether he depended on

forwarding counsel or another member of the bar. See id. (quoting Advisory Committee Note to Rule 11, as amended in 1983).

36.     The court's inquiry should only focus on the merits of the pleading gleaned from the facts and law known or available to the attorney *at the time of filing*. See Jones v. International Riding Helmets, Ltd., 49 F. 3d 692, 694-95 (11ᵗʰ Cir. 1995) (original emphasis).

37.     A court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. See Souran v. Travelers Ins. Co., 982 F.2d 1497, 1506 (11ᵗʰ Cir. 1993) (quoting Fed.R.Civ.P. 11 Advisory Committee Note).

**I.     THE FIRST COMPLAINT AND THE SECOND COMPLAINT CONTAIN ALLEGATIONS AND OTHER FACTUAL CONTENTIONS WHICH HAVE EVIDENTIARY SUPPORT. ACCORDINGLY, LSEB SHOULD NOT BE SANCTIONED FOR PRESENTING THE COMPLAINTS TO THE COURT.**

38.     The purpose of Rule 9011 is to deter baseless filings of documents: (i) not well grounded in fact, warranted by existing law or containing a good faith argument for a change of the existing law; or (ii) filed for an improper purpose. See In re Pea, 154 B.R. 749 (Bankr. D. Conn. 1992). Accordingly, an attorney has a duty to conduct a "reasonable inquiry" into the facts of the case before signing a pleading. As such, the pleader may be subject to sanctions for the inclusion of baseless allegations or, on the other hand, for the omission of relevant facts. See In re Kouterick, 167 B.R. 353 (Bankr. D. N.J. 1994) (citing In re Ronco, Inc., 838 F. 2d 212, 218 (7ᵗʰ Cir. 1988)).

39.     Violations of Rule 9011 are determined by applying an objective standard of reasonableness under the circumstances. In re KTMA Acquisition Corp., 153 B.R. 238, 248

(Bankr. D. Minn. 1993) (citing Business Guides, Inc. v. Chromatic Communications Enters., Inc., 498 U.S. 533, 554 (1941)). Reasonableness is defined as "an objective knowledge or belief at the time of the filing of a challenged paper" that the claim was well grounded in law and fact. Ford Motor Co. v. Summit Motor Products Inc., 930 F. 2d 277, 289 (3d Cir. 1991). The inquiry focuses on "what should have been done by the filer before filing rather than how things turned out; conduct rather than result." In re KTMA Acquisition Corp., 153 B.R. at 248.

40.     A court must look at all of the circumstances that existed at the time the paper was signed and filed. As set forth in the Committee Notes to the 1983 amendment of Civil Rule 11, the four factors to be considered in determining reasonableness are: (i) how much time for investigation was available to the signer; (ii) whether the signer had to rely on a client for information as to the facts underlying the pleading, motion or other paper; (iii) the plausibility of the legal position advocated; and (iv) whether the case was referred to the signer by another member of the bar.

41.     In the instant case, upon review of the Draft Complaints and the Beyer Documents, it was not unreasonable for LSEB to infer that the Defendants: (i) were engaged to render legal services to or for the benefit of several entities, including the Presidion/Sunshine Companies; (ii) MVI paid for those legal services; (iii) the scope of those legal services included, but may not have been limited to, workout negotiations with the IRS for the unpaid payroll tax liability of the Presidion/Sunshine Companies, filing for Chapter 11 on behalf of the Presidion/Sunshine Companies, and assisting those entities and persons affected by the unpaid payroll tax liability with

an exit strategy; and (iv) knew or should have known that the legal services provide deviated from the standard of care.

42.     Furthermore, based upon discussions with the US Attorney regarding Hans Beyer and his involvement and association with the criminal conspiracy to misuse payroll tax funds it was reasonable for LSEB to infer that the cause of action had merit.

43.     Based on these facts, the looming statute of limitations, the inability to conduct discovery, and the unavailability of witnesses due to the assertion of Fifth Amendment rights, LSEB had sufficient reason to believe that the Defendants may have committed professional negligence in connection with their rendition of legal services to or for the benefit of MVI.

44.     MVI and LSEB did make a reasonable inquiry into the factual allegations set forth in the First Complaint and the Second Complaint. Accordingly, neither the First Complaint nor the Second Complaint and the factual contentions contained therein are violative of Federal Rule of Bankruptcy 9011(b)(3).

**II.     THE FIRST COMPLAINT AND THE SECOND COMPLAINT WERE NOT BEING PRESENTED FOR AN IMPROPER PURPOSE. ACCORDINGLY, LSEB SHOULD NOT BE SANCTIONED FOR PRESENTING THE FIRST COMPLAINT AND THE SECOND COMPLAINT TO THE COURT.**

45.     Under Rule 9011, a bankruptcy court must impose sanctions if the pleading or paper is frivolous or filed for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. See Cooper v. Litton Loan Servicing, 253 B.R. 295 (Bankr. N.D. Fla. 2000) (sanctions were imposed upon debtors' attorneys for their bad faith "scorched earth" policy of suing anyone remotely connected to the case).

46.     The rule is aimed at deterring abuse caused not only by bad faith, but also by negligence and, to some extent, by incompetence. See Gaiardo v. Ethyl Corp., 835 F. 2d 479 (3d Cir. 1987). A paper interposed for an improper purpose is sanctionable even if it warranted by existing law and supported by the facts. Likewise, a paper interposed without a reasonable inquiry is sanctionable even if it is filed with the purest of intention. See In re International Oriental Rug Center, 165 B.R. 436, 441 (Bankr. N.D. Ill. 1994).

47.     The sole basis for the Defendants' assertion that the Adversary Proceeding was commenced for an improper purpose is that "the MVI Attorneys filed the MVI bankruptcy proceeding and the adversary proceedings for the purpose of acquiring funds that Amodeo can use for restitution to attempt to improve his standing in the criminal proceeding and obtain a more lenient sentence." However, this Court has already ruled that the MVI bankruptcy case was not filed in bad faith or for an improper purpose.[7]

48.     Furthermore, MVI and LSEB have not demonstrated a pattern in the Adversary Proceeding of engaging in vexatious and dilatory litigation tactics, which has needlessly increased the cost of litigation. Accordingly, the First Complaint and the Second Complaint are not violative of Federal Rule of Bankruptcy Procedure 9011(b)(1).

---

[7] "[T]he decision to file was not made by Amodeo, and there was no evidence presented that Cuthill (or Moecker, for that matter) intended to aid Amodeo by doing so. In addition, the possibility that the filings might benefit Amodeo should not obscure the fact that such benefit would result from creditors recovering as mush as possible from the debtors." Order, p. 11. (Case No. 6:09-cv-1658-Orl-31, Doc. No. 30).

**III.    THE FIRST SANCTIONS MOTION AND THE SECOND SANCTIONS MOTION ARE UNTIMELY AND THEREFORE SHOULD BE DENIED.**

49.    The Eleventh Circuit has held that a party who moves for sanctions under F.R.B.P. 9011 must follow a two-step process. In re Walker, 532 F.3d at 1307. "The party first must serve the motion on the opposing party and then, at least twenty-one days later, file the motion with the court." Id. The Eleventh Circuit has also held that the filing and service of a sanctions motion must occur prior to final judgment or judicial rejection of the offending motion. See id. at 1309. "Any argument to the contrary renders the safe harbor provision a mere formality." Id.

50.    In the case McMahan v. Barker, 2007 WL 4403261, *1(M.D. Fla. 2007), the plaintiffs filed an amended complaint while a motion for sanctions under Rule 11 was pending. Subsequently, thereafter the defendants withdrew the Rule 11 motion, and the litigation between the parties continued until summary judgment was entered in favor of the defendants. See id. After the order granting summary judgment was entered, the defendants sought to renew the previously withdrawn Rule 11 motion. See id. The court held that counsel for plaintiff was necessarily prejudiced by the course of conduct of the defendants and the Rule 11 motion was untimely. See id. at *2. The court reasoned that based on the procedural safe guards embedded in the rule, motions seeking sanctions filed after a point in the litigation when the lawyer sought to be sanctioned lacks an opportunity to correct or withdraw the challenged submission, will be disallowed as untimely. See id.

51.    In the instant case, the Defendants did not file the First Sanctions Motion or the Second Sanctions Motion, until June 22, 2010, over seven (7) months after LSEB had been relieved of any further responsibility for the representation of the Plaintiff in the Adversary Proceeding, over four

(4) months after MVI filed the Third Complaint, and after the Court had granted Summary Judgment in favor of the Defendants on the Third Complaint.

52.     LSEB had no ability to correct or withdraw the Second Complaint after withdrawing as counsel, and were not even aware that the Defendants were still seeking sanctions with respect to the Second Complaint. LSEB was not even served with the Third Sanctions Motion until after the Order granting Summary Judgment was entered. LSEB is clearly prejudiced by the Defendants' course of conduct. The Defendants should have filed the First Sanctions Motion and Second Sanctions Motion with the Bankruptcy Court prior to being transmitted to this Court, or at a minimum prior to LSEB's withdrawal as counsel. Accordingly, the First Sanctions Motion and the Second Sanctions Motion should be denied for failing to comply with the procedural requirements of Federal Rule of Bankruptcy Procedure 9011.

## **REQUESTED RELIEF**

53.     LSEB requests the Court enter an order denying the First Sanctions Motion and the Second Sanctions Motion. In addition, LSEB requests the Court conduct an evidentiary hearing on the allegations made in the First Sanctions Motion and the Second Sanctions Motion and allow LSEB to present testimonial evidence in support of the averments contained herein.

54.     Furthermore, to the extent LSEB prevails in opposing the First Sanctions Motion and the Second Sanctions Motion, LSEB request the Court award the reasonable expenses and attorney's fees incurred in opposing the motions pursuant to Federal Rule of Bankruptcy Procedure 9011(c)(1)(A).

**WHEREFORE**, Latham, Shuker, Eden & Beaudine, LLP and Jennifer S. Eden, Esq. respectfully requests this Court enter an order: (i) denying the First Sanctions Motion; (ii) denying the Second Sanctions Motion; (iii) awarding LSEB some or all of the reasonable attorneys' fees and other expenses its has incurred in opposing the motions; and (iv) granting such other and further relief as the Court deems reasonable and necessary under the circumstances.

**DATED** this 23<u>rd</u> day of July 2010.

<div style="margin-left:40%">

/s/ R. Scott Shuker, Esq.
R. Scott Shuker, Esquire
Florida Bar No. 984469
Mariane L. Dorris, Esquire
Florida Bar No. 0173665
**LATHAM, SHUKER,
EDEN & BEAUDINE, LLP**
390 N. Orange Avenue, Suite 600
Orlando, Florida 32801
rshuker@lseblaw.com
mdorris@lseblaw.com
Tel: 407-481-5800
Fax: 407-481-5801
Attorneys for Latham, Shuker, Eden &
Beaudine, LLP and Jennifer S. Eden, Esq.

</div>

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

In re:                                    Case No.: 6:09-cv-01974-GAP-DAB

MIRABILIS VENTURES, INC.                  Bkry. Case No. 6:08-bk-04327-KSJ

            Debtor.
_____/

MIRABILIS VENTURES, INC.,

            Plaintiff,

v.                                        Case No.: 6:09-cv-01974-GAP-DAB

SAXON, GILMORE, CARRAWAY,
GIBBONS, LASH & WILCOX, P.A.,
and HANS CHRISTIAN BEYER,

            Defendants.
_____/

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 23rd, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Joseph H. Varner, III and Justin L. Dees, attorneys for Defendants, HOLLAND & KNIGHT LLP, P.O. Box 1288, Tampa, Florida 33601-1288; Robert C. Widman, attorney for Plaintiff, MORRIS & WIDMAN, P.A., 245 N. Tamiami Trail, Suite E, Venice, Florida 34285; Roy S. Kobert and Todd K. Norman, attorneys for Plaintiff, BROAD & CASSEL, 390 N. Orange Avenue, Suite 1400, Orlando, Florida 32801; and Jerry R. Linscott, attorney for Elizabeth A. Green, BAKER & HOSTETLER, LLP, 2300 Sun Trust Center, 200 South Orange Avenue, P.O. Box 12, Orlando, Florida 32802.

/s/ R. Scott Shuker
R. Scott Shuker, Esquire